JAMES M. MALONEY (JM-3352)
Plaintiff *pro se*
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JAMES M. MALONEY,

                          Plaintiff,

               - against -

ELIOT SPITZER, in his official capacity as Attorney
General of the State of New York,
GEORGE PATAKI, in his official capacity as Governor
of the State of New York, and
DENIS DILLON, in his official capacity as District
Attorney of the County of Nassau, and their successors,

                    Defendants.

--------------------------------------------------------------------X

**AMENDED
VERIFIED
COMPLAINT**

Case No. 03 Civ. 0786

(ADS)(MLO)

JAMES M. MALONEY, proceeding *pro se*, and pursuant to the Memorandum of

Decision and Order of the Honorable Arthur D. Spatt dated August 31, 2005 (the "8/31

Order"), as and for his amended verified complaint against the above-named defendants solely

in their official capacity, alleges:

**PARTIES**

1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff

was and is a natural person, a citizen of the United States, and a resident of the State of New

York, of the County of Nassau, and of this District.

2. At the commencement of this action and at all times hereinafter mentioned,

-1-

Defendant ELIOT SPITZER was and is a natural person and was and is the Attorney General of the State of New York.

3. At the commencement of this action and at all times hereinafter mentioned, Defendant GEORGE PATAKI was and is a natural person and was and is the Governor of the State of New York.

4. The Governor is charged by Article IV, section 3 of the Constitution of the State of New York with the duty to take care that the laws are faithfully executed, and accordingly has sufficient connection with the enforcement of statutes to make him a proper defendant in a suit for declaratory relief challenging the validity of certain applications of New York statutes.

5. At the commencement of this action and at all times hereinafter mentioned, Defendant DENIS DILLON was and is a natural person and was and is the District Attorney of the County of Nassau (hereinafter, the "District Attorney").

6. The District Attorney is the personal responsible for the potential prosecution of Plaintiff under the criminal statutes in question.  As more fully appears herein, Defendant DENIS DILLON has actually prosecuted Plaintiff under said criminal statutes.


## JURISDICTION AND VENUE

7. This action arises under the Constitution of the United States.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and has the power to render declaratory judgment and further relief pursuant to the provisions of 28 U.S.C. §§ 2201-2202.

8. Venue is properly placed in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b).

## GENERAL BACKGROUND

9. On or about August 24, 2000, Plaintiff possessed in his home one or more martial arts devices known as nunchaku or "chuka sticks," consisting of foot-long wooden sticks connected by a cord, the possession of which is defined as a crime by sections 265.00 *et seq.* of the Penal Law of the State of New York, as more fully appears herein.

10. On or about August 24, 2000, The People of the State of New York, through the office of Defendant DENIS DILLON, charged Plaintiff with criminal possession of a weapon in the fourth degree, a Class A misdemeanor defined at section 265.01 of the Penal Law of the State of New York, based on Plaintiff's possession within his home of a nunchaku that was found by Nassau County Police in Plaintiff's home.

11. The aforementioned criminal charge for possession of a nunchaku was based solely on allegations of simple possession of said nunchaku in Plaintiff's home, and was not supported by any allegations that Plaintiff had: (a) used said nunchaku in the commission of a crime; (b) carried or displayed the nunchaku in public; or (c) engaged in any other improper or prohibited conduct in connection with said nunchaku except for such simple possession within his home, nor is any such conduct an element of the defined crime.

12. The aforementioned criminal charge for possession of a nunchaku remained pending against Plaintiff for a period of approximately 29 months, until it was eventually dismissed on or about January 28, 2003.

13. Upon information and belief, said dismissal was not based on any explicit or implicit recognition by the District Attorney that said statutes, as applied against Plaintiff and defining as a crime the simple possession of nunchaku within one's home, are or were unconstitutional.

-3-

## PLAINTIFF'S BACKGROUND AND STANDING TO SUE

14. Plaintiff has been a student of the martial arts since approximately 1975, when he began studying Uechi-Ryu, an Okinawan style of karate, under the tutelage of Vincent Pillari in Fort Lee, New Jersey.  Plaintiff has subsequently studied various styles of martial arts, including other Okinawan styles of karate, the Ving Tsun or "Wing Chun" style of kung fu, and aikido.  Drawing from these and other influences, Plaintiff formulated his own martial arts style, known as Shafan Ha-Lavan, beginning in 1998.  Shafan Ha-Lavan incorporates the use of the nunchaku as an integral and essential part of its training and technique.

15. Since 1975, Plaintiff has trained in a peaceful manner with the nunchaku, and has acquired numerous nunchaku, which are or were his personal property.

16. Plaintiff has never used a nunchaku to inflict harm or physical injury on another human being or on an animal, and has used nunchaku only for socially acceptable purposes within the context of martial arts, and to develop physical dexterity and coordination.

17. Plaintiff first became interested in the nunchaku, and began training with it in 1975, in part because the weapon is particularly effective in defense against an assailant armed with a knife or other sharp instrument, and in part because Plaintiff's father, John Maloney, had been fatally stabbed in 1964, when Plaintiff was five years old.

18. Since 1980, Plaintiff has served honorably as, and remains, a commissioned officer in the U.S. Naval Reserve.  From 1986 to 1995, he served as a paramedic in New York City's 911 Emergency Medical Services system, and observed numerous instances of serious injury or fatality due to wounds inflicted by assailants armed with knives and other sharp instruments.

19. Plaintiff has ties to and roots in the State of New York (including being licensed to

practice law in all of the State's courts and in four federal courts sitting therein, consisting of two District Courts, the Court of Appeals for the Second Circuit, and the Court of International Trade) and cannot conveniently relocate, nor does he wish to do so.

20. Because Plaintiff was charged with a Class A misdemeanor for the simple possession of a nunchaku in his own home, and for more than two years lived under the constant threat of being imprisoned for up to one year in punishment therefor, Plaintiff must reasonably either: (1) forgo possession of any nunchaku within his own home; (2) move from the State; or (3) risk being the target of another prosecution for disobeying the same law.

21. In addition to having already been arrested and prosecuted for the possession of nunchaku in his home, Plaintiff intends to possess nunchaku in his home provided that he may do so lawfully. Thus, Plaintiff is forced to choose between risking further criminal prosecution and forgoing what may be constitutionally protected conduct (i.e., possessing nunchaku in his home for legitimate purposes).

22. Plaintiff accordingly has standing to seek declaratory judgment on the question of the constitutionality of those New York statutes that criminalize the simple possession of nunchaku within one's home.

### THE NUNCHAKU AND ITS REGULATION BY VARIOUS GOVERNMENTS

23. Upon information and belief, the nunchaku was originally a farm implement, and was developed centuries ago for use as a weapon on the island of Okinawa after invading oppressive governments attempted to disarm the people there.

24. Upon information and belief, the nunchaku had already been used as an "arm" or weapon for the common defense, by the citizens' militias of Okinawa, well before the dates of

the ratification of the United States Constitution and of the first ten amendments thereto.

25. The nunchaku, unlike most other weapons, including firearms, knives, swords and all other penetrating weapons, is capable of being used in a restrained manner such that an opponent may be subdued without resorting to the use of deadly physical force.

26. The nunchaku, in comparison with most other arms, including firearms, is relatively safe and innocuous, such that a child or person untrained in the weapon's proper use would be unable to inflict serious injury upon him- or herself, either accidentally or intentionally.

27. Accordingly, nunchaku kept in the home, even if not secured in a locked compartment, are far less likely to be associated with serious injury or fatality than are most other weapons or even common household objects such as kitchen knives and scissors.

28. Upon information and belief, the States of Connecticut, Massachusetts and Pennsylvania all have enacted statutes defining as a crime the possession of nunchaku in certain places, such as in a vehicle (Connecticut General Statutes § 29-38), on one's person in public areas (Massachusetts General Laws, Chapter 269, § 10), or on school grounds (Pennsylvania Statutes § 13-1317.2(g)).

29. Upon information and belief, no state other than New York and California has defined and prosecuted as a crime the mere possession of nunchaku within one's own home.

30. New York Penal Law § 265.00 (14) (one of two subsections so numbered) defines a "chuka stick" (i.e., nunchaku) in substantial part as follows: "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking . . ."

-6-

31. New York Penal Law §§ 265.01 and 265.02 define the possession of a "chuka stick" (i.e., nunchaku) as a Class A misdemeanor and as a Class D felony, respectively, and make no exception from criminal liability for the simple possession of a nunchaku or "chuka stick" within one's own home.  As alleged in paragraphs 9 through 11, *supra*, the District Attorney interpreted § 265.01 as reaching such simple possession in prosecuting Plaintiff.

32. Upon information and belief, the New York bill that made mere possession of nunchaku, even in one's own home, a crime, was signed into law on April 16, 1974, and became effective on September 1, 1974.

33. Upon information and belief, a memorandum from the State of New York Executive Department's Division of Criminal Justice Services to the office of the Governor dated April 4, 1974, pointed out that nunchaku have legitimate uses in karate and other martial-arts training, and opined that "in view of the current interest and participation in these activities by many members of the public, it appears unreasonable--and perhaps even unconstitutional--to prohibit those who have a legitimate reason for possessing chuka sticks from doing so." A true copy of said memorandum is annexed hereto as Exhibit 1.

34.  Upon information and belief, the memorandum annexed hereto as Exhibit 1 was received by the office of the Governor on April 9, 1974, before the bill banning nunchaku in New York was signed into law.

35.  Upon information and belief, a letter and report from the Committee on the Criminal Court of the New York County Lawyers' Association to the Governor dated May 3 and April 29, 1974, respectively, opined that "[w]hile the possession of [nunchaku] with demonstrable criminal intent is a proper subject of legislation, the proposed legislation goes further, making the mere possession (even absent criminal intent) a criminal offense.  If it is

the desire of the legislature to prohibit the use of nunchakus in criminal conduct, a more narrowly drawn statute can be fashioned to achieve this end." True copies of said letter and report annexed hereto as Exhibit 2.

36.   Upon information and belief, the letter and report annexed hereto as Exhibit 2 were received by the office of the Governor on May 7, 1974, after the bill banning nunchaku in New York had already been signed into law.

37.   Since 1974, courts outside the State of New York have recognized that nunchaku have socially acceptable uses.  In 1981, an Arizona appellate court sustaining a conviction for criminal possession of nunchaku recognized that nunchaku have socially acceptable purposes, noting that "the use of nunchakus in the peaceful practice of martial arts or the possession for such use is not a crime."  *State v. Swanton*, 629 P.2d 98, 99 (Ariz. Ct. App. 1981).

38. A District of Columbia appellate court noted in 1983: "Since we are making a ruling concerning a weapon which apparently has not previously been the subject of any published opinions in this jurisdiction, it is worth making a few further observations about the nunchaku.  Like the courts of other jurisdictions, we are cognizant of the cultural and historical background of this Oriental agricultural implement-turned-weapon.  We recognize that the nunchaku has socially acceptable uses within the context of martial arts and for the purpose of developing physical dexterity and coordination."  *In re S.P.*, *Jr.*, 465 A.2d 823, 827 (D.C. 1983).

39.   In 1984, an Ohio appellate court reversed a criminal conviction for possession of nunchaku, holding that "the evidence tends to indicate that the device was used only for lawful purposes" and that "[m]ere possession of an otherwise lawful article . . . does not make it illegal."  *State v. Maloney*, 470 N.E.2d 210, 211 (Ohio Ct. App. 1984).

## CONSTITUTIONAL BASES FOR THE CHALLENGE

40.  This action challenges the constitutionality of the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent on three independent bases, corresponding to the first three causes of action.

41.  The first basis is that peaceful training with and twirling of the nunchaku is expressive conduct, which conduct is protected by the First Amendment to the Constitution of the United States ("First Amendment").

42.  The second basis is that the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent would violate rights specifically conferred by the Second Amendment to the Constitution of the United States ("Second Amendment"), provided that the Second Amendment guarantees a personal right and is applicable as against the states.

43.  The third basis is that the application of the aforementioned New York statutes to criminalize possession of nunchaku in one's own home without criminal intent would violate unenumerated rights, including those involving protection of the person from unwarranted government intrusions into a dwelling or other private place, as recently recognized by the United States Supreme Court in *Lawrence v. Texas*, 123 S. Ct. 2472 (2003).

44.  As more fully appears herein, unenumerated rights are specifically guaranteed by the Ninth Amendment to the Constitution of the United States ("Ninth Amendment"), but have largely been recognized in American constitutional jurisprudence under the doctrine of substantive due process.  Either approach may draw inferentially from the first eight amendments to the Constitution of the United States and/or from other sources in establishing the scope and content of rights not enumerated.

## FIRST CAUSE OF ACTION

45. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 44 as if fully set forth herein.

46. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home and therefore criminalize peaceful training with and twirling of the nunchaku in the privacy of one's own home, violate the provisions of the First Amendment of the Constitution of the United States.

## SECOND CAUSE OF ACTION

47. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 44 as if fully set forth herein.

48. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home, violate the provisions of the Second Amendment of the Constitution of the United States.

49. In *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), the Second Circuit held that the Second Amendment is inapplicable to the states.

50. Upon information and belief, a petition for panel rehearing and petition for rehearing *en banc* were filed by the Plaintiff-Appellant in *Bach v. Pataki*, and said petitions were denied.

51. Upon information and belief, the denial of said petitions was issued as a Mandate on August 4, 2005, thereby starting the 90-day period for the Plaintiff-Appellant in *Bach v. Pataki* to petition the United States Supreme Court for *certiorari*. A true copy of the Mandate is annexed hereto as Exhibit 3.

52. Given the foregoing, and the resultant possibility of reversal of *Bach v. Pataki*, this cause of action is not frivolous even though it is not actually viable at the time of filing this amended verified complaint.

**THIRD CAUSE OF ACTION**

53. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 44 as if fully set forth herein.

54. New York Penal Law §§ 265.00 through 265.02, to the extent that said statutes criminalize the simple possession of nunchaku within one's home, violate unenumerated rights, including, without limitation: (a) those rights guaranteed by the Ninth Amendment; (b) those rights recognized under the doctrine substantive due process; (c) those rights recognized by the United States Supreme Court in *Lawrence v. Texas*, 123 S. Ct. 2472 (2003); (d) those rights guaranteed by the Fourteenth Amendment and (e) those rights the existence of which may be drawn inferentially ("penumbras and emanations") from a reading of the first eight amendments to the Constitution of the United States and/or of the Declaration of Independence.

**FOURTH CAUSE OF ACTION (AS AGAINST THE ATTORNEY GENERAL)**

55. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 54 as if fully set forth herein.

56. Upon information and belief, in 2000 and 2002, the Attorney General reached settlements in two civil lawsuits against out-of-state martial arts equipment suppliers, Family Defense Products, Inc. of Ocala, Florida, and  Bud K World Wide, Inc. of Moultrie, Georgia (collectively, the "Companies"), which had provided nunchaku to New York residents by mail order and/or Internet sales.

57. Upon information and belief, as part of these settlements, the Companies were required to provide the Attorney General with a list of the names and addresses of all New York customers who had ever purchased nunchaku from the Companies.

-11-

58.  Upon information and belief, as part of these settlements, the Companies also were required to deliver written notice to their New York customers advising them to surrender their weapons to law enforcement agencies.  A true copy of the draft form of one such written notice is annexed hereto as Exhibit 4.

59. Should this Court find that those portions of sections 265.00 through 265.02 of the New York Penal Law that define and punish as a crime the simple possession of nunchaku within one's home are unconstitutional and of no force and effect, the statutes themselves would remain unchanged unless the legislature amended them.

60. Many persons who received the written notices described above would likely still be under the impression that simple possession of nunchaku in their own homes for peaceful use in martial arts training is illegal and could subject them to up to a year in prison.

61.  Such persons would also be aware that the State of New York has their names and addresses by virtue of the Attorney General's settlements as described above.

62.  Accordingly, equity would require that such persons be notified of any decision by a court protecting their right to possess nunchaku in their own homes for peaceful use in martial arts training.

63.  Further, because the Attorney General received a list of the names and addresses of New York customers who had purchased nunchaku from the Companies (see paragraph 57, above), notifying those persons of such a decision would not be unduly burdensome.

64.  Under the provisions of 28 U.S.C. § 2202, this Court has the power to grant the relief sought herein.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    assume jurisdiction over this action;

(2)    declare that those portions of sections 265.00 through 265.02 of the New York Penal Law that define and punish as a crime the simple possession of nunchaku within one's home are unconstitutional and of no force and effect;

(3)    grant appropriate equitable relief as described in the Fourth Cause of Action, such as an affirmative injunction requiring the Attorney General to notify any persons who received the notice described in paragraph 58, above, that they may not be criminally prosecuted for the simple possession of nunchaku in their own homes for peaceful use in martial arts training; and

(4)    grant such other, further, and different relief as this Court may deem just and proper.

Dated:      September 3, 2005
Port Washington, New York

/s/
_____

JAMES M. MALONEY (JM-3352)
Plaintiff *pro se*
33 Bayview Avenue
Port Washington, New York 11050

(516) 767-1395

-13-

## **VERIFICATION**

I, James M. Maloney, state that I am the plaintiff in this action, *Maloney v. Spitzer et al.*, Case No. 03 Civ. 0786 (E.D.N.Y.), that all statements of fact alleged in the foregoing amended verified complaint are true to my own personal knowledge, except the matters therein stated to be alleged upon information and belief, and that, as to those matters, I believe them to be true following reasonable investigation of the truth of such statements of fact.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   September 3, 2005
Port Washington, New York


JAMES M. MALONEY (JM-3352)

**EXHIBIT 1**

A 8667-A

**Memorandum** APR 9 REC'D

April 4, 1974



STATE OF NEW YORK
EXECUTIVE DEPARTMENT
DIVISION OF CRIMINAL JUSTICE SERVICES

TO:    Michael Whiteman

FROM:  Archibald R. Murray

RE:    A. 8667-A

----------------------------------------------------------------

## Purpose

To amend a number of sections in Article 265 of the Penal Law
to penalize the possession of, manufacture or dealing in "chuka sticks."

## Discussion

This bill proposes to outlaw the possession, manufacture or shipment
of "chuka sticks," as that device is defined in bill section 1.
By placing the basic prohibition in Penal Law section 265.05(3),
the possession of chuka sticks is made per se criminal, i.e., no
mens rea is required and the crime, therefore, is one of absolute
liability. Even if the chuka stick is being employed with signifi-
cant frequency as a weapon in the commission of violent crimes,
its inclusion in the per se category is of doubtful wisdom and
questionable legality.

It is our understanding that chuka sticks are also used in karate
and other "martial arts" training. In view of the current interest
and participation in these activities by many members of the public,
it appears unreasonable -- and perhaps even unconstitutional -- to
prohibit those who have a legitimate reason for possessing chuka
sticks from doing so. There are alternative ways in which the
problem can be handled. If it is desired to keep chuka sticks in
the per se prohibited class, an exception could be drafted for those
who possess them for lawful martial arts training. Such a course
is employed for switchblade and gravity knives, which are also
prohibited in this same subdivision (P.L. sec. 265.05[3]). In
their case, section 265.20(5) permits their possession for hunting
or fishing by a person who has a hunting or fishing license.

A second, and more appropriate, alternative would be to treat
chuka sticks under Penal Law section 265.05(9) where, to constitute
the crime, possession must be coupled with "an intent to use the
same unlawfully against another." This would put chuka sticks
in the same category as other objects which are potential weapons
but which also have legitimate uses, such as knives and razors.

page 2

It should be noted that the first version of this bill (A. 8667) in fact pursued precisely this latter course.

A technical -- probably typographical -- error appears on page 1, line 4. The word "designated" probably should read "designed."

Recommendation

In view of the foregoing, we cannot recommend approval of this bill in its present form.

09

**EXHIBIT 2**

*chap 179*


A 8667 A

**PRESIDENT**
HENRY N. EDS. III

**VICE PRESIDENTS**
WILBUR H. FRIEDMAN
LAWRENCE X. CUSACK
ANDREW Y. ROGERS

**SECRETARY**
THOMAS KEOGH

**TREASURER**
SOLOMON E. STAR

**EXECUTIVE DIRECTOR**
JULIUS ROLNITZKY

**ASSISTANT TREASURER**
MICHAEL D. JAKIEME

**LIBRARIAN**
FREDERIC S. BAUM

MAY 7 REC'D

14 VESEY STREET — FACING ST. PAUL'S
NEW YORK, N.Y. 10007
———
CORTLANDT 7-8646

For further information
please communicate with:
Gregory J. Perrin, Esq.
225 Broadway, R-2515
New York, N. Y.  10007
349-1390

May 3, 1974

Hon. Malcolm Wilson
Executive Chamber
Albany, N. Y.  12224

My dear Sir:

The Committee on the Criminal Court of the New York
County Lawyers' Association has disapproved the
following bill and believes that it should not become
law:

A. 8359-A
A. 8667-A

A copy of a report recommending disapproval is enclosed.

Very truly yours,

BENJAMIN LEVINE

Chairman, Committee on State Legislation

12

INTRODUCED BY ASSEMBLYMAN MANNIX
INTRODUCED BY SENATORS PISANI, ACKERSON, GORDON,
  FLYNN, KNORR
INTRODUCED BY ASSEMBLYMAN ROSS; Multi-sponsored by:
  ASSEMBLYMEN BROWN, HURLEY, LEVY, LOPRESTO, MANNIX,
  SUCHIN, VOLKER, ABRAMSON
INTRODUCED BY SENATORS BARCLAY, PADAVAN

April 29, 1974          Report No. 184          A. 8359-A
                                                Same as S. 7685
                                                A. 8667-A
                                                Same as S. 9034

## NEW YORK COUNTY LAWYERS' ASSOCIATION
14 Vesey Street - New York 10007

Report of Committee on the Criminal Court on Assembly Bill 8359-A same as Senate Bill 7685, Assembly Bill 8667-A same as Senate Bill 9034, which seek to amend Sections 265.00, 265.05, 265.10, 265.15 of the Penal Law with regard to the possession of certain weapons.

### RECOMMENDATION: DISAPPROVAL

Both of these bills seek to add "nunchakus" to the list of weapons the possession of which is proscribed by Article 265 of the Penal Law.

Both bills have been amended and recommitted by substitute bill in Assembly. The amendments, in both cases, removed from the proposed legislation the presumption, from mere possession, of an intent to use the proscribed device unlawfully against another. In place of this presumption, both bills now make unlawful the mere possession of nunchakus, without regard to the issue of unlawful intent.

While it is true that nonchakus, chuka sticks and like objects are capable of use in criminal conduct, it is the sense of this Committee that they are not properly included in the provisions of Article 265 of the Penal Law as proposed.

While the possession of these items with demonstrable criminal intent is a proper subject for legislation, the proposed legislation goes further, making mere possession (even absent criminal intent) a criminal offense. If it is the desire of the legislature to prohibit the use of nunchakus in criminal conduct, a more narrowly drawn statute can be fashioned to achieve this end.

Respectfully submitted,

COMMITTEE ON THE CRIMINAL COURT

Gregory J. Perrin, Chairman

Report prepared for
the Committee by
MR. ALAIN M. BOURGEOIS

**EXHIBIT 3**



**MANDATE**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
THURGOOD MARSHALL U.S. COURT HOUSE
40 FOLEY SQUARE
NEW YORK  10007

Roseann B. MacKechnie
CLERK

ndny/alny
03-CV-1500

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 21st day of July two thousand five.

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

DAVID D. BACH,

Plaintiff-Appellant,

AUG 1 0 2005

LAWRENCE K. BAERMAN, CLERK
03-9123   ALBANY

UNITED STATES COURT OF APPEALS
FILED
JUL 2 1 2005
SECOND CIRCUIT

v.

GEORGE PATAKI, in his official capacity as Governer of New York, ELIOT SPITZER, in his official capacity as Attorney General of New York, JAMES W. MCMAHON, in his official capacity as Superintendent, New York State Police and RICHARD BOCKELMANN, in his official capacity as Ulster County Sheriff,

Defendants-Appellees.

A petition for panel rehearing and a petition for rehearing en banc having been filed herein by the appellant David D. Bach.  Upon consideration by the panel that decided the appeal, it is Ordered that said petition for rehearing is **DENIED**.

It is further noted that the petition for rehearing en banc has been transmitted to the judges for the court in regular active service and to any other judge that heard the appeal and that no such judge has requested that a vote be taken thereon.

For the Court:

FOR THE COURT:
ROSEANN B. MACKECHNIE, Clerk
by
Arthur M. Heller, Motions Staff Attorney

A TRUE COPY
Roseann B. MacKechnie, CLERK
by
DEPUTY CLERK

ISSUED AS MANDATE: 8/4/05

**EXHIBIT 4**

# DRAFT

[DATE]

[CONSUMER NAME]
[CONSUMER ADDRESS]
[CITY],NY [ZIP CODE]

**IMPORTANT CONSUMER NOTICE**

Dear Consumer:

This notice is being sent to you pursuant to a civil settlement agreement between our company and the office of Eliot Spitzer, the Attorney General of New York State.

According to our records, you purchased [SPECIFY ITEMS] from us. In New York State, the item or items listed are considered to be weapons. The possession of the item or items is a violation of New York Penal Law 265.01, commonly known as criminal possession of a weapon in the fourth degree. A person could be arrested and prosecuted for possessing the weapon that you purchased.

However, the law allows a person to possess a weapon such as the items or items listed above for the purpose of voluntarily surrendering the weapon to the New York State Police, their county sheriff, or their local police.  Law enforcement officials have been provided with a list of consumers who  received prohibited items.

Therefore, if you are in possession of the item or items listed above you should immediately contact the New York State Police, your county sheriff, or your local police precinct  and arrange to surrender the item or items listed above. If you have given the item or items to another person and the item is currently possessed in New York, you should advise that person to voluntarily surrender the item as described above.

Very Truly yours,


Clint H. Kadel
President, Bud K Worldwide, Inc.