UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES M. MALONEY,

       Plaintiff,

  - against -

ANDREW CUOMO, in his official capacity as
Attorney General of the State of New York, ELIOT
SPITZER, in his official capacity as Governor of
the State of New York, and KATHLEEN A. RICE,
in her official capacity as District Attorney of the
County of Nassau, and their successors,

       Defendants.
-------------------------------------------------------------------X

CV 03-786  (ADS) (MLO)

**DECLARATION**

    James M. Maloney, an attorney at law admitted to practice before this Honorable Court, declares under penalty of perjury as follows:

    1. I submit this Declaration in support of my Rule 15 motion to amend/supplement the Amended Verified Complaint.

    2. Because the Second Amended Verified Complaint submitted herewith is a proposed pleading rather than an actual filing, I hereby affirm that all allegations therein are true to my personal knowledge, except that where allegations therein are made upon information and belief, they are not based upon my personal knowledge, but I believe them to be true.

    3. The additional (third and fourth) causes of action set forth in the proposed Second Amended Verified Complaint arise out of the unlawful and injurious disclosure made at page 6 of Defendant RICE's Appellee's Brief dated October 24, 2007, and filed on October 25, 2007, in the United States Court of Appeals for the Second Circuit, which disclosed that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register."  A true copy of the entire brief is annexed as **Exhibit 1**.

    4.  As a review of the attached brief will show, it contains a great deal more *ad*

*hominem* argument directed against me than simply the complained-of disclosure. None of that *ad hominem* argument related to any issues that were in the record or before this Court, and all of it is based either on outright falsities, misportrayals of facts, assumptions that are inconsistent with the presumption of innocence, or some combination of the foregoing. Since I am complaining (or, rather, seeking leave to complain) only about the illegal disclosure made at page 6, I have not included any argument about the other scandalous material in the briefing that I am submitting with this motion or in the proposed pleading itself. However, as a point of self-defense as to my own good name (or what is left of it) I am including herewith, as **Exhibit 2**, true copies of the papers that were submitted (omitting their internal exhibits) in support of and in opposition to my unsuccessful motion before the Second Circuit to strike the brief. I especially wish to point out to this Court that Defendant's statement that I "pled an insanity defense to [criminal] charges," made at pages 6 and 24 of her brief, is absolutely false, and is particularly egregious considering that it appears in an argument made by the District Attorney of the very county in which the prosecution occurred. In response, I respectfully direct the Court's attention to pages 4-5 of my memorandum in support of my motion to strike dated October 26, 2007, which appears early on in the annexed Exhibit 2. Since, as noted, the complained-of brief contains much that was not in the record or before this Court previously, I am deeply troubled that it must be presented to this Court now, but I see no alternative if I am to seek a remedy to the injustice of the complained-of disclosure.

     5. Annexed hereto as **Exhibit 3** are true copies of letters (omitting their internal enclosures or attachments) dated July 9, 2001, and July 24, 2003, that I sent to the New York State Child Abuse and Maltreatment Register requesting that the report be amended to "unfounded," together with a letter to me dated January 16, 2008, scheduling an administrative hearing, which ultimately led to the finding that my having been listed on the New York State Child Abuse and Maltreatment Register was all along unsupported by any evidence that I had maltreated my sons by failing to leave my home upon warrantless police demand that I do so (see Exhibit 3 to proposed Second Amended Verified Complaint). As

noted therein (i.e., in Exhibit 3 to the proposed pleading) and in verified allegations contained in the Third Cause of Action as set forth in the proposed Second Amended Verified Complaint, that was the sole basis for the "indicated" report, which was initiated not by the police but by a third party acting in bad faith.

      6. The first two years' delay in receiving the fair hearing was due solely to the failure of the New York State Office of Children and Family Services to schedule any such hearing. Thereafter, from August 2003 to September 2007, I had instead sought adjudication of the matter as part of a federal action, but that portion of the action was dismissed on or about September 25, 2007, for the reasons set forth in *Maloney v. County of Nassau*, now reported at 623 F. Supp. 2d 277, 299 (E.D.N.Y. 2007). After that dismissal, I again sought, and on July 14, 2008, received, a fair hearing from the New York State Office of Children and Family Services. (The September 2008 decision based on that fair hearing is Exhibit 3 to the proposed Second Amended Verified Complaint submitted herewith, with minor redactions as described in the text of the pleading introducing it, and is referenced also in the preceding paragraph.)

      7. Defendant has argued, in her papers opposing my motion before the Second Circuit to strike her brief, that the complained-of disclosure, made in October 2007, was based on information contained in a "reported" opinion (see Exhibit 2 hereto, Defendant's Declaration Opposing Motion dated November 2, 2007, at page 4), but that opinion was <u>unreported</u> until at least June 2009. See 623 F. Supp. 2d, where the cases before and after the reported opinion in *Maloney v. County of Nassau* are from mid-2009 for at least two cases in both directions, as follows: *Hubbard v. Total Communications, Inc.*, 623 F. Supp. 2d 270 (D. Conn., June 10, 2009); *Brown v. City of Syracuse*, 623 F. Supp. 2d 272 (N.D.N.Y., June 10, 2009); **Maloney v. County of Nassau, 623 F. Supp. 2d 277 (E.D.N.Y., September 25, 2007)**; *New York v. Gutierrez*, 623 F. Supp. 2d 301 (E.D.N.Y., March 9, 2009); *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319 (E.D.N.Y., March 31, 2009). I have so far been unable to determine why the case was designated for reporting nearly two years after having been decided.

      8. Annexed hereto as **Exhibit 4** are true copies of a letter dated March 17, 2009, and of

the envelope in which it came, which is the only communication I have received from Defendant in response to my various complaints directly to her about the complained-of disclosure.  Until I received that letter, I still entertained hope that Defendant would recognize that the complained-of disclosure was unlawful and unfair, and would agree to do something to remedy it.  Initially I had hopes that she would consent to withdrawing the complained-of brief, or at least would agree to redact the portion of the filed copy that contained the complained-of disclosure, but after the case had been heard by the Second Circuit in December 2008 and decided in January 2009 *sub nom*. *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009), I recognized that withdrawal of the filed brief would be more difficult if not impossible.

      9. Still, as of March 2009, when I received the letter described in the foregoing paragraph, the complained-of brief had not yet appeared on Westlaw®.  I had been checking periodically (once or twice per month) after the Second Circuit decision in *Maloney v. Cuomo* had been rendered.  Before receiving the letter authenticated as Exhibit 4 in the foregoing paragraph, I still hoped that redaction of the filed brief would be possible if Defendant would agree to taking reasonable remedial measures, and after receiving the letter described in the foregoing paragraph I still entertained reasonable hope that the complained-of brief and the complained-of disclosure therein would never become widely available via Westlaw® and comparable means.  However, in late May 2009, the complained-of brief appeared in full on Westlaw®.  In or about June 2009, I downloaded a pdf version of same using my Westlaw® account, and it is that electronic copy (with the certificate of service, etc. removed) that has been attached as Exhibit 1 to the ECF-filed version of this declaration.

      10. Annexed hereto as **Exhibit 5** is a true copy of a declaration I submitted on June 8, 2006, in the aforementioned *Maloney v. County of Nassau* matter, together with its internal exhibits, detailing the manner in which my having been listed on the New York State Child Abuse and Maltreatment Register caused me to lose the opportunity to continue teaching a Celestial Navigation course that I had taught in my local school district since 2001.  In sum, I had at that time grave concerns that my having been listed on the New York State Child Abuse

and Maltreatment Register would be uncovered due to the "background check" requirements of the company to which that course (and the entire adult education program through which it had been offered) had been outsourced by the local school district. I refused to comply with the "background check" requirements and was not permitted to continue teaching the course.

11. In mid-2007, my local school district ended the outsourcing of the program through which my Celestial Navigation course had been offered and resumed internal control of the program.  As soon as I learned of this, I spoke with local school district personnel by telephone, indicated that I would like to resume teaching my Celestial Navigation course, and was subsequently sent appropriate forms by mail enabling me to do so, followed by a confirming notice later that year.  A true copy of the one-page notice confirming notice that my class would be run starting on October 2, 2007, and indicating that I had four students enrolled, is annexed hereto as **Exhibit 6**.  I taught the class as scheduled and was paid.

12. During the telephone discussions with local school district personnel referenced in the foregoing paragraph, I mentioned the "background check" requirements of the company to which the program had been outsourced and commented that that seemed like "overkill" given that most attendees were over 18 and that it was, after all, an adult education program.  The school district employee informed me that that was not all that unusual given "due diligence" requirements, and that she would not be surprised if the district itself implemented something similar in the near future.  I was not pleased to hear this, but kept my displeasure to myself.

13. On or about May 13, 2008, I received the notice from my local school district a true copy of which, together with the envelope in which it was mailed, is annexed hereto as **Exhibit 7**.  That notice indicated that my Celestial Navigation course had been terminated.  The notice was unusual and surprising in several respects.  First, what was sent to me was a *photocopy* of a hand-filled form, whereas over the past several years I had received many hand-filled form letters in connection with my course that had always been *originals* (e.g., the document that comprises Exhibit 6 introduced above).  This implied to me that the original of the termination notice had been sent elsewhere.  Second, although I had received notices

during some semesters that my course would not be run *that semester* because of insufficient enrollment, I had *never* received notice that the course would be terminated *completely*, and in fact all the feedback I had received from students and from personnel in my local school district had been positive.  In several face-to-face discussions over the years when picking up course rosters or dropping off attendance sheets, district personnel had even commented to me that I could expect the course to continue to be offered as long as I was willing to teach it because it was consistent with Port Washington's nautical history and tradition.  However, the termination notice that I received in mid-May 2008 came in the wake of three then-recent chains of events: the first was the temporary period from 2006-2007, described in paragraph 10, *supra*, when my local school district had outsourced of the program through which my Celestial Navigation course had been offered and I had refused to comply with the "background check" requirements and was therefore not permitted to continue teaching the course; the second was Defendant's filing of the complained-of brief in October 2007 in which it had been disclosed that I was listed on the New York State Child Abuse and Maltreatment Register; and the third was a dispute with my local school district's Superintendent of Schools, who had left an angry voice mail message on my office telephone earlier in May 2008 after he learned that I had, in April 2008, put the school district on formal written notice of dangerous conditions at the running track and prepared a flyer documenting same.  In that voice mail message, the Superintendent of Schools accused me of trying to solicit personal injury work, and informed me that I would be hearing from the school district's outside counsel in that regard.  Although that never did occur, I suspected that the sudden and surprising decision to terminate my course may have had something to do with one or more of those preceding events, and I worried that the fact that I was listed on the New York State Child Abuse and Maltreatment Register had been uncovered as a result of one or more of the preceding events.

14. On or about May 19, 2008, I sent a letter with an enclosure, true copies of which are annexed hereto as **Exhibit 8**, to the school district employee whose signature had appeared on the termination notice, indicating that I wished to continue teaching the course, providing

some background, and requesting information as to why the sudden decision had been made to terminate the course.  Although I never received a written response to the letter, nor a clear indication of the reason for the termination, I was contacted by another school district employee by phone and told that the course would be reinstated.  I taught the course once more, beginning in October 2008, and was paid.  True copies of my completed "Intent to Teach" form executed on June 12, 2008, and of a one-page notice me dated October 16, 2008, confirming that my class would be run starting on October 29, 2008, and indicating that I had four students enrolled (a fifth joined before the class started), is annexed hereto as **Exhibit 9**.

    15. Because I was allowed to teach the course once again, I came to believe by mid-2008 that the fact that I was then still listed on the New York State Child Abuse and Maltreatment Register had not been uncovered by the school district as a result of any of the events described in paragraph 13, *supra*.

    16. As noted elsewhere, the decision based on the fair hearing that is annexed as Exhibit 3 to the proposed Second Amended Verified Complaint was rendered in September 2008.  Thus, by October 2008, when I taught my Celestial Navigation course for what, as will be seen, was the last time, I was optimistic that any fears I had had of the fact that I had been listed on the New York State Child Abuse and Maltreatment Register being uncovered by the school district were over.  At that time I had also just sent Defendant the letter that is annexed as Exhibit 6 to the proposed Second Amended Verified Complaint, and I was eagerly expecting that, having thereby been informed that my listing on the New York State Child Abuse and Maltreatment Register had been expunged, she would, being a District Attorney committed to the presumption of innocence and the rule of law, recognize that the disclosure in her brief that I was listed on the New York State Child Abuse and Maltreatment Register was unlawful and unfair, and would agree to withdrawing the complained-of brief, or at least would agree to redact the portion of the filed copy that contained the complained-of disclosure.

    17. Indeed, as detailed in paragraphs 8-9, *supra*, until I received the letter dated March 17, 2009, that is Exhibit 4 hereto, I had still entertained such hopes regarding the integrity,

conscience, and possible remedial action of the District Attorney, and until late May 2009, when the complained-of brief appeared on Westlaw®, I had still entertained hope that the complained-of brief and the complained-of disclosure therein would not become widely publicly available by that and comparable means. By late May 2009, however, in the wake of those then-recent and disappointing events, I was forced to abandon all hope that the disclosure in Defendant's brief that I was listed on the New York State Child Abuse and Maltreatment Register would ever "go away," even though the decision of September 2008 had in theory "expunged" that listing. At that time I was also well under way preparing, with the welcome and able assistance of *pro bono* counsel, to file a petition for *certiorari* in this case (which was done on June 26, 2009), and I fully expected, albeit with great unease, apprehension and discomfort, that the complained-of brief would be read by lawyers, law students, and others who would take an interest in the case. I was also acutely aware of the recent history of my Celestial Navigation course within my local school district as detailed at length above, and, given that history, was accordingly very concerned that the indelible "fact" that I was listed on the New York State Child Abuse and Maltreatment Register ("indelible" because of its presence in the brief, by then on Westlaw® and likely to be replicated and circulated) would inevitably be uncovered if I continued teaching in the district. While I hoped that I could, if necessary, counter any misguided allegations that arose by producing a copy of the September 2008 decision, I was extremely apprehensive about being put in such a situation at all, where I would need to "prove my innocence," especially with children of my own expected to be enrolled in that very district school system for several more years. Accordingly, following the appearance of the brief on Westlaw® in May 2009, coming as it did in the wake of the letter dated March 17, 2009 (Exhibit 4 hereto), I made a considered and reasonable decision in late May 2009 to stop teaching my course in the school district in order to avoid those foreseeable and unpleasant consequences, especially given that my sons might be unfairly drawn into the process and embarrassed or worse. A true copy of the letter dated May 26, 2009, by means of which I informed the district of that decision, is annexed hereto as **Exhibit 10**.

18. The loss of my Celestial Navigation course, which I taught for many years and from which I derived considerable personal and professional satisfaction in addition to some economic remuneration, is deeply felt.  As detailed and illustrated in the enclosure to the May 19, 2008, letter annexed hereto as Exhibit 8 and introduced in paragraph 14, *supra*, consisting of an article I published in 2004, I had considerable zeal for the subject matter and enjoyed sharing it.  As it happens, 2004 was also the year in which I completed my studies at New York University School of Law and was awarded the Master of Laws degree there.  I had chosen to study federalism and federal systems in a self-designed program, and had done so because I had hopes of obtaining a legal academic position someday.  Unfortunately, the situation has by now degraded to the point where, if I were ever to apply for a legal academic position, the complained-of brief would very likely become known to and reviewed by those considering me for such a position.  I do not welcome such a prospect, and accordingly have abandoned the hopes and aspirations that led me to pursue my Master of Laws degree.

19. My "unease, apprehension and discomfort [about the likelihood] that the complained-of brief would be read by lawyers, law students, and others who would take an interest in the case" (paragraph 17, *supra*) appear to have been well-founded.  A search conducted on September 13, 2010, in the Westlaw® database "Journals and Law Reviews PRO (LAWREV-PRO)" indicates that *Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009), has already been cited and discussed in at least 21 law review articles and student notes since having been decided.  One of those articles was written by a current professor at New York University School of Law, where, as detailed in the preceding paragraph, I earned a Master of Laws degree several years ago.  It is with great unease that I speculate as to whether that professor read the complained-of brief in *Maloney v. Cuomo* in addition to the reported decision itself.  Certainly it was readily available via Westlaw® by the time the article was being written.

20. Although Defendant, as District Attorney, took no interest in the complained-of disclosure made in the context of her brief, *see* letter dated March 17, 2009 (Exhibit 4 hereto),

she has prosecuted and continues to prosecute a criminal defendant for behavior that is indistinguishable from that which was done on her behalf and which she knowingly permitted to stand and failed to remedy: using confidential data and information contained in the New York State Child Abuse and Maltreatment Register in a court proceeding in an attempt to discredit an adverse party.  Annexed hereto as **Exhibit 11** are true copies of: (a) a May 19, 2009, *New York Post* article describing that prosecution and quoting the District Attorney in connection therewith; (b) a printout of the list of charges in that prosecution obtained from the public WEBCRIMS database on September 14, 2010, indicating that the criminal defendant was charged with the same two provisions about which I first complained to the District Attorney by means of my "Notice of Entry and Demand for Retraction of Appellee's Brief" (see final paragraph thereof, Exhibit 4 to Proposed S.A.C.), namely, subdivision 12 of § 422 of the Social Services Law and of subdivision 1 of § 195.00 of the Penal Code; and (c) a printout of the list of appearances in that prosecution obtained from the public WEBCRIMS database on September 14, 2010, indicating that the criminal defendant has had 16 scheduled appearances in connection with the prosecution between May 19, 2009, and September 14, 2010, inclusive.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 15, 2010
Port Washington, New York

JAMES M. MALONEY