# 07-0581-cv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

James M. MALONEY,

Plaintiff-Appellant,

-against-

Andrew CUOMO, in his official capacity as Attorney General of the State of New York, Eliot SPITZER, in his official capacity as Governor of the State of New York, and Kathleen A. RICE, in her official capacity as District Attorney of the County of Nassau, and their successors,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF OF DEFENDANT-APPELLEE KATHLEEN A. RICE**

LORNA B. GOODMAN
County Attorney, County of Nassau
Attorney for Defendant-Appellee Kathleen Rice,
  Nassau County District Attorney
One West Street
Mineola, New York 11501
(516) 571-2461

Of Counsel,
  Karen Hutson
  Deputy County Attorney

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..ii

STATEMENT OF ISSUES PRESENTED FOR REVIEW………………1

STATEMENT OF THE CASE……………………………………….....1

STATEMENT OF FACTS…………………………………………….....4

Plaintiff's Libel Action………………………………………………….6

Plaintiff's § 1983 action…………………………………………….....7

The action herein……………………………………………………….9

SUMMARY OF ARGUMENT…………………………………………13

ARGUMENT……………………………………………………………15

POINT I

  PLAINTIFF HAS NO FUNDAMENTAL RIGHT TO POSSESS
  A WEAPON -- NUNCHAKU -- IN HIS HOME TO PRACTICE
  THE SPORT OF MARTIAL ARTS UNDER THE SECOND
  AMENDMENT, THE NINTH AMENDMENT OR THE
  SUBSTANTIVE DUE PROCESS DOCTRINE……………………16

POINT II

  WHERE NO FUNDAMENTAL RIGHT IS INVOLVED,
  STATUTES ARE PRESUMED VALID UNLES SHOWN
  TO HAVE NO RATIONAL RELATIONSHIP TO A
  LEGITIMATE GOVERNMENT PURPOSE. NY PENAL
  LAW 265.01 HAS SUCH A RELATIONSHIP TO THE
  LAWFUL STATE PURPOSE OF REGULATING WEAPONS
  TO PROMOTE PUBLIC SAFETY AND IS CONSTITUTIONAL
  AS APPLIED TO THIS PLAINTIFF…………………………….....21

CONCLUSION…………………………………………………….....25

TABLE OF AUTHORITIES

Cases

*Bach v. Pataki*, 408 F3d 75 (2d Cir 2005)
   *cert den*, 546 US 1174 (2006)……………..…………………….........passim

*Bernheim v. Litt*, 79 F3d 318 (2d Cir 1996)………………………………..15

*Bowers v. Hardwick*, 478 US 186 (1985)……………………………..passim

*Burns International Security Services, Inc. v. International Union
   United Plant Guard Workers of America,* 47 F3d 14 (2d Cir 1995)....15-16

*Demvan v. Monroe*, 108 AD2d 1004 (3d Dept 1985)..………………………18

*FCC v. Beach Communications, Inc.*, 508 US 307 (1993)…………….15, 23

*Guddemi v. Rozzi*, 210 AD2d 479 (2d Dept 1994)
   *app den,*  86 NY2d 706 (1995)………………………………...……………18

*Lawrence v. Texas*, 539 US 558 (2003)……………………………….passim

*Maloney v. Anton Community Newspapers, Inc.,*
   16 AD3d 465 (2d Dept 2005)………………………………………...passim

*Maloney v. Harrington*, 2005 US Dist Lexis 32890
   (DNJ December 12, 2005)…………………………………………………..12

*Maloney v. King*, 9 Fed. Appx 69 (2d Cir, May 15, 2001),
   *cert den*, 534 US 1059 (2001)……………………………………………12

*Maloney v. King Kullen Grocery Co.*, 266 AD2d 517 (2d Dept 1999)……12

*Maloney v. Lippman*, 2006 NY Misc Lexis 2463 (Sup Ct NY Co 2006)....13

*Maloney v. Office of Court Administration*, 2006 NY Misc Lexis 2464…..13

*Maloney v. The County of Nassau*, 2006 US Dist Lexis 71162 (EDNY
   September 24, 2007)..……………………………...………………5, 6, 8, 9

*Parker v. District of Columbia*, 478 F3d 370 (DC Cir 2007)
  *cert pet filed* September 10, 2007 (Dkt No. 07-335)……...…............17, 18

*Presser v. Illinois*, 116 US 252 (1886)……………………………….13, 17

*Regan v. Time, Inc.*, 468 US 641 (1984)……………………………….....24

*Rent Stabilization Association v. Dinkins*, 5 F3d 591 (2d Cir 1993)………15

*Richmond Boro Gun Club v. City of New York*,
  97 F3d 681 (2d Cir 1996)……………………………………………..passim

*Sewell v. City of New York*, 182 AD2d 469 (1st Dept),
  *app den* 80 NY2d 756 (1992)..……………………....………………....…18

*Stanley v. Georgia*, 294 US 557 (1969)…………………………….14, 20, 21

*Tabankin v. Codd*, 40 NY2d 893 (1976)…………………………….13, 18

*US v. Bifield*, 702 F2d 342 (2d Cir 1983),
  *cert den* 461 US 931 (1983)..…………....……………………….13, 19

*US v. Cruikshank*, 92 US 542 (1976)…………………………….…..13, 17

*US v. Emerson*, 270 F3d 203 (5th Cir 2001)…………………………..17

*US v. Irizarry*, 2007 US Dist Lexis 64365 (EDNY August 30, 2007)…….21

*US Kiffer*, 477 F2d 349 (2d Cir 1973)
  *cert den Harmash v. US*, 414 US 831...…….....…………………14, 21, 22

*Villager Pond, Inc. v. Town of Darien*, 56 F3d 375 (2d Cir 1995),
  *cert den* 519 US 808 (1996)………………………………..…………....16

<u>Statutes</u>
42 USC § 1983………………………………………………………….7

First Amendment to the United States Constitution..……………1, 3, 11, 20

Second Amendment to the United States Constitution.................…....passim

Eighth Amendment to the United States Constitution…………………..…..1

Fifth Amendment to the United States Constitution…………………........1, 7

Ninth Amendment to the United States Constitution……………..……..passim

Fourteenth Amendment to the United States Constitution…………........2, 7, 8

F.R. Civ.P. 12(b)(6)……………………………………………………9, 11, 15

F.R. Civ.P. 12(c)...……………………………………………………11, 15

F.R. Civ.P. 25(d)...……………………………………………………….2

NY Penal Law § 120.14………………………………………………..4

NY Penal Law § 265.00……....…………………………………………1

NY Penal Law § 265.00 (14)...…………………………………………..4

NY Penal Law § 265.01…………………………………………….passim

NY Penal Law § 265.02...………………………………………….1, 21

NY Penal Law § 400.00…………………………………………….....18

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did Plaintiff fail to sufficiently allege the existence of a fundamental right to possess a dangerous weapon -- nunchaku -- in his home to practice the sport of martial arts under the Second or Ninth Amendments to the United States Constitution or the substantive due process doctrine?

2. Did Plaintiff fail to demonstrate that New York State lacks a legitimate purpose in promoting public safety and has no rational basis for prohibiting the possession of dangerous weapons -- nunchaku -- to further that purpose?

## STATEMENT OF THE CASE

This case involves whether Plaintiff-Appellant pro se James M. Maloney ("Plaintiff") has a fundamental right to possess a dangerous weapon, nunchaku, in his home to practice the sport of martial arts when NY Penal Law § 265.01 renders such possession a crime, a legislative determination rationally related to the legitimate state interest in promoting public safety. On February 18, 2003 Plaintiff commenced this action in the United States District Court in the Eastern District of New York against New York State Attorney General Eliot Spitzer seeking a declaratory judgment that sections 265.00, 265.01, and 265.02 of the New York Penal Law are unconstitutional in violation of the First, Second, Fifth, Eighth,

Ninth, and Fourteenth Amendments to the *United States Constitution*. (A41) By Memorandum of Decision and Order dated August 31, 2005, the District Court denied Plaintiff's motion for summary judgment since the Attorney General does not enforce criminal statutes. However, the Court permitted Plaintiff to serve and file a supplemental summons and amended complaint adding as a party the proper prosecuting entity. (A47) The Memorandum is reported at 2005 US Dist Lexis 45307.

On September 3, 2005, Plaintiff pro se served and filed an amended complaint adding as parties the Nassau County District Attorney Dennis Dillon and New York State Governor Pataki and re-naming Attorney General Spitzer as a party. (A14) Later, the caption was amended, pursuant to F. R. Civ. P. 25(d) to reflect the succession of Kathleen A. Rice as Nassau County District Attorney, Eliot Spitzer as Governor, and Andrew Cuomo as Attorney General. (A49, 54)

Plaintiff's amended complaint sought the same declaratory relief and alleged only generally that he had been charged with criminal possession of nunchaku "based solely on allegations of simple possession of said nunchaku in Plaintiff's home...." Plaintiff did not set forth the details of his arrest for, among other things, threatening a telephone worker with a gun and possession of nunchaku, his plea, or of his other actions and other courts' findings related to the events leading to arrest for possession of nunchaku, described below in the Statement of Facts.

Plaintiff alleged that the criminal statues violated the First, Second, and Ninth Amendments, the constitutional right of privacy recognized in *Lawrence v Texas*, 539 US 558 (2003), and the substantive due process doctrine. (A22-24) He also asked the Court to issue an injunction directing martial arts equipment suppliers to notify customers that it no longer was illegal to possess nunchaku in the home for peaceful martial arts training. (A25)

By Memorandum of Decision and Order dated January 17, 2007, the District Court dismissed the action against all of the defendants, the state defendants because they did not enforce or prosecute under the criminal statutes. (A59-60) That Memorandum is published at 470 F Supp2d 205. The Court dismissed the action against the District Attorney finding that the First Amendment does not protect the sport of martial arts and Plaintiff had not alleged a "particularized" speech. Plaintiff has abandoned his First Amendment claim on appeal. The Court also found that Plaintiff had no Second Amendment right to bear arms, and the Ninth Amendment created no substantive rights. (A66-68) By its Order dated May 14, 2007, the District Court denied reconsideration but stated that neither the substantive due process doctrine nor *Lawrence v Texas*, 539 US 558 (2003) created a privacy right that protected weapons possession. (A72-73)

Plaintiff appealed both the January 17 and May 14, 2007 orders. (A12-13)

3

## STATEMENT OF FACTS

On August 24, 2000, Plaintiff, an attorney licensed to practice law in the State of New York, was arrested and charged with six violations of the New York Penal Law, including menacing in the second degree[1] and possession of nunchaku, both class A misdemeanors.  Plaintiff challenges NY Penal Law § 265.01, which makes it a crime to possess nunchaku, described as a "chuka stick":

> Criminal possession of a weapon in the fourth degree.  A person is guilty of criminal possession of a weapon in the fourth degree when (1)  He possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chukka stick, sand bag, sandclub, wrist-brace type slingshot or slingshot, shirken or "Kung Fu star"….

NY Penal Law § 265.00(14) defines nunchaku as follows:

> Chuka stick means any device designed primarily as a weapon consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking.  These devices are also known as nunchakus and centrifugal force sticks.

---

[1] NY Penal Law § 120.14.

> Menacing in the second degree.  A person is guilty of menacing in the second degree when:  1.  He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm….

The Nassau County District Attorney's Office filed the criminal charges after Plaintiff admittedly threatened a telephone company worker outside his home, refused to leave his home as requested by members of the Nassau County Police Department, and engaged in a 12-hour standoff with the police and their hostage negotiation team at his home. The telephone worker submitted a supporting deposition that Plaintiff had threatened him with a shotgun or rifle and said, "I'll shoot you." *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, pp. 2-5; *Maloney v Anton Community Newspapers, Inc.*, 16 AD3d 465 (2d Dept 2005).

Nassau County police came to Plaintiff's home, identified themselves, and told Plaintiff that a telephone worker had complained that Plaintiff threatened him with a rifle. Plaintiff refused to come outside when the police officers asked him to. Additional police officers and a Nassau County Police Department hostage negotiation team attempted to persuade Plaintiff to leave his house and surrender. At about 2:00 a.m., Plaintiff surrendered to the police. Plaintiff was involuntarily held overnight at a mental hospital.

Shortly after Plaintiff's arrest, police entered his home, forcibly opened a locked safe and seized various items, including the nunchaku and other weapons. The criminal charge for possession of nunchaku was based solely on in-home possession and was not supported by any allegations that Plaintiff had used the nunchaku in the commission of a crime or any prohibited conduct or carried the

nunchaku in public. (A52); *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, p. *3-4.

Plaintiff initially pled an insanity defense to the charges, but the Nassau County District Attorney's Office later permitted him to plead guilty on January 28, 2003 to disorderly conduct, a violation, in full satisfaction of the charges. *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, p. *4. At his plea allocution, Plaintiff acknowledged that he engaged in disorderly conduct involving a .38 caliber revolver. *Maloney v Anton Community Newspapers, Inc.*, 16 AD3d at 466. He consented to the destruction of all weapons, including the nunchaku, that formed the basis of the four counts charging NY Penal Law § 265.01. *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, p. *8-9)

In addition, since Plaintiff's infant sons had been in the home at the time of the incident, Office of Child Family Services investigated, concluded that the incident "indicated" maltreatment of his sons, and Plaintiff was listed on the New York State Child Abuse and Maltreatment Register. *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, p. *9.


Plaintiff's Libel Action

In addition to the criminal proceeding commenced against him, Plaintiff himself commenced several lawsuits arising from the incident. First, he sued in the

Supreme Court of the State of New York, Nassau County, for damages for libel

allegedly resulting from two newspaper articles about the incident.  However, the

Supreme Court of the State of New York, Appellate Division, Second Department,

affirmed dismissal of Plaintiff's complaint because Plaintiff's own admissions and

the undisputed facts established the substantial truth of the articles.  The Appellate

Division observed that Plaintiff admitted during the plea colloquy that his conduct

involved a .38 caliber revolver and did not establish his innocence of the charges

dismissed.  *Maloney v Anton Community Newspapers, Inc.*, 16 AD3d 465, 466-467

(2d Dept 2005).


Plaintiff's § 1983 action

On August 22, 2003, Plaintiff filed an action pursuant to 42 USC § 1983

alleging that defendants[2] violated his civil rights in connection with the incident.

He alleged against some defendants that his home was searched and his property

seized and retained unlawfully in violation of the Fourth, Fifth and Fourteenth

Amendments and constituted conversion and trespass to chattels under state law

(attorney, Nassau County, District Attorney, Police Department and its

---

[2] Defendants were the County of Nassau, Nassau County Police Department and
an individual police officer, John Does Nos. 2-100, representing Police
Department employees, Nassau County District Attorney, the Commissioner of
the New York State Office of Children and Family Services, the Director of the
State Central Register, an attorney acquaintance who had talked to Plaintiff during
the August, 2000 incident, and a paramedic who treated Plaintiff during his
hospital stay.

7

employees).  Nassau County violated unspecified state and federal constitutional rights through the action of a paramedic (John Doe No. 1) during Plaintiff's involuntary hospital stay, the state OCFS and Register defendants violated his liberty interest in not having his name on the Register under the First, Second, Sixth, Eighth and Fourteenth Amendments, and the private attorney intentionally breached fiduciary and legal obligations to Plaintiff under the New York State Code of Professional Conduct and a common law fiduciary duty.  Plaintiff alleged that he had believed the private attorney appeared as Plaintiff's attorney during the incident. *Maloney v The County of Nassau*, 2007 US Dist Lexis 71162, pp. *10-13.

The District Court denied the summary judgment motions of the Nassau County defendants and the private attorney because they had not requested permission to move for summary judgment pursuant to the Court's individual motion practice. *Id.*, pp. *14-15, 37.  Since the Court found that Plaintiff was required to serve and file a notice of claim against Nassau County, it dismissed the pendent state claims against Nassau County. *Id.*, pp. *34-35.  While the Court found that Plaintiff stated federal constitutional violations against Nassau County, it dismissed the § 1983 action against the County because Plaintiff had not properly pled that the constitutional violations were due to municipal policy where

he alleged only that one incident had occurred. *Maloney*, 2007 US Dist Lexis 71162, p. *29-30.

The Court granted the state defendants' motion to dismiss pursuant to Rule 12(b)(6). *Id.* at p. 62. The District Court denied the private attorney's motion to dismiss on the ground that Plaintiff sufficiently alleged that the private attorney acted jointly with the state actors and sufficiently alleged an attorney-client relationship. *Id.* at p. *37-46, 62.

The action herein

Plaintiff's amended complaint did not set forth the facts described above that are a matter of public record but alleged only generally that he had been charged with criminal possession of nunchaku "based solely on allegations of simple possession of said nunchaku in Plaintiff's home...." (A16)  Plaintiff alleged that the possession charge had been dismissed without alleging that he had pled guilty to disorderly conduct involving a .38 caliber revolver. (A16)  Plaintiff alleged that he had been a martial arts student since 1975 and had developed his own martial arts style, Shafan Ha-Lavan, which incorporates the use of nunchaku as "an integral and essential part of its training and technique."  Plaintiff alleged that since 1975 he has trained in a "peaceful manner" with nunchaku and had acquired "numerous" nunchaku. (A17)  He became interested in nunchaku because the

9

"weapon" is "particularly effective in defense against an assailant armed with a knife or other sharp instrument, and in part because Plaintiff's father… had been fatally stabbed in 1964, when Plaintiff was five years old." (A17)  He is a commissioned officer in the United States Naval Reserve, a former New York City Emergency Medical Services paramedic, and, as noted above, an attorney.  (A17, 18)

Plaintiff claimed that nunchaku are "arms," or weapons, the right to possession of which is protected by the Second Amendment, and also that "nunchaku…was developed centuries ago for use as a weapon….," it is a weapon "capable of being used in a restrained manner" to subdue an opponent without using deadly force.  (A18-19)  Plaintiff alleged that the legislative history of the challenged statutes supported Plaintiff's view that nunchaku have legitimate uses in martial arts training and that criminalizing "mere" possession was "perhaps even unconstitutional."  (A20-21)  Plaintiff did not allege the legislative history documenting the increasing use of nunchaku as weapons and the written support of several District Attorneys, the Governor, and the Mayor of the City of New York in favor of the prohibition of nunchaku possession.  Later, Plaintiff acknowledged such legislative history supporting the inclusion of nunchaku as a prohibited weapon.  (Docket No. 24, ¶¶ 11-16, Exhibits 7, 8, 9)

Plaintiff based his causes of action seeking a declaration that the New York statutes are unconstitutional on the United States Constitution, First, Amendment, Second Amendment, Ninth Amendment, substantive due process, unenumerated rights, and the right of privacy recognized in *Lawrence v Texas*, 539 US 558 (2003). (A26)  He also sought an injunction directing the Attorney General to notify out-of-state martial arts suppliers who previously had notified New York Customers to surrender their nunchaku to law enforcement agencies to now notify those New York customers that they cannot be criminally prosecuted for the "simple possession of nunchaku in their own homes for peaceful use in martial arts training."  (A25-26)

By Memorandum of Decision and Order dated January 17, 2007, the District Court granted the motion of the State defendants to dismiss pursuant to F. R. Civ. P. 12(b)(6) because neither the Attorney General nor the Governor enforced the statutes challenged and, thus, were not proper parties in the action.

The District Court also granted the Nassau County District Attorney's motion to dismiss pursuant to Rule 12(c).  The District Court, relying on *Bach*, found that the Second Amendment imposed no limitation on New York State's ability to ban the possession of certain weapons, including nunchaku.  (A66)  The District Court found that the Ninth Amendment provided no substantive right.

(A67)   Thus, the District Court dismissed the amended complaint against all defendants.  (A68)

Plaintiff requested reconsideration on the grounds that the District Court had overlooked Plaintiff's claims under the substantive due process doctrine and *Lawrence v Texas*.  (A71)  The District Court denied reconsideration (A73) but in an Order dated May 14, 2007 reasoned that Plaintiff had no fundamental, or constitutional, right to possess nunchaku in his home under *Lawrence* or substantive due process.  (A72-73)  The District Court distinguished *Lawrence* because it protected the right of individuals of the same sex to engage in private, intimate sexual conduct, conduct not involved herein.  (A73)  The District Court also noted that there is no constitutional right to possess narcotics, stolen goods, or firearms in one's home.  (A72)

Plaintiff appealed from both the order of dismissal and the order denying reconsideration.  (A12, 13)[3]

---

[3] Before and after the incident involved herein, in unrelated actions, Plaintiff had sued the State University of New York for its plans to admit to the Maritime College at Fort Schuyler students who did not plan to enter cadet corps or obtain a maritime license. *Maloney v King*, 9 Fed Appx 69 (2d Cir, May 15, 2001), *cert den*, 534 US 1059 (2001).  Plaintiff sued the Chief Administrator of the New Jersey Motor Vehicle Commission to enjoin that state's attempt to enforce an insurance surcharge relating to Plaintiff's drunk driving conviction in that state in 1984 that caused Plaintiff's New Jersey driver's license to be suspended. *Maloney v Harrington*, 2005 US Dist Lexis 32890 (DNJ December 12, 2005).  Plaintiff sued a grocery store alleging that its policy of restricting the sale of nonalcoholic beverages in stores before noon on Sunday was contrary to the purpose of the NY Alcohol Beverage Control Law. *Maloney v King Kullen Grocery Co.*, 266 AD2d 517 (2d Dept 1999).  Plaintiff sued the Office of Court Administration for the State of New York and the Chief Administrator of the Courts of the State of New York for failing to issue him an attorney Secure Pass based on his history of five arrests. *Maloney of*

## SUMMARY OF ARGUMENT

The outright ban of possession of nunchaku pursuant to NY Penal Law 265.01 suffers no constitutional infirmity.  Plaintiff has no fundamental liberty interest in possessing a weapon -- nunchaku sticks -- in his home to practice the sport of martial arts under the Second Amendment, the Ninth Amendment or the substantive due process doctrine of the *US* Constitution.  The Second Amendment does not protect an individual right to bear arms.  *US v Cruikshank*, 92 US 542, 552 (1976); *Presser v Illinois*, 116 US 252, 265 (1886); *Bach v Pataki*, 408 F3d 75, 84 (2d Cir 2005), *cert den*, 546 US 1174 (2006); *Tabankin v Codd*, 40 NY2d 893, 894 (1976).  It is for the Supreme Court alone to overrule its precedents. *Bach v Pataki*, 408 F3d at 86. Thus, Plaintiff has no Second Amendment right to possess weapons.

The Ninth Amendment does not create individual rights but is "a rule of construction." *US v Bifield*, 702 F2d 342, 349 (2d Cir 1983).   Therefore, Plaintiff

---

*Office of Court Administration*, 2006 NY Misc Lexis 2464 (Sup Ct NY Co 2006); *Maloney v Lippman*, 2006 NY Misc Lexis 2463 (Sup Ct NY Co 2006).  In directing the Secure Pass to be issued to Plaintiff, the court found that Plaintiff's 1983 guilty plea to drunk driving in New Jersey, his guilty plea to disorderly conduct for having given a demonstration of nunchaku in a public space, and his 2000 plea in connection with a .38 caliber revolver in a locked safe in his home did not evidence dishonesty or violence, the alleged grounds upon which OCA initially denied the Secure Pass. *Maloney v Office of Court Administration*, 2006 NY Misc Lexis 2464, p. *4-6.

has no unenumerated right under the Ninth Amendment to possess a weapon, a right not recognized by the Second Amendment.

Plaintiff has no constitutional privacy right to possess nunchaku in his home under the substantive due process doctrine. Intimate sexual conduct is not involved here, as it was in *Lawrence v Texas*, 539 US 558 (2003), and that case does not prohibit all government intrusion into private dwellings. Although *Bowers v Hardwick*, was partly overruled by *Lawrence*, together with *Stanley v Georgia*, 294 US 557, 568, n. 11 (1969), rejects the notion that the right to privacy with regard to intimate sexual conduct or intimate, private reading also protects the possession of illegal narcotics or firearms or stolen goods. Thus, possessing a weapon in one's home is not a protected right.

Where no fundamental right is involved, statutes are presumed valid unless shown to have no ration relationship to legitimate government purpose. *US v Kiffer*, 477 F2d 349, 352 (2d Cir 1973), *cert den*, *Harmash v US*, 414 US 831 (1973). New York State has a legitimate interest in promoting public safety through the regulation, and, in some cases, the outright ban, of some weapons. *Richmond Boro Gun Club v City of New York*, 97 F3d 681, 688 (2d Cir 1996). The substantive due process doctrine does not protect against "incorrect" or "ill-advised" government action. *Id*.

Here, the outright prohibition of nunchaku was supported by several law enforcement officials as well as the Governor and the Mayor of the City of New York. In any event, legislation may be based on rational speculation unsupported by empirical data. *FCC v Beach Communications, Inc.*, 508 US 307, 315 (1993); *Richmond Boro Gun Club*, 896 F Supp 276, 282 (EDNY 1995).

Even if the statute herein could be argued to be unconstitutional in its outright possession ban, as applied the statute is not unconstitutional. New York State has a rational basis for keeping weapons out of the hands of those whose past behavior demonstrates that they cannot be trusted with weapons. Plaintiff has demonstrated that he cannot be trusted with weapons.

## ARGUMENT

An appellate court reviews de novo a district court's determination of a motion to dismiss a claim. *Rent Stabilization Association v Dinkins*, 5 F3d 591, 593 (2d Cir 1993). When considering a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) or 12(c), a court must assume the allegations of the complaint are true and draw all reasonable inferences in favor of a plaintiff. *Bernheim v Litt*, 79 F3d 318, 321 (2d Cir 1996). Under Rule 12(c), the court also must determine whether the movant is entitled to judgment as a matter of law. *Burns International Security Services, Inc. v International Union United Plant Guard Workers of America*, 47

F3d 14, 16 (2d Cir 1995). The issue under either Rule is not whether a plaintiff

will ultimately prevail but whether a plaintiff is entitled to offer evidence to

support his claims. *Villager Pond, Inc. v Town of Darien*, 56 F3d 375, 378 (2d Cir

1995), *cert den*, 519 US 808 (1996).


## POINT I

### PLAINTIFF HAS NO FUNDAMENTAL RIGHT TO POSSESS A WEAPON -- NUNCHAKU -- IN HIS HOME TO PRACTICE THE SPORT OF MARTIAL ARTS UNDER THE SECOND AMENDMENT, THE NINTH AMENDMENT OR THE SUBSTANTIVE DUE PROCESS DOCTRINE.

The Second Amendment to the United States Constitution provides that "[a]

well regulated Militia, being necessary to the security of a free State, the right of

the people to keep and bear Arms, shall not be infringed." In asserting a

fundamental right under the Second Amendment to bear arms, Plaintiff also

necessarily asserted that nunchaku are "arms." (A-17 to 18, A-22) He argued that

because New York's statutory scheme criminalizes the mere possession of

nunchaku in one's home, thereby violating an individual's right to bear arms, the

statutes cannot withstand the heightened scrutiny afforded to individual

fundamental rights or liberty interests. He urged this Court to "revisit [its decision

in *Bach v Pataki*, 408 F3d 75, 84 (2d Cir 2005), *cert den*, 546 US 1174 (2006) and,

thus,] the issue of whether the Second Amendment guarantees an individual right

and, if so, whether that right is incorporated as against the states." (Appellant's

Brief at 22)  Plaintiff's request that this Court reconsider its decision in Bach apparently rests on the subsequent contrary opinion of the Court of Appeals, District of Columbia Circuit in *Parker v District of Columbia*, 478 F3d 370, 395 (DC Cir 2007), *cert pet filed* September 10, 2007 (Dkt No. 07-335).  In *Parker*, the District of Columbia Circuit determined that the Second Amendment protects an individual's right to bear arms in his home independent of membership in a state militia.  *Parker*, 478 F3d at 395.

The holding in the District of Columbia Circuit does not change this Court's reasoning in *Bach* and there is no need to reassess *Bach*.  This Court was well aware of another decision purporting to accord the Second Amendment the intent to protect the individual right to bear arms when it cited Fifth Circuit Court of Appeals dicta in *US v Emerson*, 270 F3d 203, 264-265, 272 (5th Cir  2001).

The United States Supreme Court held in *US v Cruikshank*, 92 US 542, 552 (1976), that the *US Constitution* does not grant the right to bear arms.  Rather, the Second Amendment to the *US Constitution* declares only that the right to bear arms shall not be infringed and means that Congress shall not infringe the right, thus restricting the power of the federal government, not of the states.  *Id*.  In *Presser v Illinois*, 116 US 252, 265 (1886), the Supreme Court held that the Second Amendment did not prohibit Illinois legislation requiring a "parade with arms" to be licensed by the Governor, reasoning that the Second Amendment "is a

limitation only upon the power of Congress and the National government, and not upon that of the States." Thus, in *Bach*, this Court held that it is for the Supreme Court to overrule its own precedent while this Court is constrained to follow it. *Bach*, 408 F3d at 86. The later opinion in *Parker* does not change this Court's interpretation of Supreme Court precedent.

The New York courts have similarly refused to recognize that the Second Amendment protects an individual right to possess handguns. *Tabankin v Codd*, 40 NY2d 893, 894 (1976) (denied application to carry concealed firearm; "the constitutional issues on the basis of which this appeal is taken are but a restatement of questions whose merit has been clearly adjudicated against appellant's position"); *Guddemi v Rozzi*, 210 AD2d 479, 480 (2d Dept 1994), *app den*, 86 NY2d 706 (1995) ("a license to carry a gun is a privilege, not a right"); *Sewell v City of New York*, 182 AD2d 469, 472 (1st Dept), *app den*, 80 NY2d 756 (1992) ("possession of a handgun license is a privilege rather than a right"); *Demyan v Monroe*, 108 AD2d 1004, 1005 (3d Dept 1985) (argument that Penal Law § 400.00 infringes on Second Amendment right to keep and bear arms "has already received considerable judicial attention and has consistently been repudiated").

Plaintiff has no Second Amendment right to possess weapons.

The Ninth Amendment provides that "[t]he enumeration, in the Constitution of certain rights, shall not be construed to disparage or deny others retained by the

people."  This Court has stated that the Ninth Amendment is "a rule of
construction" that does not create individual rights.  *US v Bifield*, 702 F2d 342, 349
(2d Cir 1983), *cert den*, 461 US 931 (1983).  Thus, as the District Court held, the
Ninth Amendment itself provides no substantive right in addition to those rights
conferred by other portions of the US Constitution.  (A-67)  Therefore, Plaintiff
has no unenumerated fundamental right under the Ninth Amendment to possess a
weapon, a right not recognized by the Second Amendment.

Nor does the substantive due process doctrine provide Plaintiff with a
constitutional privacy right to possess nunchaku in his home.   As the District
Court properly found (A73), *Lawrence v Texas*, 539 US 558 (2003), is not
controlling here, for in that case a statute criminalizing certain intimate sexual
conduct between members of the same sex was held unconstitutional because it
violated the "autonomy of self that includes…certain intimate conduct."
*Lawrence*, 439 US at 562.  No such intimate conduct is involved here despite
Plaintiff's attempt to characterize the holding in *Lawrence* as protection from all
government intrusion into a private dwelling.  (A22; Appellant's Brief at 14-15)
Again, as the District Court observed (A72), "otherwise illegal conduct is not
always immunized whenever it occurs in the home."  *Bowers v Hardwick*, 478 US
186, 194 (1985), *overruled on other grounds*, *Lawrence*, 439 US at 578.  *Bowers*
expressly noted:

> [V]ictimless crimes, such as the possession and use of illegal drugs, do not escape the law where they are committed at home. *Stanley* [*v Georgia*, 294 US 557, 568, n. 11 (1969)] itself recognized that its holding offered no protection for the possession in the home of drugs, firearms, or stolen goods.

*Bowers*, 478 US at 195. *See also Stanley v Georgia*, 394 US 557, 568 n. 11 (1969) ("[T]he right to be free from state inquiry into the contents" of one's private library that includes obscene matter "in no way infringes upon the power of the State or Federal Government to make possession of other items, such as narcotics, firearms, or stolen goods, a crime.")  Thus, the constitutional right to privacy protects only fundamental rights and does not protect conduct that does not involve, for example, First Amendment, or other liberty interests.  Possessing a weapon is not a liberty interest or fundamental right.[4]

---

[4] Plaintiff abandoned his First Amendment argument that the "peaceful training with and twirling of the nunchaku is expressive conduct."  The District Court found that First Amendment protection has not been extended to sports or athletics and that Plaintiff's use of nunchaku for physical training and self-defense is "strictly physical and unprotected activity."  (A64-A65)

# POINT II

**WHERE NO FUNDAMENTAL RIGHT IS INVOLVED, STATUTES ARE PRESUMED VALID UNLES SHOWN TO HAVE NO RATIONAL RELATIONSHIP TO A LEGITIMATE GOVERNMENT PURPOSE.  NY PENAL LAW 265.01 HAS SUCH A RELATIONSHIP TO THE LAWFUL STATE PURPOSE OF REGULATING WEAPONS TO PROMOTE PUBLIC SAFETY AND IS CONSTITUTIONAL AS APPLIED TO THIS PLAINTIFF.**

Where fundamental rights are not involved, a statute is presumed valid unless it "bears no rational relationship to a legitimate legislative purpose."  *US v Kiffer*, 477 F2d 349, 352, 353 (2d Cir 1973), *cert den*, *Harmash v US*, 414 US 831 (1973) (upheld as constitutional federal statute that prohibited commercial distribution of marijuana).  New York State has a legitimate interest in promoting public safety through prohibiting the possession of weapons.  *See Bowers v Hardwick*, 478 US at 195; *Stanley v Georgia*, 394 US at 568 n. 11; *Bach v Pataki*, 408 F3d at 77-78 ("New York State has regulated the possession of weapons since 1849.")  In *Bach*, this Court expressly noted the general ban on handgun possession of NY Penal Law §§ 265.01(1), 265.02(4).  *See also Richmond Boro Gun Club v City of New York*, 97F3d 681, 688 (2d Cir 1996) (substantive due process does not protect against "incorrect" or "ill-advised" government action but only against government action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense"); *US v Irizarry*, 2007 US Dist Lexis 64365, pp. *18-19 (EDNY August 30, 2007) (NY Penal Law § 265.01 bans only those items manufactured as weapons).

As Plaintiff herein conceded, the District Attorneys Association of the State of New York, several individual New York State District Attorneys, the Governor of the State of New York, and the Mayor of the City of New York submitted written support, before the legislation prohibiting nunchaku was adopted, of the inclusion of nunchaku in the prohibited weapons category because nunchaku were being used as weapons.  (A20-21; Docket No. 24, ¶¶ 11-16 and Exhibits 7, 8, 9)

Although Plaintiff argued that nunchaku may be used peacefully in the home as a martial arts exercise, the "narrow question" is not whether other legislation might have been drafted or whether nunchaku <u>may</u> be used peacefully but whether the New York State legislature acted irrationally in prohibiting the possession of nunchaku.  *US v Kiffer*, 477 F2d at 356.  Given the legislative history that nunchaku were increasingly being used as the weapons they are, it cannot be said that the legislature acted irrationally in banning possession.  As this Court observed in *Kiffer*, 477 F2d at 352,

> Any court asked to undertake review of the multifarious political, economic and social considerations that usually underlie legislative prohibitory policy should do so with caution and restraint. . . .  [I]n most instances the resolution of such sensitive issues is best left to the other branches of government.

While *Kiffer* involved the commercial distribution of marijuana and not its private possession and use, the rational relationship test is the same.  Here, several New

22

York officials and groups who undertake crime prevention weighed in on the side of prohibiting nunchaku; their collective judgment was not irrational.

"[L]egislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v Beach Communications, Inc.*, 508 US 307, 315 (1993) (court would have denied equal protection challenge to legislative classification, subject to the same rational basis standard as substantive due process, even if legislators had not articulated the rationale supporting the classification).  Legislation does not have to be supported by "precise empirical evidence to survive rational scrutiny." *Richmond Boro Gun Club,* 896 F Supp at 282 (assault weapon ban imposed by New York City local law upheld, and challenge to law's rationality rejected; court noted strong support of several District Attorneys for the law).   When this Court affirmed the District Court decision, it noted the "well reasoned opinion" and rejected appellants' substantive due process claim.  In so doing, this Court stated that substantive due process does not protect against incorrect or ill-advised government action and found that the assault weapon law was not drastic enough to "trigger" due process rights. *Richmond Boro Gun Club*, 97 F3d 681, 688 (2d Cir 1996).  Rather, said this Court, "[the local law banning assault weapons] is a rational legislative responsive to increased assault weapon violence in the city of New York." *Id.*

Thus, Plaintiff's argument that the nunchaku ban was based upon a "faulty premise" is wrong, and, in any event, not controlling. His argument that other jurisdictions have found that there are socially acceptable uses for nunchaku (Appellant's Brief at 10-12) has no bearing on the New York legislature's different conclusion. *See Richmond Boro Gun Club*, 896 F Supp at 282 (risk to public safety increases when semiautomatic rifles or shotguns available in New York City's high density population).

A court should refrain from invalidating more of a statute than is necessary. *Regan v Time, Inc.*, 468 US 641, 652-653 (1984) (declaratory judgment action challenging statutory scheme of prohibiting photographs of United States currency). As applied herein, NY Penal Law § 265.01 is not unconstitutional. As the undisputed facts show, Plaintiff was arrested following a 12-hour standoff with the Nassau County police occasioned by Plaintiff's admitted threat to harm a telephone company employee. The nunchaku were found in his home with other weapons. Plaintiff first asserted an insanity defense to the various charges arising from that incident, including nunchaku possession, and agreed to the destruction of the nunchaku and other seized weapons. He then pled guilty to disorderly conduct involving a .38 caliber revolver. It is not irrational to prohibit those prone to irrational behavior from possessing weapons.

# CONCLUSION

For the foregoing reasons, the District Courts orders should be affirmed.


Dated:      Mineola, New York
            October 24, 2007


                        LORNA B. GOODMAN
                        County Attorney, Nassau County
                        Attorney for Defendant-Appellee Kathleen
                        A. Rice, Nassau County District Attorney

                        By: _Karen Hutson_
                        Karen Hutson
                        Deputy County Attorney

                        One West Street
                        Mineola, New York 11501
                        (516) 571-2461
                        khutson@nassaucountyny.gov