UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JAMES M. MALONEY,

               Plaintiff,                                        **CV 03-786  (ADS) (MLO)**

     - against -

ANDREW CUOMO,  in his official capacity as
Attorney General of the State of New York, ELIOT
SPITZER,  in his official capacity as Governor of
the State of New York, and KATHLEEN A. RICE,
in her official capacity as District Attorney of the
County of Nassau, and their successors,

               Defendants.

----------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF RULE 15 MOTION

                                            JAMES M. MALONEY
                                          *Plaintiff Pro Se*
                                          33 Bayview Avenue
                                          Port Washington, NY 11050

                                          (516) 767-1395

<u>ERRATA CORRECTED IN THIS BRIEF</u>

       The following errata, which were discovered in the first copies of this brief that were printed on September 15, 2010, have been corrected in this copy.  If this notice appears at the beginning of the brief, the errata listed below have already been corrected electronically in the copy that follows, and the previous errors will not be discernible in the text.  If this notice appears at the back of the brief, the errata listed below have been corrected manually in the preceding copy.

| Location | Text in original | Corrected text |
|---|---|---|
| p. 1, line 8 | more full appears | more fully appears |
| p. 1, line 12 | III.F, *infra* | III.E, *infra* |
| p. 3, line 1 | corresponding to necessary pleadings | corresponding necessary pleadings |
| p. 15, 6th line from bottom | Proposes S.A.C. | Proposed S.A.C. |
| p. 19, 5th line from bottom | but are timely | both are timely |
| p, 24, line 3 | on before October 25, 2010 | on or before October 25, 2010 |
| p, 24, line 3 | III.F, *infra* | III.E, *infra* |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION & PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

THE CURRENT PLEADING SHOULD BE AMENDED TO ALLEGE FACTS
CONSISTENT WITH THE STANDARDS SET FORTH IN *HELLER* . . . . . . . . . . . . . 2

POINT II

THE PROPOSED AMENDED PLEADING DELETES DISMISSED CAUSES
OF ACTION AND DISMISSED DEFENDANTS, AND CORRECTS A MINOR
BUT PERSISTENT ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT III

THE NEW CAUSES OF ACTION ARE VIABLE, AND NO NEW
DEFENDANTS WOULD BE ADDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 A. *The SCR Listing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
 B. *Plaintiff's Efforts After the Brief Was Filed* . . . . . . . . . . . . . . . . . . . . . 10
 C. *The Third Cause of Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
 D. *The Fourth Cause of Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
 E. *Limitations Periods* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
 F. *All Considerations Favor Allowing Supplementation of the Complaint* . . . 19
 G. *That the Complained-of Brief Was Not Stricken Should Not Matter* . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Plaintiff's motion for leave to supersede the Amended Verified Complaint ("Amended Complaint") (Document # 42), which was filed on September 3, 2005, by filing a Second Amended Verified Complaint, a proposed copy of which (hereinafter, the "Proposed S.A.C.") is submitted herewith in accordance with this Court's Order by memo endorsement dated August 31, 2010 (Document # 100).

Plaintiff wishes to amend the pleading pursuant to F.R.C.P. 15(a)(2) and to supplement it pursuant to F.R.C.P. 15(d).  No additional parties would be named, no jury demand made, and, as more fully appears herein, two parties still named in the Amended Complaint would be deleted.

This motion follows an informal letter motion seeking the same relief (Document # 99), which was denied without prejudice to re-file a formal motion (see Document # 100).  This motion is brought on by order to show cause because, as more fully appears herein (see Point III.E, *infra*, at pages 17-21), the statute of limitations for the Proposed S.A.C.'s Third Cause of Action, as well as the applicable limitations period for the  Proposed S.A.C.'s Fourth Cause of Action, arguably may run as soon as October 25, 2010.

INTRODUCTION & PROCEDURAL HISTORY

Originally filed in 2003, this action has long sought a declaration that those portions of sections 265.00 through 265.02 of the New York Penal Law, to the extent that those statutes define and punish as a crime the simple possession of "chuka sticks" or "nunchaku" within one's home, are unconstitutional and of no force and effect.  (This action does not and never has challenged the application of the above-cited statutes to the possession of nunchaku in any location other than the would-be possessor's home.)

-1-

This case is now before the Court on remand from the United States Supreme Court for further consideration in light of *McDonald v. Chicago*, 561 U.S. ___ (June 28, 2010), which held that the Second Amendment to the Constitution of the United States is incorporated as against the states.  *McDonald* built upon the Supreme Court's earlier decision in *District of Columbia v. Heller*, 554 U.S. ___ (2008),  which in turn had held that the Second Amendment guarantees an individual right.   A more detailed summary of the procedural history of this case is set forth in the Proposed S.A.C. at paragraph 6.

<u>ARGUMENT</u>

POINT I

THE CURRENT PLEADING SHOULD BE AMENDED TO ALLEGE
<u>FACTS CONSISTENT WITH THE STANDARDS SET FORTH IN *HELLER*</u>

In  *District of Columbia v. Heller*, 554 U.S.  ___, 128 S. Ct. 2783 (2008), the Supreme Court articulated several propositions that are relevant to this matter and that should be properly pleaded in the operative complaint.  Although the record as developed in this matter supports these propositions, the lack of actual corresponding allegations in the complaint could nonetheless be fatal in a 12(b) motion based on the new pleading standards articulated in the Supreme Court's recent *Twombly-Iqbal* line of cases.  *See, e.g.*, *Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 299 (E.D.N.Y. 2007) (although post-pleading papers "contain new factual allegations which might arguably support plaintiff's claim . . . in light of the Supreme Court's recent decision in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)], this Court is constrained" to dismiss plaintiff's claim where sufficient allegations, although supported in the post-pleading record, had not been expressly made in the pre-*Twombly* pleading).

-2-

Examples of such propositions from *Heller* and corresponding necessary new pleadings in the Proposed S.A.C. include the following:

*Heller* explained that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," 128 S. Ct. at 2815-16. However, the currently operative pleading contains no allegation to the effect that the nunchaku is such a protected weapon. This is remedied in the Proposed S.A.C. at paragraph 39.

Likewise, *Heller* referred to "the historical [prohibition] of 'dangerous and unusual weapons,'" 128 S. Ct. at 2817. Although it would appear that the sorts of prohibited/unprotected weapons the Court had in mind were those with indiscriminately destructive capabilities, such as the sawed-off shotgun at issue in *United States v. Miller*, 307 U.S. 174 (1939), and although the nunchaku is not of such nature (containing no stored potential energy as is the case with a firearm cartridge or explosive device), the currently operative pleading contains no allegation directly corresponding to the *Heller* proposition. The Proposed S.A.C. at paragraphs 40-41 remedies this.

A third example of such remedial allegations, although probably not as likely in its absence to lead to a 12(b) dismissal, is that made in the Proposed S.A.C. at paragraph 42 to the effect that the challenged statute, "far from imposing a minor fine, threatens citizens with a year in prison," quoting *Heller*, 128 S. Ct. at 2821.

Perhaps most importantly, *Heller* also appears to require that, in order to qualify for Second Amendment protection, weapons have some reasonable relationship to a militia. *See* 128 S. Ct. at 2815. Although the currently operative pleading (Amended Complaint), at ¶ 24, alleges that the nunchaku was in use by citizens' militias in Okinawa well before ratification of the Second Amendment, thereby alleging a *historical* militia relationship, it is only in post-

-3-

pleading papers that a *modern* militia relationship has been proposed and supported.  See, e.g.,

Memorandum in Support of Rule 56 Motion (Document #23) at 19 (noting that nunchaku were

used by Navy SEALs in Vietnam); see also Maloney Declaration in Support of Rule 56 Motion

(Document  #24) at ¶ 19, and source cited therein and reproduced at Exhibit 12 thereto (noting

that nunchaku is used for controlled non-lethal force by "over 200 law enforcement agencies

across the United States").   The currently operative pleading contains no allegation as to the

nunchaku's *modern* relationship to a militia.  The Proposed S.A.C. at paragraph 38 remedies this.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides: "The court should

freely give leave [to amend] when justice so requires."  This case was initiated on February

18, 2003, before the case that was subsequently decided as *District of Columbia v. Heller* had

even begun, and more than five years before that Supreme Court opinion issued.  The

Amended Complaint (the currently operative pleading) was filed on September 3, 2005, nearly

three years before the Supreme Court handed down *Heller*.  Plaintiff has thus not yet had any

opportunity to incorporate the teachings of *Heller* into his pleadings.  *See Brown v. Dunbar &*

*Sullivan Dredging Co.*, 189 F.2d 871, 875 (2d Cir. 1951) ("[T]he rules were intended to

facilitate the application of substantive law, not to fight it.").  Further,  as noted (see discussion

beginning at page 2, *supra*), under the heightened pleading standards of *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009),

the currently operative pleading may even be held to be insufficient to allege a cause of action

because it fails to plead basic elements of a Second Amendment infringement claim as

articulated in *Heller*.  Accordingly,  it is submitted that justice requires that Plaintiff be

permitted to amend that pleading.

-4-

POINT II

## THE PROPOSED AMENDED PLEADING DELETES DISMISSED CAUSES OF ACTION AND DISMISSED DEFENDANTS, AND CORRECTS A MINOR BUT PERSISTENT ERROR

In addition to the foregoing, the Proposed S.A.C. would delete all allegations as against the dismissed state defendants (Attorney General Cuomo and Governor Paterson), revise the caption accordingly, and delete all dismissed allegations that had been based on Plaintiff's First Amendment theory. Neither the dismissal of the state defendants nor that of the First Amendment cause of action was challenged on appeal. The Proposed S.A.C. would thus eliminate surplusage and bring the operative pleading into conformity with those causes of action and that sole defendant that remain viable.

Additionally, the Proposed S.A.C. would correct an error. In *Maloney v. Cuomo*, 470 F. Supp. 2d 205 (E.D.N.Y. 2007), this Court wrote:

> Since the time that the amended complaint was filed, Andrew Cuomo succeeded Eliot Spitzer as Attorney General, Eliot Spitzer replaced George Pataki as Governor, and Kathleen A. [*sic*] Rice succeeded Denis Dillon as the Nassau County District Attorney. Accordingly, the caption on this Memorandum of Decision and Order reflects those substitutions.

*Id*. at 209. See also Document #85. However, the correct middle initial of Defendant RICE is not "A," but "M." *See, e.g.*, http://www.nassaucountyny.gov/agencies/da/biography.html.

The above-described minor error has persisted as this case went up on appeal, reached the Supreme Court, was remanded, etc., but it has never been corrected. The Proposed S.A.C. would do so.

-5-

POINT III

THE NEW CAUSES OF ACTION ARE VIABLE,
AND NO NEW DEFENDANTS WOULD BE ADDED

The Proposed S.A.C. adds two new causes of action as against Defendant RICE based on her acts and/or omissions during the course of this litigation and the harms that those acts and/or omissions have caused and will continue to cause Plaintiff.  *See id.*  at ¶¶ 54-80 and ¶¶ 81-88 (pleading Third and Fourth Causes of Action, respectively).  Adding these causes of action would amount to supplementation of the pleading pursuant to F.R.C.P. 15(d).

These new causes of action arise out of the unlawful and injurious disclosure made at page 6 of Defendant RICE's Appellee's Brief dated October 24, 2007, and filed on October 25, 2007, in the United States Court of Appeals for the Second Circuit, which disclosed that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register."  A more complete quote of the specific passage in RICE's Brief appears in the Proposed S.A.C. at paragraph 54; a true copy of the entire brief is annexed as Exhibit 1 to Plaintiff's declaration submitted herewith.

Although Plaintiff repeatedly petitioned RICE to withdraw the brief, and specifically the disclosure that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register," and although he informed her by means of a "Notice of Entry and Demand for Retraction of Appellee's Brief" (Exhibit 4 to Proposed S.A.C.), that such disclosure was illegal under subdivision 12 of § 422 of the Social Services Law and subdivision 1 of § 195.00 of the Penal Code,  RICE permitted it to stand, even after Plaintiff's listing was expunged in September 2008 following an administrative hearing and RICE was advised of this fact.  In or about May

-6-

2009, RICE's brief became available to the public via Westlaw®, making it widely available to the public.  (Notably, in that same month, May 2009, RICE, in her capacity as District Attorney, commenced the prosecution of a criminal defendant for behavior that is indistinguishable from that which was done on her behalf as against Plaintiff and which she knowingly permitted to stand and failed to remedy: using confidential data and information contained in the New York State Child Abuse and Maltreatment Register in a court proceeding in an attempt to discredit an adverse party.  See paragraph 20 and Exhibit 11 to Plaintiff's declaration submitted herewith.)

A. *The SCR Listing*

Being listed on the New York State Central Register ("SCR") of Child Abuse and Maltreatment means that one has been identified by the New York State Office of Children and Family Services (the "OCFS"), and/or by a child protective services agency within a local social services district, as the "subject" of an "indicated" report of "child abuse or maltreatment."  *See generally Finch v. New York State Office of Children and Family Services*, 499 F. Supp. 2d 521 (S.D.N.Y. 2007).  As that court explained:

> The OCFS operates the SCR. The purpose of the SCR is to have, in one central location, the names of all known subjects of indicated reports of child abuse and maltreatment in New York State so that the information may be used when needed to conduct appropriate investigations and database checks, either for the protection of children named in those reports or for the protection of other children who might come into contact with the subject of the report.  The SCR receives telephone calls alleging child abuse or maltreatment.  When any allegations contained in such telephone calls could reasonably constitute a report of child abuse or maltreatment of a child located in the City of New York, such allegations are immediately transmitted by the SCR to the [child protective services agency within a local social services district] for investigation.  The

> [child protective services agency within a local social services district]
> investigates the allegations and determines whether the report of child abuse or
> maltreatment is "indicated" or "unfounded."  A report is indicated if an
> investigation determines that some credible evidence of the alleged abuse or
> maltreatment exists.  A report is unfounded if it is not indicated.  The person
> who is allegedly responsible for causing abuse or maltreatment to a child is
> referred to as the "subject of the report."

*Id*. at 526 (footnotes omitted).

Although, as stated above, the standard for determining whether a report is "indicated" is "some credible evidence" of abuse or maltreatment, the Second Circuit has held that a higher standard, a "fair preponderance of the evidence," is required to satisfy the requirements of due process.  *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994).  Unfortunately, lengthy delays in obtaining administrative "fair hearings" to adjudicate whether a fair preponderance of evidence exists that would support listing on the SCR have long been commonplace. Notably, when such hearings are eventually held, there is a high rate of "expungement," that is, "indicated" reports are found *not* to have been supported by a fair preponderance of evidence.  *See Finch, supra,* where the court recognized the "high expungement rate," 499 F. Supp. 2d at 536, and, responding to complaints of delays in scheduling such hearings, noted that "[u]ntil today [July 3, 2007], no court has held that the inordinate delay in scheduling administrative hearings may itself violate a listed person's right to due process."  *Id*. at 538.

When RICE made the disclosure in her brief that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register," Plaintiff himself had yet to receive his fair hearing, although he had requested that the report be amended to "unfounded" promptly upon receiving notice of the "indicated" report, and persisted in similar efforts for years thereafter. *See* Exhibit 3 to Plaintiff's declaration submitted herewith (letters from Plaintiff dated July 9,

2001, and July 24, 2003; letter to Plaintiff dated January 16, 2008).  Plaintiff's fair hearing, to

which he was entitled by law, *see, e.g.*, *Finch, supra*,  499 F. Supp. 2d at 528, was held on

July 14, 2008, some nine months after Defendant RICE's Brief had been filed on October 25,

2007.  See Exhibit 3 to Proposed S.A.C. (redacted but otherwise true copy of the September 22,

2008, decision based on hearing of July 14, 2008) (hereinafter, "September 2008 Decision").

Notably, the sole factual basis ever alleged by OCFS or the affiliated agency for the

"indication" of Plaintiff's "maltreatment" of his sons was that he had "endangered" them by

refusing to leave his home on or about August 23-24, 2000, upon Nassau County Police

demand that he do so, made over the course of twelve hours while they barricaded and

surrounded his home, without a warrant ever having been obtained for Plaintiff's arrest or for

a search of the home:

> The Agency based its indication on the proposition that the Appellant's
> failure to surrender himself to the police and the fact that he allowed them to
> barricade his home for about twelve hours amounts to maltreatment of his one
> year old twins that were observed playing and being fed by their parents. To prove
> its case, the Agency presented the case notes of the investigative caseworker. The
> progress notes indicated that the children were seen playing and that the family
> was seen eating their dinner and not paying any attention to the officers outside
> their home. The Agency opined that the Appellant placed his children at risk of
> harm for not surrendering to the police when they knocked at his door.  Based on
> that premise, the Agency concluded that the Appellant maltreated his children.

September 2008 Decision (Exhibit 3 to Proposed S.A.C.) at pages 5-6.  See also *id*. at page 3,

paragraph 6 (noting that "[t]he officers did not procure a warrant to arrest or search

[Plaintiff's] home" but that "rather[,] they barricaded his property for about twelve hours").

Also noteworthy is that, under the applicable provisions of § 413 of the New York

Social Services Law, if any police officer or other law enforcement official had had reasonable

-9-

cause to believe that Plaintiff had committed any act of child abuse or maltreatment over the course of those twelve hours during which they barricaded and surrounded his home, they would have had a legal obligation to make a report of suspected child abuse or maltreatment to OCFS and/or the Nassau County Department of Social Services. However, no police officer or other law enforcement official made such a report. Instead, a private individual maliciously and in bad faith made the report to OCFS that began Plaintiff's troubles (*see* Proposed S.A.C. at ¶¶ 64-66), troubles which RICE, by disclosing and maintaining that Plaintiff was "listed" on the SCR in her brief even after being notified of the results of the fair hearing, magnified immensely and irrevocably once that brief had become widely disseminated by mid-2009.


B. *Plaintiff's Efforts After the Brief Was Filed*

As detailed in the Proposed S.A.C. at ¶¶ 67-70 and in Exhibits 4 through 6 thereto, Plaintiff promptly moved before the Second Circuit to strike the complained-of brief (*see also* Exhibit 2 to Plaintiff's declaration submitted herewith), following which that motion was referred to the Merits Panel, denied once, and denied again with the final Order after Plaintiff had renewed the motion with the permission of the Court after oral argument in or about December 2008 (*see also* Document # 96 herein) (mandate issued February 4, 2009).

In the meantime, Plaintiff formally demanded of Defendant in November 2007, shortly after the motion had been referred to the Merits Panel, that she withdraw the complained-of brief. Plaintiff followed up by pointing out to her in writing in August 2008 that the disclosure made in it amounted to a misdemeanor under §422 of the New York Social Services Law (*see infra* for discussion of statute). Finally, Plaintiff informed Defendant in writing in

September 2008, that the September 2008 Decision (Exhibit 3 to Proposed S.A.C.) had resulted in the determination that Plaintiff's having been listed on the SCR had never been supported by a fair preponderance of the evidence, enclosing with that correspondence a redacted copy of the September 2008 Decision.  All three of these communications (November 2007,  August 2008, and September 2008) were served on Defendant personally, with the first (the formal demand of November 2007) served on opposing appellate counsel as well.

Defendant never withdrew the brief, nor did she ever offer to redact or revise any portion of it, nor did she ever communicate directly with plaintiff, but in a letter dated March 17, 2009, her office responded by stating in writing that "this Office has determined that the evidence in this matter does not warrant any criminal prosecution by the Nassau County District Attorney's Office."  Exhibit 4 to Plaintiff's declaration submitted herewith.  (One is reminded of the Roman poet Juvenal's question, "*Quis custodiet ipsos custodes*?" or "Who will watch the watchers themselves?"  Obviously, Juvenal's question, both satirical and rhetorical, has and had no satisfactory answer, in this or the context in which it first arose.)

Shortly thereafter, in May 2009, the brief became available on Westlaw®; in June 2009, the petition for *certiorari* in this case was filed; in July 2009, this case received national and international attention due in large part to its having been discussed repeatedly during, and in connection with, the confirmation hearings of Justice Sotomayor, who had been a member of the Second Circuit panel that decided it.  Any legal academics, scholars, lawyers, law students, and others who obtained a copy of the brief, either directly from Westlaw® or another service, or by means of electronic replication and forwarding, learned that "since Plaintiff's infant sons had been in the home at the time of the incident, Office of Child Family

-11-

Services investigated, concluded that the incident 'indicated' maltreatment of his sons, and Plaintiff was listed on the New York State Child Abuse and Maltreatment Register."  Virtually all would reasonably assume that since the "incident" occurred in 2000 and the brief was filed in 2007, the matter must have been adjudicated and the "indicated" report found to have been supported, for who would suspect that such adjudication had not occurred despite the passage of seven years?  And who would believe that a District Attorney would allow such an accusation to be made unless it were fully supported?  Virtually none who read the brief would--or likely ever will--learn of the September 2008 Decision.  The "last word" on the matter is simply that James M. Maloney, the self-styled Plaintiff in the "Nunchaku Case," had maltreated his own sons.

C. *The Third Cause of Action*

Plaintiff asserts two new causes of action arising out of the foregoing complained-of disclosure.  See Proposed S.A.C. at ¶¶ 54-80 (Third Cause of Action); ¶¶ 81-88 (Fourth Cause of Action).  In the Third Cause of Action, Plaintiff makes out a claim under § 1983, primarily for deprivation of due process.

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir.2005). Both those allegations have been made in the Proposed S.A.C.

In the specific context of due process violations, courts "must first identify the property interest involved. Next, [they] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196

(2d Cir. 2005) (citation omitted).

But the Second Circuit has also stated: "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

Here, Plaintiff is able to surmount that obstacle on at least one of two independent bases: (1) Plaintiff has alleged a tangible loss beyond in his reputation alone, and has offered materials in support of same (see Proposed S.A.C. at ¶¶ 72-76; Plaintiff's declaration submitted herewith at ¶¶ 10-18 and Exhibits 5-10 thereto); and (2) as held in *Finch, supra*, 499 F. Supp. 2d at 538 (cited in full at page 7, *supra*), the inordinate delay in scheduling administrative hearings itself violates a listed person's right to due process. It follows that RICE's illegal disclosure, which was possible only because of, and flowed from, such an inordinate delay in Plaintiff's case, also violates a listed person's (here, Plaintiff's) right to due process.

Defendant deprived Plaintiff of constitutionally adequate process, *see O'Connor v. Pierson, supra*, not only by virtue of her having made the complained-of disclosure before any hearing was held, but also by virtue of having maintained it even after the hearing and September 2008 decision. That permitting or encouraging such disclosure has been defined as a crime under § 422 of the New York Social Services Law, and that it has been so defined in order to protect persons such as Plaintiff from the harmful consequences of such disclosures, should further inform this Court regarding the scope and severity of the deprivation of due process at issue here, but that and related arguments are more appropriately framed within the context of Plaintiff's other new and separate (state law-based) proposed cause of action.

-13-

D. *The Fourth Cause of Action*

A criminal provision found at § 422 of the New York Social Services Law

unambiguously provides at subdivision 12 (emphasis added below):

> Any person who willfully permits and any person who
> encourages the release of *any data and information contained in
> the central register* to persons or agencies not permitted by this
> title *shall be guilty of a class A misdemeanor.*

Earlier in the same § 422, at subdivision 3, the scope of the "information contained in

the central register" is broadly defined (emphasis added below):

> The central register shall include but not be limited to the
> following information: all the information in the written report; a
> record of the *final disposition of the report*, including services
> offered and services accepted; the plan for rehabilitative
> treatment; *the names* and identifying data, dates and
> circumstances of any person requesting or receiving information
> from the register; and any other information which the
> commissioner believes might be helpful in the furtherance of the
> purposes of this chapter.

As noted, the complained-of brief states that the "Office of Child Family Services

investigated, concluded that the incident 'indicated' maltreatment of his sons [a reference to a

final disposition], and Plaintiff was listed on the New York State Child Abuse and

Maltreatment Register [synonymous with the term "central register" as used in the statute]."

It is undeniable that the information disclosed in the brief amounts to "information contained

in the central register," *see* § 422(3), and that it was willfully disclosed in the brief and

willfully maintained even after the September 2008 Decision and numerous demands for its

retraction.  The statute that defines such disclosure as a Class A Misdemeanor contains no

exception for disclosures that are based on unpublished (or even on published) judicial

-14-

opinions that contain the same or similar information (*cf.* § 422-a, which details all the exceptions to the confidentiality rule, none of which are applicable here), nor need this Court grapple with the question of whether such material may in some circumstances be immunized or otherwise excused by virtue of its having appeared in an appellate brief rather than, say, a newspaper article, because that information was wholly irrelevant to *this* appeal, not having even been before this Court before going up.   Further, in May 2009, Defendant, as Nassau County District Attorney, commenced the prosecution of a criminal defendant for behavior that is indistinguishable from her own: using confidential data and information contained in the New York State Child Abuse and Maltreatment Register in a court proceeding in an attempt to discredit an adverse party.   See paragraph 20 and Exhibit 11 to Plaintiff's declaration submitted herewith.   She should accordingly be estopped from asserting that her own disclosure of such data is permissible while that of the criminal defendant (the prosecution of whom was ongoing as of September 14, 2010, *see id.*) is not.   Indeed, that criminal defendant's victim has been protected from public disclosure, whereas the complained-of brief disparaging Plaintiff by name is now widely available via Westlaw®.

A private right of action exists under subdivision 12 of § 422 of the New York Social Services Law, given the facts as alleged in the Proposed S.A.C., under the standards set forth in *Sheehy v. Big Flats Community Day, Inc.*, 73 N.Y.2d 629 (1989), namely: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.   Here, all three enumerated conditions are present: (1) Plaintiff was, after having been listed on the SCR,

exonerated, and is therefore among the persons for whose protection the ban on disclosure was enacted; (2) the purpose of the criminal provision was to punish such disclosure, but the very prosecutor who had the discretion whether to punish the disclosure was here the perpetrator herself, and her office has finally determined that the "matter does not warrant any criminal prosecution by the Nassau County District Attorney's Office," see discussion at page 11, *supra*; and (3) under these circumstances, enforcing the statutory prohibition by means of a civil action would be consistent with the legislative scheme because absent a civil action the legislative protection of innocent persons from such unlawful disclosure would be illusory.

Notably, the judicial opinion from which the unlawfully disclosed information was supposedly obtained, *Maloney v. County of Nassau*, cited in full at page 2, *supra*, was not published in the Federal Supplement until at least mid-2009, nearly two years after the disclosure in the October 2007 brief had been made. See Plaintiff's declaration submitted herewith at paragraph 7. Thus Defendant was not simply citing a "published opinion." Further, the judicial opinion presents a more reasoned and balanced picture of Plaintiff's predicament than does Defendant's disclosure in her *ad hominem* brief, nor does the opinion imply, as does the brief, that Plaintiff was actually guilty of the maltreatment of his sons.

Defendant is not entitled to qualified immunity for making the complained-of disclosure because the provisions of subdivision 12 of § 422 of the New York Social Services Law are unambiguous, and Defendant, a District Attorney now enforcing that provision in a legally indistinguishable context, see paragraph 20 and Exhibit 11 to Plaintiff's declaration submitted herewith, could not reasonably have believed that such disclosure was permissible. Moreover, Defendant was served with a formal demand that the brief containing the complained-of

disclosure be withdrawn, and was sent two follow-up letters detailing Plaintiff's objections, the first citing the criminal provision, and the second informing Defendant of the September 2008 Decision, but the brief was never withdrawn, substituted or modified, and now remains a permanent public statement to the effect that Plaintiff "was listed on the New York State Child Abuse and Maltreatment Register," etc.

E. _Limitations Periods_

The limitations periods for both of the proposed new causes of action arguably may run as early as October 25, 2010, for which reason this motion to amend/supplement the pleading is being brought on by order to show cause.

The statute of limitations for a § 1983 action arising in New York is three years, _Eagleston v. Guido_, 41 F.3d 865, 871 (2d Cir. 1994), and, in most cases, a cause of action under § 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action," _Pearl v. City of Long Beach_, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted). The complained-of brief was filed with the Second Circuit on October 25, 2007. The statute of limitations for the Proposed S.A.C.'s Third Cause of Action arguably may run as early as October 25, 2010, depending on the date of accrual, which would be, at the earliest, the filing date of the complained-of brief.

The applicable limitations period for the Proposed S.A.C.'s Fourth Cause of Action would best be determined by looking to the analogous CPLR provision, i.e., that for personal injury actions, § 214(5), which is also three years.

Assuming the same accrual date for the state-law cause of action as for the federal one,

the applicable limitations period for the Proposed S.A.C.'s Fourth Cause of Action could also

run as early as October 25, 2010.

However, the date of accrual of the Fourth Cause of Action is not necessarily the same as

that for the Third Cause of Action, which arises under § 1983 and not under state law.  *See*

*Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("accrual date of a § 1983 cause of action is a

question of federal law that is not resolved by reference to state law").   As a starting point, it is

worth re-examining the precise language of New York Social Services Law § 422(12):

> Any person who *willfully permits* and any person who
> *encourages* the release of any data and information contained in
> the central register to persons or agencies not permitted by this
> title shall be guilty of a class A misdemeanor.

*Id*. (emphasis added).  As it is clear that Defendant herself did not *draft* the complained-of brief,

but, rather, willfully *permitted* it to remain on file despite Plaintiff's efforts to the contrary, the

state-law accrual date would clearly be later than the date the brief was actually filed (which,

indeed, was almost certainly before Defendant herself even became aware of it).  But Defendant

"willfully permit[ted]" the brief to remain in the record throughout the entire time that Plaintiff

sent the three mailings to her, i.e., the "Notice of Entry and Demand for Retraction of

Appellee's Brief," and the two follow-up letters detailing Plaintiff's objections, the first citing

the criminal provision, and the second informing Defendant of the September 2008 Decision.

Defendant continued--and indeed continues--to "willfully permit" the release of the data (which

was further "released" in or about May 2009 via Westlaw®), both by not having taken any action

to withdraw the brief before then, and by failing to act on Plaintiff's criminal complaint, which

was contained within the "Notice of Entry and Demand for Retraction of Appellee's Brief"

(see final paragraph thereof, Exhibit 4 to Proposed S.A.C.).  While the argument could be made

-18-

that the state-law limitations period has thus not yet begun to run because Defendant's inaction continues, it is more reasonable to fix the accrual date as that in which her office (presumably acting under her direction) informed Plaintiff that "this matter does not warrant any criminal prosecution by the Nassau County District Attorney's Office," by means of which Defendant finally informed Plaintiff that she would take no action to remedy the complained-of disclosure. That date was March 17, 2009. Exhibit 4 to Plaintiff's declaration submitted herewith.

If, in looking to the state-law limitations period for the Proposed S.A.C.'s Fourth Cause of Action, one were to look to the Criminal Procedure Law ("CPL") rather than the CPLR (since New York Social Services Law § 422(12) is a criminal provision defining a misdemeanor), it should be noted that CPL § 30.10(c) provides that a prosecution for a misdemeanor must be commenced within two years of the commission thereof. By formally declining to take action on the criminal complaint on March 17, 2009, Defendant again "willfully permit[ted and] encourage[d] the release of . . . data and information contained in the central register," New York Social Services Law § 422(12). Thus, any two-year limitations period would arguably run on March 17, 2011.

In sum, although the limitations periods for both of the proposed new causes of action arguably may run as early as October 25, 2010, both are timely if the proposed S.A.C. is deemed filed before that date.

F. _All Considerations Favor Allowing Supplementation of the Complaint_

Supplementation of a complaint may be appropriate when the movant under Rule 15(d) seeks to add new parties or claims arising from new events. _See Griffin v. City Sch. Bd. of_

*Prince Edward Cty.*, 377 U.S. 218, 226, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) ("[I]t follows, of course, that persons participating in these new events may be added if necessary. Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice."); *Quentin Group LLC v. Interlink Prods. Int'l Inc.*, No. 97 Civ. 0108(SC), 1997 U.S. Dist. LEXIS 8023, at *5-*6, 1997 WL 313156 (S.D.N.Y. June 9, 1997) ("A party may supplement its complaint by adding new claims to the action 'when subsequent events make it necessary to do so.'") (quoting 3 James W. Moore *et al.*, Moore's Federal Practice § 15.30, at 15-107 (3d ed.1997)).  Rule 15(d) motions are evaluated by a court under the same liberal standards used to evaluate motions to amend pleadings under Rule 15(a).  *See New York State Nat'l Org. for Women v. Cuomo*, 182 F.R.D. 30, 36 (S.D.N.Y.1998); *Forbes & Wallace, Inc. v. Chase Manhattan Bank*, 79 F.R.D. 563, 565 (S.D.N.Y.1978).

As the Second Circuit has stated, "The purpose of the federal rules is to provide for full and fair hearings on the merits. The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend."  *Middle Atlantic Utilities Co. v. S. M. W. Development Corp.*, 392 F.2d 380, 386 (2d Cir. 1968).  As this Court has noted: "Leave to amend should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court." *DeFazio v. Wallis*, 05-CV-5712, 2006 WL 4005577, at *1 (E.D.N.Y. Dec.9, 2006) (*citing Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005), and *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

-20-

A commonly cited basis for denying a motion to supplement a pleading (which, as noted above, is within the sound discretion of the district court) is the addition of a new party or parties, for whom there is often a strong possibility of prejudice where (as here) much time has elapsed since the action was begun.  Here, however, no new party or parties are being added, and Defendant, who has been on notice of the underlying events that gave rise to the proposed new causes of action for quite some time, cannot claim surprise or prejudice.

Conversely, a common basis for seeking leave to amend is the need for a plaintiff to add a retaliation claim (as in the employment context).  The underlying events that gave rise to the two new causes of action sought to added here are quite comparable to retaliation, in that the complained-of disclosure (and, indeed, much of the entire brief) was aimed at placing Plaintiff in a bad light by making factual assertions before the Second Circuit that were not at issue before this Court.  Parties are, of course, encouraged to seek to move to supplement a complaint if events giving rise to a retaliation claim occur.  *See, e.g., Faggiano v. Eastman Kodak Co.*, 378 F. Supp. 2d 292, 304 (W.D.N.Y. 2005) ("Clearly [the plaintiff should] have added the retaliation claim by way of a motion to supplement the first complaint.").

Finally, although an amendment is futile if the proposed claim clearly would not survive a motion to dismiss, *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002), Plaintiff has demonstrated, in subparts A through E, above, that the proposed new causes of action are sound, grounded in the law, timely, and viable.


G. *That the Complained-of Brief Was Not Stricken Should Not Matter*

Defendant may argue that the failure of the Second Circuit to strike the complained-of

brief upon Plaintiff's motion somehow immunizes or protects her conduct. To accept such an argument would be both illogical and unfair. The motion to strike was brought pursuant to the Second Circuit's former Local Rule 28(1), which provided:

> Briefs must be compact, logically arranged with proper headings, concise, and free from burdensome, irrelevant, immaterial, and scandalous matter. Briefs not complying with this rule may be disregarded and stricken by the court.

The new Local Rule 28.1(a), which superseded the foregoing Local Rule 28(1) effective January 1, 2010 (after the motion to strike had been fully and finally denied), now provides:

> (a) Form of Brief. A brief must be concise, logically arranged with proper headings, and free of irrelevant matter. The court may disregard a brief that does not comply with this rule.

Notably, both the reference to "scandalous matter" and the provision for striking a brief (in addition to merely disregarding it) have been removed, and this undoubtedly reflects a policy both of retaining filed briefs and of avoiding the need to adjudge what is or is not "scandalous." But such policies, whether adhered to before or after the recent rule change, should not in any way immunize or protect a party whose brief contains a criminal disclosure.

Moreover, authority higher than the Second Circuit long ago recognized the duty of federal courts to redact "allegations wholly aside from the charges made [below], and bearing reproachfully upon the moral character of individuals, which are clearly impertinent and scandalous, and unfit to be submitted to the court." That authority was none less than the Supreme Court of the United States:

> We regret that we find ourselves compelled to add something further. The printed argument of plaintiff in error contains many allegations wholly aside from the charges made in his complaint, and bearing reproachfully upon

-22-

the moral character of individuals, which are clearly impertinent and scandalous, and unfit to be submitted to the court.  *It is our duty to keep our records clean and free from scandal.*  The brief of the plaintiff in error will be stricken from the files, and the writ of error dismissed, and it is so ordered.

*Green v. Elbert*, 137 U.S. 615, 624 (1891) (emphasis added).

In the nearly 120 years that have passed since those words were written, and the untold scandalous matter in the subject brief in *Green* thereby ordered stricken, the world has changed in many ways.  Government agencies have implemented means of managing huge amounts of data such as are contained in tax databases or, more to the point, in the New York State Child Abuse and Maltreatment Register, and legislatures have developed means of safeguarding the interests of private individuals, such as taxpayers or persons awaiting adjudication while being listed in databases maintained by agencies for the protection of the public, whose information is kept in those databases.  Relatedly, the advent of electronic information technology, with such phenomena as computers, email, the Internet, Google®, and Westlaw®, has made it possible for what once would have been only a paper document buried in a filing cabinet in some courthouse or agency headquarters to be located, replicated repeatedly and virtually instantaneously, and sent around the nation or the world in seconds, all with little more than a few clicks of a mouse and several strokes on a keyboard.

Accordingly, if the duty to "keep . . . records clean and free from scandal" existed as to the Supreme Court of the United States in 1891, any breach of the same duty justified by policy considerations of a Circuit Court of the United States Court of Appeals as applied in 2009 should not be entertained as a basis for depriving this Court of its power to administer justice as to parties before it, nor as a basis for preventing this Plaintiff from seeking justice.

-23-

<u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully submitted that this Court should GRANT Plaintiff's motion to amend/supplement his pleading as submitted herewith.  It is respectfully requested that this Court ORDER on or before October 25, 2010 (see Point III.E, *supra*, at pages 17-21), that said draft pleading (submitted herewith and also filed or to be filed via ECF as a "Proposed Supplemental Complaint") be deemed to have been filed as a Second Amended Verified Complaint.

Dated:          September 15,  2010
                Port Washington, New York


                                        _____/s_____

                                        James M. Maloney (JM-5297)
                                        Plaintiff *pro se*
                                        33 Bayview Avenue
                                        Port Washington, New York

                                        (516) 767-1395

-24-