UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JAMES M. MALONEY,

                Plaintiff,

        -against-                          **MEMORANDUM AND ORDER**

THE COUNTY OF NASSAU, THE POLICE              03-CV-4178 (SLT)(MLO)
DEPARTMENT OF THE COUNTY OF NASSAU,
DENIS DILLON, in his official capacity as District
Attorney of the County of Nassau, JOAN P. YALE,
ROBERT SEIDEN, ESQ., JOHN A. JOHNSON,
in his official capacity as Commissioner of the State of
New York Office of Children and Family Services,
DAVID R. PETERS, in his official capacity as
Director of the State Central Register of the State of
New York Office of Children and Family Services,
and JOHN DOES No. 1 through 100,

                Defendants
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

      Plaintiff James M. Maloney brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his civil rights during and after an incident which began in the afternoon on August 23, 2000 and ended in the early morning of August 24, 2000 (hereinafter, the "Incident"). Four defendants, David R. Peters, John A. Johnson, the County of Nassau, and the Police Department of the County of Nassau filed successful motions to dismiss and were dismissed from this action by an Order dated September 24, 2007. Remaining defendants Robert Seiden, Denis Dillon, and Joan P. Yale have filed motions for summary judgment pursuant to Fed. R. Civ. P. 56. In addition, plaintiff cross-moved for partial summary judgment as to defendant Seiden. For the reasons set forth below, the motion of defendants Dillon and Yale is granted with respect to Counts I and III of the Amended Complaint. Defendant Seiden's motion is granted with respect to Counts I and III and V. Plaintiff's motion is denied.

## BACKGROUND

Although there are some disputes concerning exactly what transpired during the Incident at issue in this case, the following facts are not in dispute. Around 2:00 p.m. on August 23, 2000, plaintiff observed a Verizon employee atop a telephone pole located on the curtilage of plaintiff's home in Port Washington, New York (County Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("County 56.1 Statement") at ¶ 1; Plaintiff's Declaration of James M. Maloney ("JMM Decl.") at ¶ 1). Plaintiff engaged the employee in a conversation and, thereafter, observed him with the aid of a scope of some sort (*Id.*).

About half an hour after the telephone worker left, two men dressed in plain clothes drove up to plaintiff's home in a van. These men told plaintiff that they were police officers and that a telephone worker had complained that plaintiff had threatened him with a rifle. Although the men demanded that plaintiff come outside, plaintiff refused to do so (County 56.1 Statement; Plaintiff's First Amended Complaint ("Am. Compl.") at ¶¶ 29-30).

These officers then summoned additional officers and a hostage negotiation team from the Nassau County Police Department (County 56.1 Statement at ¶ 2; JMM Decl. at ¶ 9). Over the ensuing twelve hours, the team spoke to plaintiff by telephone and attempted to persuade him to exit the house and surrender. During this time, plaintiff was permitted to speak to an attorney, Robert Seiden (County 56.1 Statement at ¶ 6; JMM Decl. at ¶ 13). Plaintiff "specifically asked the police to contact Seiden early on." (County 56.1 Statement at ¶ 6; Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, 14). At around 2:00 a.m. on August 24, 2000, plaintiff surrendered to the police (County 56.1 Statement at ¶ 9; JMM Decl. at ¶ 14). Shortly thereafter, numerous police officers entered plaintiff's home, where they forcibly

opened a locked safe and seized various items of property (County 56.1 Statement at ¶¶ 12-13; JMM Decl. at ¶ 15). The officers obtained written consent for the search of the house and safe from plaintiff's wife, Debra Comer, who was record owner of the residence and shared occupancy with plaintiff (County 56.1 Statement at ¶ 12, 15; Plaintiff's Response to County Defendants' 56.1 Statement of Material Facts. ("Pl. 56.1 Response") at ¶ 12, 15 ). Plaintiff does not dispute that Comer signed consent forms, however, he disputes that such consent was voluntary and that she had authority to consent to the search of the refrigerator and safe (Pl. 56.1 Response at ¶ 12). At a later deposition, Comer testified that she told police that there was a possibility that items of her property could have been kept inside of the safe. (County 56.1 Statement at ¶ 16). Plaintiff disputes the County Defendants' description of Comer's testimony and provides Comer's exact deposition language: "I believe I said I wasn't sure if there was [Comer's jewelry in the safe] but that there was a possibility that there could be." (Pl. 56.1 Response at ¶ 16).

Following his arrest, plaintiff was sent to a mental hospital, where he spent the night (County 56.1 Statement at ¶ 11; Am. Compl. at ¶ 50). Plaintiff was eventually charged with several criminal offenses (County 56.1 Statement at ¶ 10; Pl. 56.1 Response at ¶ 10), but the Nassau County District Attorney's Office subsequently permitted him to plead guilty to disorderly conduct, a violation, in full satisfaction of the charges (County 56.1 Statement at ¶ 14; Pl. 56.1 Counter-statement at ¶ 14).

**Procedural History**

In his Amended Complaint, plaintiff alleges five causes of action. In the first of these, plaintiff alleges that Seiden, Nassau County, Nassau County District Attorney Denis Dillon, the Nassau County Police Department and its employees, Yale and Does 2 through 100, "deprived

3

Plaintiff of his rights under the Fourth and Fourteenth Amendments" of the United States Constitution (Am. Compl. at ¶ 65). Plaintiff seeks compensatory damages from all defendants, plus punitive damages from Seiden alone (*Id.* at ¶¶ 66-67).

Plaintiff's second cause of action alleges that the actions of the Nassau County paramedic, John Doe No. 1, violated his "rights under the NYS and federal constitutions" (*Id.* at ¶ 70).

In his third cause of action, plaintiff alleges that Seiden, Nassau County, Nassau County District Attorney Denis Dillon, the Nassau County Police Department and its employees, Yale and Does 2 through 100, "jointly and severally illegally seized and retained property, personal effects, and papers taken by defendants from plaintiff" and have thereby deprived plaintiff of his rights under the Fifth and Fourteenth Amendments of the federal Constitution (*Id.* at ¶¶ 74, 76). In addition, plaintiff alleges that these defendants' actions constitute conversion and "trespass to chattels" under New York State law (*Id.* at ¶¶ 77-78). Plaintiff seeks an accounting and the return of his property, plus compensatory damages from all defendants and punitive damages from Seiden (*Id.* at ¶¶ 79-84).

The fourth cause of action alleges that defendant John A. Johnson, the Commissioner of OCFS, and David R. Peters, the Director of the Register, "have deprived and continue to deprive Plaintiff of his rights under the First, Second, Sixth, Eighth and Fourteenth Amendments" of the United States Constitution (*Id.* at ¶ 87).

Finally, in his fifth cause of action, plaintiff alleges that Seiden intentionally breached fiduciary and legal obligations that he owed to plaintiff. Plaintiff alleges that Seiden not only had such obligations under the New York State Code of Professional Conduct, but also owed a "common law fiduciary duty" to plaintiff (*Id.* at ¶¶ 97-98). As with every other count naming

Seiden as a defendant, this cause of action seeks both compensatory and punitive damages (*Id.* at ¶¶ 100-01).

An Order from this Court dated September 24, 2007 dismissed defendants County of Nassau and the Police Department of the County of Nassau from this action. The Order also dismissed the state claims, which were brought against the remaining defendants and raised in the Amended Complaint's third cause of action, and it dismissed the claims against defendants Peters and Johnson in the fourth cause of action.

### *The Defendants' Motions*

Defendants former Nassau County District Attorney Denis Dillon and Nassau County Deputy Chief Joan P. Yale (collectively, the "County Defendants") move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. Defendant Robert Seiden, Esq., also moves pursuant to Fed. R. Civ. P. 56.[1] Finally, plaintiff James M. Maloney moves for partial summary judgment as to the issue of defendant Seiden's liability.

## *DISCUSSION*

### *The Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material

---

[1] The Court notes that defendant Seiden failed to file a distinct Rule 56.1 Statement, as required under the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"). Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement. . .of the material facts as to which the moving party contends there is no genuine issue to be tried." *See* Local Rule 56.1(a). The court notes that defendant Seiden titled his motion "Motion for Summary Judgment with Incorporated Memorandum and Statement of Facts," however he failed to file a separate Rule 56.1 statement, as required under the local rules. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Wight v. Bankamerica Corp.*, 219 F.3d 79, 85 (2d Cir.2000). Thus, this court will construe defendant Seiden's incorporated "Statement of Facts" imbedded within his Motion for Summary Judgment as his 56.1 statement.

5

fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would not be admissible if testified to at trial. *See, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); Fed. R. Civ. P. 56(e).

### *Claims against Defendant Dillon*

#### Count I

The County Defendants motion as to defendant Denis Dillon argues that Dillon may not be held liable as to Count I because the First Amended Complaint does not make any allegations regarding Dillon's personal involvement in the alleged deprivation of plaintiff's constitutional rights. Defendants correctly argue that where damages are sought in a § 1983 action, "the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989). The fact that Dillon, as Nassau County District Attorney, was in a high position of authority does not suffice for the imposition of personal liability. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Farrell v. Burke*, 449 F.3d 470, 484 (2006). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983." *Farrell*, 449 F.3d at 484 (quoting *Wright*, 21 F.3d at 501) (citation and internal quotation marks omitted).

"Personal involvement" is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir.2001). Because "personal involvement is a question of fact[,] we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant[ ] is entitled to judgment as a matter of law." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

There is no evidence to suggest that defendant Dillon was personally involved in plaintiff's alleged deprivation of constitutional rights, outside of the evidence related to Count III, which the court addresses infra. Accordingly, this Court grants summary judgment in favor of defendant Dillon on Count I.

**Count III**

Defendant Denis Dillon argues that he may not be held liable as to Count III because he is entitled to absolute prosecutorial immunity in his official capacity as district attorney of the County of Nassau under § 1983. This court finds that Dillon is not entitled to absolute immunity under § 1983, but that he is entitled to qualified immunity.

It is well-settled that prosecutors sued under § 1983 are entitled to absolute immunity "from claims for damages arising out of prosecutorial duties that are 'intimately associated with

7

the judicial phase of the criminal process.'" *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Thus, prosecutors are "shielded from liability for damages with respect to acts performed within the scope of [their] duties when pursuing a criminal prosecution." *Doe*, 81 F.3d at 1209. "In determining whether a prosecutor enjoys absolute immunity against any particular claim for damages, the courts are to apply a 'functional approach,' examining 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Thus, a prosecutor is not protected under § 1983 for any action taken, but rather the relevant question is whether the actions "are part of a prosecutor's traditional functions." *Doe*, 81 F.3d 1209.

A prosecutor enjoys absolute immunity against a claim for damages based on actions associated with advocacy in the conduct of prosecution. *See Doe*, 81 F.3d at 1209. However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. When the functions performed by a prosecutor "cast him in the role of an administrator or investigative officer rather than that of an advocate," the prosecutor has the benefit only of qualified immunity that applies to judicial and advocate functions. *Morris v. Jackson*, 353 F. Supp. 2d 1199, 1202 (M.D. Ala. 2005) (quoting *Buckley*, 509 U.S. at 275).

In this case, defendant Dillon's office retained plaintiff's property after he fully satisfied the criminal charges against him by pleading guilty to disorderly conduct. The case law demonstrates that retention of evidence during the time a direct appeal is pending is protected, *see Parkinson v. Cozzolino*, 238 F.3d 145 (2d Cir. 2001); *Neville v. Classic Gardens*, 141 F.Supp.2d 1377 (S.D.Ga. 2001), however, "it does not necessarily follow that just because a

8

prosecutor is acting as an advocate when preserving evidence for appeal that prosecutor is acting as an advocate under any circumstances." *Morris v. Jackson*, 353 F. Supp. 2d at 1201 (M.D. Ala. 2005). "Without factual allegations as to [the prosecutor's] necessity of preserving the evidence for future use, [his] retention of plaintiff's property can most logically be deemed an administrative function." *Morris* at 1202.

Defendant Dillon has not alleged that the property is being retained in anticipation of a future prosecution, therefore he may not enjoy absolute immunity. However, qualified immunity does extend to protect defendant Dillon. "The qualified immunity doctrine shields 'government officials performing discretionary functions ...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lewis v. Cowen*, 165 F.3d 154, 166 (2d Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This Court, like the court in *Morris*, cannot identify any cases sufficient to show that a prosecutor's decision to retain property after the prosecution phase of plaintiff's case would violate plaintiff's clearly established rights. Therefore, Dillon is protected by qualified immunity and summary judgment on this issue is granted.

*Claims against Defendant Yale*

**Count I**

The County Defendants' motion as to defendant Joan P. Yale argues that Yale may not be held liable as to Count I because Yale is entitled to qualified immunity from suit in her individual capacity under § 1983.

**1. The Warrantless and Allegedly Nonconsensual Search of Plaintiff's Residence**

"Qualified immunity strikes a balance between the need to provide a means for the

9

vindication of constitutional guarantees and the societal costs that inhere in litigation against public officials, including 'the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.' " *Loria v. Gorman*, 306 F.3d 1271, 1281 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)) (internal quotations and citations omitted). Entitlement to qualified immunity requires the examination of a two-part test: 1) whether the facts that plaintiff has alleged make out a violation of a constitutional right; and 2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The Supreme Court has held that courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). If the right was clearly established, courts analyze the objective reasonableness of the officer's subjective belief in the lawfulness of his actions. *Loria v. Gorman*, 306 F.3d 1271, 1282 (2002). If the officer reasonably believed his conduct was not a violation of the plaintiff's rights, even if that belief was mistaken, he is entitled to qualified immunity. *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). "If the controlling law is not clearly established, an official cannot be liable, because 'a reasonable person would not be expected to know how to structure his conduct to avoid liability.'" *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002) quoting *Dela Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir. 2002).

During oral argument on the earlier motions to dismiss, Plaintiff's counsel articulated two alleged Constitutional violations related to Count I: the warrantless and allegedly nonconsensual search of plaintiff's home and the "unconstitutional manner in which [plaintiff] was asked to

10

come out of his house." Transcript of Oral Argument, at 6. The court will address these alleged violations in that order.

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A warrantless search is per se unreasonable under the Fourth Amendment, absent certain exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). In *United States v. Matlock*, the Supreme Court explicated the exception of entry pursuant to consent. 415 U.S. 164, 165-66 (1974). One such exception is that under certain circumstances, a third party may validly consent to the search of an area. *United States v. Davis*, 967 F.2d 84, 87 (2d Cir.1992). In *United States v. Davis*, this circuit held that "a third party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *Id.* Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes...." *Matlock*, 415 U.S. at 171 n. 7 "[D]etermination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?' " *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

As this circuit noted in *Moore v. Andreno*, 505 F.3d 203, 211 (2d Cir. 2007), "we [have n]ever passed on how "substantial" an interest must be to vest a third party with authority to consent to a search over an area in which she has such an interest. And, indeed, it is not even

11

clear what metric we would use to measure substantiality, for it surely cannot depend on the presence or absence of a property right in an area." *Moore* at 215 (citing *Georgia v. Randolph*, 547 U.S. 103, 110-11 (2006)). Even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search. *Illinois* v. *Rodriguiz*, 497 U.S. at 188-89.

Regarding defendant Yale's entry into plaintiff's residence, it undisputed that Yale had consent to enter Plaintiff's house from his wife Debra Comer, the record owner and common occupant of the premises. *United States v. Matlock*, 415 U.S. 164 (1974). Plaintiff does not dispute that his wife was the record owner or that she shared occupancy with Plaintiff. It was reasonable for the officers to believe that as record owner and joint occupant of the house, plaintiff's wife had actual authority to consent to the search. *United States v. Matlock*, 415 U.S. 164 (1974). Because Yale's entry into the house did not violate plaintiff's Fourth Amendment rights, Yale is protected from liability under a theory of qualified immunity.

Likewise, because Comer consented to the search, defendant Yale's search of the general premises did not violate plaintiff's Fourth Amendment rights. *United States v. Matlock*, 415 U.S. at 170; *see also Moore* at 211 citing *United States v. Duran*, 957 F.2d 499, 505 (7th Cir.1992) ("[A] spouse presumptively has authority to consent to a search of all areas....").

It is unclear, however, whether plaintiff's wife had authority to consent to the search of plaintiff's locked safe, which he had installed inside of a small refrigerator. Both parties agree that plaintiff's wife Comer did not have the combination to the safe. The parties disagree, however, as to whether Comer had apparent authority to consent to a search of the safe. Plaintiff argues that his wife lacked both actual and apparent authority to consent to the opening of the

locked safe. In support of this argument, plaintiff offers evidence that Comer did not have the combination to the safe and that she stated in her deposition transcript, "I believe I said I wasn't sure if there was [Comer's jewelry in the safe] but that there was a possibility that there could be." (Pl. 56.1 Response at ¶ 16).

As noted above, this court may exercise its discretion in choosing which of the two prongs of the qualified immunity test it may decide first, thus in the interest of the conservation of judicial resources, the Court will analyze first the second prong as to whether plaintiff had a clearly established right with regard to the search of his safe encased in a refrigerator. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Where courts "are convinced that the purported constitutional right violated is not "clearly established," we retain the discretion to refrain from determining whether, under the first step of the test, a constitutional right was violated at all." *Koch,* 287 F.3d at 166 citing *Horne v. Coughlin III*, 191 F.3d 244 (2d Cir. 1999).

In *Moore v. Andreno*, police entered and searched plaintiff's residence which he shared with his girlfriend after his girlfriend had broken into a locked study to which she did not have keys. The court found that the girlfriend lacked actual authority to consent to the search of the study and entry was not justified by exigent circumstances, but because the law governing third party consent searches was unsettled, the deputies were qualifiedly immune. *Moore* 505 F.3d at 215.

As in *Moore*, it is not clear at the time of the search whether Comer's belief that there was a possibility that her jewelry was in the safe satisfied the access requirement under *Davis*. Based on an ambiguity in the law, an officer could have reasonably believed that Comer's belief that her jewelry could be in the safe was sufficient to constitute a substantial interest that could validate her consent. *See Moore* at 215 (finding law governing substantial interest under *U.S. v.*

13

*Davis* to be unsettled). "If the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. Thus, defendant Yale is protected by qualified immunity, and the County Defendants' motion is granted on this point.

## 2. The Allegedly Unconstitutional Manner in which Plaintiff Was Asked to Leave His Residence

Regarding defendant Yale's role in asking plaintiff to come out of his house, the Court will again address first the second prong of the qualified immunity analysis, whether there existed a clearly established right. In *Payton v. New York*, 445 U.S. 573, 576 (1980), the Supreme Court stated that "physical entry of the home is the chief evil against which the wording of the Fourteenth Amendment is directed," and that the "Fourth Amendment has drawn a firm line at the entrance to the home," the threshold of which "may not be crossed without a warrant," *Id.* at 590. Several circuit courts have applied *Payton* in instances in which the police never physically crossed the threshold but, through threats of force, compelled an individual to exit his home and surrender. For example, in *Sharrar v. Felsing*, 128 F.3d 810, 819-20 (3d Cir. 1997), the court stated that "when a SWAT team surrounds a residence with machine guns pointed at the windows and the persons inside are ordered to leave the house backwards with their hands raised, an arrest has undoubtedly occurred." In *United States v. Maez*, 872 F.2d 1444, 1450-51 (10th Cir. 1989), the Tenth Circuit found that where a defendant is coerced to leave his home, the privacy of the home is effectively invaded. Similarly in *United States v. Al-Azzawy*, 784 F.2d 890, 893 and n.1 (9th Cir. 1985), *cert. denied*, 476 U.S. 1144 (1986), the Ninth Circuit found that any reasonable person whose trailer was completely surrounded by police with their weapons drawn, and who was ordered to leave the trailer and drop to his knees, would have believed he was under arrest. In the Sixth Circuit, the court found that the arrest of the defendant, who

"appeared at the door [of a private home] *only because of* the coercive police behavior taking place outside of the house," occurred while the defendant was "inside a private home." *United States v. Morgan*, 743 F.2d 1158, 1166 (6th Cir. 1984), *cert. denied*, 471 U.S. 1061 (1985). All of these cases are similar to the case at bar in that they involved instances in which the police surrounded the defendants' home, then used actual or implied threats of violence to coerce a surrender outside of the home. These courts reasoned that, since a seizure occurs within the meaning of the Fourth Amendment when "a reasonable person would have believed that he [or she] was not free to leave," *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984), the arrests occurred while the defendant was still inside the home because no reasonable person would have believed that he or she was free to remain there.

In this Circuit, however, the law is unclear. At least one district court in the Second Circuit has expressly adopted the reasoning of these cases. In *United States v. Gori*, No. 98 Cr. 1163 (RPP), 1999 WL 322651 (S.D.N.Y. May 20, 1999), as in this case, the arresting officers never crossed the threshold. Rather, the officers waited until the occupants opened the front door to receive a food delivery and, standing just outside the doorway with their guns drawn, ordered the evacuation of the apartment. The district court, citing *Maez*, *Al-Azzawy* and *Morgan* with approval, held that "a seizure of [the defendants in that case] occurred when they were inside the apartment and ordered by armed police officers to exit." *Id.* at *8.

On appeal, the Second Circuit reversed on other grounds, holding that once the occupants had voluntarily opened the door to the apartment, no warrant was required "to 'temporarily' seize the occupants and conduct a limited investigation." *United States v. Gori*, 230 F.3d 44, 53 (2d Cir. 2000), *cert. denied sub. nom. Pichardo v. United States*, 534 U.S. 824 (2001). While noting that the *Payton* rule is "directed primarily at warrantless *physical* intrusion into the home," *id.* at

15

51 (emphasis in original), the Second Circuit found it "unclear whether *Payton*'s solicitude is aroused when a dwelling is penetrated by the voice of a police officer standing outside." *Id.* Given the "narrow question raised by the distinctive facts" of that case, the Court expressly declined to "consider the questions presented when the police surround a dwelling, flood it with searchlights, and order evacuation over a bullhorn." *Id.* at 52, n.2.

In light of the Second Circuit's decision in *Gori*, the Southern District of New York found officers qualifiedly immune when addressing an alleged Payton violation where plaintiff was arrested after being ordered out of his home. In *Nieves v. New York City Police Dept.*, 2010 WL 2010879 (S.D.N.Y.), officers arrested the plaintiff after they ordered him out of his apartment with guns drawn. The court noted, "While he may have been 'seized' inside the Apartment based on the officers' exercise of authority from outside of the Apartment, the Second Circuit has not yet ruled that exigent circumstances are required before the police may make such a seizure." *Nieves* at *3.

Because neither the Supreme Court nor the Second Circuit has recognized a *Payton* violation in the absence of a warrantless physical intrusion into the home, the law in this area is not clearly established in this Court. The Court's qualified immunity jurisprudence denies immunity only where it is sufficiently clear that a reasonable official would understand that what he is doing violates the law. *See Kerman v. City of New York*, 261 F.3d 229, 237 (2001). Therefore, defendant Yale is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims.

**Count III**

By the reasoning set forth above regarding qualified immunity for officials performing administrative functions, defendant Yale is also entitled to qualified immunity with regard to

16

plaintiff's claim in Count III of the Amended Complaint.

*Claims against Defendant Seiden*

### Counts I and III

As to Defendant Seiden, plaintiff alleges that Seiden engaged in concerted action with the police and hostage negotiation team and deprived plaintiff of his rights under § 1983. Seiden argues that this cause of action must be dismissed because he did not conspire with police for the purpose of depriving plaintiff of his constitutional rights.

It is well-settled law that "private individuals who are not state actors may be liable under § 1983 if they have conspired with or engaged in joint activity with state actors." *Caporicci v. Nassau County Police Dep't*, No. CV 05-5764, 2007 WL 764535 at *8 (E.D.N.Y 2007) (citing cases). The purpose of the conspiracy or concerted action must be to deprive the plaintiff of constitutional rights." To prove a § 1983 conspiracy, "a plaintiff must show: (1) an agreement . . . between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d. Cir. 1999). Where, as here, however, all substantive § 1983 claims against named state actors have been dismissed, claims alleging participation in a civil rights conspiracy must also be dismissed. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Such a dismissal is warranted because a § 1983 conspiracy action against private individuals will stand "only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Id.; see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, (1970) (necessary element of civil rights claim is deprivation of a constitutionally protected right). In the absence of such a violation, any § 1983 claim of conspiracy must be dismissed, thus defendant Seiden's motion for summary judgment is granted on this point.

17

Because all substantive § 1983 claims against named state actors have been dismissed, claims alleging Seiden's participation must also be dismissed. *See Singer v. Fulton County Sheriff*, 63 F.3d at 119 (2d Cir. 1995). Thus defendant Seiden's motion for summary judgment is granted on this point.

**Count V.**

Plaintiff's fifth cause of action raises state law claims against defendant Seiden, alleging that Seiden breached his fiduciary and legal obligations to plaintiff. Title 28 U.S.C. § 1367 (c)(3) "permits a district court in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). "The court must 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction' over the pendent claim." *Raucii v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors...will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

Because plaintiff's fifth cause of action raises state law claims against Seiden and all other federal claims against Seiden have been dismissed, the Court declines to exercise jurisdiction over plaintiff's state law claims. Accordingly, Count V against defendant Seiden is dismissed without prejudice.

*Conclusion*

For the reasons stated above, the motions for summary judgment of defendants Denis Dillon, Joan P. Yale, and Robert Seiden are granted. Plaintiff's motion for partial summary

judgment as to Defendant Seiden's liability is denied. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

/ SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
September 30, 2010