1

2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK

3    ------------------------------------------X
     JAMES M. MALONEY,

4

                              PLAINTIFF,

5

         -against-         CV-03-0786

6                         (ADS)(AKT)

7    KATHLEEN M. RICE, individually and in her
     official capacity as District Attorney of

8    the County of Nassau,

9                           DEFENDANT.
     ------------------------------------------X

10                  DATE:  June 29, 2011

11                 TIME:  10:00 a.m.

12

13        EXAMINATION BEFORE TRIAL of the

14    Defendant, KATHLEEN M. RICE, individually

15    and in her official capacity as District

16    Attorney of the County of Nassau, by a

17    witness, PETER MANCUSO, taken by the

18    Plaintiff, held at the offices of Diamond

19    Reporting, 114 Old Country Road, Suite 344,

20    Mineola, New York  11501, before Phyllis

21    Goldberg, a Notary Public of the State of

22    New York.

23

24

25

1

2    A P P E A R A N C E S:

3


4    JAMES M. MALONEY, ESQ.
        Pro Se
5       33 Bayview Avenue
        P.O. Box 551
6       Port Washington, New York   11050

7


8    NASSAU COUNTY OFFICE OF THE COUNTY ATTORNEY
        Attorneys for the Defendant
9       One West Street
        Mineola, New York   11501
10      BY:   LIORA M. BEN-SOREK, ESQ.

11

12

13
             *         *         *
14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    MANCUSO
 2    P E T E R   M A N C U S O, called as a
 3    witness, having been first duly sworn by a
 4    Notary Public of the State of New York, was
 5    examined and testified as follows:
 6    EXAMINATION BY
 7    MR. MALONEY:
 8         Q.    Please state your name for the
 9    record.
10         A.    Peter Mancuso.
11         Q.    Where do you reside?
12         A.    My office address is:  272 Old
13    Country Road, Mineola , New York  11501.
14         Q.    Good morning, Mr. Mancuso.  I'm
15    Jim Maloney, the Plaintiff in this case.
16    I'm going to be asking you a series of
17    questions.
18              First of all, can you tell me
19    the year of your birth and place of your
20    birth?
21         A.    New York City in 1954.
22         Q.    What is the extent of your
23    education completely?
24         A.    Law school.
25         Q.    Where did you go to law school?
```

```
 1                     MANCUSO
 2        A.    Cornell.
 3        Q.    What year did you graduate?
 4        A.    1978.
 5        Q.    What Bar admissions did you
 6   seek upon graduation?
 7             MS. BEN-SOREK:  Objection.
 8             You may answer.
 9        A.    New York State, Eastern
10   District of New York, Southern District of
11   New York, Second Circuit Court of Appeals
12   of the Supreme Court of the United States.
13        Q.    Actually, I asked upon
14   graduation, and obviously, some of those
15   were a little later.
16        A.    Immediately upon graduation,
17   New York State.
18        Q.    And you continually maintain
19   your admission in New York State since
20   then?
21        A.    Yes.
22        Q.    What year were you admitted?
23        A.    1979.
24        Q.    Before you went to Cornell,
25   what was your undergraduate education?
```

```
 1                     MANCUSO
 2          A.    I had received a Bachelor of
 3    Science and Economics at MIT.
 4          Q.    What year was that?
 5          A.    1975.
 6          Q.    What was your first employment
 7    after law school?
 8          A.    Nassau County District
 9    Attorney's office.
10          Q.    And your initial job title?
11          A.    Assistant District Attorney.
12    That is not true.  District Attorney law
13    assistant.  It was prior to my admission to
14    the Bar.
15          Q.    And upon admission you became
16    an ADA?
17          A.    That's correct.
18          Q.    And that would have been 1979
19    that you became an ADA; correct?
20          A.    Yes.
21          Q.    What was the first promotion or
22    change of job title that you received
23    within that office?
24          A.    I became a Deputy Bureau Chief
25    in the 1983, 1984 time frame.
```

```
 1                    MANCUSO
 2        Q.    Of any particular bureau?
 3        A.    Commercial frauds.
 4        Q.    I'm sorry, you said 1983 to
 5   1984?
 6        A.    Somewhere in the 1983, 1984
 7   time frame.  I'm not sure.
 8        Q.    After that, what was the next
 9   professional job or title change?
10        A.    I left the District Attorney's
11   office.
12        Q.    Where did you go?
13        A.    I went into private practice.
14        Q.    What year was that?
15        A.    1986.
16        Q.    What was the firm or was it
17   solo?
18        A.    It was a solo practice.
19        Q.    What type of law did you
20   practice?
21        A.    General.
22        Q.    Litigation?
23        A.    Including litigation.
24        Q.    Litigation and transactional,
25   okay.
```

```
 1                      MANCUSO
 2              Where was your office?
 3      A.      In Mineola, at that point?
 4      Q.      And then it moved?
 5      A.      To Garden City.
 6      Q.      I'm assuming at some point you
 7   stopped a private practice and went into
 8   another area of employment; what was that
 9   year?
10              MS. BEN-SOREK:  Objection.
11              You can answer.
12      A.      1993, I was employed as general
13   counsel to a gasoline distributor.
14      Q.      What gasoline distributor?
15      A.      Tartan Oil.  T-A-R-T-A-N.
16      Q.      Where is Tartan Oil's office?
17      A.      It was located in Melville.  I
18   don't know if it still exists.
19      Q.      How long did you remain general
20   counsel at Tartan?
21      A.      Approximately, a year.
22      Q.      What was the reason for you
23   leaving?
24              MS. BEN-SOREK:  Objection.
25      A.      The position was terminated by
```

```
 1                          MANCUSO
 2     the employer.
 3          Q.    And what was your next
 4     employment after that?
 5          A.    Nassau County District
 6     Attorney's office.
 7          Q.    So that would have been 1994?
 8          A.    Yes.
 9          Q.    What was your job title when
10     you came back?
11          A.    Assistant District Attorney.
12          Q.    So you came back in lower down
13     than you left?
14                MS. BEN-SOREK:  Objection.
15                You can answer.
16          A.    Yes.
17          Q.    After you returned to the
18     District Attorney's office in 1994, what
19     was your first promotion or other job title
20     change?
21          A.    There had been no job title
22     changes.
23          Q.    When you first returned, were
24     you assigned to any particular bureau?
25          A.    Yes.
```

```
 1                        MANCUSO
 2          Q.    What bureau was that?
 3          A.    Special investigations.
 4          Q.    What was the scope of special
 5    investigations work?
 6          A.    Investigation and prosecution
 7    of matters involving public officials,
 8    public employees.
 9          Q.    Would that be a bureau, a unit?
10          A.    That was a bureau.
11          Q.    Are you still in the Special
12    Investigations Bureau?
13          A.    Special Investigations Bureau
14    was renamed the Public Corruption Bureau.
15          Q.    And that's your current
16    position?
17          A.    That's correct.
18          Q.    When was it renamed?
19          A.    2006, I believe.
20          Q.    Would you consider yourself
21    familiar with the policies and procedures
22    of the D.A.'s office as relate to work
23    within the Public Corruption Bureau?
24          A.    Yes.
25          Q.    Have you had any additional
```

```
 1                    MANCUSO
 2    education while an assistant District
 3    Attorney either before or after you left?
 4         A.    I have continuing legal
 5    education on a regular basis.
 6         Q.    Other than the continuing
 7    general legal education that's to maintain
 8    your Bar membership, have you had any
 9    special programs within or as adjunct to
10    your position in the District Attorney's
11    office?
12         A.    Yes.
13         Q.    What were they?
14         A.    I wouldn't be able to list them
15    all.
16         Q.    Quite a number of them?
17         A.    There have been several over
18    the years, yes, successfully.
19              MR. MALONEY:  Mark this as
20         Plaintiff's Exhibit 1, please.
21              (Whereupon, the aforementioned
22         letter dated 3/17/09 was marked as
23         Plaintiff's Exhibit 1 for
24         identification as of this date by
25         the Reporter.)
```

```
 1                      MANCUSO

 2        Q.    Mr. Mancuso, I'd like you to

 3   take a look at the document that's been

 4   marked Plaintiff's Exhibit 1 and tell me if

 5   you've ever seen that document before?

 6        A.    Yes, I have.

 7        Q.    And you wrote that document;

 8   did you not?

 9        A.    Yes, I did.

10        Q.    I'd like to draw your attention

11   to the date March 17th.  Any particular

12   reason you chose that date?

13        A.    No.

14        Q.    Do you know that that date

15   represents a certain type of holiday?

16        A.    I'm aware it's St. Patrick's

17   Day.

18        Q.    No reason for choosing

19   St. Patrick's Day.

20              MS. BEN-SOREK:  Objection.

21        A.    No.

22        Q.    Did you send any other letters

23   out on March 17th?

24        A.    I don't recall.

25        Q.    To expedite this, I'm going to
```

```
 1                      MANCUSO
 2   ask you in general terms, unless there's an
 3   objection, how it is that you came to write
 4   this letter; what transpired that led you
 5   to write this letter?
 6          A.    I was directed to conduct an
 7   investigation to determine whether I should
 8   make a recommendation to my superiors that
 9   Karen Hudson be prosecuted in connection
10   with allegations that you made in a letter
11   that was sent to the District Attorney in
12   August of 2008, and I conducted that
13   investigation.  I made my recommendation
14   that she not be prosecuted.  My superiors
15   approved that recommendation, closed the
16   investigation, and I sent you this letter
17   reflecting that.
18          Q.    Okay, thanks.
19                You mentioned your superiors.
20   To whom do you report and who are the
21   superiors to whom you're referring?
22                MS. BEN-SOREK:  Objection to
23          form.
24                You can answer.
25          A.    Are you asking me to whom I
```

1                    MANCUSO

2    report now or if I reported in that time

3    frame?

4         Q.    Good question, exactly.  Then,

5    not now.

6         A.    In that time frame I reported

7    to Meg Reis, who was the Executive

8    Assistant District Attorney For

9    Investigations, and that's R-E-I-S, and to

10   Marshall Traeger, M-A-R-S-H-A-L-L, Traeger,

11   who became the bureau chief following Meg

12   Reis' service as the acting bureau chief.

13   They both, during parts of that period of

14   time, served as my superior.

15              And was there another part to

16   the question?

17        Q.    Yes.  It was really to whom you

18   report overall.

19              Meg Reis you mention in two

20   roles, as Executive Assistant District

21   Attorney For Investigations and as acting

22   bureau chief.

23              During what time frame did she

24   assume both those roles at the same time?

25        A.    I believe that -- well, when

```
 1                      MANCUSO
 2    did she assume it?  I can't tell you
 3    exactly.  I would approximate that it was
 4    sometime in the latter part of 2007, but I
 5    really can't tell you exactly.
 6          Q.    So she was Executive Assistant
 7    District Attorney For Investigations prior
 8    to that?
 9          A.    Yes.
10          Q.    And then in addition to that,
11    she became acting bureau chief for a period
12    of time?
13          A.    Yes.
14          Q.    And then was replaced as acting
15    bureau chief by Marshall Traeger?
16          A.    Yes.
17          Q.    When did that transaction take
18    place?
19          A.    That happened in the
20    October 2008 time frame.
21          Q.    Did Meg Reis leave the District
22    Attorney's office at that time?
23          A.    No.
24          Q.    What was her position after
25    that?
```

1                    MANCUSO

2        A.    She continued in the position

3   of Executive Assistant District Attorney

4   For Investigations.

5        Q.    And the bureau chief title was

6   for which bureau?

7        A.    Public Corruption.

8        Q.    So would it be fair to say that

9   you report both to the Executive Assistant

10  District Attorney For Investigations and

11  the bureau chief or acting bureau chief at

12  any given time?

13       A.    At any given time I report to

14  the bureau chief.  The bureau chief reports

15  to the Executive Assistant District

16  Attorney For Investigations.  There may be

17  matters in which the Executive Assistant

18  District Attorney For Investigations has

19  had some involvement and there may be some

20  reporting function there, but that is on a

21  case-by-case basis.

22       Q.    So in the hierarchy, if I may

23  use that term, the Executive Assistant

24  District Attorney For Investigations is

25  above the bureau chief for the Public

```
 1                    MANCUSO
 2   Corruption Bureau?
 3        A.    Yes.
 4        Q.    Who is now the bureau chief for
 5   the Public Corruption Bureau?
 6        A.    Stephen, with a P-H, and
 7   Antignani is A-N-T-I-G-N-A-N-I.
 8        Q.    When did Mr. Antignani become
 9   bureau chief?
10        A.    In the time frame of February
11   of this year.
12        Q.    Did he replace Mr. Traeger?
13        A.    Yes.
14        Q.    Do you happen to know if
15   Mr. Traeger is related to the late Judge
16   Traeger?
17        A.    Not to my knowledge.
18        Q.    Did you, at anytime between
19   2007 and 2009, report directly to the
20   District Attorney?
21        A.    No.
22        Q.    Do you, at the present time,
23   report directly to the District Attorney?
24        A.    No.
25        Q.    Going back to your original
```

```
 1                         MANCUSO
 2    testimony, you were directed to investigate
 3    this matter, that would have been Meg Reis
 4    who gave that you direction?
 5         A.    Yes.
 6         Q.    If you know, was that in her
 7    capacity as Executive Assistant District
 8    Attorney that she gave that you direction
 9    or as acting bureau chief?
10         A.    I can't distinguish between the
11    two roles.
12         Q.    Did you review any documents
13    before coming in today that are not
14    privileged, any documents at all?
15         A.    Yes.
16         Q.    What documents did you review?
17         A.    I reviewed certain records from
18    this case that were provided to me and I
19    reviewed certain correspondence with regard
20    to this case and correspondence that you
21    provided to the District Attorney's office,
22    and I reviewed the Court cases that were
23    referred to in Karen Hudson's Appellate
24    Brief that were relevant to the review I
25    was asked to conduct.
```

```
 1                    MANCUSO
 2         Q.    Of the documents reviewed for
 3    today, were all of those documents
 4    documents you had seen back in the time
 5    frame in which you were reviewing my
 6    Complaint?
 7         A.    Yes, with the exception of any
 8    appellate decisions with regard to the
 9    underlying cases referred to Karen Hudson
10    that were not in exist at that time she
11    prepared the Appellate Brief.  That had not
12    been reached yet at the time she prepared
13    the Appellate Brief.
14         Q.    You mean the case in which the
15    brief was submitted?
16         A.    No, I'm referring to the case
17    that Karen referred to in her Appellate
18    Brief.
19         Q.    Right, you had not reviewed
20    those before?
21         A.    I reviewed the case that Karen
22    referred to in her Appellate Brief, but I
23    had not reviewed the appeals and other
24    cases that were generated following the
25    existence of her Appellate Brief until I
```

```
 1                         MANCUSO
 2    prepared for this deposition today and
 3    discovered that they existed in doing so.
 4         Q.    In other words, you followed
 5    the research trail in the cases in her
 6    brief?
 7              A.    Right.
 8                    MR. MALONEY:  I guess we can
 9              mark that brief as Plaintiff's
10              Exhibit 2.
11                    (Whereupon, the aforementioned
12              Appellate Brief was marked as
13              Plaintiff's Exhibit 2 for
14              identification as of this date by
15              the Reporter.)
16              A.    I should also add that I
17    reviewed the section of the Social Services
18    Law that you cited in your letter to the
19    District Attorney's office.
20         Q.    Mr. Mancuso, I'd like you to
21    take a few moments to look over at what's
22    just been marked as Plaintiff's Exhibit 2,
23    it's a multi-page document, and tell me if
24    you can identify that document.
25              A.    This is the Appellate Brief
```

```
 1                    MANCUSO
 2   that was prepared by Karen Hudson in
 3   October of 2007.  It's dated October 24,
 4   2007.
 5        Q.    And this is the brief you were
 6   just referring to when I discussed
 7   documents?
 8        A.    Yes.
 9        Q.    When was the first time that
10   you saw that brief?
11        A.    In the middle of August 2008.
12        Q.    How were you given a copy of
13   that brief?
14        A.    It was provided to me by the
15   Appeals Bureau of my office.
16        Q.    Who specifically provided ?
17        A.    Tammy Smiley, S-M-I-L-E-Y.
18        Q.    Did you request a copy of it?
19        A.    Yes.  I requested copies of it
20   and any other documents that might be
21   relevant to the investigation that I was
22   asked to conduct.
23        Q.    You made those requests of the
24   Appeals Bureau of your office?
25        A.    Tammy Smiley, yes.
```

1                      MANCUSO

2         Q.    What other documents did she

3    provide in or about August of 2008 to that

4    request?

5         A.    I don't know if I can remember

6    all of them, but as best as I can remember,

7    I received this document.  I received the

8    Memorandum of Law in support -- well,

9    excuse me, you made a motion to strike this

10   document or to retract this document.  I

11   received a copy of a Memorandum of Law in

12   support of that motion, a Memorandum of Law

13   in opposition to that motion, a response

14   from you, I believe, was another document I

15   received.

16        Q.    Actually, a reply?

17        A.    I want to use the word

18   response.  I want to use the word response.

19   I don't want to ask you questions, but I

20   want to say there was a response from you

21   to the Memorandum of Law that she provided

22   in connection with your motion arising from

23   the Appellate Brief.

24        Q.    That's your recollection?

25        A.    That's my best recollection,

                              MANCUSO

1    yes.

2         Q.    Fair enough.

3         A.    What other documents?

4    Ultimately, I received a copy of your

5    motion to strike based -- the 28-J letters

6    from the following summer, 2008.  And I may

7    have received other documents, but those

8    were the ones that come to mind now.

9         Q.    Do you remember receiving a

10   28-J letter after September of 2008?

11        A.    I received letters -- yes, I

12   did.  I received -- in addition to court

13   documents, I also received the letters

14   addressed to, is it Judge Wolf, over the

15   summer.  There were two letters that I

16   received from the summer of 2008.  One was

17   a letter from you with regard to 28-J;

18   another was a letter from Karen Hudson in

19   opposition to that, I received those.  I

20   received the letter that you sent to the

21   District Attorney in August of 2008, I

22   received a copy of it.  And I received a

23   copy of the letter that you sent to the

24   District Attorney in September 2008, which,

```
 1                   MANCUSO
 2  I believe, is the letter you're referring
 3  to now.
 4        Q.    No, I was referring to another
 5  28-J letter, meaning a letter to the Second
 6  Circuit, but since we're on that topic, you
 7  first received that letter to the District
 8  Attorney when?  Because you said you had
 9  received these documents in September of
10  2008.
11        A.    The letter that you generated
12  in late September 2008 or early
13  October 2008.
14              MR. MALONEY:  Let's mark this
15         letter of September 29, 2008 as
16         Plaintiff's Exhibit 3, please.
17              (Whereupon, the aforementioned
18         letter dated 9/29/08 was marked as
19         Plaintiff's Exhibit 3 for
20         identification as of this date by
21         the Reporter.)
22        Q.    Mr. Mancuso, I've just asked
23  the court reporter to mark this letter as
24  Plaintiff's Exhibit 3.
25              Is that the letter to the
```

```
 1                         MANCUSO

 2     District Attorney that you were just

 3     referring to?

 4            A.    Yes.

 5            Q.    And you would have first

 6     received that --

 7            A.    Late September or early

 8     October 2008.

 9            Q.    Also from Tammy Smiley?

10            A.    Yes.

11            Q.    Now, you mentioned Tammy

12     Smiley's title.  She's in the Appeals

13     Bureau?

14            A.    Yes.

15            Q.    What is her title?

16            A.    At the time we are discussing,

17     she was a deputy chief in the Appeals

18     Bureau.

19            Q.    And what is her title now?

20            A.    She is the Chief of the Appeals

21     Bureau.

22            Q.    If you know, why was the

23     Appeals Bureau getting this letter?

24            A.    I don't know.

25                  MS. BEN-SOREK:  Referring to
```

```
 1                        MANCUSO
 2          this letter, Plaintiff's Exhibit 3?
 3                  MR. MALONEY:   Yes.
 4          Q.    If you know, did the District
 5     Attorney, Kathleen Rice, ever receive the
 6     letter that is Plaintiff's Exhibit 3?
 7          A.    It is my understanding that she
 8     did not.
 9          Q.    And upon what information do
10     you base that understanding?
11          A.    I base that on a conversation
12     that Tammy Smiley and I had.
13          Q.    When did that conversation take
14     place?
15          A.    Last Friday.
16          Q.    Can you tell me the sum and
17     substance of that conversation, how that
18     came up?
19          A.    Tammy Smiley told me that she
20     had a conversation with Cheryl Rice, who is
21     the personal assistant to the District
22     Attorney, and that Cheryl Rice had told her
23     that that letter and the letter from
24     August 2008, also addressed to the District
25     Attorney, were not letters that she would
```

```
 1                         MANCUSO
 2    have shown to the District Attorney.
 3                  MR. MALONEY:  Let's mark the
 4            August 2008 letter as Plaintiff's
 5            Exhibit 4, please.
 6                  (Whereupon, the aforementioned
 7            letter dated 8/4/08 was marked as
 8            Plaintiff's Exhibit 4 for
 9            identification as of this date by
10            the Reporter.)
11            Q.    Mr. Mancuso, I'd like you to
12    take a look at the one-page document that's
13    just been marked as Plaintiff's Exhibit 4
14    and tell me, is that the letter that you
15    just referred to as the August 2008 letter
16    that, according to Tammy Smiley, would not
17    have been shown to the District Attorney?
18            A.    Yes.
19            Q.    And who, again, I'm sorry, is
20    the person who Tammy Smiley said told her
21    that the D.A. wouldn't have gotten that?
22            A.    Her name is Cheryl Rice.
23            Q.    Any relation to the District
24    Attorney?
25            A.    She is her sister-in-law.
```

```
 1                    MANCUSO
 2        Q.    And her personal assistant?
 3        A.    Yes.
 4        Q.    If you know, would a letter
 5   like this that's marked "confidential", and
 6   as it states in the first line, "Sent in an
 7   envelope marked personal and confidential",
 8   have been opened in the first instance by
 9   Cheryl Rice?
10        A.    I don't know, other than what I
11   already told you, passed along.  I don't
12   know.
13        Q.    Let's go back to that
14   conversation last Friday --
15             MR. MALONEY:  What was the date
16        last Friday?
17             MS. BEN-SOREK:  24th.
18        Q.    -- June 24th, you had this
19   conversation with Tammy Smiley?
20        A.    That's correct.
21        Q.    And you related some of the
22   details of that conversation.
23             Who initiated the conversation?
24        A.    Tammy Smiley.
25        Q.    Do you know why she contacted
```

1                    MANCUSO

2     you?

3          A.    This was only one part of the

4     conversation, this was not the sole part of

5     the conversation, but it was mentioned

6     during the course of the conversation.

7          Q.    To the extent that matters in

8     that conversation were not privileged, can

9     you tell me what else was talked about?

10         A.    I don't think there was

11    anything else in that conversation that

12    would be -- that I can recall that wouldn't

13    be subject to an interoffice communication

14    privilege.

15         Q.    So other items were discussed

16    and all of those, to your belief and

17    recollection now, would be privileged?

18         A.    I'm trying to recall exactly

19    what was discussed in that conversation --

20         Q.    Sure.   Take your time.

21         A.    -- before I answer that

22    question.

23               I don't really recall the other

24    contents of the conversation, other than in

25    the nature of logistics and going forward,

```
 1                       MANCUSO
 2    are we going forward with the deposition,
 3    am I going to be substituted, so I don't --
 4    let me retract that.
 5              I don't know that I can tell
 6    you that there's any aspects of that
 7    conversation that's privileged.  It was
 8    more in the nature of housekeeping, what's
 9    going to happen next, is there going to be
10    a motion to compel, was he not going to be
11    testifying.  It was really along those
12    lines.  I can't recall anything that was
13    privileged in that conversation.
14         Q.    Let's go back to the part of
15    the conversation in which Tammy Smiley
16    related things that she had been told by
17    Cheryl Rice.
18              One of the things that she
19    related to you as having been told to her
20    by Cheryl Rice is that these two letters,
21    Plaintiff's Exhibits 3 and 4, had never
22    been seen by the District Attorney; is that
23    correct?
24         A.    She said that they would not
25    have been shown to the District Attorney.
```

```
 1                        MANCUSO
 2        Q.     Was that pursuant to official
 3   policy or procedure?
 4        A.     I don't know.
 5        Q.     Did she give any explanation of
 6   why they would not have been shown to the
 7   District Attorney?
 8        A.     No.
 9        Q.     I'd like you to take a look at
10   Plaintiff's Exhibit 4, which is the letter
11   dated August 4, 2008, and there is a word
12   in bold stamped, typed up on the upper
13   right, can you read that word into the
14   record?
15        A.     Confidential.
16        Q.     And can you read the first line
17   of the letter after the salutation?
18        A.     "The enclosures are being sent
19   in an envelope marked "personal and
20   confidential" to insure that they receive
21   your personal attention."
22        Q.     Having read that, would it
23   surprise you that the intended recipient
24   never received the communication?
25        A.     No.
```

```
 1                        MANCUSO
 2          Q.    Do you know for a fact that
 3   D.A. Rice never saw this letter?
 4          A.    Personally, I have no knowledge
 5   as to who received what.  I do know that
 6   Tammy Smiley told me that in the ordinary
 7   course, she would never have been shown
 8   these kinds of materials, that she received
 9   a great deal of mail marked personal and
10   confidential would not cause concern to her
11   in and of itself.  Those things were told
12   to me by Tammy Smiley.
13          Q.    Who makes the decision, if you
14   know, as to what to show the D.A. and what
15   to shield from the D.A.?
16                MS. BEN-SOREK:  Objection.
17          A.    I don't personally know.
18          Q.    Do you know if there is an
19   actual policy relating to that
20   decision-making?
21          A.    Not that I'm aware of.
22          Q.    So would it be fair to say it's
23   an ad hoc policy?
24                MS. BEN-SOREK:  Objection.
25          A.    Not that I'm aware of.  I have
```

```
 1                      MANCUSO
 2    no knowledge whether there's a policy in
 3    that regard.
 4          Q.    Do you know who actually makes
 5    that decision regarding incoming mail that
 6    is addressed to the District Attorney
 7    personally?
 8          A.    I don't know.
 9          Q.    Do you know who would know?
10          A.    I don't know who would know.
11    It would be logical to ask that question of
12    people who operate at the executive level
13    at my office.
14          Q.    I agree.
15                Do you think the District
16    Attorney would know?
17          A.    Do I think the District
18    Attorney would know?  I express no opinion
19    as to what the District Attorney would know
20    or not know or what her state of mind is.
21          Q.    So anything else in that
22    conversation last Friday, June 24th, that
23    Tammy Smiley related to you as having been
24    told to her by Cheryl Rice in connection
25    with any documents in this case?
```

```
 1                        MANCUSO
 2         A.    No.
 3         Q.    Did Tammy Smiley give you any
 4   instructions during that conversation?
 5         A.    No.
 6         Q.    Has Tammy Smiley ever given you
 7   any instructions with regard to how to
 8   proceed in this investigation or this
 9   matter?
10         A.    No.
11         Q.    When did you first communicate
12   with Tammy Smiley about the investigation
13   of my Complaint, would that have been
14   around the time you got those documents
15   from her?
16         A.    Mid August 2008.
17         Q.    Let's go back to Plaintiff's
18   Exhibit 2, and if you would please turn to
19   Page 6.
20               (Whereupon, the witness
21          complies.)
22         Q.    Can you identify any text on
23   Page 6 that you believe now or would have
24   believed back in August 2008 to be the
25   subject of the Complaint I was making?
```

```
 1                      MANCUSO
 2          A.     Yes.
 3          Q.     Could you read that text into
 4     the record?
 5          A.     "In addition, since Plaintiff's
 6     infant sons had been in the home at the
 7     time of the incident, Office of Child
 8     Family Services investigated, concluding
 9     that the incident "indicated" maltreatment
10     of his sons, and Plaintiff was listed on
11     the New York State Child Abuse and
12     Maltreatment Register, citing Maloney
13     versus the County of Nassau, 2007, US DIST
14     Lexus 71162, Page *9."
15          Q.     Thank you.
16                 When did you first read that
17     passage?
18          A.     In mid August 2008.
19          Q.     When did you first receive this
20     file as a matter to investigate?
21          A.     Mid August 2008.
22          Q.     Did you investigate in any way
23     the alleged listing on the Child Protective
24     Services Register?
25          A.     Yes.
```

```
 1                     MANCUSO
 2         Q.    What did you find?
 3         A.    I concluded that the listing --
 4   that there was, in fact, a listing at that
 5   time, and I concluded that the -- that
 6   there had been no basis to make a
 7   recommendation of criminal prosecution of
 8   Karen Hudson in connection with the
 9   statement made in the Appellate Brief that
10   I just read, and I made such a
11   recommendation.
12         Q.    Did you investigate whether or
13   not the listing had at that time been
14   adjudicated as founded or unfounded?
15         A.    No.
16         Q.    Did you investigate who made
17   the original call to Child Protective
18   Services?
19         A.    No.
20         Q.    How did you determine that
21   there was in fact a listing at that time.
22         A.    By reading the case that I just
23   cited.
24         Q.    At the time, that was an
25   unpublished opinion; correct?
```

```
 1                         MANCUSO
 2          A.    At the time that I was assigned
 3     the case, I had no problem locating it as a
 4     reported opinion.
 5          Q.    Let me ask you about that.
 6                When you say reported opinion,
 7     do you mean on Lexus with an Lex number?
 8          A.    I believe it was a Westlaw
 9     number at the time I located it in
10     August 2008.
11          Q.    You prefer Westlaw than Lexus?
12          A.    That's the system we have in
13     our office.
14          Q.    When it came up, if you
15     remember, did it show an F. Supp citation?
16          A.    At that time it was a Westlaw
17     citation.  When I went back preparing for
18     this deposition, it is an F. Supp citation
19     now.
20          Q.    Right.  Did you find that odd?
21                MS. BEN-SOREK:   Objection.
22          A.    No.
23          Q.    Did you notice the time
24     interval when it went from Westlaw to
25     F. Supp?
```

```
 1                      MANCUSO
 2          A.    No.  I just know what it was
 3     then and what it is now.
 4          Q.    Did you happen to look at it in
 5     the actual reporter?
 6          A.    What do you mean?
 7          Q.    You know those books?
 8          A.    No.
 9          Q.    On what basis did you make the
10     determination that this Complaint, and I'm
11     going to call it a Complaint of Violation
12     of Social Services Law and Penal Law, and
13     I'll cite statutes later, at what point did
14     you decide or make a determination that
15     that was not founded?
16          A.    I made that determination in
17     September of 2008, and I made a
18     recommendation in that time frame that
19     Karen Hudson not be prosecuted in
20     connection with that.
21          Q.    To whom did you make that
22     recommendation?
23          A.    Meg Reis and to Marshall
24     Traeger ultimately.
25          Q.    Did you make that
```

```
 1                         MANCUSO
 2   recommendation before you received the
 3   letter that was marked in this deposition
 4   as Plaintiff's Exhibit 3?
 5              MS. BEN-SOREK:  What was the
 6         question?
 7              (Whereupon, the question was
 8         read back by the Court Reporter.)
 9        A.    Yes, I did, but after I
10   received that letter, I renewed the
11   recommendation that I had made.
12        Q.    When you received that letter,
13   did you receive the enclosure that's
14   referenced with it?
15        A.    Yes.
16        Q.    Did you read that enclosure?
17        A.    Yes.
18        Q.    To your recollection, what was
19   that enclosure?
20        A.    I really can't give you the
21   details of it without seeing it in front of
22   me.
23        Q.    Request granted.
24              MR. MALONEY:  Mark it as
25         Plaintiff's Exhibit 5, please.
```

```
 1                        MANCUSO
 2               (Whereupon, the aforementioned
 3          Decision After Hearing was marked
 4          as Plaintiff's Exhibit 5 for
 5          identification as of this date by
 6          the Reporter.)
 7          Q.    I'd like you to take a look at
 8     what's been marked Plaintiff's Exhibit 5.
 9               (Whereupon, the witness
10          complies.)
11          Q.    Have you had a chance to review
12     it?
13          A.    Yes.
14          Q.    Does that appear to you to be
15     the same as the enclosure that went with
16     the letter that's marked as Plaintiff's
17     Exhibit 3?
18          A.    Yes.
19          Q.    Rather than have the court
20     reporter read back the question, I'll ask
21     you:  Did you review this document before
22     you renewed your recommendation?
23          A.    Yes.
24          Q.    Was there anything in this
25     document that caused you to reconsider any
```

```
 1                       MANCUSO
 2     aspect of your initial recommendation?
 3          A.    No.
 4          Q.    Now, this document indicates
 5     that the listing on the register was all
 6     along not supported by a fair preponderance
 7     of the evidence; is that a correct
 8     statement?
 9          A.    I don't see the phrase "all
10     along" in it anywhere.
11          Q.    Well, you're right.
12                But the listing occurred in or
13     around 2000, and this fair hearing occurred
14     in or around 2008, and the fair hearing
15     decides, if I'm correct, that there was not
16     a fair preponderance of evidence to have
17     placed my name on that register; is that
18     correct?
19          A.    That's correct.
20          Q.    So that would have been a lack
21     of a fair preponderance of evidence at the
22     beginning, not in 2008?
23          A.    The issue was whether you were
24     on the register at the time that Karen
25     Hudson wrote the Appellate Brief, not
```

```
 1                        MANCUSO
 2   whether you should have been in light of
 3   subject court decisions.  Not whether along
 4   or never or words to that effect.  It was
 5   never about whether you were or you
 6   weren't, and you were.
 7          Q.    Has the District Attorney's
 8   office, to your knowledge, ever prosecuted
 9   anyone else for disclosing in a court
10   proceeding that an adverse party is listed
11   on the register?
12          A.    I'm not aware of any such
13   prosecution.
14          Q.    Have you ever heard of a
15   prosecution of an individual named Tuifel.
16   I don't know if I'm pronouncing it
17   correctly.  It's spelled T-U-I-F-E-L.
18          A.    I'm familiar with the name.
19          Q.    In the context of that sort of
20   prosecution?
21          A.    In the context of having heard
22   the name mentioned in my bureau.
23          Q.    You never managed that case?
24          A.    No.
25          Q.    Do you know who managed that
```

```
 1                    MANCUSO
 2   case?
 3          A.    No.
 4          Q.    But it's managed in your
 5   bureau?
 6          A.    I believe so, or was.  I've
 7   heard the name.
 8          Q.    We'll get back to Tuifel.
 9                MR. MALONEY:  Let's mark the
10          Notice of Entry and Demand For
11          Retraction of Appellate's Brief as
12          Plaintiff's Exhibit 6, please.
13                (Whereupon, the aforementioned
14          Notice of Entry and Demand For
15          Retraction of Appellate's Brief
16          was marked as Plaintiff's Exhibit
17          6 for identification as of this
18          date by the Reporter.)
19          Q.    Mr. Mancuso, please take a look
20   at the three-page document that's just been
21   marked as Plaintiff's Exhibit 6 and tell me
22   if you've ever seen that document before?
23          A.    Yes.
24          Q.    If you would please turn to the
25   second page and tell me what the date is on
```

```
 1                         MANCUSO
 2      that document?
 3           A.    November 19, 2007.
 4           Q.    Is it correct that you first
 5      saw that document in August of 2008?
 6           A.    Yes.
 7           Q.    Would it be fair to say that
 8      this document is the initial reporting of
 9      what I consider to be a criminal act?
10                 MS. BEN-SOREK:  Objection.  If
11            he knows.
12           A.    Well, first of all, I can't
13      really comment on what you consider, but
14      while you're rephrasing that, let me read
15      the document.
16           Q.    Is this a notice, a report and
17      Complaint to the District Attorney of the
18      commission of a Class A misdemeanor?
19                 MS. BEN-SOREK:  Objection.
20                 You can answer.
21           A.    It's a Notice of Entry which
22      makes reference that it is intended to
23      serve as a notice reporting Complaint of
24      that, yes.
25           Q.    To the best of your knowledge,
```

```
 1                        MANCUSO
 2    did anyone else act on that notice, report
 3    and Complaint before forwarding this
 4    document to you in August of 2008?
 5         A.    Not so far as I know.
 6         Q.    Does this name, Karen Hudson,
 7    as the alleged perpetrator of that
 8    misdemeanor?
 9         A.    Not that I see.
10         Q.    It alleges one or more public
11    servants; is that correct?
12         A.    That's correct.
13         Q.    It's actually two misdemeanors,
14    and we'll actually go into it now.
15              One is Subdivision 12 of
16    Section 422 of the Social Services Law.
17    Are you familiar with that statutory
18    provision?
19         A.    Yes.
20         Q.    That defines certain activity
21    as a Class A misdemeanor; correct?
22         A.    Yes.
23         Q.    Without reviewing the statute,
24    what activities are defined as a Class A
25    misdemeanor?
```

```
 1                      MANCUSO
 2        A.    I believe it defines to
 3   willfully permitting or encouraging the
 4   release, something along those lines, of
 5   the information contained on the central
 6   register.
 7        Q.    I'm going to, unless there's an
 8   objection, without marking this as an
 9   exhibit, I have a copy of it with me in my
10   case, it's identical, I believe, in the
11   main part, in the Appellate part, but if
12   you want to take a look at both --
13             MS. BEN-SOREK:  I think what's
14        germane is whether the pocket part
15        was amended.
16             MR. MALONEY:  Well, it's
17        actually 2009.
18        Q.    But that would have been in
19   effect -- the main part would have been
20   what was in effect at the time of the
21   review you undertook.
22        A.    Is that a question?
23        Q.    No.  I'm merely stating that
24   this is a 2009 pocket part.  I don't
25   believe the subdivision differs from the
```

1                    MANCUSO

2    main part.  You can review both, but I'd

3    like you independently, based on what you

4    have, to tell me if the section that you

5    can read there is the section that was in

6    effect at the time you were undertaking

7    this review?

8         A.    If that's the question, the

9    answer is yes.

10        Q.    Which part can we look at, one

11   pocket part or two?

12        A.    I'm referring to the section

13   itself, 422 sub 12 of the Social Services

14   Law.

15        Q.    I mean in this volume that you

16   have in front of you, you're talking about

17   the section, you're reading from the pocket

18   part or main part?  I think they're

19   identical.  I haven't looked this morning.

20        A.    Section 12 is identical in the

21   pocket part to the main volume.

22        Q.    And in that case, so that we

23   can both look at the same thing, I'll take

24   one and let you have the other.

25                 Now that you had a chance to

```
 1                    MANCUSO
 2    see that statute in front of you, could you
 3    read into the record the verbiage of
 4    Section 422 Subdivision 12 of the Social
 5    Services Law?
 6         A.    It reads as follow:  "Any
 7    person who willfully permits and any person
 8    who encourages any release of any data or
 9    information contained in the central
10    register to persons or agencies not
11    permitted by this title shall be guilty of
12    a Class A misdemeanor."
13         Q.    At the time you conducted this
14    investigation beginning in August of 2008,
15    did you believe this to be one of the two
16    statutory provisions I was complaining
17    under?
18         A.    Yes, but I have to tell you, I
19    really did not interpret the material I
20    received as a Complaint with regard to the
21    other statutory provision.  I focused on
22    this (indicating).
23         Q.    So you didn't investigate my
24    Complaint under Subdivision 1 of Section
25    195.00 of the Penal Code?
```

```
 1                      MANCUSO
 2          A.    I did not.
 3          Q.    Okay, we'll get back to that.
 4     Actually, did anyone else, to your
 5     knowledge?
 6          A.    Not to my knowledge.
 7          Q.    So your determination then was
 8     made solely on interpretation of this
 9     provision, Subdivision 12 of Section 422,
10     as by the facts that you understood them?
11          A.    With regard to this issue, yes,
12     that's correct.
13          Q.    Do you believe, as you sit here
14     today, that the verbiage on Page 6 of the
15     brief, Plaintiff's Exhibit 2, amounts to
16     release of any data and information
17     contained in the central register?
18          A.    No.
19          Q.    Why not?
20          A.    Because it had already been
21     released.
22          Q.    Is there a provision in the
23     statute that says that once it's released,
24     it's fair game?
25          A.    The statute doesn't speak to
```

```
 1                    MANCUSO
 2    the situation either way.
 3         Q.    Where and when had that data
 4    been released?
 5         A.    It had been released in the
 6    course of action you brought entitled
 7    Maloney versus County of Nassau as cited in
 8    Karen Hudson's Appellate Brief.  In fact,
 9    it was one of the causes of action you
10    brought in connection with that action, in
11    violation of your Constitutional Rights as
12    placed on the central registry.  It was
13    public information.
14         Q.    When you say it was public
15    information, do you believe it would be
16    public information simply because it was
17    reported on Lexus and Westlaw, or would it
18    have had to be reported in the Federal
19    Reporter to become public information?
20         A.    At the time that I conducted my
21    review, it had been reported on Westlaw.  I
22    consider that to be public information.
23         Q.    Did you find any cases that
24    said that if data contained in the central
25    register is released in some public venue,
```

```
 1                      MANCUSO
 2   it may then be freely released by anybody
 3   with impunity as to the provisions of
 4   Section 422 Subdivision 12?
 5              MS. BEN-SOREK:  Objection.
 6        A.    But I didn't see any cases for
 7   or against that would support either
 8   proposition.
 9        Q.    Did you write any memo about
10   the interpretation of the statute as to
11   that aspect?
12        A.    I did not write a memo
13   specifically about the interpretation of
14   the statute, no.
15        Q.    Did you raise the question of
16   that aspect of the interpretation of the
17   statute to any of your superiors?
18        A.    My recommendation was based on
19   my interpretation of the public release
20   aspect that we've been discussing.
21        Q.    Was your recommendation in
22   writing?
23        A.    Yes.
24        Q.    Do you consider that writing to
25   be privileged?
```

```
 1                    MANCUSO
 2         A.    Yes.
 3         Q.    How many memoranda or other
 4   writings constituted that recommendation?
 5         A.    Three.
 6         Q.    Can you give me the dates of
 7   those memoranda?
 8         A.    I don't know them offhand.
 9         Q.    Can you give me the approximate
10   dates?
11         A.    The fall of 2008.
12         Q.    All three?
13         A.    Yes.
14         Q.    And that's including the
15   renewal of the recommendation after you
16   received what are Plaintiff's Exhibits 3
17   and 5?
18         A.    Yes, actually, the renewal may
19   have been an additional email regarding the
20   recommendation.  That may not have been a
21   separate recommendation in and of itself.
22   It was not a separate recommendation.  It
23   was in the nature of an email, which I also
24   consider to be privileged.
25         Q.    Sure.
```

1                          MANCUSO

2                Would it be fair to say that

3       the sole basis that you believed that this

4       was not a violation of Subdivision 12 of

5       Section 422 was that the disclosure had

6       already been made in that Eastern District

7       opinion?

8            A.    No.

9            Q.    What other basis that you

10      believed --

11           A.    I also concluded that the

12      conduct couldn't be considered willful.

13      One of the two ways in which one can

14      violate that section is by permitting the

15      release and I concluded the conduct not

16      willful.

17           Q.    On what basis did you determine

18      that it was not willful?

19           A.    On the basis, first of all, of

20      examining the statute to see if it spoke to

21      the subject of what willful means in that

22      context, I saw no reference to that.  But

23      on the basis of concluding that willful

24      meant something beyond intentional conduct,

25      it meant something in the nature of

```
 1                    MANCUSO
 2  demonstratively bad faith, and that was not
 3  present here.
 4         Q.    So your interpretation of the
 5  statute is that an element of it is that
 6  the release of the data not only be
 7  intentional, but be made in bad faith?
 8         A.    That it be willful.  That's
 9  what the statute says.  It did not provide
10  any further explanation of what willful
11  meant.  I was able to interpret that in the
12  course of deciding whether to recommend
13  that Karen Hudson be prosecuted.
14         Q.    In the statute I'm talking
15  about, willful is actually written as an
16  adverb, willfully?
17         A.    That's correct.
18         Q.    What adverb does that adverb
19  provide?
20         A.    What verb?  Permit.
21         Q.    Is there another component to
22  the conduct that's prohibited?
23         A.    I can break down the elements
24  for you, if you wish.
25         Q.    Sure.
```

```
 1                      MANCUSO
 2          A.    In order to prove that a person
 3    violated Subdivision 12 of Section 422 of
 4    the Social Services Law, one would have to
 5    prove beyond a reasonable doubt to the
 6    satisfaction of -- unanimous satisfaction
 7    of six jurors that the person under the
 8    first part willfully, would be the first
 9    aspect, permitted would be the second
10    aspect, release data and information, that
11    it be in the central register, that it be
12    the persons or agencies not permitted by
13    the title.
14               In a second way of prosecuting,
15    one would have to show those same things,
16    except those that show beyond a reasonable
17    doubt that a person willfully permitted, it
18    would be necessary to show that the person
19    encouraged release of data.  All of those
20    would be elements of the crime that would
21    have to be proven beyond a reasonable
22    doubt.
23          Q.    Did you consider encourage as
24    an alternative, is that a disjunctive; in
25    other words, is the prosecution successful
```

```
 1                    MANCUSO
 2   if it proves either that the person
 3   willfully permitted or that the person
 4   encouraged release of data?
 5        A.    I viewed it as disjunctive,
 6   yes.
 7        Q.    You told me so far that you
 8   believe that the permitting of the release
 9   of the data was not willful in this case?
10        A.    Yes.
11        Q.    On what basis did you make that
12   determination?
13        A.    Because in reading the
14   Appellate Brief, I came to the conclusion
15   that there was a reason pertaining to the
16   litigation for which that information was
17   included.
18        Q.    In other words, to make a good
19   ad hominem?
20        A.    No.
21        Q.    I knew you were going to say
22   that.
23              Why was it included in the
24   brief then?
25        A.    I came to the conclusion that
```

```
 1                    MANCUSO
 2   it was being offered as a factor to be
 3   considered by the Court in determining
 4   whether it was appropriate -- excuse me, to
 5   be considered by the Court in determining
 6   whether the statute in question was
 7   constitutional as applied to you and your
 8   situation.
 9        Q.    Is that the constitutional
10   statute determined as applied to the
11   individual?
12        A.    I believe, and I certainly
13   haven't made myself familiar, and certainly
14   to the extent that you are with the
15   underlying litigation, but I believe your
16   declaratory judgment sort to seek the
17   constitution under faith.  And I believe
18   the position that was taken with the
19   Appellate Brief was that the statute
20   applied to you is not unconstitutional and
21   that this was a factor to be considered
22   that in the very incident for which your
23   declaratory challenge had arisen, you had
24   involved yourself in a police stand-off
25   with two one-year old children inside your
```

```
 1                    MANCUSO
 2    house resulting in your being placed on the
 3    central register for maltreatment of those
 4    children, and that there was a reason for
 5    her to include this in the Appellate Brief,
 6    and therefore, I didn't see it as being
 7    willful in any way.
 8         Q.    As you say, it was in the
 9    Appellate Brief?
10         A.    Yes.
11         Q.    So the Appellate Court reviews
12    the decision of the Court below?
13         A.    Yes.
14         Q.    Were these factors considered
15    by the Court below?
16         A.    Well, you litigated that in the
17    context of the Appellate Brief, and the
18    position taken by Karen Hudson was that the
19    Court is always free to take consideration
20    of other court proceedings, and this was
21    specifically cited as being information by
22    another court decision, but certainly, I
23    wouldn't hold myself to have anymore
24    knowledge other than that.
25         Q.    Did those considerations enter
```

```
 1                          MANCUSO
 2      into your mind when you made a
 3      determination whether to be prosecuted?
 4           A.    The consideration of whether
 5      she had behaved willfully did.  Now, of
 6      course, in order for her to be prosecuted,
 7      she would have to both act willfully and
 8      permit, one or the other wouldn't do, and I
 9      concluded that it didn't constitute release
10      for the reasons I've already said.  But in
11      addition, as you asked in another question,
12      were there any other considerations, yes, I
13      considered the issue of willfully.
14           Q.    Did you ever become aware of
15      who set the wheels in motion and made the
16      complaint to Child Protective Services?
17                MS. BEN-SOREK:  Objection to
18            form.
19                You can answer.
20           A.    I don't know.
21           Q.    Are you aware that had the
22      police believed any maltreatment occurred,
23      they would have had an obligation to call
24      under Social Services Law?
25           A.    I have no knowledge.
```

```
 1                        MANCUSO
 2          Q.     Let's look at the encourages
 3    file.
 4                 When you first received this
 5    file, August of 2008, you received with it
 6    not only the document that's Plaintiff's
 7    Exhibit 6, but also the document that's
 8    Plaintiff's Exhibit 4; correct?
 9          A.     Yes.
10          Q.     In both of those documents, I
11    had requested retraction of that part of
12    the brief that made that disclosure; is
13    that correct?
14          A.     Both of those documents being
15    this document and what other document?
16          Q.     We'll be specific for the
17    record, Plaintiff's Exhibit 4, which you
18    have in front of you, and Plaintiff's
19    Exhibit 6, which is right here
20    (indicating).
21                 MS. BEN-SOREK:  I object to the
22            form.  The witness can answer.
23          A.     In the document marked
24    Plaintiff's Exhibit 6, you requested
25    retraction of the Appellate Brief.  I don't
```

```
 1                        MANCUSO
 2    believe you did so in the document marked
 3    Plaintiff's Exhibit 4.
 4          Q.    Okay, fair enough.
 5                Document 6 requests retraction.
 6    To the best of your knowledge, did anyone
 7    at the District Attorney's office consider
 8    attempting to modify that brief that was
 9    submitted to the Second Circuit?
10          A.    I don't know.
11          Q.    Who would know?
12          A.    I don't know.
13          Q.    When we look at the statute,
14    the word encourage, encourage the release
15    of any data or information, or what did
16    that mean?
17          A.    I can't recall how I
18    interpreted it at the time, but probably
19    the way I interpret it now, which is
20    encourage would be to take actions to cause
21    others to do it because understand, once I
22    concluded that the data had already been
23    released, then the matter was resolved so
24    far as my recommendation was concerned, but
25    I continued to look at it from these other
```

1                          MANCUSO

2       points of view to consider other aspects of

3       it, but the one point resolved it from my

4       point of view.

5             Q.    To the extent that you can tell

6       me that it's not privileged, were those

7       aspects of those considerations reflected

8       in your memoranda?

9             A.    I can't go into the substance

10      of the memoranda, so the answer to your

11      question is that it's privileged.

12            Q.    Yes.

13                  Do you recall having done any

14      case law research to address those several

15      considerations?

16            A.    I reviewed the cases that were

17      associated with the section.  I should say

18      I reviewed the annotations that were

19      associated with the section, the Westlaw

20      annotations that were associated with the

21      section, to see whether any of them

22      appeared to be relevant and would be worth

23      reading in their own right, and I did not

24      see that anywhere.

25            Q.    Overall, from the time you got

```
 1                    MANCUSO
 2   this file in August of 2008 to the time you
 3   made your final recommendation or renewal
 4   of your recommendation by email perhaps and
 5   wrote me that letter on March 17, 2009, how
 6   many hours of work time would you say you
 7   spent on this matter?
 8                MS. BEN-SOREK:  Objection.
 9        A.    I couldn't answer that
10   question.  We don't keep billable hours.
11                (Whereupon, a brief recess was
12            taken.)
13                MR. MALONEY:  Read back the
14            last question and answer, please.
15                (Whereupon, the question and
16            answer was read back by the Court
17            Reporter.)
18        A.    Before you ask your next
19   question, I've also remembered that I did
20   request recently and received a copy of the
21   responses, the admissions that you sought.
22   What is the proper name of that document?
23        Q.    Request for Admission?
24        A.    Request for Admissions, so I
25   have seen that too.  That's recently.  Not
```

```
  1                        MANCUSO
  2    at the time.  That's documents from this
  3    year.
  4         Q.    Did anyone else in your office
  5    work on this matter with you?
  6         A.    No, other than to the extent
  7    that Tammy Smiley, you know, provided me
  8    with information.
  9         Q.    Would it be fair to say that if
 10    anybody in your office had some ability to
 11    consider whether or not to withdraw that
 12    Appellate Brief, by which I mean
 13    Plaintiff's Exhibit 2 here, that it would
 14    have been Tammy Smiley as chief of the
 15    Appeals Bureau?
 16         A.    Can you say it again?
 17              THE WITNESS:  Or read it back,
 18         please.
 19              (Whereupon, the referred-to
 20         question was read back by the
 21         Reporter.)
 22              MS. BEN-SOREK:  Objection.
 23              You can answer.
 24         A.    I really don't know where the
 25    authority in my office would lie to make
```

```
 1                    MANCUSO
 2    that decision, and I can't say to you that
 3    Tammy Smiley, because she's the chief of
 4    the Appeals Bureau, would have such
 5    authority.  This is a matter in which the
 6    District Attorney's office, the District
 7    Attorney is being represented by the County
 8    attorney, and I don't know what the
 9    parameters of Tammy Smiley's authority are
10    under those circumstances.
11         Q.   If the District Attorney's
12    office wanted to make a change in a brief
13    that had been filed on its behalf, would it
14    be able to?
15              MS. BEN-SOREK:  Objection.
16              You can answer.
17         A.   I don't know.
18         Q.   Let's look now to the other
19    statute.  You said you didn't give it much
20    consideration, and I'm talking now about
21    Subdivision 1 of Section 195.00 of the
22    Penal Code, and I'm going to do the same as
23    before, give you McKinney's with a couple
24    of tabs on it and ask you to take a look at
25    it.
```

```
 1                          MANCUSO
 2                  (Whereupon, the witness
 3           complies.)
 4           Q.    Have you looked at both the
 5      pocket part and the main?
 6           A.    I'm familiar with that section.
 7           Q.    The pocket part hasn't changed
 8      and you're familiar it, so I'm just going
 9      to read to save your voice a minute here.
10                  195.00 is headed Official
11      Misconduct.
12                  "A public servant is guilty of
13      official misconduct when, with intent to
14      obtain a benefit or deprive another person
15      of a benefit:
16                  "Subdivision 1, he commits an
17      act relating to his office but constituting
18      an unauthorized exercise of his official
19      functions, knowing that such act is
20      unauthorized."
21                  Do I read that correctly,
22      Mr. Mancuso?
23           A.    Why don't I read it again since
24      I wasn't listening to the begin.
25                  "A public servant is guilty of
```

```
 1                    MANCUSO
 2    official misconduct when, with intent to
 3    obtain a benefit or deprive another person
 4    of a benefit:
 5                "He commits an act relating to
 6    his office but constituting an unauthorized
 7    exercise of his official functions, knowing
 8    that such act is unauthorized."
 9         Q.    Okay, you said that you are
10    already familiar with this provision?
11         A.    Yes.
12         Q.    And you also said, I believe,
13    that this was not really something that you
14    considered in any detail when you were
15    evaluating my Complaint?
16         A.    No, the evaluation of your
17    Complaint was based on the August 4, 2008
18    letter that's been marked as Plaintiff's
19    Exhibit 4.  It only makes reference to the
20    Social Services Law.  I did not, at that
21    time, review your Complaint through this
22    prism of the official misconduct section of
23    the Penal Law.
24         Q.    But when you received the
25    letter of August 4, 2008, which is
```

```
 1                    MANCUSO
 2    Plaintiff's Exhibit 4 here, you also
 3    received the document that is Plaintiff's
 4    Exhibit 6 here; is that correct?
 5          A.    I did not receive all these
 6    documents at the same time.  I received all
 7    of them in the August 2008 time frame, but
 8    not simultaneously, and I received that
 9    August 4, 2008 letter prior to receiving
10    the document that's been marked as
11    Plaintiff's Exhibit 6.  I did not interpret
12    the documents I received as, nor the
13    instructions I was given, as calling upon
14    me to conduct an investigation under the
15    official misconduct section.
16          Q.    When you received the document
17    that's marked as Plaintiff's Exhibit 6, did
18    you or did you not notice that it cited the
19    official misconduct section?
20          A.    I read it.  I'm sure I noticed
21    it at the time, but I did not interpret
22    that as something to be investigated.
23               MR. MALONEY:  Mark this as
24          Plaintiff's Exhibit 7, please.  It's
25          a WebCrims printout, two pages.
```

```
 1                        MANCUSO
 2                (Whereupon, the aforementioned
 3           two-page WebCrims printout was marked
 4           as Plaintiff's Exhibit 7 for
 5           identification as of this date by
 6           the Reporter.)
 7           Q.    Are you familiar with the
 8    WebCrims system?
 9           A.    Yes.
10           Q.    Do you recognize this as a
11    printout from WebCrims?
12           A.    Yes.
13           Q.    The first page of this document
14    lists two charges against a certain
15    defendant.  Were those two -- actually, it
16    seems to list four, but among them are
17    Social Services Law Section 422 Subdivision
18    12, and Penal Law Section 195.00
19    Subdivision 1; is that correct?
20           A.    Yes.
21           Q.    And this is the defendant whose
22    name I mentioned before, Glenn Tuifel,
23    T-U-I-F-E-L, who is currently being
24    prosecuted by the District Attorney's
25    office.
```

```
 1                          MANCUSO
 2          A.    Is that a question?
 3          Q.    Would you agree with that based
 4   on this WebCrims printout?
 5          A.    I would agree that he's
 6   currently being prosecuted from reading the
 7   second page that lists the date involving
 8   motions of August 9, 2011.
 9          Q.    You mention that the name
10   sounded familiar to you.  Does it sound
11   familiar to you in the context of this
12   particular prosecution or type of
13   prosecution?
14          A.    It sounds familiar to me as
15   someone who is being prosecuted by our
16   office, but as to what he was being
17   prosecuted for or what the substance is, I
18   do not have knowledge.
19              MR. MALONEY:  Mark this as
20          Plaintiff's Exhibit 8, please.  It's
21          a New York Post article, three pages.
22              (Whereupon, the aforementioned
23          three-page New York Post article was
24          marked as Plaintiff's Exhibit 8 for
25          identification as of this date by the
```

```
 1                         MANCUSO
 2            Reporter.)
 3            Q.    I'd like you to take a few
 4    minutes to take a look at the first page of
 5    the three-page document that's been marked
 6    as Plaintiff's Exhibit 8.
 7                  (Whereupon, the witness
 8            complies.)
 9            A.    I've read it.
10            Q.    Does that refresh your
11    recollection as to the nature of the
12    prosecution against Mr. Tuifel?
13            A.    Does it refresh my
14    recollection?
15            Q.    Right, specifically refresh
16    your recollection.
17            A.    No.
18            Q.    Obviously, it informs you.
19            A.    Yes.
20            Q.    But if it doesn't refresh your
21    recollection --
22            A.    That's correct.
23            Q.    You have no other knowledge of
24    this prosecution?
25            A.    Right.
```

```
 1                        MANCUSO
 2         Q.    Would you have idea who in your
 3    office is handling this?
 4         A.    I don't know which attorney is
 5    handling it.
 6         Q.    And I think we already
 7    established it would be in your bureau; is
 8    that correct?
 9         A.    Yes.
10         Q.    And can we agree that this
11    individual is being prosecuted under both
12    of the provisions, at least, that I
13    mentioned, including --
14         A.    It would appear that way from
15    the exhibits that you handed me, yes.
16         Q.    Do you belong to any
17    professional associations?
18         A.    Yes.
19         Q.    Which ones?
20               MS. BEN-SOREK:  Objection.
21               You can answer.
22         A.    Nassau County Bar Association.
23         Q.    How long have you been a
24    member?
25         A.    For 32 years.
```

```
 1                        MANCUSO
 2           Q.    Do you currently hold any
 3      office with the Nassau County Bar
 4      Association?
 5                  MS. BEN-SOREK:  Same objection.
 6           A.    Yes.
 7           Q.    What office?
 8           A.    First vice-president.
 9           Q.    How long have you held that
10      office?
11           A.    For less than one month.
12           Q.    Are you also a sustaining
13      member of the Nassau County Bar
14      Association?
15           A.    Yes.
16           Q.    What does that mean?
17           A.    It means that I pay some
18      additional amount of money to the Bar
19      Association, which is available for the Bar
20      Association's general administrative uses.
21           Q.    How much?
22                  MS. BEN-SOREK:  Objection.
23           A.    I think it's something like
24      250, something in the range of $250 a year.
25           Q.    Are you acquainted with other
```

```
 1                      MANCUSO
 2    sustaining members?
 3         A.    Yes.
 4              MS. BEN-SOREK:  Objection to
 5         this entire line, so I don't keep
 6         repeating it.
 7              THE WITNESS:  Do I keep
 8         answering?
 9              MS. BEN-SOREK:  Unless it's
10         privileged, and I'll tell you then.
11              MR. MALONEY:  I mean, you know,
12         this is Rule 26, likely to lead to
13         discoverable information.
14              MS. BEN-SOREK:  No, I think the
15         standard is likely to be admissible
16         information as initial evidence.
17              MR. MALONEY:  Well, then let's
18         go down that dead end.
19              Mark this as Plaintiff's
20         Exhibit 9, please.
21              (Whereupon, the aforementioned
22         Rule 11 was marked as Plaintiff's
23         Exhibit 9 for identification as of
24         this date by the Reporter.)
25         Q.    Mr. Mancuso, I'd like to direct
```

```
 1                         MANCUSO
 2     your attention to the lower left quadrant
 3     of that page, Plaintiff's Exhibit 9, which
 4     lists, I guess, the most recent roster of
 5     sustaining members.  You're among them.
 6     And what I want to ask you about is only
 7     certain members of that list, and I'm going
 8     to ask you the same question as to each
 9     one, so I would like to phrase that
10     question now.
11          A.    Okay.
12          Q.    The question is:  Whether
13     you've ever had any conversation with that
14     individual about either this investigation
15     that we've just been discussing or about
16     me?
17          A.    Or about you?
18          Q.    Yes.
19          A.    Okay.
20          Q.    And I will represent to you
21     that these are all individuals in which I
22     have had some personal dealings in one
23     fashion or another in relatively recent
24     times.
25                    MS. BEN-SOREK:  Note my
```

```
 1                    MANCUSO
 2          objection to the form of the
 3          question.
 4          Q.   It's just a yes or no question
 5   as to only a few of these individuals, and
 6   I didn't mark it ahead of time, so bear
 7   with me.
 8               Lower left of the two columns,
 9   Judge Kase, K-A-S-E?
10          A.   No.
11          Q.   Judge Kluewer, K-L-U-E-W-E-R?
12          A.   No.
13          Q.   Retired Magistrate Judge
14   Michael L.  Ernstein?
15          A.   No.
16          Q.   And Marion C. Rice?
17          A.   No.
18          Q.   Marion C. Rice is the current
19   president; correct?
20          A.   No, she's the current president
21   elect.
22          Q.   I'm sorry.
23               Are you aware that Marion Rice
24   was a member of the College Counsel For the
25   State University of New York Maritime
```

```
 1                    MANCUSO
 2    College?
 3         A.    No.
 4         Q.    That's all I have on that.
 5               Are you related to a Joseph
 6    Mancuso?
 7         A.    My grandfather was named
 8    Giuseppe.
 9         Q.    How about a Joseph Mancuso who
10    lives or lived in Jersey City, New Jersey?
11         A.    No.
12               I also have a cousin Joseph
13    Mancuso who lives in California.
14         Q.    Did he ever live in Jersey
15    City?
16               MS. BEN-SOREK:  Objection.
17         A.    Not to my knowledge.
18               MR. MALONEY:  I think I'm done.
19          Perhaps counsel has follow-up
20          questions.
21               (Continued on next page to
22          include jurat.)
23
24
25
```

1                        MANCUSO

2                   MS. BEN-SOREK:  I don't believe

3          I do at this time.

4                   (Whereupon, at 11:30 a.m., the

5          Examination of this Witness was

6          concluded.)

7

8                   _____
                         PETER MANCUSO

9

10      Subscribed and sworn to before me

11      this _____ day of _____, 20____.

12      _____
             NOTARY PUBLIC

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    MANCUSO
 2               E X H I B I T S
 3
 4    PLAINTIFF'S EXHIBITS:
 5
 6    EXHIBIT    EXHIBIT                    PAGE
 7    NUMBER     DESCRIPTION
 8    1          Letter dated 3/17/09        10
 9    2          Appellate Brief             19
10    3          Letter dated 9/29/08        23
11    4          Letter dated 8/4/08         26
12    5          Decision After Hearing      38
13    6          Notice of Entry             42
14    7          Two-page WebCrims           68
15               article
16    8          Three-page New York Post    69
17    9          Rule 11                     73
18
19
20
21
22               I N D E X
23
24    EXAMINATION BY                        PAGE
25    MR. MALONEY                            3
```

```
 1                    MANCUSO
 2            C E R T I F I C A T E
 3
 4    STATE OF NEW YORK      )
                             :  SS.:
 5    COUNTY OF KINGS        )
 6
 7
 8         I, PHYLLIS GOLDBERG, a Notary Public
 9    for and within the State of New York, do
10    hereby certify:
11         That the witness whose examination is
12    hereinbefore set forth was duly sworn and
13    that such examination is a true record of
14    the testimony given by that witness.
15         I further certify that I am not
16    related to any of the parties to this
17    action by blood or by marriage and that I
18    am in no way interested in the outcome of
19    this matter.
20         IN WITNESS WHEREOF, I have hereunto
21    set my hand this 30th day of July 2011.
22
23
24         _____
                     PHYLLIS GOLDBERG
25
```

**$**

**$250** [1] - 72:24

**1**

**1** [5] - 47:24, 64:21, 65:16, 68:19, 78:8
**10** [1] - 78:8
**10:00** [1] - 1:11
**11** [2] - 73:22, 78:17
**11050** [2] - 2:6
**114** [1] - 1:19
**11501** [3] - 1:20, 2:9, 3:13
**11:30** [1] - 77:4
**12** [9] - 44:15, 46:13, 46:20, 47:4, 48:9, 50:4, 52:4, 54:3, 68:18
**17** [1] - 62:5
**17th** [2] - 11:11, 11:23
**19** [2] - 43:3, 78:9
**195.00** [4] - 47:25, 64:21, 65:10, 68:18
**1954** [1] - 3:21
**1975** [1] - 5:5
**1978** [1] - 4:4
**1979** [2] - 4:23, 5:18
**1983** [3] - 5:25, 6:4, 6:6
**1984** [3] - 5:25, 6:5, 6:6
**1986** [1] - 6:15
**1993** [1] - 7:12
**1994** [2] - 8:7, 8:18

**2**

**2** [1] - 78:9
**2000** [1] - 40:13
**2006** [1] - 9:19
**2007** [6] - 14:4, 16:19, 20:3, 20:4, 34:13, 43:3
**2008** [36] - 12:12, 14:20, 20:11, 21:3, 22:7, 22:11, 22:17, 22:22, 22:25, 23:10, 23:12, 23:13, 23:15, 24:8, 25:24, 26:4, 26:15, 30:11, 33:16, 33:24, 34:18, 34:21, 36:10, 37:17, 40:14, 40:22, 43:5, 44:4, 47:14, 51:11, 59:5, 62:2, 66:17, 66:25, 67:7, 67:9
**2009** [4] - 16:19, 45:17, 45:24, 62:5
**2011** [3] - 1:10, 69:8, 79:21
**20___** [1] - 77:11
**23** [1] - 78:10
**24** [1] - 20:3
**24th** [3] - 27:17, 27:18,

32:22
**250** [1] - 72:24
**26** [2] - 73:12, 78:11
**272** [1] - 3:12
**28-J** [4] - 22:6, 22:11, 22:18, 23:5
**29** [2] - 1:10, 23:15

**3**

**3** [4] - 29:21, 51:16, 78:10, 78:25
**3/17/09** [2] - 10:22, 78:8
**30th** [1] - 79:21
**32** [1] - 71:25
**33** [1] - 2:5
**344** [1] - 1:19
**38** [1] - 78:12

**4**

**4** [6] - 29:21, 30:11, 66:17, 66:25, 67:9, 78:11
**42** [1] - 78:13
**422** [8] - 44:16, 46:13, 47:4, 48:9, 50:4, 52:5, 54:3, 68:17

**5**

**5** [2] - 51:17, 78:12
**551** [1] - 2:5

**6**

**6** [5] - 33:19, 33:23, 48:14, 60:5, 78:13
**68** [1] - 78:14
**69** [1] - 78:16

**7**

**7** [1] - 78:14
**71162** [1] - 34:14
**73** [1] - 78:17

**8**

**8** [1] - 78:16
**8/4/08** [2] - 26:7, 78:11

**9**

**9** [3] - 34:14, 69:8, 78:17
**9/29/08** [2] - 23:18, 78:10

**A**

**A-N-T-I-G-N-A-N-I** [1] - 16:7
**a.m** [2] - 1:11, 77:4

**ability** [1] - 63:10
**able** [3] - 10:14, 53:11, 64:14
**Abuse** [1] - 34:11
**according** [1] - 26:16
**acquainted** [1] - 72:25
**act** [7] - 43:9, 44:2, 58:7, 65:17, 65:19, 66:5, 66:8
**acting** [6] - 13:12, 13:21, 14:11, 14:14, 15:11, 17:9
**action** [4] - 49:6, 49:9, 49:10, 79:17
**actions** [1] - 60:20
**activities** [1] - 44:24
**activity** [1] - 44:20
**actual** [2] - 31:19, 37:5
**ad** [2] - 31:23, 55:19
**ADA** [2] - 5:16, 5:19
**add** [1] - 19:16
**addition** [4] - 14:10, 22:13, 34:5, 58:11
**additional** [3] - 9:25, 51:19, 72:18
**address** [2] - 3:12, 61:14
**addressed** [3] - 22:15, 25:24, 32:6
**adjudicated** [1] - 35:14
**adjunct** [1] - 10:9
**administrative** [1] - 72:20
**admissible** [1] - 73:15
**admission** [3] - 4:19, 5:13, 5:15
**Admission** [1] - 62:23
**admissions** [2] - 4:5, 62:21
**Admissions** [1] - 62:24
**admitted** [1] - 4:22
**ADS)(AKT** [1] - 1:6
**adverb** [3] - 53:16, 53:18
**adverse** [1] - 41:10
**aforementioned** [9] - 10:21, 19:11, 23:17, 26:6, 39:2, 42:13, 68:2, 69:22, 73:21
**agencies** [2] - 47:10, 54:12
**agree** [4] - 32:14, 69:3, 69:5, 71:10
**allegations** [1] - 12:10
**alleged** [2] - 34:23, 44:7
**alleges** [1] - 44:10
**alternative** [1] - 54:24
**amended** [1] - 45:15
**amount** [1] - 72:18

**amounts** [1] - 48:15
**annotations** [2] - 61:18, 61:20
**answer** [16] - 4:8, 7:11, 8:15, 12:24, 28:21, 43:20, 46:9, 58:19, 59:22, 61:10, 62:9, 62:14, 62:16, 63:23, 64:16, 71:21
**answering** [1] - 73:8
**Antignani** [2] - 16:7, 16:8
**anybody** [2] - 50:2, 63:10
**anymore** [1] - 57:23
**anytime** [1] - 16:18
**anywhere** [2] - 40:10, 61:24
**Appeals** [9] - 4:11, 20:15, 20:24, 24:12, 24:17, 24:20, 24:23, 63:15, 64:4
**appeals** [1] - 18:23
**appear** [2] - 39:14, 71:14
**appeared** [1] - 61:22
**Appellate** [22] - 17:23, 18:11, 18:13, 18:17, 18:22, 18:25, 19:12, 19:25, 21:23, 35:9, 40:25, 45:11, 49:8, 55:14, 56:19, 57:5, 57:9, 57:11, 57:17, 59:25, 63:12, 78:9
**appellate** [1] - 18:8
**Appellate's** [2] - 42:11, 42:15
**applied** [3] - 56:7, 56:10, 56:20
**appropriate** [1] - 56:4
**approved** [1] - 12:15
**approximate** [2] - 14:3, 51:9
**Approximately** [1] - 7:21
**area** [1] - 7:8
**arisen** [1] - 56:23
**arising** [1] - 21:22
**article** [3] - 69:21, 69:23, 78:15
**asking** [2] - 3:16, 12:25
**aspect** [6] - 40:2, 50:11, 50:16, 50:20, 54:9, 54:10
**aspects** [3] - 29:6, 61:2, 61:7
**assigned** [2] - 8:24, 36:2
**Assistant** [5] - 5:11, 8:11, 13:8, 13:20, 14:6,

15:3, 15:9, 15:15, 15:17, 15:23, 17:7
**assistant** [4] - 5:13, 10:2, 25:21, 27:2
**associated** [3] - 61:17, 61:19, 61:20
**Association** [4] - 71:22, 72:4, 72:14, 72:19
**Association's** [1] - 72:20
**associations** [1] - 71:17
**assume** [2] - 13:24, 14:2
**assuming** [1] - 7:6
**attempting** [1] - 60:8
**attention** [3] - 11:10, 30:21, 74:2
**attorney** [2] - 64:8, 71:4
**Attorney** [37] - 1:7, 1:16, 5:11, 5:12, 8:11, 10:3, 12:11, 13:8, 13:21, 14:7, 15:3, 15:10, 15:16, 15:18, 15:24, 16:20, 16:23, 17:8, 22:22, 22:25, 23:8, 24:2, 25:5, 25:22, 25:25, 26:2, 26:17, 26:24, 29:22, 29:25, 30:7, 32:6, 32:16, 32:18, 32:19, 43:17, 64:7
**ATTORNEY** [1] - 2:8
**Attorney's** [13] - 5:9, 6:10, 8:6, 8:18, 10:10, 14:22, 17:21, 19:19, 41:7, 60:7, 64:6, 64:11, 68:24
**Attorneys** [1] - 2:8
**August** [23] - 12:12, 20:11, 21:3, 22:22, 25:24, 26:4, 26:15, 30:11, 33:16, 33:24, 34:18, 34:21, 36:10, 43:5, 44:4, 47:14, 59:5, 62:2, 66:17, 66:25, 67:7, 67:9, 69:8
**authority** [3] - 63:25, 64:5, 64:9
**available** [1] - 72:19
**Avenue** [1] - 2:5
**aware** [7] - 11:16, 31:21, 31:25, 41:12, 58:14, 58:21, 75:23

## B

**Bachelor** [1] - 5:2
**Bar** [8] - 4:5, 5:14, 10:8, 71:22, 72:3, 72:13, 72:18, 72:19
**base** [2] - 25:10, 25:11
**based** [5] - 22:6, 46:3,

50:18, 66:17, 69:3
**basis** [10] - 10:5, 15:21, 35:6, 37:9, 52:3, 52:9, 52:17, 52:19, 52:23, 55:11
**Bayview** [1] - 2:5
**bear** [1] - 75:6
**BEFORE** [1] - 1:13
**behalf** [1] - 64:13
**behaved** [1] - 58:5
**belief** [1] - 18:16
**believe** [20] - 9:19, 13:25, 21:14, 23:2, 33:23, 36:8, 42:6, 45:2, 45:10, 45:25, 47:15, 48:13, 49:15, 55:8, 56:12, 56:15, 56:17, 60:2, 66:12, 77:2
**believed** [4] - 33:24, 52:3, 52:10, 58:22
**belong** [1] - 71:16
**BEN** [31] - 2:10, 4:7, 7:10, 7:24, 8:14, 11:20, 12:22, 24:25, 27:17, 31:16, 31:24, 36:21, 38:5, 43:10, 43:19, 45:13, 50:5, 58:17, 59:21, 62:8, 63:22, 64:15, 71:20, 72:5, 72:22, 73:4, 73:9, 73:14, 74:25, 76:16, 77:2
**BEN-SOREK** [31] - 2:10, 4:7, 7:10, 7:24, 8:14, 11:20, 12:22, 24:25, 27:17, 31:16, 31:24, 36:21, 38:5, 43:10, 43:19, 45:13, 50:5, 58:17, 59:21, 62:8, 63:22, 64:15, 71:20, 72:5, 72:22, 73:4, 73:9, 73:14, 74:25, 76:16, 77:2
**benefit** [4] - 65:14, 65:15, 66:3, 66:4
**billable** [1] - 62:10
**birth** [2] - 3:19, 3:20
**blood** [1] - 79:17
**bold** [1] - 30:12
**books** [1] - 37:7
**Box** [1] - 2:5
**break** [1] - 53:23
**Brief** [22] - 17:24, 18:11, 18:13, 18:18, 18:22, 18:25, 19:12, 19:25, 21:23, 35:9, 40:25, 55:14, 56:19, 57:5, 57:9, 57:17, 59:25, 63:12, 78:9
**brief** [12] - 18:15, 19:6, 19:9, 20:5, 20:10, 20:13, 48:15, 55:24, 59:12,

60:8, 62:11, 64:12
**Bureau** [15] - 5:24, 9:12, 9:13, 9:14, 9:23, 16:2, 16:5, 20:15, 20:24, 24:13, 24:18, 24:21, 24:23, 63:15, 64:4
**bureau** [23] - 6:2, 8:24, 9:2, 9:9, 9:10, 13:11, 13:12, 13:22, 14:11, 14:15, 15:5, 15:6, 15:11, 15:14, 15:25, 16:4, 16:9, 17:9, 41:22, 42:5, 71:7
**BY** [3] - 2:10, 3:6, 78:24

## C

**California** [1] - 76:13
**call** [3] - 35:17, 37:11, 58:23
**calling** [1] - 67:13
**can you** [9] - 3:18, 25:16, 28:8, 30:13, 30:16, 33:22, 51:6, 51:9, 63:16
**capacity** [3] - 1:7, 1:15, 17:7
**case** [17] - 3:15, 15:21, 17:18, 17:20, 18:14, 18:16, 18:21, 32:25, 35:22, 36:3, 41:23, 42:2, 45:10, 46:22, 55:9, 61:14
**case-by-case** [1] - 15:21
**cases** [7] - 17:22, 18:9, 18:24, 19:5, 49:23, 50:6, 61:16
**caused** [1] - 39:25
**central** [7] - 45:5, 47:9, 48:17, 49:12, 49:24, 54:11, 57:3
**certify** [2] - 79:10, 79:15
**challenge** [1] - 56:23
**chance** [2] - 39:11, 46:25
**change** [4] - 5:22, 6:9, 8:20, 64:12
**changed** [1] - 65:7
**changes** [1] - 8:22
**charges** [1] - 68:14
**Cheryl** [7] - 25:20, 25:22, 26:22, 27:9, 29:17, 29:20, 32:24
**chief** [17] - 13:11, 13:12, 13:22, 14:11, 14:15, 15:5, 15:11, 15:14, 15:25, 16:4, 16:9, 17:9, 24:17, 63:14, 64:3
**Chief** [2] - 5:24, 24:20
**Child** [5] - 34:7, 34:11, 34:23, 35:17, 58:16

**children** [2] - 56:25, 57:4
**choosing** [1] - 11:18
**chose** [1] - 11:12
**Circuit** [3] - 4:11, 23:6, 60:9
**circumstances** [1] - 64:10
**citation** [3] - 36:15, 36:17, 36:18
**cite** [1] - 37:13
**cited** [5] - 19:18, 35:23, 49:7, 57:21, 67:18
**citing** [1] - 34:12
**City** [4] - 3:21, 7:5, 76:10, 76:15
**Class** [4] - 43:18, 44:21, 44:24, 47:12
**closed** [1] - 12:15
**Code** [2] - 47:25, 64:22
**College** [2] - 75:24, 76:2
**columns** [1] - 75:8
**coming** [1] - 17:13
**comment** [1] - 43:13
**Commercial** [1] - 6:3
**commission** [1] - 43:18
**commits** [2] - 65:16, 66:5
**communicate** [1] - 33:11
**communication** [2] - 28:13, 30:24
**compel** [1] - 29:10
**complaining** [1] - 47:16
**complaint** [1] - 58:16
**Complaint** [13] - 18:6, 33:13, 33:25, 37:10, 37:11, 43:17, 43:23, 44:3, 47:20, 47:24, 66:15, 66:17, 66:21
**completely** [1] - 3:23
**complies** [4] - 33:21, 39:10, 65:3, 70:8
**component** [1] - 53:21
**concern** [1] - 31:10
**concerned** [1] - 60:24
**concluded** [7] - 35:3, 35:5, 52:11, 52:15, 58:9, 60:22, 77:6
**concluding** [1] - 34:8, 52:23
**conclusion** [2] - 55:14, 55:25
**conduct** [8] - 12:6, 17:25, 20:22, 52:12, 52:15, 52:24, 53:22, 67:14
**conducted** [2] - 12:12, 47:13, 49:20

MANCUSO

**confidential** [4] - 27:5, 27:7, 30:20, 31:10
**Confidential** [1] - 30:15
**connection** [6] - 12:9, 21:22, 32:24, 35:8, 37:20, 49:10
**consider** [10] - 9:20, 43:9, 43:13, 49:22, 50:24, 51:24, 54:23, 60:7, 61:2, 63:11
**consideration** [3] - 57:19, 58:4, 64:20
**considerations** [4] - 57:25, 58:12, 61:7, 61:15
**considered** [7] - 52:12, 56:3, 56:5, 56:21, 57:14, 58:13, 66:14
**constitute** [1] - 58:9
**constituted** [1] - 51:4
**constituting** [2] - 65:17, 66:6
**constitution** [1] - 56:17
**Constitutional** [1] - 49:11
**constitutional** [2] - 56:7, 56:9
**contacted** [1] - 27:25
**contained** [4] - 45:5, 47:9, 48:17, 49:24
**contents** [1] - 28:24
**context** [5] - 41:19, 41:21, 52:22, 57:17, 69:11
**continually** [1] - 4:18
**continued** [2] - 15:2, 60:25
**Continued** [1] - 76:21
**continuing** [2] - 10:4, 10:6
**conversation** [21] - 25:11, 25:13, 25:17, 25:20, 27:14, 27:19, 27:22, 27:23, 28:4, 28:5, 28:6, 28:8, 28:11, 28:19, 28:24, 29:7, 29:13, 29:15, 32:22, 33:4, 74:13
**copies** [1] - 20:19
**copy** [8] - 20:12, 20:18, 21:11, 22:5, 22:23, 22:24, 45:9, 62:20
**Cornell** [2] - 4:2, 4:24
**correctly** [2] - 41:17, 65:21
**correspondence** [2] - 17:19, 17:20
**Corruption** [5] - 9:14, 9:23, 15:7, 16:2, 16:5
**Counsel** [1] - 75:24
**counsel** [3] - 7:13, 7:20,

76:19
**Country** [2] - 1:19, 3:13
**COUNTY** [3] - 2:8, 79:5
**County** [10] - 1:8, 1:16, 5:8, 8:5, 34:13, 49:7, 64:7, 71:22, 72:3, 72:13
**couple** [1] - 64:23
**course** [5] - 28:6, 31:7, 49:6, 53:12, 58:6
**court** [7] - 22:13, 23:23, 39:19, 41:3, 41:9, 57:20, 57:22
**Court** [11] - 4:11, 4:12, 17:22, 38:8, 56:3, 56:5, 57:11, 57:12, 57:15, 57:19, 62:16
**COURT** [1] - 1:2
**cousin** [1] - 76:12
**crime** [1] - 54:20
**criminal** [2] - 35:7, 43:9
**current** [3] - 9:15, 75:18, 75:20
**currently** [3] - 68:23, 69:6, 72:2
**CV-03-0786** [1] - 1:5

## D

**D.A** [4] - 26:21, 31:3, 31:14, 31:15
**D.A.'s** [1] - 9:22
**data** [11] - 47:8, 48:16, 49:3, 49:24, 53:6, 54:10, 54:19, 55:4, 55:9, 60:15, 60:22
**DATE** [1] - 1:10
**date** [15] - 10:24, 11:11, 11:12, 11:14, 19:14, 23:20, 26:9, 27:15, 39:5, 42:18, 42:25, 68:5, 69:7, 69:25, 73:24
**dated** [8] - 10:22, 20:3, 23:18, 26:7, 30:11, 78:8, 78:10, 78:11
**dates** [2] - 51:6, 51:10
**day** [2] - 77:11, 79:21
**Day** [2] - 11:17, 11:19
**dead** [1] - 73:18
**deal** [1] - 31:9
**dealings** [1] - 74:22
**decide** [1] - 37:14
**decides** [1] - 40:15
**deciding** [1] - 53:12
**Decision** [2] - 39:3, 78:12
**decision** [6] - 31:13, 31:20, 32:5, 57:12, 57:22, 64:2
**decision-making** [1] - 31:20

**decisions** [2] - 18:8, 41:3
**declaratory** [2] - 56:16, 56:23
**defendant** [2] - 68:15, 68:21
**DEFENDANT** [1] - 1:9
**Defendant** [2] - 1:14, 2:8
**defined** [1] - 44:24
**defines** [2] - 44:20, 45:2
**Demand** [2] - 42:10, 42:14
**demonstratively** [1] - 53:2
**deposition** [4] - 19:2, 29:2, 36:18, 38:3
**deprive** [2] - 65:14, 66:3
**deputy** [1] - 24:17
**Deputy** [1] - 5:24
**DESCRIPTION** [1] - 78:7
**detail** [1] - 66:14
**details** [2] - 27:22, 38:21
**determination** [6] - 37:10, 37:14, 37:16, 48:7, 55:12, 58:3
**determine** [3] - 12:7, 35:20, 52:17
**determined** [1] - 56:10
**determining** [2] - 56:3, 56:5
**Diamond** [1] - 1:18
**Did he** [2] - 16:12, 76:14
**did it** [1] - 36:15
**did she** [3] - 13:23, 21:2, 30:5
**did you** [35] - 3:25, 4:3, 4:5, 6:12, 6:19, 7:19, 11:8, 11:22, 16:18, 17:12, 17:16, 20:18, 34:22, 35:12, 35:16, 36:20, 36:23, 37:4, 37:9, 37:13, 37:21, 37:25, 38:13, 38:16, 39:21, 47:15, 49:23, 50:9, 50:15, 52:17, 54:23, 55:11, 58:14, 67:17, 67:18
**differs** [1] - 45:25
**direct** [1] - 73:25
**directed** [2] - 12:6, 17:2
**direction** [2] - 17:4, 17:8
**disclosing** [1] - 41:9
**disclosure** [2] - 52:5, 59:12
**discoverable** [1] - 73:13

**discovered** [1] - 19:3
**discussed** [3] - 20:6, 28:15, 28:19
**discussing** [3] - 24:16, 50:20, 74:15
**disjunctive** [2] - 54:24, 55:5
**DIST** [1] - 34:13
**distinguish** [1] - 17:10
**distributor** [2] - 7:13, 7:14
**DISTRICT** [2] - 1:2, 1:2
**District** [53] - 1:7, 1:15, 4:10, 5:8, 5:11, 5:12, 6:10, 8:5, 8:11, 8:18, 10:2, 10:10, 12:11, 13:8, 13:20, 14:7, 14:21, 15:3, 15:10, 15:15, 15:18, 15:24, 16:20, 16:23, 17:7, 17:21, 19:19, 22:22, 22:25, 23:7, 24:2, 25:4, 25:21, 25:24, 26:2, 26:17, 26:23, 29:22, 29:25, 30:7, 32:6, 32:15, 32:17, 32:19, 41:7, 43:17, 52:6, 60:7, 64:6, 64:11, 68:24
**do you** [23] - 3:11, 11:14, 12:20, 16:14, 16:22, 22:10, 25:9, 31:2, 31:18, 32:4, 32:9, 32:15, 36:7, 37:6, 41:25, 48:13, 49:15, 50:24, 61:13, 68:10, 71:16, 72:2
**Document** [1] - 60:5
**document** [32] - 11:3, 11:5, 11:7, 19:23, 19:24, 21:7, 21:10, 21:14, 26:12, 39:21, 39:25, 40:4, 42:20, 42:22, 43:2, 43:5, 43:8, 43:15, 44:4, 59:6, 59:7, 59:15, 59:23, 60:2, 62:22, 67:3, 67:10, 67:16, 68:13, 70:5
**documents** [20] - 17:12, 17:14, 17:16, 18:2, 18:3, 18:4, 20:7, 20:20, 21:2, 22:4, 22:8, 22:14, 23:9, 32:25, 33:14, 59:10, 59:14, 63:2, 67:6, 67:12
**Does it** [2] - 69:10, 70:13
**Does that** [4] - 39:14, 53:18, 70:10, 72:16
**Does this** [1] - 44:6
**doesn't** [2] - 48:25, 70:20
**doubt** [3] - 54:5, 54:17, 54:22

**draw** [1] - 11:10
**duly** [2] - 3:3, 79:12

## E

**early** [2] - 23:12, 24:7
**Eastern** [2] - 4:9, 52:6
**EASTERN** [1] - 1:2
**Economics** [1] - 5:3
**education** [5] - 3:23, 4:25, 10:2, 10:5, 10:7
**effect** [4] - 41:4, 45:19, 45:20, 46:6
**elect** [1] - 75:21
**element** [1] - 53:5
**elements** [2] - 53:23, 54:20
**email** [3] - 51:19, 51:23, 62:4
**employed** [1] - 7:12
**employees** [1] - 9:8
**employer** [1] - 8:2
**employment** [3] - 5:6, 7:8, 8:4
**enclosure** [4] - 38:13, 38:16, 38:19, 39:15
**enclosures** [1] - 30:18
**encourage** [3] - 54:23, 60:14, 60:20
**encouraged** [2] - 54:19, 55:4
**encourages** [2] - 47:8, 59:2
**encouraging** [1] - 45:3
**end** [1] - 73:18
**enter** [1] - 57:25
**entitled** [1] - 49:6
**Entry** [4] - 42:10, 42:14, 43:21, 78:13
**envelope** [2] - 27:7, 30:19
**Ernstein** [1] - 75:14
**ESQ** [2] - 2:4, 2:10
**established** [1] - 71:7
**evaluating** [1] - 66:15
**evaluation** [1] - 66:16
**evidence** [4] - 40:7, 40:16, 40:21, 73:16
**exactly** [4] - 13:4, 14:3, 14:5, 28:18
**examination** [2] - 79:11, 79:13
**Examination** [1] - 77:5
**EXAMINATION** [3] - 1:13, 3:6, 78:24
**examined** [1] - 3:5
**examining** [1] - 52:20
**except** [1] - 54:16
**exception** [1] - 18:7

**excuse** [2] - 21:9, 56:4
**Executive** [9] - 13:7, 13:20, 14:6, 15:3, 15:9, 15:15, 15:17, 15:23, 17:7
**executive** [1] - 32:12
**exercise** [2] - 65:18, 66:7
**EXHIBIT** [2] - 78:6
**Exhibit 1** [3] - 10:20, 10:23, 11:4
**Exhibit 2** [6] - 19:10, 19:13, 19:22, 33:18, 48:15, 63:13
**Exhibit 3** [7] - 23:16, 23:19, 23:24, 25:2, 25:6, 38:4, 39:17
**Exhibit 4** [9] - 26:5, 26:8, 26:13, 30:10, 59:8, 59:17, 60:3, 66:19, 67:2
**Exhibit 5** [3] - 38:25, 39:4, 39:8
**Exhibit 6** [9] - 42:12, 42:16, 42:21, 59:7, 59:19, 59:24, 67:4, 67:11, 67:17
**Exhibit 7** [2] - 67:24, 68:4
**Exhibit 8** [3] - 69:20, 69:24, 70:6
**Exhibit 9** [3] - 73:20, 73:23, 74:3
**exhibit l** [1] - 45:9
**Exhibits** [2] - 29:21, 51:16
**exhibits** [1] - 71:15
**EXHIBITS** [1] - 78:4
**exist** [1] - 18:10
**existed** [1] - 19:3
**existence** [1] - 18:25
**exists** [1] - 7:18
**expedite** [1] - 11:25
**explanation** [2] - 30:5, 53:10
**express** [1] - 32:18
**extent** [5] - 3:22, 28:7, 56:14, 61:5, 63:6

## F

**fact** [4] - 31:2, 35:4, 35:21, 49:8
**factor** [2] - 56:2, 56:21
**factors** [1] - 57:14
**facts** [1] - 48:10
**Fair** [1] - 22:3
**fair** [12] - 15:8, 31:22, 40:6, 40:13, 40:14, 40:16, 40:21, 43:7, 48:24, 52:2, 60:4, 63:9
**faith** [3] - 53:2, 53:7,

56:17
**fall** [1] - 51:11
**familiar** [1] - 9:21, 41:18, 44:17, 56:13, 65:6, 65:8, 66:10, 68:7, 69:10, 69:11, 69:14
**Family** [1] - 34:8
**fashion** [1] - 74:23
**February** [1] - 16:10
**Federal** [1] - 49:18
**file** [4] - 34:20, 59:3, 59:5, 62:2
**filed** [1] - 64:13
**final** [1] - 62:3
**find** [3] - 35:2, 36:20, 49:23
**firm** [1] - 6:16
**first** [22] - 3:3, 5:6, 5:21, 8:19, 8:23, 20:9, 23:7, 24:5, 27:6, 27:8, 30:16, 33:11, 34:16, 34:19, 43:4, 43:12, 52:19, 54:8, 59:4, 68:13, 70:4
**First** [2] - 3:18, 72:8
**focused** [1] - 47:21
**follow** [2] - 47:6, 76:19
**follow-up** [1] - 76:19
**followed** [1] - 19:4
**following** [3] - 13:11, 18:24, 22:7
**follows** [1] - 3:5
**form** [4] - 12:23, 58:18, 59:22, 75:2
**forth** [1] - 79:12
**forward** [2] - 28:25, 29:2
**forwarding** [1] - 44:3
**founded** [2] - 35:14, 37:15
**four** [1] - 68:16
**frame** [10] - 5:25, 6:7, 13:3, 13:6, 13:23, 14:20, 16:10, 18:5, 37:18, 67:7
**frauds** [1] - 6:3
**free** [1] - 57:19
**freely** [1] - 50:2
**Friday** [4] - 25:15, 27:14, 27:16, 32:22
**front** [4] - 38:21, 46:16, 47:2, 59:18
**function** [1] - 15:20
**functions** [2] - 65:19, 66:7

## G

**game** [1] - 48:24
**Garden** [1] - 7:5
**gasoline** [2] - 7:13, 7:14
**gave** [2] - 17:4, 17:8

**generated** [2] - 18:24, 23:11
**germane** [1] - 45:14
**Giuseppe** [1] - 76:8
**give** [7] - 30:5, 33:3, 38:20, 51:6, 51:9, 64:19, 64:23
**given** [6] - 15:12, 15:13, 20:12, 33:6, 67:13, 79:14
**Glenn** [1] - 68:22
**GOLDBERG** [2] - 79:8, 79:24
**Goldberg** [1] - 1:21
**gotten** [1] - 26:21
**graduate** [1] - 4:3
**graduation** [3] - 4:6, 4:14, 4:16
**grandfather** [1] - 76:7
**granted** [1] - 38:23
**great** [1] - 31:9
**guess** [2] - 19:8, 74:4
**guilty** [3] - 47:11, 65:12, 65:25

## H

**hand** [1] - 79:21
**handed** [1] - 71:15
**handling** [2] - 71:3, 71:5
**hasn't** [1] - 65:7
**Have you** [7] - 9:25, 10:8, 39:11, 41:14, 65:4, 71:23, 72:9
**haven't** [2] - 46:19, 56:13
**he's** [1] - 69:5
**headed** [1] - 65:10
**heard** [3] - 41:14, 41:21, 42:7
**Hearing** [1] - 39:3, 78:12
**hearing** [2] - 40:13, 40:14
**held** [2] - 1:18, 72:9
**hereby** [1] - 79:10
**hereinbefore** [1] - 79:12
**hereunto** [1] - 79:20
**hierarchy** [1] - 15:22
**hoc** [1] - 31:23
**hold** [2] - 57:23, 72:2
**holiday** [1] - 11:15
**home** [1] - 34:6
**hominem** [1] - 55:19
**hours** [2] - 62:6, 62:10
**house** [1] - 57:2
**housekeeping** [1] - 29:8
**How did** [1] - 35:20
**How many** [2] - 51:3,

62:5

**Hudson** [10] - 12:9, 18:9, 20:2, 22:19, 35:8, 37:19, 40:25, 44:6, 53:13, 57:18

**Hudson's** [2] - 17:23, 49:8

## I

**I'd** [9] - 11:2, 11:10, 19:20, 26:11, 30:9, 39:7, 46:2, 70:3, 73:25

**I've** [5] - 23:22, 42:6, 58:10, 62:19, 70:9

**idea** [1] - 71:2

**identical** [3] - 45:10, 46:19, 46:20

**identification** [9] - 10:24, 19:14, 23:20, 26:9, 39:5, 42:17, 68:5, 69:25, 73:23

**identify** [2] - 19:24, 33:22

**Immediately** [1] - 4:16

**impunity** [1] - 50:3

**IN** [1] - 79:20

**incident** [3] - 34:7, 34:9, 56:22

**include** [2] - 57:5, 76:22

**included** [2] - 55:17, 55:23

**incoming** [1] - 32:5

**independently** [1] - 46:3

**indicated** [1] - 34:9

**indicates** [1] - 40:4

**indicating** [2] - 47:22, 59:20

**individual** [4] - 41:15, 56:11, 71:11, 74:14

**individually** [2] - 1:7, 1:14

**individuals** [2] - 74:21, 75:5

**infant** [1] - 34:6

**information** [16] - 25:9, 45:5, 47:9, 48:16, 49:13, 49:15, 49:16, 49:19, 49:22, 54:10, 55:16, 57:21, 60:15, 63:8, 73:13, 73:16

**informs** [1] - 70:18

**initial** [4] - 5:10, 40:2, 43:8, 73:16

**initiated** [1] - 27:23

**inside** [1] - 56:25

**instance** [1] - 27:8

**instructions** [2] - 33:4, 33:7, 67:13

**insure** [1] - 30:20

**intended** [2] - 30:23, 43:22

**intent** [2] - 65:13, 66:2

**intentional** [2] - 52:24, 53:7

**interested** [1] - 79:18

**interoffice** [1] - 28:13

**interpret** [5] - 47:19, 53:11, 60:19, 67:11, 67:21

**interpretation** [6] - 48:8, 50:10, 50:13, 50:16, 50:19, 53:4

**interpreted** [1] - 60:18

**interval** [1] - 36:24

**investigate** [6] - 17:2, 34:20, 34:22, 35:12, 35:16, 47:23

**investigated** [2] - 34:8, 67:22

**investigation** [9] - 12:7, 12:13, 12:16, 20:21, 33:8, 33:12, 47:14, 67:14, 74:14

**Investigation** [1] - 9:6

**investigations** [2] - 9:3, 9:5

**Investigations** [10] - 9:12, 9:13, 13:9, 13:21, 14:7, 15:4, 15:10, 15:16, 15:18, 15:24

**involved** [1] - 56:24

**involvement** [1] - 15:19

**involving** [2] - 9:7, 69:7

**is that** [19] - 12:3, 23:25, 26:14, 29:20, 29:22, 40:7, 40:17, 44:11, 49:22, 53:5, 54:24, 56:9, 59:12, 61:11, 67:4, 68:19, 69:2, 71:7

**is there** [3] - 29:9, 48:22, 53:21

**Is this** [1] - 43:16

**issue** [3] - 40:23, 48:11, 58:13

**items** [1] - 28:15

## J

**JAMES** [2] - 1:3, 2:4

**Jersey** [2] - 76:10, 76:14

**Jim** [1] - 3:15

**job** [5] - 5:10, 5:22, 6:9, 8:9, 8:19, 8:21

**Joseph** [3] - 76:5, 76:9, 76:12

**Judge** [5] - 16:15, 22:15, 75:9, 75:11, 75:13

**judgment** [1] - 56:16

**July** [1] - 79:21

**June** [3] - 1:10, 27:18, 32:22

**jurat** [1] - 76:22

**jurors** [1] - 54:7

## K

**Karen** [14] - 12:9, 17:23, 18:9, 18:17, 18:21, 20:2, 22:19, 35:8, 37:19, 40:24, 44:6, 49:8, 53:13, 57:18

**Kase** [1] - 75:9

**KASE** [1] - 75:9

**Kathleen** [1] - 25:5

**KATHLEEN** [2] - 1:7, 1:14

**keep** [3] - 62:10, 73:5, 73:7

**kinds** [1] - 31:8

**KINGS** [1] - 79:5

**Kluewer** [1] - 75:11

**KLUEWER** [1] - 75:11

**knowing** [2] - 65:19, 66:7

**knowledge** [13] - 16:17, 31:4, 32:2, 41:8, 43:25, 48:5, 48:6, 57:24, 58:25, 60:6, 69:18, 70:23, 76:17

## L

**lack** [1] - 40:20

**last** [4] - 27:14, 27:16, 32:22, 62:14

**Last** [1] - 25:15

**late** [2] - 16:15, 23:12

**Late** [1] - 24:7

**latter** [1] - 14:4

**Law** [17] - 3:24, 19:18, 21:8, 21:11, 21:12, 21:21, 37:12, 44:16, 46:14, 47:5, 54:4, 58:24, 66:20, 66:23, 68:17, 68:18

**law** [6] - 3:25, 5:7, 5:12, 6:19, 26:25, 61:14

**lead** [1] - 73:12

**leave** [1] - 14:21

**leaving** [1] - 7:23

**legal** [2] - 10:4, 10:7

**let's** [1] - 73:17

**Let's** [8] - 23:14, 26:3, 27:13, 29:14, 33:17, 42:9, 59:2, 64:18

**letter** [41] - 10:22, 12:4, 12:5, 12:10, 12:16, 19:18, 22:11, 22:18,

22:19, 22:21, 22:24, 23:2, 23:5, 23:7, 23:11, 23:15, 23:18, 23:23, 23:25, 24:23, 25:2, 25:6, 25:23, 26:4, 26:7, 26:14, 26:15, 27:4, 30:10, 30:17, 31:3, 38:3, 38:10, 38:12, 39:16, 62:5, 66:18, 66:25, 67:9

**Letter** [2] - 78:8, 78:10, 78:11

**letters** [7] - 11:22, 22:6, 22:12, 22:14, 22:16, 25:25, 29:20

**level** [1] - 32:12

**Lex** [1] - 36:7

**Lexus** [4] - 34:14, 36:7, 36:11, 49:17

**lie** [1] - 63:25

**light** [1] - 41:2

**line** [3] - 27:6, 30:16, 73:5

**lines** [2] - 29:12, 45:4

**LIORA** [1] - 2:10

**list** [3] - 10:14, 68:16, 74:7

**listed** [2] - 34:10, 41:10

**listening** [1] - 65:24

**listing** [7] - 34:23, 35:3, 35:4, 35:13, 35:21, 40:5, 40:12

**lists** [3] - 68:14, 69:7, 74:4

**litigated** [1] - 57:16

**Litigation** [2] - 6:22, 6:24

**litigation** [3] - 6:23, 55:16, 56:15

**live** [1] - 76:14

**lived** [1] - 76:10

**lives** [2] - 76:10, 76:13

**located** [2] - 7:17, 36:9

**locating** [1] - 36:3

**logical** [1] - 32:11

**logistics** [1] - 28:25

**Lower** [1] - 75:8

**lower** [2] - 8:12, 74:2

## M

**Magistrate** [1] - 75:13

**mail** [2] - 31:9, 32:5

**main** [6] - 45:11, 45:19, 46:2, 46:18, 46:21, 65:5

**maintain** [2] - 4:18, 10:7

**MALONEY** [19] - 1:3, 2:4, 3:7, 10:19, 19:8, 23:14, 25:3, 26:3, 27:15, 38:24, 42:9, 45:16, 62:13, 67:23, 69:19,

73:11, 73:17, 76:18, 78:25
**Maloney** [3] - 3:15, 34:12, 49:7
**maltreatment** [3] - 34:9, 57:3, 58:22
**Maltreatment** [1] - 34:12
**managed** [3] - 41:23, 41:25, 42:4
**MANCUSO** [2] - 1:17, 77:8
**Mancuso** [12] - 3:10, 3:14, 11:2, 19:20, 23:22, 26:11, 42:19, 65:22, 73:25, 76:6, 76:9, 76:13
**March** [3] - 11:11, 11:23, 62:5
**Marion** [3] - 75:16, 75:18, 75:23
**Maritime** [1] - 75:25
**mark** [6] - 19:9, 23:14, 23:23, 26:3, 42:9, 75:6
**Mark** [5] - 10:19, 38:24, 67:23, 69:19, 73:19
**marked** [26] - 10:22, 11:4, 19:12, 19:22, 23:18, 26:7, 26:13, 27:5, 27:7, 30:19, 31:9, 38:3, 39:3, 39:8, 39:16, 42:16, 42:21, 59:23, 60:2, 66:18, 67:10, 67:17, 68:3, 69:24, 70:5, 73:22
**marking** [1] - 45:8
**marriage** [1] - 79:17
**Marshall** [3] - 13:10, 14:15, 37:23
**MARSHALL** [1] - 13:10
**material** [1] - 47:19
**materials** [1] - 31:8
**matter** [8] - 17:3, 33:9, 34:20, 60:23, 62:7, 63:5, 64:5, 79:19
**matters** [3] - 9:7, 15:17, 28:7
**McKinney's** [1] - 64:23
**mean** [8] - 18:14, 36:7, 37:6, 46:15, 60:16, 63:12, 72:16, 73:11
**meaning** [1] - 23:5
**means** [2] - 52:21, 72:17
**meant** [3] - 52:24, 52:25, 53:11
**Meg** [6] - 13:7, 13:11, 13:19, 14:21, 17:3, 37:23
**Melville** [1] - 7:17
**member** [3] - 71:24, 72:13, 75:24

**members** [3] - 73:2, 74:5, 74:7
**membership** [1] - 10:8
**memo** [2] - 50:9, 50:12
**memoranda** [4] - 51:3, 51:7, 61:8, 61:10
**Memorandum** [4] - 21:8, 21:11, 21:12, 21:21
**mention** [2] - 13:19, 69:9
**mentioned** [6] - 12:19, 24:11, 28:5, 44:22, 68:22, 71:13
**Michael** [1] - 75:14
**mid** [1] - 34:18
**Mid** [2] - 33:16, 34:21
**middle** [1] - 20:11
**mind** [3] - 22:9, 32:20, 58:2
**Mineola** [4] - 1:20, 2:9, 3:13, 7:3
**minute** [1] - 65:9
**minutes** [1] - 70:4
**Misconduct** [1] - 65:11
**misconduct** [5] - 65:13, 66:2, 66:22, 67:15, 67:19
**misdemeanor** [5] - 43:18, 44:8, 44:21, 44:25, 47:12
**misdemeanors** [1] - 44:13
**MIT** [1] - 5:3
**modify** [1] - 60:8
**moments** [1] - 19:21
**money** [1] - 72:18
**month** [1] - 72:11
**morning** [2] - 3:14, 46:19
**motion** [7] - 21:9, 21:12, 21:13, 21:22, 22:6, 29:10, 58:15
**motions** [1] - 69:8
**moved** [1] - 7:4
**MR** [17] - 3:7, 10:19, 19:8, 23:14, 25:3, 26:3, 27:15, 38:24, 42:9, 45:16, 62:13, 67:23, 69:19, 73:11, 73:17, 76:18, 78:25
**Mr** [12] - 3:14, 11:2, 16:8, 16:12, 16:15, 19:20, 23:22, 26:11, 42:19, 65:22, 70:12, 73:25
**MS** [30] - 4:7, 7:10, 7:24, 8:14, 11:20, 12:22, 24:25, 27:17, 31:16, 31:24, 36:21, 38:5, 43:10, 43:19, 45:13,

50:5, 58:17, 59:21, 62:8, 63:22, 64:15, 71:20, 72:5, 72:22, 73:4, 73:9, 73:14, 74:25, 76:16, 77:2
**multi** [1] - 19:23
**multi-page** [1] - 19:23
**myself** [2] - 56:13, 57:23

**N**

**name** [10] - 3:8, 26:22, 40:17, 41:18, 41:22, 42:7, 44:6, 62:22, 68:22, 69:9
**named** [2] - 41:15, 76:7
**Nassau** [9] - 1:8, 1:16, 5:8, 8:5, 34:13, 49:7, 71:22, 72:3, 72:13
**NASSAU** [1] - 2:8
**nature** [5] - 28:25, 29:8, 51:23, 52:25, 70:11
**NEW** [2] - 1:2, 79:4
**NOTARY** [1] - 77:12
**Notary** [3] - 1:21, 3:4, 79:8
**Note** [1] - 74:25
**Notice** [4] - 42:10, 42:14, 43:21, 78:13
**notice** [5] - 36:23, 43:16, 43:23, 44:2, 67:18
**noticed** [1] - 67:20
**November** [1] - 43:3
**NUMBER** [1] - 78:7
**number** [3] - 10:16, 36:7, 36:9

**O**

**object** [1] - 59:21
**Objection** [20] - 4:7, 7:10, 7:24, 8:14, 11:20, 12:22, 31:16, 31:24, 36:21, 43:10, 43:19, 50:5, 58:17, 62:8, 63:22, 64:15, 71:20, 72:22, 73:4, 76:16
**objection** [4] - 12:3, 45:8, 72:5, 75:2
**obligation** [1] - 58:23
**obtain** [2] - 65:14, 66:3
**obviously** [1] - 4:14
**Obviously** [1] - 70:18
**occurred** [3] - 40:12, 40:13, 58:22
**October** [5] - 14:20, 20:3, 23:13, 24:8
**odd** [1] - 36:20
**OF** [4] - 1:2, 2:8, 79:4, 79:5

**offered** [1] - 56:2
**offhand** [1] - 51:8
**OFFICE** [1] - 2:8
**Office** [1] - 34:7
**office** [32] - 3:12, 5:9, 5:23, 6:11, 7:2, 7:16, 8:6, 8:18, 9:22, 10:11, 14:22, 17:21, 19:19, 20:15, 20:24, 32:13, 36:13, 41:8, 60:7, 63:4, 63:10, 63:25, 64:6, 64:12, 65:17, 66:6, 68:25, 69:16, 71:3, 72:3, 72:7, 72:10
**offices** [1] - 1:18
**Official** [1] - 65:10
**official** [10] - 1:7, 1:15, 30:2, 65:13, 65:18, 66:2, 66:7, 66:22, 67:15, 67:19
**officials** [1] - 9:7
**Oil** [1] - 7:15
**Oil's** [1] - 7:16
**Okay** [6] - 12:18, 48:3, 60:4, 66:9, 74:11, 74:19
**okay** [1] - 6:25
**old** [1] - 56:25
**Old** [2] - 1:19, 3:12
**one-page** [1] - 26:12
**one-year** [1] - 56:25
**ones** [2] - 22:9, 71:19
**opened** [1] - 27:8
**operate** [1] - 32:12
**opinion** [5] - 32:18, 35:25, 36:4, 36:6, 52:7
**opposition** [2] - 21:13, 22:20
**order** [2] - 54:2, 58:6
**ordinary** [1] - 31:6
**original** [2] - 16:25, 35:17
**outcome** [1] - 79:18
**Overall** [1] - 61:25
**overall** [1] - 13:18

**P**

**P.O** [1] - 2:5
**Page** [4] - 33:19, 33:23, 34:14, 48:14
**page** [14] - 19:23, 26:12, 42:20, 42:25, 68:3, 68:13, 69:7, 69:23, 70:4, 70:5, 74:3, 76:21, 78:14, 78:16
**PAGE** [2] - 78:6, 78:24
**pages** [2] - 67:25, 69:21
**parameters** [1] - 64:9
**part** [20] - 13:15, 14:4, 28:3, 28:4, 29:14, 45:11, 45:14, 45:19, 45:24,

46:2, 46:10, 46:11,
46:18, 46:21, 54:8,
59:11, 65:5, 65:7
 **parties** [1] - 79:16
 **parts** [1] - 13:13
 **party** [1] - 41:10
 **passage** [1] - 34:17
 **passed** [1] - 27:11
 **Patrick's** [2] - 11:16,
11:19
 **pay** [1] - 72:17
 **Penal** [5] - 37:12, 47:25,
64:22, 66:23, 68:18
 **people** [1] - 32:12
 **period** [2] - 13:13, 14:11
 **Permit** [1] - 53:20
 **permit** [1] - 58:8
 **permits** [1] - 47:7
 **permitted** [5] - 47:11,
54:9, 54:12, 54:17, 55:3
 **permitting** [3] - 45:3,
52:14, 55:8
 **perpetrator** [1] - 44:7
 **person** [11] - 26:20,
47:7, 54:2, 54:7, 54:17,
54:18, 55:2, 55:3, 65:14,
66:3
 **personal** [7] - 25:21,
27:2, 27:7, 30:19, 30:21,
31:9, 74:22
 **Personally** [1] - 31:4
 **personally** [2] - 31:17,
32:7
 **persons** [2] - 47:10,
54:12
 **pertaining** [1] - 55:15
 **PETER** [2] - 1:17, 78:8
 **Peter** [1] - 3:10
 **PH** [1] - 16:6
 **phrase** [2] - 40:9, 74:9
 **PHYLLIS** [2] - 79:8,
79:24
 **Phyllis** [1] - 1:20
 **place** [3] - 3:19, 14:18,
25:14
 **placed** [3] - 40:17,
49:12, 57:2
 **PLAINTIFF** [1] - 1:4
 **Plaintiff** [3] - 1:18, 3:15,
34:10
 **PLAINTIFF'S** [1] - 78:4
 **Plaintiff's** [48] - 10:20,
10:23, 11:4, 19:9, 19:13,
19:22, 23:16, 23:19,
23:24, 25:2, 25:6, 26:4,
26:8, 26:13, 29:21,
30:10, 33:17, 34:5, 38:4,
38:25, 39:4, 39:8, 39:16,
42:12, 42:16, 42:21,

48:15, 51:16, 59:6, 59:8,
59:17, 59:18, 59:24,
60:3, 63:13, 66:18, 67:2,
67:3, 67:11, 67:17,
67:24, 68:4, 69:20,
69:24, 70:6, 73:19,
73:22, 74:3
 **Please** [1] - 3:8
 **please** [13] - 10:20,
23:16, 26:5, 33:18,
38:25, 42:12, 42:19,
42:24, 62:14, 63:18,
67:24, 69:20, 73:20
 **pocket** [7] - 45:14,
45:24, 46:11, 46:17,
46:21, 65:5, 65:7
 **point** [5] - 7:3, 7:6,
37:13, 61:3, 61:4
 **points** [1] - 61:2
 **police** [2] - 56:24, 58:22
 **policies** [1] - 9:21
 **policy** [4] - 30:3, 31:19,
31:23, 32:2
 **Port** [1] - 2:6
 **position** [7] - 7:25, 9:16,
10:10, 14:24, 15:2,
56:18, 57:18
 **Post** [3] - 69:21, 69:23,
78:16
 **practice** [4] - 6:13, 6:18,
6:20, 7:7
 **prefer** [1] - 36:11
 **prepared** [4] - 18:11,
18:12, 19:2, 20:2
 **preparing** [1] - 36:17
 **preponderance** [3] -
40:6, 40:16, 40:21
 **present** [2] - 16:22, 53:3
 **president** [3] - 72:8,
75:19, 75:20
 **printout** [4] - 67:25,
68:3, 68:11, 69:4
 **prior** [3] - 5:13, 14:7,
67:9
 **prism** [1] - 66:22
 **private** [2] - 6:13, 7:7
 **privilege** [1] - 28:14
 **privileged** [10] - 17:14,
28:8, 28:17, 29:7, 29:13,
50:25, 51:24, 61:6,
61:11, 73:10
 **Pro** [1] - 2:4
 **problem** [1] - 36:3
 **procedure** [1] - 30:3
 **procedures** [1] - 9:21
 **proceed** [1] - 33:8
 **proceeding** [1] - 41:10
 **proceedings** [1] - 57:20
 **professional** [2] - 6:9,

71:17
 **programs** [1] - 10:9
 **prohibited** [1] - 53:22
 **promotion** [2] - 5:21,
8:19
 **pronouncing** [1] - 41:16
 **proper** [1] - 62:22
 **proposition** [1] - 50:8
 **prosecuted** [2] - 12:9,
12:14, 37:19, 41:8,
53:13, 58:3, 58:6, 68:24,
69:6, 69:15, 69:17, 71:11
 **prosecuting** [1] - 54:14
 **prosecution** [10] - 9:6,
35:7, 41:13, 41:15,
41:20, 54:25, 69:12,
69:13, 70:12, 70:24
 **Protective** [3] - 34:23,
35:17, 58:16
 **prove** [2] - 54:2, 54:5
 **proven** [1] - 54:21
 **proves** [1] - 55:2
 **provide** [3] - 21:3, 53:9,
53:19
 **provided** [6] - 17:18,
17:21, 20:14, 20:16,
21:21, 63:7
 **provision** [5] - 44:18,
47:21, 48:9, 48:22, 66:10
 **provisions** [3] - 47:16,
50:3, 71:12
 **PUBLIC** [1] - 77:12
 **public** [12] - 9:7, 9:8,
44:10, 49:13, 49:14,
49:16, 49:19, 49:22,
49:25, 50:19, 65:12,
65:25
 **Public** [8] - 1:21, 3:4,
9:14, 9:23, 15:7, 15:25,
16:5, 79:8
 **pursuant** [1] - 30:2

**Q**

 **quadrant** [1] - 74:2
 **question** [24] - 13:4,
13:16, 28:22, 32:11,
38:6, 38:7, 39:20, 45:22,
46:8, 50:15, 56:6, 58:11,
61:11, 62:10, 62:14,
62:15, 62:19, 63:20,
69:2, 74:8, 74:10, 74:12,
75:3, 75:4
 **questions** [3] - 3:17,
21:19, 76:20

**R**

 **raise** [1] - 50:15
 **range** [1] - 72:24

 **Read** [1] - 62:13
 **read** [20] - 30:13, 30:16,
30:22, 34:3, 34:16,
35:10, 38:8, 38:16,
39:20, 43:14, 46:5, 47:3,
62:16, 63:17, 63:20,
65:9, 65:21, 65:23,
67:20, 70:9
 **reading** [5] - 35:22,
46:17, 55:13, 61:23, 69:6
 **reads** [1] - 47:6
 **reason** [5] - 7:22, 11:12,
11:18, 55:15, 57:4
 **reasonable** [3] - 54:5,
54:16, 54:21
 **reasons** [1] - 58:10
 **recall** [7] - 11:24, 28:12,
28:18, 28:23, 29:12,
60:17, 61:13
 **receive** [1] - 25:5,
30:20, 34:19, 38:13, 67:5
 **received** [36] - 5:2, 5:22,
21:7, 21:11, 21:15, 22:5,
22:8, 22:12, 22:13,
22:14, 22:17, 22:20,
22:21, 22:23, 23:7, 23:9,
24:6, 30:24, 31:5, 31:8,
38:2, 38:10, 38:12,
42:7, 50:16, 59:4, 59:5,
62:20, 66:24, 67:3, 67:6,
67:8, 67:12, 67:16
 **receiving** [2] - 22:10,
67:9
 **recent** [2] - 74:4, 74:23
 **recently** [2] - 62:20,
62:25
 **recess** [1] - 62:11
 **recipient** [1] - 30:23
 **recognize** [1] - 68:10
 **recollection** [8] - 21:24,
21:25, 28:17, 38:18,
70:11, 70:14, 70:16,
70:21
 **recommend** [1] - 53:12
 **recommendation** [21] -
12:8, 12:13, 12:15, 35:7,
35:11, 37:18, 37:22,
38:2, 38:11, 39:22, 40:2,
50:18, 50:21, 51:4,
51:15, 51:20, 51:21,
51:22, 60:24, 62:3, 62:4
 **reconsider** [1] - 39:25
 **record** [6] - 3:9, 30:14,
34:4, 47:3, 59:17, 79:13
 **records** [1] - 17:17
 **reference** [3] - 43:22,
52:22, 66:19
 **referenced** [1] - 38:14
 **referred** [6] - 17:23,
18:9, 18:17, 18:22,

26:15, 63:19
**referred-to** [1] - 63:19
**referring** [7] - 12:21, 18:16, 20:6, 23:2, 23:4, 24:3, 46:12
**Referring** [1] - 24:25
**reflected** [1] - 61:7
**reflecting** [1] - 12:17
**refresh** [4] - 70:10, 70:13, 70:15, 70:20
**regard** [7] - 17:19, 18:8, 22:18, 32:3, 33:7, 47:20, 48:11
**regarding** [2] - 32:5, 51:19
**register** [10] - 40:5, 40:17, 40:24, 41:11, 45:6, 47:10, 48:17, 49:25, 54:11, 57:3
**Register** [2] - 34:12, 34:24
**registry** [1] - 49:12
**regular** [1] - 10:5
**Reis** [5] - 13:7, 13:19, 14:21, 17:3, 37:23
**REIS** [1] - 13:9
**Reis'** [1] - 13:12
**relate** [1] - 9:22
**related** [7] - 16:15, 27:21, 29:16, 29:19, 32:23, 76:5, 79:16
**relating** [1] - 31:19, 65:17, 66:5
**relation** [1] - 26:23
**relatively** [1] - 74:23
**release** [12] - 45:4, 47:8, 48:16, 50:19, 52:15, 53:6, 54:10, 54:19, 55:4, 55:8, 58:9, 60:14
**released** [7] - 48:21, 48:23, 49:4, 49:5, 49:25, 50:2, 60:23
**relevant** [3] - 17:24, 20:21, 61:22
**remain** [1] - 7:19
**remember** [4] - 21:5, 21:6, 22:10, 36:15
**remembered** [1] - 62:19
**renamed** [2] - 9:14, 9:18
**renewal** [3] - 51:15, 51:18, 62:3
**renewed** [2] - 38:10, 39:22
**repeating** [1] - 73:6
**rephrasing** [1] - 43:14
**replace** [1] - 16:12
**replaced** [1] - 14:14
**reply** [1] - 21:16
**report** [9] - 12:20, 13:2,

13:18, 15:9, 15:13, 16:19, 16:23, 43:16, 44:2
**reported** [7] - 13:2, 13:6, 36:4, 36:6, 49:17, 49:18, 49:21
**Reporter** [1] - 10:25, 19:15, 23:21, 26:10, 38:8, 39:6, 42:18, 49:19, 62:17, 63:21, 68:6, 70:2, 73:24
**reporter** [1] - 23:23, 37:5, 39:20
**reporting** [3] - 15:20, 43:8, 43:23
**Reporting** [1] - 1:19
**reports** [1] - 15:14
**represent** [1] - 74:20
**represented** [1] - 64:7
**represents** [1] - 11:15
**request** [3] - 20:18, 21:4, 62:20
**Request** [3] - 38:23, 62:23, 62:24
**requested** [3] - 20:19, 59:11, 59:24
**requests** [1] - 20:23, 60:5
**research** [1] - 19:5, 61:14
**reside** [1] - 3:11
**resolved** [2] - 60:23, 61:3
**response** [4] - 21:13, 21:18, 21:20
**responses** [1] - 62:21
**resulting** [1] - 57:2
**Retired** [1] - 75:13
**retract** [2] - 21:10, 29:4
**Retraction** [2] - 42:11, 42:15
**retraction** [3] - 59:11, 59:25, 60:5
**returned** [2] - 8:17, 8:23
**review** [10] - 17:12, 17:16, 17:24, 39:11, 39:21, 45:21, 46:2, 46:7, 49:21, 66:21
**reviewed** [10] - 17:17, 17:19, 17:22, 18:2, 18:19, 18:21, 18:23, 19:17, 61:16, 61:18
**reviewing** [2] - 18:5, 44:23
**reviews** [1] - 57:11
**Rice** [12] - 25:5, 25:20, 25:22, 26:22, 27:9, 29:17, 29:20, 31:3, 32:24, 75:16, 75:18, 75:23

**RICE** [2] - 1:7, 1:14
**Right** [5] - 18:19, 19:7, 36:20, 70:15, 70:25
**right** [4] - 30:13, 40:11, 59:19, 61:23
**Rights** [1] - 49:11
**Road** [2] - 1:19, 3:13
**roles** [3] - 13:20, 13:24, 17:11
**roster** [1] - 74:4
**Rule** [3] - 73:12, 73:22, 78:17

## S

**S-M-I-L-E-Y** [1] - 20:17
**salutation** [1] - 30:17
**satisfaction** [2] - 54:6
**save** [1] - 65:9
**school** [3] - 3:24, 3:25, 5:7
**Science** [1] - 5:3
**scope** [1] - 9:4
**Se** [1] - 2:4
**Second** [3] - 4:11, 23:5, 60:9
**second** [4] - 42:25, 54:9, 54:14, 69:7
**section** [13] - 19:17, 46:4, 46:5, 46:12, 46:17, 52:14, 61:17, 61:19, 61:21, 65:6, 66:22, 67:15, 67:19
**Section** [1] - 44:16, 46:20, 47:4, 47:24, 48:9, 50:4, 52:5, 54:3, 64:21, 68:17, 68:18
**seek** [2] - 4:6, 56:16
**send** [1] - 11:22
**separate** [2] - 51:21, 51:22
**September** [7] - 22:11, 22:25, 23:9, 23:12, 23:15, 24:7, 37:17
**series** [1] - 3:16
**servant** [2] - 65:12, 65:25
**servants** [1] - 44:11
**serve** [1] - 43:23
**served** [1] - 13:14
**service** [1] - 13:12
**Services** [13] - 19:17, 34:8, 34:24, 35:18, 37:12, 44:16, 46:13, 47:5, 54:4, 58:16, 58:24, 66:20, 68:17
**She's** [1] - 24:12
**she's** [2] - 64:3, 75:20
**shield** [1] - 31:15
**show** [5] - 31:14, 36:15,

54:15, 54:16, 54:18
**simultaneously** [1] - 67:8
**sister** [1] - 26:25
**sister-in-law** [1] - 26:25
**sit** [1] - 48:13
**situation** [2] - 49:2, 56:8
**six** [1] - 54:7
**Smiley** [19] - 20:17, 20:25, 24:9, 25:12, 25:19, 26:16, 26:20, 27:19, 27:24, 29:15, 31:6, 31:12, 32:23, 33:3, 33:6, 33:12, 63:7, 63:14, 64:3
**Smiley's** [2] - 24:12, 64:9
**Social** [9] - 19:17, 37:12, 44:16, 46:13, 47:4, 54:4, 58:24, 66:20, 68:17
**sole** [2] - 28:4, 52:3
**solely** [1] - 48:8
**solo** [2] - 6:17, 6:18
**someone** [1] - 69:15
**Somewhere** [1] - 6:6
**sons** [2] - 34:6, 34:10
**SOREK** [31] - 2:10, 4:7, 7:10, 7:24, 8:14, 11:20, 12:22, 24:25, 27:17, 31:16, 31:24, 36:21, 38:5, 43:10, 43:19, 45:13, 50:5, 58:17, 59:21, 62:8, 63:22, 64:15, 71:20, 72:5, 72:22, 73:4, 73:9, 73:14, 74:25, 76:16, 77:2
**sorry** [3] - 6:4, 26:19, 75:22
**sort** [2] - 41:19, 56:16
**sought** [1] - 62:21
**sound** [1] - 69:10
**sounded** [1] - 69:10
**sounds** [1] - 69:14
**Southern** [1] - 4:10
**speak** [1] - 48:25
**Special** [3] - 9:3, 9:11, 9:13
**special** [2] - 9:4, 10:9
**specific** [1] - 59:16
**specifically** [4] - 20:16, 50:13, 57:21, 70:15
**spelled** [1] - 41:17
**spent** [1] - 62:7
**spoke** [1] - 52:20
**SS** [1] - 79:4
**St** [2] - 11:16, 11:19
**stamped** [1] - 30:12
**stand** [1] - 56:24

**stand-off** [1] - 56:24
**standard** [1] - 73:15
**state** [2] - 3:8, 32:20
**State** [8] - 1:21, 3:4, 4:9, 4:17, 4:19, 34:11, 75:25, 79:9
**STATE** [1] - 79:4
**statement** [2] - 35:9, 40:8
**states** [1] - 27:6
**STATES** [1] - 1:2
**States** [1] - 4:12
**stating** [1] - 45:23
**statute** [16] - 44:23, 47:2, 48:23, 48:25, 50:10, 50:14, 50:17, 52:20, 53:5, 53:9, 53:14, 56:6, 56:10, 56:19, 60:13, 64:19
**statutes** [1] - 37:13
**statutory** [1] - 44:17, 47:16, 47:21
**Stephen** [1] - 16:6
**stopped** [1] - 7:7
**Street** [1] - 2:9
**strike** [2] - 21:9, 22:6
**sub** [1] - 46:13
**Subdivision** [11] - 44:15, 47:4, 47:24, 48:9, 50:4, 52:4, 54:3, 64:21, 65:16, 68:17, 68:19
**subdivision** [1] - 45:25
**subject** [4] - 28:13, 33:25, 41:3, 52:21
**submitted** [2] - 18:15, 60:9
**Subscribed** [1] - 77:10
**substance** [3] - 25:17, 61:9, 69:17
**substituted** [1] - 29:3
**successful** [1] - 54:25
**successfully** [1] - 10:18
**Suite** [1] - 1:19
**sum** [1] - 25:16
**summer** [3] - 22:7, 22:16, 22:17
**superior** [1] - 13:14
**superiors** [5] - 12:8, 12:14, 12:19, 12:21, 50:17
**Supp** [3] - 36:15, 36:18, 36:25
**support** [3] - 21:8, 21:12, 50:7
**supported** [1] - 40:6
**Supreme** [1] - 4:12
**surprise** [1] - 30:23
**sustaining** [3] - 72:12, 73:2, 74:5

**sworn** [3] - 3:3, 77:10, 79:12
**system** [2] - 36:12, 68:8

## T

**T-A-R-T-A-N** [1] - 7:15
**T-U-I-F-E-L** [1] - 41:17
**tabs** [1] - 64:24
**talked** [1] - 28:9
**talking** [3] - 46:16, 53:14, 64:20
**Tammy** [21] - 20:17, 20:25, 24:9, 24:11, 25:12, 25:19, 26:16, 26:20, 27:19, 27:24, 29:15, 31:6, 31:12, 32:23, 33:3, 33:6, 33:12, 63:7, 63:14, 64:3, 64:9
**Tartan** [3] - 7:15, 7:16, 7:20
**term** [1] - 15:23
**terminated** [1] - 7:25
**terms** [1] - 12:2
**testified** [1] - 3:5
**testifying** [1] - 29:11
**testimony** [2] - 17:2, 79:14
**text** [2] - 33:22, 34:3
**Thank** [1] - 34:15
**thanks** [1] - 12:18
**THE** [3] - 2:8, 63:17, 73:7
**there's** [4] - 12:2, 29:6, 32:2, 45:7
**they're** [1] - 46:18
**three** [5] - 42:20, 51:12, 69:21, 69:23, 70:5
**Three** [2] - 51:5, 78:16
**Three-page** [1] - 78:16
**three-page** [3] - 42:20, 69:23, 70:5
**TIME** [1] - 1:11
**times** [1] - 74:24
**title** [12] - 5:10, 5:22, 6:9, 8:9, 8:19, 8:21, 15:5, 24:12, 24:15, 24:19, 47:11, 54:13
**topic** [1] - 23:6
**Traeger** [7] - 13:10, 14:15, 16:12, 16:15, 16:16, 37:24
**trail** [1] - 19:5
**transaction** [1] - 14:17
**transactional** [1] - 6:24
**transpired** [1] - 12:4
**TRIAL** [1] - 1:13
**true** [2] - 5:12, 79:13
**TUIFEL** [1] - 68:23
**Tuifel** [4] - 41:15, 42:8,

68:22, 70:12
**Two-page** [1] - 78:14
**two-page** [1] - 68:3
**type** [3] - 6:19, 11:15, 69:12
**typed** [1] - 30:12

## U

**ultimately** [1] - 37:24
**Ultimately** [1] - 22:5
**unanimous** [1] - 54:6
**unauthorized** [4] - 65:18, 65:20, 66:6, 66:8
**unconstitutional** [1] - 56:20
**undergraduate** [1] - 4:25
**underlying** [2] - 18:9, 56:15
**understand** [1] - 60:21
**understanding** [2] - 25:7, 25:10
**understood** [1] - 48:10
**undertaking** [1] - 46:6
**undertook** [1] - 45:21
**unfounded** [1] - 35:14
**unit** [1] - 9:9
**UNITED** [1] - 1:2
**United** [1] - 4:12
**University** [1] - 75:25
**unpublished** [1] - 35:25
**upper** [1] - 30:12
**US** [1] - 34:13
**uses** [1] - 72:20

## V

**venue** [1] - 49:25
**verb** [1] - 53:20
**verbiage** [2] - 47:3, 48:14
**versus** [2] - 34:13, 49:7
**vice** [1] - 72:8
**vice-president** [1] - 72:8
**view** [2] - 61:2, 61:4
**viewed** [1] - 55:5
**violate** [1] - 52:14
**violated** [1] - 54:3
**Violation** [1] - 37:11
**violation** [2] - 49:11, 52:4
**voice** [1] - 65:9
**volume** [2] - 46:15, 46:21

## W

**wanted** [1] - 64:12

**was he** [1] - 29:10
**was it** [3] - 6:16, 9:18, 55:23
**was that** [8] - 5:4, 6:14, 9:2, 17:6, 30:2, 52:5, 56:19, 57:18
**was there** [2] - 13:15, 39:24
**Washington** [1] - 2:6
**ways** [1] - 52:13
**We'll** [2] - 42:8, 59:16
**we'll** [2] - 44:14, 48:3
**we're** [1] - 23:6
**we've** [2] - 50:20, 74:15
**WebCrims** [6] - 67:25, 68:3, 68:8, 68:11, 69:4, 78:14
**were you** [3] - 4:22, 8:23, 20:12
**weren't** [1] - 41:6
**West** [1] - 2:9
**Westlaw** [7] - 36:8, 36:11, 36:16, 36:24, 49:17, 49:21, 61:19
**what are** [1] - 51:16
**What did** [2] - 35:2, 60:15
**What is** [4] - 3:22, 24:15, 24:19, 62:22
**what was** [17] - 4:25, 5:6, 5:21, 6:8, 6:16, 7:8, 7:22, 8:3, 8:9, 8:18, 9:4, 14:24, 27:15, 28:19, 38:5, 38:18, 45:20
**What were** [1] - 10:13
**what's** [4] - 19:21, 29:8, 39:8, 45:13
**wheels** [1] - 58:15
**when did** [7] - 13:25, 14:17, 16:8, 25:13, 33:11, 34:16, 34:19
**when you** [10] - 8:9, 8:23, 36:6, 38:12, 49:14, 58:2, 59:4, 66:14, 66:24, 67:16
**Where is** [1] - 7:16
**Where was** [1] - 7:2
**WHEREOF** [1] - 79:20
**Whereupon** [18] - 10:21, 19:11, 23:17, 26:6, 33:20, 38:7, 39:2, 39:9, 42:13, 62:11, 62:15, 63:19, 65:2, 68:2, 69:22, 70:7, 73:21, 77:4
**who are** [1] - 12:20
**Who is** [4] - 16:4, 25:20, 68:23, 69:15
**who was** [1] - 13:7
**willful** [10] - 52:12,

MANCUSO

52:16, 52:18, 52:21,
52:23, 53:8, 53:10,
53:15, 55:9, 57:7
**willfully** [9] - 45:3, 47:7,
53:16, 54:8, 54:17, 55:3,
58:5, 58:7, 58:13
**wish** [1] - 53:24
**withdraw** [1] - 63:11
**Witness** [1] - 77:5
**witness** [9] - 1:17, 3:3,
33:20, 39:9, 59:22, 65:2,
70:7, 79:11, 79:14
**WITNESS** [3] - 63:17,
73:7, 79:20
**Wolf** [1] - 22:15
**word** [5] - 21:17, 21:18,
30:11, 30:13, 60:14
**words** [4] - 19:4, 41:4,
54:25, 55:18
**work** [4] - 9:5, 9:22,
62:6, 63:5
**worth** [1] - 61:22
**wouldn't** [5] - 10:14,
26:21, 28:12, 57:23, 58:8
**write** [4] - 12:3, 12:5,
50:9, 50:12
**writing** [2] - 50:22,
50:24
**writings** [1] - 51:4
**written** [1] - 53:15
**wrote** [3] - 11:7, 40:25,
62:5

## Y

**year** [11] - 3:19, 4:3,
4:22, 5:4, 6:14, 7:9, 7:21,
16:11, 56:25, 63:3, 72:24
**years** [2] - 10:18, 71:25
**YORK** [2] - 1:2, 79:4
**York** [18] - 1:20, 1:22,
2:6, 2:9, 3:4, 3:13, 3:21,
4:9, 4:10, 4:11, 4:17,
4:19, 34:11, 69:21,
69:23, 75:25, 78:16, 79:9
**you've** [3] - 11:5, 42:22,
74:13
**yourself** [2] - 9:20,
56:24