UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES M. MALONEY,

                Plaintiff,

       - against -

KATHLEEN M. RICE,

                Defendant.

-------------------------------------------------------------------X

Case No. 03-CV-786
(PKC) (ARL)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
POST-REMAND RULE 56 MOTIONS FOR SUMMARY JUDGMENT
IN WHOLE OR PART AS TO THE FIRST AND THIRD CAUSES OF ACTION
AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION**

James M. Maloney (JM-5297)
Plaintiff *pro se*
33 Bayview Avenue
Port Washington, New York

(516) 767-1395

# TABLE OF CONTENTS

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I

      NUNCHAKU ARE NOT "DANGEROUS AND UNUSUAL
      WEAPONS" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT II

      THE VIABILITY OF THE SECOND CAUSE OF ACTION
      SHOULD NOT BE CONSIDERED BY THE COURT AT THIS
      JUNCTURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT III

      THE VIABILITY OF THE THIRD CAUSE OF ACTION REMAINS
      EVEN IF SUMMARY JUDGMENT IS NOT GRANTED IN
      PLAINTIFF'S FAVOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT IV

      NEITHER IMMUNITY NOR COLLATERAL ESTOPPEL
      PROTECTS THE DISTRICT ATTORNEY FROM THE THIRD
      CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## COUNTER-STATEMENT OF FACTS

Defendant states, in a statement that is neither relevant nor flattering to Plaintiff, that Plaintiff possessed "numerous legal and illegal firearms," thereby encouraging the reader's imagination to picture a disturbing collection of *per se* "illegal" firearms such as machine guns, weapons with their serial numbers defaced, and/or guns that were purchased by means of nefarious "street" transaction(s). Such briefing is, unfortunately, consistent with the prior *ad hominem* briefing that led to the Third Cause of Action now before this Court.

By way of "reputational damage control," Plaintiff wishes to assure the Court that the only possibly "illegal" firearm in his possession was one of three ordinary revolvers that Plaintiff had purchased legally from licensed gun stores in New Jersey and Florida years before, while a resident of those states. All three revolvers were secured in a locked safe in Plaintiff's home, unloaded and with no corresponding ammunition stored in the same space, and were seized by the Nassau County Police without a warrant by the use of explosives to open the safe (to which only Plaintiff had the combination) in August 2000. Plaintiff had rendered two of the revolvers inoperable immediately upon bringing them into New York, and thus his possession of them was not "illegal." In January 2003, Plaintiff pled guilty in state court to a charge of disorderly conduct, a violation,

solely in connection with his possession in that locked safe within his home of the single revolver that, due to its design, he had not been able to render inoperable. These factual matters, although not germane to the pending cross-motions, are addressed here because failure to do so would be at Plaintiff's own peril, allowing the implication to stand that he is or was a "hoarder" of illegal weapons, with a particular interest in "dangerous and unusual" weapons of exceptional destructive capacity (a category into which machine guns, for example, reasonably fit, and into which Defendant wishes to place nunchaku as well). These factual matters accordingly are not referenced in any corresponding 56.1 statement, but further details and supporting documents are provided in the Declaration of James M. Maloney executed February 27, 2014, and submitted herewith.

Defendant's Brief at 3 (second line from bottom), in the context of a discussion of the closed case CV-03-4178, refers to events of "August 23-24, *2010*" (emphasis added), but this is obviously an error and should refer to the year 2000.[1] More substantively, in discussing the same case, Defendant's Brief at 15

---

[1] The same paragraph also states the "*fact* that the CV-03-4178 case sought *damages* against named defendants from the New York State Office of Children and Family Services ('OCFS') and the New York State Central Register," Brief at 3 (emphasis added), but no such damages were ever sought. See Document 3 (amended complaint filed December 12, 2003) in CV-03-4178 at ¶¶ 86-95 (seeking only declaratory judgment and related relief such as an implementing Order and attorneys' fees as against those State defendants). Clearly, Eleventh Amendment immunity would have prevented the award of any such damages, but stating that Plaintiff sought them anyway is consistent with Defendant's approach throughout this litigation.

goes on to state that at the time Defendant Rice made the complained-of statement in her Second Circuit brief in this case (October 24, 2007), the statements in Judge Townes's September 24, 2007, opinion in CV-03-4178 (Document 99 in that case) relating to Plaintiff's "indicated" status "had already been stated in a *published* decision from this court." Brief at 15 (emphasis added). But Defendant is well aware that that decision remained *unpublished* and *unreported* until 2009. See Document 102 herein (Declaration of September 15, 2010), at ¶ 7 (citing 623 F. Supp. 2d (published in or about June 2009), and showing that the cases before and after the then-reported opinion in *Maloney v. County of Nassau* (CV-03-4178) are all from mid-2009 (*e.g., Hubbard v. Total Communications, Inc.*, 623 F. Supp. 2d 270 (D. Conn., June 10, 2009); *Brown v. City of Syracuse*, 623 F. Supp. 2d 272 (N.D.N.Y., June 10, 2009); *New York v. Gutierrez*, 623 F. Supp. 2d 301 (E.D.N.Y., March 9, 2009); *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319 (E.D.N.Y., March 31, 2009)).

It is thus disingenuous, and quite misleading to this Court, to claim, as Defendant does in her Brief at 15, that her complained-of statement "cited directly to that decision," *id*., after falsely stating that it had already been published, when in fact the complained-of statement was made in 2007 but the publication did not occur until 2009.

ARGUMENT

POINT I

<u>NUNCHAKU ARE NOT "DANGEROUS AND UNUSUAL WEAPONS"</u>

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court wrote: "*Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' . . . We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 627 (citations omitted).

Defendant argues, Brief at 5, that nunchaku amount to such "dangerous and unusual weapons" (and that not only the carrying of them but even the possession of them in one's home may therefore be constitutionally prohibited) because: (1) "only a small subset of the population even attempts to use nunchaku for martial arts related purposes"; (2) "nunchaku 'cannot be used in any realistically simulated combat competition as the risks are too great,'"; (3) "nunchaku has frequently been used in crimes that have resulted in serious physical injury and even death for the victim"; and (4) "[n]unchaku is patently a device with enormous destructive capacity." But each of these propositions is applicable with equal or vastly greater force to handguns, the very weapon that the Court in *Heller* found to be "the quintessential self-defense weapon . . . that a citizen may prefer . . . for

home defense," 554 U.S. at 629: (1) notwithstanding the "popularity" of handguns, only a small subset of the population, particularly in New York, even attempts to use them for home defense; (2) the risks of using handguns with live ammunition in "simulated combat competition" are so great as to make such a proposition ridiculous; (3) handguns have been used in crimes that have resulted in serious physical injury and even death for the victim far more than nunchaku ever have; and (4) the idea that nunchaku have a destructive capacity even remotely approaching that of handguns, let alone exceeding them, is ludicrous.

In the Declaration of James M. Maloney executed February 27, 2014, submitted herewith, Plaintiff has explained some of his rationale for a preference of nunchaku over handguns as weapons for home defense. That rationale relates not to any greater efficacy of nunchaku over handguns (quite the opposite is the case), but rather to such factors as the potential for accidental injury and the capacity to be used without resort to lethal force. It would be paradoxical indeed if such socially beneficial considerations were to be swept aside by a finding that the nunchaku may be constitutionally excluded from the weapons that citizens may choose for home defense because it is a "dangerous and unusual weapon," whereas handguns, which are frequently associated with accidental fatalities and which often leave the user little choice but to kill or be killed, may not.

POINT II

THE VIABILITY OF THE SECOND CAUSE OF ACTION SHOULD
NOT BE CONSIDERED BY THE COURT AT THIS JUNCTURE

At the conference before this Court of October 24, 2013, the question arose whether the Second Cause of Action even remained viable after the *vacatur* and remand by the United States Supreme Court. This Court, on the one hand, posited that, since the *vacatur* had been on the basis of intervening Second Amendment cases (*Heller* and *McDonald*), the dismissal of the unenumerated-rights claim (now the Second Cause of Action) was unaffected. Plaintiff, for his part, posited that "*vacatur* is *vacatur*," and that the viability of that claim was thus restored, but agreed not to seek summary judgment in connection with that claim, and indeed not to brief it at all. Defendant, who remained silent on that point during the conference, now (somewhat surprisingly) cross-moves for the very relief that Plaintiff agreed not to seek: summary judgment in connection with the Second Cause of Action. Insofar as the question remains open whether those claims even remain viable following remand (that question having been tabled at the conference), it would be a waste of judicial economy (and also somewhat unfair to Plaintiff) to engage in briefing and decision on the merits-based analysis that Defendant now proffers. Accordingly, Plaintiff respectfully declines to respond to Point II of Defendant's Brief (pages 10-13).

POINT III

THE VIABILITY OF THE THIRD CAUSE OF ACTION REMAINS EVEN IF SUMMARY JUDGMENT IS NOT GRANTED IN PLAINTIFF'S FAVOR

In Point III of her Brief, Defendant opposes Plaintiff's motion for summary judgment on the Third Cause of Action, and cross-moves for summary judgment on her own behalf, based on three arguments: (1) the "stigma-plus" element has not been satisfied; (2) Plaintiff had already openly sought relief in federal court for having been wrongly placed on the Register, making the subsequent disclosure putatively inconsequential; and (3) subdivision 12 of § 422 of the New York Social Services Law, a criminal provision, does not provide for a private cause of action.[2]

Addressing this last argument first, arguably a private right of action *would* exist under subdivision 12 of § 422 of the New York Social Services Law ("SSL 422(12)") under the standards set forth in *Sheehy v. Big Flats Community Day,*

---

[2] Defendant goes on to suggest that "if anyone connected with this action would be liable under section 422(12) it would be Maloney himself," Brief at 17, making yet another veiled threat of further criminal prosecution (of which there have been several in this action), although presumably the statute of limitations would by now have run on Plaintiff's "crime" of seeking relief in the CV-03-4178 case. Still, if that action could have been the basis for such prosecution, so could this one, and clearly the statute of limitations has not yet run here, as Plaintiff's public-forum attempt to seek redress through this Third Cause of Action remains ongoing. Without belaboring the point, it is a bit unnerving, and arguably more than a bit improper, that the District Attorney would speculate publicly, even if somewhat hypothetically and through counsel, about Plaintiff's potential criminal liability in connection with his activities in a federal civil case. *Cf.* Document 115 at 5 (pdf page 7 of 9), complaining of a similar veiled threat and impropriety.

*Inc.*, 73 N.Y.2d 629 (1989), namely: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme. Here, all three enumerated conditions are present: (1) Plaintiff was, after having been listed on the SCR, exonerated, and is therefore among the persons for whose protection the ban on disclosure was enacted; (2) the purpose of the criminal provision was to punish such disclosure (but the very prosecutor who had the discretion whether to punish the disclosure was here the perpetrator herself, and her office has finally determined that the "matter does not warrant any criminal prosecution by the Nassau County District Attorney's Office," see Document 102-4 herein); and (3) under these circumstances, enforcing the statutory prohibition by means of a civil action would be consistent with the legislative scheme because, absent a civil action, the legislative protection of innocent persons from such unlawful disclosure would be illusory.

That having been said, Plaintiff nonetheless does not (and could not in good faith) advance the specific argument that the Third Cause of Action is directly based on a private right of action under SSL 422(12), simply because an additional cause of action so based was expressly rejected by this Court (Judge Spatt, at the

Order to Show Cause hearing of October 15, 2010) on the basis that no Notice of Claim had been filed. Rather, as specifically pleaded at paragraphs 58-59 of the Third Cause of Action as set forth in the Second Amended Complaint (Document 116):

> 58. This cause of action is brought pursuant to the provisions of 42 U.S.C. § 1983 and is not brought pursuant to state law.
>
> 59. Notwithstanding the foregoing, a state statute [SSL 422(12)] prohibiting the disclosure described in paragraph 54, *supra*, bears upon Plaintiff's claim for deprivation of due process and Defendant's lack of qualified immunity [and] is accordingly referenced in this pleading.

The manner in which SSL 422(12) bears upon Plaintiff's claim for deprivation of due process is as follows: that "permitting or encouraging"[3] a disclosure such as that which the District Attorney made in her Second Circuit brief has been defined as a crime, and that it indisputably has been so defined in order to protect persons such as Plaintiff from the harmful consequences of precisely such disclosures, should inform this Court regarding the scope and severity of the deprivation of due process at issue here. As Plaintiff has argued in his Main Brief, *see id.* at 9-10, the *sui generis* nature of the situation at hand, in

---

[3] SSL 422(12) provides (emphasis added) that "[a]ny person who willfully *permits* and any person who *encourages* the release of any data and information contained in the central register to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor.

which a public servant charged with enforcing the criminal law has engaged in conduct that itself is arguably in violation of a criminal provision in order to advance her position in a civil matter, should mandate a finding that that public servant acted in a manner at odds with fundamental principles of due process.

Whether Defendant's conduct was or was not technically a violation of SSL 422(12), and whether SSL 422(12) gives rise to a private cause of action, are not the important questions. That such a provision exists, and that it is indisputably in place to protect the due process rights of those who have been listed on the SCR (especially those who, like Plaintiff, had yet to receive a fair hearing), is the point. Even after having been placed on formal notice, Defendant failed to retract the disclosure, leaving it in a public document to be widely disseminated in electronic perpetuity. The important questions are whether that amounts to a *per se* deprivation of due process, and whether the applicability of the "stigma-plus" standard that has evolved in the context of less egregious situations involving public servants and reputational harm is even appropriate.

Turning to the "stigma-plus" consideration (corresponding to enumerated argument (1) at page 7, *supra*), Defendant argues, Brief at 14, that because "Maloney himself ultimately made the decision not to continue teaching the course due to concerns about a background check," the allegations at ¶¶ 72-78 of the

Second Amended Complaint can never form the basis of a "stigma-plus" claim. But this inquiry turns on questions of material fact, and indeed Defendant both sought discovery on this very issue in her letter of October 15, 2013 (Document 129), and has utterly failed to include any statement of corresponding undisputed material facts in her January 27, 2014, Rule 56.1 Statement. Accordingly, the issue should not be decided in Defendant's favor on summary judgment.

Turning finally to Defendant's "cat-out-of-the-bag" argument (enumerated argument (2) at page 7, *supra*), it is respectfully submitted that disclosing one's own "indicated" status by seeking redress in federal court in one's own name, as over against ruining the good name of someone else by unnecessarily making the same disclosure in order to advance one's own position in a civil matter, are so radically different as to make any comparison between the two repugnant. Even assuming that the former civil action made the information publicly available, the subsequent disclosure undeniably made it *more widely* publicly available, thereby causing harm, albeit without the countervailing hope of obtaining justice that had motivated Plaintiff to proceed with the suit in the first instance. And, as Plaintiff wrote in a prior brief before this Court:

> Plaintiff notes that, in having proceeded openly in his own name, he is in the company of an entire class of individuals (although he is not a member of the defined class, which consists of child care

providers) in a class action brought subsequent to *Maloney v. Nassau County et al.*, CV-03-4178, seeking similar relief, and currently proceeding in the Southern District of New York, *Finch v. New York State Office of Children and Family Services*, Docket No. 04-Civ-1668 (SAS). The lead plaintiffs are all proceeding openly in their own names.

Document 115 at 5 (pdf page 7 of 9). The question arises: would those plaintiffs, and any others in comparable civil actions, be "fair game" should anyone, whether a District Attorney, another state actor, or a private citizen, wish to "out" them further? Should such persons be able to do so with impunity simply because those plaintiffs had chosen to seek redress and had done so in their own names?

POINT IV

NEITHER IMMUNITY NOR COLLATERAL ESTOPPEL PROTECTS
THE DISTRICT ATTORNEY FROM THE THIRD CAUSE OF ACTION

Defendant is not entitled to qualified immunity for making the complained-of disclosure, because the provisions of SSL 422(12) of the New York Social Services Law are unambiguous, and Defendant, a District Attorney, could not reasonably have believed that such disclosure would not deprive Plaintiff of due process even if she reasonably believed her actions to be non-prosecutable. Defendant was served with a formal demand that the brief containing the complained-of disclosure be withdrawn, but the brief was never withdrawn, substituted or modified, and now remains a permanent public statement to the

effect that Plaintiff "was listed on the New York State Child Abuse and Maltreatment Register," etc. Defendant maintained those statements not in her capacity as District Attorney, but as a litigant in a civil action. Immunity in any form is unavailable.

Defendant also argues that the failure of the Second Circuit to strike the complained-of brief upon Plaintiff's motion amounts to "collateral estoppel" and protects her conduct. To accept such an argument would be both illogical and unfair. The motion to strike was brought pursuant to the Second Circuit's former Local Rule 28(1), which provided:

> Briefs must be compact, logically arranged with proper headings, concise, and free from burdensome, irrelevant, immaterial, and scandalous matter. Briefs not complying with this rule may be disregarded and stricken by the court.

The new Local Rule 28.1(a), which superseded the foregoing Local Rule 28(1) effective January 1, 2010 (after the motion to strike had been fully and finally denied), now provides:

> (a) Form of Brief. A brief must be concise, logically arranged with proper headings, and free of irrelevant matter. The court may disregard a brief that does not comply with this rule.

Notably, both the reference to "scandalous matter" and the provision for striking a brief (in addition to merely disregarding it) have been removed, and

-13-

this undoubtedly reflects a policy both of retaining filed briefs and of avoiding the need to adjudge what is or is not "scandalous." But such policies, whether adhered to before or after the recent rule change, should not in any way immunize or protect a party whose brief contains a disclosure such as that made by Defendant from a separate civil action. Indeed, the issues and policies to be decided and implemented, respectively, in the motion to strike the brief, on the one hand, and in the subsequent civil action, on the other, are entirely different, making collateral estoppel inapplicable.

Interestingly, authority higher than the Second Circuit long ago recognized the duty of federal courts to redact "allegations wholly aside from the charges made [below], and bearing reproachfully upon the moral character of individuals, which are clearly impertinent and scandalous, and unfit to be submitted to the court." That authority was none less than the Supreme Court of the United States:

> We regret that we find ourselves compelled to add something further. The printed argument of plaintiff in error contains many allegations wholly aside from the charges made in his complaint, and bearing reproachfully upon the moral character of individuals, which are clearly impertinent and scandalous, and unfit to be submitted to the court. It is our duty to keep our records clean and free from scandal. The brief of the plaintiff in error will be stricken from the files, and the writ of error dismissed, and it is so ordered.

*Green v. Elbert*, 137 U.S. 615, 624 (1891) (emphasis added).

In the nearly 120 years that have passed since those words were written, and the untold scandalous matter in the subject brief in *Green* thereby ordered stricken, the world has changed in many ways. Government agencies have implemented means of managing huge amounts of data such as are contained in the New York State Child Abuse and Maltreatment Register, and legislatures have developed means of safeguarding the interests of private individuals, such as persons awaiting adjudication while being listed in databases maintained by agencies for the protection of the public whose information is kept in those databases. Relatedly, the advent of electronic information technology, with such phenomena as computers, email, the Internet, Google®, and Westlaw®, has made it possible for what once would have been only a paper document buried in a filing cabinet in some courthouse or agency headquarters to be located, replicated repeatedly and virtually instantaneously, and sent around the nation or the world in seconds, all with little more than a few clicks of a mouse and several strokes on a keyboard.

Accordingly, if the duty to "keep . . . records clean and free from scandal" existed as to the Supreme Court of the United States in 1891, any breach of the same duty justified by policy considerations of a Circuit Court of the United

States Court of Appeals as applied in 2009 should not be entertained as a basis for depriving this Court of its power to administer justice as to parties before it, nor as a basis for preventing this Plaintiff from seeking justice.

CONCLUSION

For all of the foregoing reasons, the application of the New York statutes to criminalize simple possession of nunchaku in one's home should be declared unconstitutional and of no force and effect, and this Court should either find: (a) that the District Attorney violated Plaintiff's due process rights as a matter of law by disclosing, or permitting to be disclosed, that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register," and by failing to retract that disclosure after she was formally put on notice that it had been made and that it was statutorily confidential under threat of criminal penalty; or (b) that material issues of fact preclude summary judgment on that Third Cause of Action.

Dated:   February 27, 2014
         Port Washington, New York

                                                    /s
                                        James M. Maloney (JM-5297)
                                        Plaintiff *pro se*
                                        33 Bayview Avenue
                                        Port Washington, New York

                                        (516) 767-1395