UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES M. MALONEY,

                Plaintiff,

      -against-

KATHLEEN A. RICE,

                Defendant.
------------------------------------------------------------------X

Case No. 03-CV-786
(PKC) (ARL)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

CARNELL T. FOSKEY
Nassau County Attorney
One West Street
Mineola, New York 11501
(516) 571-3014
*Attorney for Defendant Kathleen Rice*

*Of Counsel*:   Liora M. Ben-Sorek
               Deputy County Attorney

               David A. Tauster,
               Deputy County Attorney

## PRELIMINARY STATEMENT

Plaintiff James M. Maloney asserts three causes of action against Defendant, Nassau County District Attorney Kathleen A. Rice. First, Maloney seeks a declaratory judgment that New York Penal Law § 265.01 is unconstitutional pursuant to the Second Amendment of the United States Constitution to the extent that it prohibits the possession of "nunchaku" or "chukka sticks," defined as "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking." N.Y. Penal Law § 265.00 (McKinney). Alternately, Maloney argues that his alleged right to possess nunchaku is guaranteed by the Ninth Amendment or is secured by the unenumerated rights provided by the Constitution. Finally, Maloney argues that Rice violated his due process rights due to some allegedly inappropriate information contained in Rice's answering brief in this action. Maloney has moved for summary judgment on his First and Third Causes of Action. Maloney's motion should be denied, and summary judgment should be granted to Defendant on all three causes of action.

Maloney's cause of action alleging that the ban on nunchaku violates the Second Amendment fails because nunchaku are dangerous and unusual weapons that are not typically used by law abiding citizens for lawful purposes. Nunchaku have the potential to cause serious injury or death, and have been repeatedly recognized by various courts as dangerous and deadly weapons. Maloney is also incorrect that nunchaku do not possess extraordinary destructive capacity, and regardless, the only relevant question under the Second Amendment is whether the item sought to be banned is "dangerous and unusual." As such, Maloney's motion for summary

judgment on the First Cause of Action should be denied, and Rice's cross motion for summary judgment should be granted.

Maloney's cause of action alleging that the ban on nunchaku violates his unenumerated Constitutional rights is also unsustainable. It is settled law that where a right is secured by a provision of the Bill of Rights then a cause of action under the substantive due process doctrine is inappropriate. While the Second Amendment does not specifically address nunchaku possession because it is a dangerous and unusual weapon, the Second Amendment is the provision of law that guarantees the right to bear arms.  As such, any claim to enforce the right to bear arms must be made within the confines of the Second Amendment rather than any other provision of law. As such, Rice's motion for summary judgment on the Second Cause of Action should be granted.

Maloney's § 1983 claim also must fail. Maloney cannot sustain a claim for "stigma plus" because he cannot allege that Defendant Rice actually abridged any tangible right. Moreover, Maloney's reliance on a provision of New York State law is misplaced because that provision does not provide for a private cause of action and because Rice did not actually violate that provision. Finally, even if Maloney could surmount these hurdles, the Third Cause of Action is barred by the doctrines of qualified and absolute immunity and collateral estoppel. As such, Maloney's motion for summary judgment on the Third Cause of Action should be denied, and Rice's cross motion should be granted.

## STATEMENT OF FACTS

Familiarity with the facts of this matter is presumed.  By way of a brief background, on or about August 23, 2000, Nassau County Police were called to Plaintiff's Long Island home after a telephone company worker reported that the Plaintiff had threatened him with what

appeared to be a firearm.  Plaintiff refused to exit his residence at the request of the police in order to allow them to investigate the phone company employee's complaint.  Instead Plaintiff remained locked in his home with his wife and young children.  After a period of approximately 12 hours, Plaintiff exited his home and was placed in custody.  There are more detailed facts pertaining to the barricade situation described herein, but a full recitation of same is not necessary for purposes of this particular motion.

Following Plaintiff's exit from the premises, a search was conducted of the residence. That search disclosed, inter alia, numerous legal and illegal firearms and nunchaku, also known as chuka sticks, the possession of which is a crime in New York State (Penal Law § 265.01).  As part of his plea agreement, Plaintiff consented to the surrender and destruction of the illegal weapons, including the chuka sticks. In 2003 Plaintiff commenced the within action challenging the constitutionality of New York State Penal Law § 265.01 as it relates to the possession of chuka sticks in one's home.

That same year Plaintiff commenced a separate suit in the Eastern District of New York (CV-03-4178) concerning the events which started on August 23, 2000.  By Order dated September 30, 2010, Hon. Sandra Townes granted the Nassau County defendants' motion for summary judgment.  Pertinent to the within action is the fact that the CV-03-4178 case sought damages against named defendants from the New York State Office of Children and Family Services ("OCFS") and the New York State Central Register relating to Plaintiff's being listed in the State Central Register after an investigation by OCFS as a result of an allegation of mistreatment related to the incidents of August 23-24, 2010 at Plaintiff's home.  Plaintiff's amended complaint in that action admits that the OCFS investigation yielded an "indicated

finding" which resulted in his placement on the State Central Register.   *See* Exhibit B to Declaration of Liora M. Ben-Sorek at ¶¶ 55-57.

As of the date of service for this opposition to Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment, the Court records in that 2003 Federal lawsuit are neither sealed nor are they redacted in any manner.   Counsel for Defendant is unaware of any application to maintain those documents under seal and Plaintiff in his within motion has not indicated anything to the contrary.

## ARGUMENT

## POINT I

## THE FIRST CAUSE OF ACTION FAILS BECAUSE THE SECOND AMENDMENT DOES NOT GUARANTEE THE RIGHT TO POSSESS NUNCHAKU

In *D.C. v. Heller,* 554 U.S. 570, 626, 128 S. Ct. 2783, 2816, 171 L. Ed. 2d 637 (2008), the Supreme Court noted that "the right secured by the Second Amendment is not unlimited," and does not constitute the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Indeed, the Court acknowledged that the types of weapons protected by the Second Amendment are those "in common use," particularly in light of the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons." *Id.* at 627. As such, the Court expressly held "the Second Amendment does not protect those weapons not typically possessed by law abiding citizens for lawful purposes." *Id.* at 624-625; *See also McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3047, 177 L. Ed. 2d 894 (2010) (affirming that *Heller* "does not imperil every law regulating firearms"); *U.S. v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), 90-91 (right to bear arms only extends "to those [weapons] typically possessed by law-abiding citizens for lawful purposes" and "affords no protection to 'weapons not typically

4

possessed by law-abiding citizens for lawful purposes.'"). The Second Amendment right to bear arms, as delineated by *Heller*, has been made applicable against the states pursuant to *McDonald v. City of Chicago, Ill.*, 130 S. Ct. at 3050.

Nunchaku is a dangerous and unusual weapon which is not typically possessed by law abiding citizens for lawful purposes. Nunchaku is "unusual" in that it is not "in common use," inasmuch as it is clear that only a small subset of the population even attempts to use nunchaku for martial arts related purposes. Furthermore, nunchaku is a dangerous weapon, which "can explode coconuts like grenades, crack bones and strangle…[i]t is considered a deadly weapon by almost all jurisdictions." Carl Brown, *The Law and Martial Arts* at 148 (1998); *See also* Paul Crompton, *The Complete Martial Arts*, McGraw-Hill Publishing Co. 1989, 64 (noting that nunchaku "cannot be used in any realistically simulated combat competition as the risks are too great"). Indeed, nunchaku has frequently been used in crimes that have resulted in serious physical injury and even death for the victim. *See e.g.* Bob Laylo, "Carbon man pleads guilty in nunchaku case," *Morning Call* (Allentown, PA), September 26, 2007, at B.6 (noting that perpetrator struck victim "with the nunchaku with such force that the weapon broke into several pieces and broke [the victim's] arm"); "Court denies nunchaku murder appeal," *Milwaukee Journal Sentinel*, June 18, 1999, at 2 (discussing appellate court's affirmance of perpetrators conviction for beating man to death with nunchaku); "The World: Party death charge," *Birmingham Mail*, November 5, 2007, at 10 (individual attacked with nunchaku outside of party dies of injuries in hospital); "Martial Arts Weapon Reportedly Used by Two Rapists," *Boston Globe*, August 1, 1983, at 1 ("The two subjects grabbed the woman around the neck with a 'nunchaku'"). Nunchaku is patently a device with enormous destructive capacity, and as such is properly recognized (and banned) as a dangerous and usual weapon.

Numerous courts have recognized the dangerous and unusual character of nunchaku. In *In re S.P., Jr.*, 465 A.2d 823 (D.C. Ct. Apps. 1983), the District of Columbia Court of Appeals acknowledged the "socially acceptable uses" of nunchaku, but nevertheless held that "because of the inherent character of the nunchaku as an offensive weapon" the device constitutes a "deadly or dangerous weapon." Similarly, in *R.V. v. State*, 497 So.2d 912 (1986), the District Court of Appeal of Florida for the Third District affirmed a trial court decision that nunchaku, "a potentially lethal device which originated from the martial arts, is a deadly weapon." In *State v. Courtier*, 166 Or.App. 514 (2000), the Court of Appeals of Oregon held that even if nunchaku was not enumerated as a "dangerous or deadly weapon" by the relevant statute, the device would still qualify as such due to "essential characteristics that make them dangerous or deadly." In *State v. Mitchell*, 371 N.W.2d 432 (1985), the Court of Appeals of Iowa held that there was sufficient evidence to conclude that nunchaku constituted a dangerous weapon regardless of its use or intended use because it "is designed to inflict death or injury" and "is actually capable of inflicting death on a human being." Finally, in 1981 the Court of Appeals of Arizona, Division 2, went so far as to hold that nunchaku did not constitute arms within the meaning of the state constitution, because that term does not apply to "those [weapons] used by a ruffian, brawler or assassin." *State v. Swanton*, 129 Ariz. 131 (1981) (internal citation omitted). While the *Swanton* decision is naturally untenable in light of *Heller* and *McDonald*, it is clear that those cases which focus on the non-lethal characteristics of nunchaku are outweighed by those which recognize the dangerous and unusual character of the device.

Maloney argues that "the question of whether [nunchaku] is a 'dangerous and unusual weapon'" is not before this Court because he is not challenging the prohibition against "carrying" such devices, but this argument is totally meritless. *Heller* does not stand for the

6

proposition that States may only prohibit the carrying of dangerous and unusual weapons, not their simple possession. The crux of *Heller*, at least as relevant to this matter, is that "the Second Amendment does not protect those weapons not typically *possessed* by law-abiding citizens for lawful purposes." *Heller*, 54 U.S. at 625. (Emphasis added.)  Indeed, by Maloney's rationale, States would arguably be unable to prohibit the possession of any weapon, including assault rifles. The Second Amendment plainly allows states ban the simple, in home possession of dangerous and unusual weapons that are not in common use among law abiding citizens.

Also unavailing is Maloney's argument that Heller only authorizes prohibitions relating to "weapons of exceptional destructive capacity." While it is true that the Court used short-barreled shotguns and M-16 rifles as examples of dangerous and unusual weapons, there is nothing in the opinion which suggests that it is limited to devices which possess "exceptional destructive capability." Indeed, the fact that the *Heller* court indicated that States may still prohibit simple possession of *all* firearms by felons and the mentally ill (by way of example) suggests that the contours of the right to bear arms are not necessarily defined by the destructive capability of a weapon. Similarly, the Court did not hold that handgun possession must be legal because they are less dangerous than assault rifles; it did so because "handguns are the most popular weapon chosen by Americans for self-defense in the home." *Heller*, 54 U.S. at 629. The fundamental right to bear arms is simply not governed by the destructive capability of a device, but rather whether the device is "typically possessed by law abiding citizens for lawful purposes."

Moreover, Maloney is hardly correct in asserting that nunchaku is not a weapon of exceptional destructive capacity. As discussed *supra,* numerous courts have found nunchaku to be dangerous and deadly weapons due to its potential to cause serious physical injury or even

death. Nunchaku are patently a device with enormous destructive capacity, and as such are properly recognized (and banned) as dangerous and usual weapons.

Maloney's argument that nunchaku were recognized as being typically possessed by law abiding citizens prior to the New York ban is baseless. Maloney attempts to ground this argument in the legislative history surrounding the ban, noting that a memorandum to the Governor from the State's Division of Criminal Justice Services acknowledged that nunchaku "have legitimate uses in the martial arts." However, there are other sources of legislative history which explicitly suggest that nunchaku were recognized at the time of the ban as dangerous and unusual. For instance:

- An April 8, 1974, memorandum from then Attorney General Louis J. Lefkowitz noted that nunchaku have "apparently been widely used by muggers and street gangs and [have] been the cause of many serious injuries."

- An April 1, 1974 letter from B. Anthony Morosco, Legislative Secretary of the District Attorneys Association of the State of New York, to Michael Whiteman, Counsel to Governor Wilson, noted that "[a]s a result of the recent popularity of 'Kung Fu' movies and shows, various circles of the state's youth are using" nunchaku, which "can kill."

- An April 2, 1974, letter to Mr. Whiteman from Assemblyman Richard C. Ross noted that "[w]ith a minimum amount of practice, [nunchaku] may be effectively used as a garrote, bludgeon, thrusting or striking device" and that nunchaku "is designed primarily as a weapon."

- An April 1, 1974 letter to Mr. Whiteman from Albert M. Rosenblatt, District Attorney of Dutchess County, noted that "[i]t appears that [nunchaku] are used in the same criminal

8

manner and with a frequency that now approximates other per se contraband weapons"
prohibited by the Penal Law.

These letters suggest that the State Legislature determined that nunchaku were not typically
possessed by law abiding citizens, but were rather dangerous and unusual weapons which must
be controlled.

Maloney's reliance on *State v. Mulufi,* 643 P.2d 546 (Haw. 1982) and *State v. Maloney*,
470 N.E.2d 210 (Ohio Ct. App. 1984) is misplaced. That some states have elected to permit
simple possession of nunchaku does not, in and of itself, require the State of New York to do the
same. Indeed, the Supreme Court in *McDonald* explicitly recognized that state and local
experimentation with weapons regulation "will continue under the second amendment,"
*McDonald,* 130 S.Ct. at 3046, clearly indicating that the Court acknowledges that what
constitutes a "dangerous and unusual weapon" may vary on a state by state basis.

Maloney's remaining contentions are similarly baseless. It is of no import under *Heller*
that nunchaku are connected to 17th Century Okinawan citizens militias, as the decision clearly
interprets *Miller's* "in common use at the time" to actually refer to the present day. Regardless,
even if one were to read a militia connection requirement into *Heller*, such an analysis would
still weigh against Maloney, inasmuch as the requirement refers to weapons commonly used by
the American colonial militia. One could hardly imagine a more foreign weapon to the
minutemen than the nunchaku, and as such the device cannot be construed as one being "in
common use at the time" of the adoption of the Second Amendment. Regardless, *Heller*
explicitly recognizes that weapons "useful in military service…may be banned," *Heller*, 54 U.S.
at 627, and as such Maloney's contention that nunchaku may not be banned due to the purported
connection to a militia is unsustainable.

9

Similarly unavailing is Maloney's attempt to link nunchaku to "baseball bats, darts, hockey sticks or fencing equipment." While baseball bats, hockey sticks, and to a significantly less extent darts have potential to be used as a weapon, all are devices which are clearly commonly used by law abiding citizens for peaceful purposes. Even a fencing sabre could hardly be viewed as a weapon in the context of simple possession. Conversely, the dangerous potential of nunchaku is almost universally recognized, and as discussed *supra* the device is considered a weapon far more than a sporting implement.

It is apparent that the possession of nunchaku may be prohibited based on the fact that it is a dangerous and unusual weapon. Maloney cannot demonstrate that these devices are in common usage among the public or that they are typically used by law abiding citizens for lawful purposes. Moreover, the destructive capability of nunchaku is universally recognized. New York State's ban on the possession of nunchaku does not infringe on Maloney's Second Amendment rights, and as such Defendant Kathleen Rice is entitled to summary judgment on Maloney's first cause of action.

## POINT II

### THE SECOND CAUSE OF ACTION FAILS BECAUSE THERE IS NO UNENUMERATED CONSTITUTIONAL RIGHT TO POSSESS NUNCHAKU

Maloney's Second Cause of Action asserts that New York's prohibition against the possession of nunchaku violates "unenumerated rights, including those involving protection of the person from unwarranted government intrusions into a dwelling or other private place and/or regulation of activity therein that causes no harm." Complaint ¶ 48. It is respectfully submitted that, in light of *Heller* and *McDonald*, Maloney can no longer claim that he is seeking to vindicate an unenumerated right as the Supreme Court has held that the Second Amendment provides the contours of the right to bear arms in one's home. If Maloney has the right to possess

10

nunchaku, a device which he argues constitutes "arms," it exists under the Second Amendment, and as such summary judgment should be granted to the Defendant on the Second Cause of Action.

The Supreme Court has previously recognized that where there exists an "explicit textual source of constitutional protection [some] sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" a claim that the right was violated. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (U.S.N.C. 1989). In keeping with this notion, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," inasmuch as these rights are not explicitly enumerated by the Constitution. *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994). The Supreme Court has applied this rule "to prevent the invocation of substantive due process if a claim--even an unsuccessful one--is somehow 'covered by' or 'aris[es] under' another 'specific constitutional provision.'" Peter J. Rubin, *Square Pegs and Round Holes: Substantive Due Process, Procedural Due Process, and the Bill of Rights*, 103 Colum. L. Rev. 833, 853 (2003).

In light of *Heller* and *McDonald*, it is clear that there is an "explicit textual source of constitutional protection" for the right to bear arms. Maloney has argued, and Defendant readily concedes, that nunchaku is a type of arms within the purview of the Second Amendment; the disagreement between the parties is only the extent to which the Second Amendment protects his possession of nunchaku. While Defendant naturally argues that Maloney's claim under the Second Amendment is baseless, it is clear that the *Graham* rule operates to bar the invocation of substantive due process because Maloney's alleged right to possess nunchaku is covered by the

11

Second Amendment. As such, Maloney cannot state a claim under the substantive due process doctrine, and Defendant is therefore entitled to summary judgment on the Second Cause of Action.

Maloney's other sources of law for the Second Cause of Action are also inapplicable. Both *Lawrence v. Texas,* 539 U.S. 558, 123 S. Ct. 2472, 2473, 156 L. Ed. 2d 508 (2003) and *Griswold v. Connecticut,* 381 U.S. 479, 480, 85 S. Ct. 1678, 1679, 14 L. Ed. 2d 510 (1965), represent the flipside of the *Graham* rule, inasmuch as both cases dealt with rights that were not covered by other specific constitutional provisions. Additionally, while Maloney alleges that the ban against possessing nunchaku violates "unenumerated rights [that] are specifically guaranteed by the Ninth Amendment," "[t]he Ninth Amendment is recognized as a rule of construction, not one that protects any specific right" and as such "[n]o independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action." *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995). Indeed, numerous courts have already held that the Ninth Amendment does not provide any protection with respect to the right to bear arms. *See e.g. United States v. Warin,* 530 F.2d 103, 108 (6th Cir. 1976) ("We simply do not conceive of the possession of an unregistered submachine gun as one of those 'additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments."); *Quilici v. Village of Morton Grove*, 695 F.2d 261, 271 (7th Cir. 1982) ("[a]ppellants may believe the ninth amendment should be read to recognize an unwritten, fundamental, individual right to own or possess firearms; the fact remains that the Supreme Court has never embraced this theory") *cert. den.*, 464 U.S. 863 (1983); *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) ("We join our sister circuits in holding that the Ninth Amendment does not

encompass an unenumerated, fundamental, individual right to bear firearms.") These decisions are even more valid today, as the Second Amendment now presents an enumerated individual right to bear arms, subject to the limitations discussed *supra*, and as such it need not be protected under the Ninth Amendment. To the extent that Maloney seeks to vindicate an alleged constitutional right to possess nunchaku he must do so under the Second Amendment, and as such Defendant is entitled to summary judgment on the Second Cause of Action.

### POINT III

**THE THIRD CAUSE OF ACTION FAILS BECAUSE DEFENDANT DID NOT VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS AS A RESULT OF THE INFORMATION CONTAINED IN HER ANSWERING BRIEF**

Maloney's third cause of action asserts that Defendant Kathleen Rice violated his due process rights because her appellate counsel noted in her answering brief that "Plaintiff was listed on the New York State Child Abuse and Maltreatment Register." Plaintiff's Memorandum of Law at 9. This cause of action fails because Maloney has failed to make the necessary showing that Rice actually burdened or altered his constitutional rights. Moreover, even if Maloney could make such a showing, Rice would be immune from suit, and the cause of action is actually barred by collateral estoppel inasmuch as the Second Circuit has already determined that Maloney is not entitled to have Rice's brief stricken. As such, Rice is entitled to summary judgment on the Third Cause of Action.

*1) Defendant Rice Did not Violate Maloney's Due Process Rights*

As Maloney acknowledges, "[a] person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica,* 370 F.3d 322, 329-330 (2d Cir 2004). That said, "[l]oss of one's

reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." *Id.* To prevail on such a claim, commonly known as "stigma-plus," a plaintiff must prove "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir. 2004). "[B]ecause '[a] free standing defamatory statement…is not a constitutional deprivation,' but is instead 'properly viewed as a state tort of defamation,' the 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005).

In the instant action, Plaintiff cannot satisfy either element of the test set forth in *Sadallah*. At the outset, Maloney cannot demonstrate the utterance of a false statement by Defendant Rice. As Maloney recognizes in his complaint, the statement in Rice's brief was true at the time it was made, even though years later the finding was ultimately changed. Regardless, assuming, *arguendo*, that Maloney can meet this first element, he still fails to show that Rice took any adverse action against him that clearly restricts his liberty. Indeed, the sole alleged adverse action asserted in Maloney's complaint was the loss of revenue in connection with an adult education course that he was no longer teaching. However, Rice had absolutely nothing to do with the fact that Maloney stopped teaching the course. In fact, Maloney himself ultimately made the decision not to continue teaching the course due to concerns about a background check. Maloney simply cannot show the "plus" necessary to advance his due process claim, and as such Rice is entitled to summary judgment on the Third Cause of Action.

14

Perhaps in recognition of the fact that he cannot satisfy the necessary showing of a specific adverse action to satisfy his due process claim, Maloney instead attempts to argue that there are other reasons why this Court should grant summary judgment. Maloney's purported justifications for allowing his claim to go forward are inadequate, and fail to surmount the clear, consistent, and unambiguous decisions in this Circuit requiring the showing of tangible harm caused by the defendant *beyond* any reputation damage resulting from the uttered statement to sustain this cause of action.

Ultimately, Maloney fails to show any deprivation of his constitutional rights as a result of Rice's brief. It is clear from his Memorandum of Law that Maloney felt that his constitutional rights were violated because he did not receive a hearing to challenge the indicated report for several years, but he does not (and cannot plausibly) allege that Rice had any role in this delay. Indeed, Maloney cannot plausibly allege that Rice had any connection to the indicated report whatsoever.

To the extent that Maloney alleges that Rice violated his due process rights by "branding him the subject of an indicated report," it is clear that she did no such thing. As Maloney concedes, it is factually true that he *was* the subject of an indicated report as of the filing of the complained of brief, and this fact had already been stated in a published decision from this court. Indeed, Rice's statement cited directly to that decision, further undermining any claim that she was responsible for Maloney being "brand[ed]" the subject of an indicated report. Maloney has failed to make the necessary showing to sustain a claim for stigma plus, and as such Rice is entitled to summary judgment on the Third Cause of Action.

15

*2) Maloney Has no Cause of Action Pursuant Under the New York Social Services Law*

In support of his § 1983 claim, Maloney asserts that Rice is liable to him for a purported violation of New York Social Services Law § 422(12). Section 422(12) provides that "[a]ny person who willfully permits and any person who encourages the release of any data and information contained in the central register to persons or agencies not permitted by this title shall be guilty of a class A misdemeanor." This argument fails in two respects. First, Social Services Law § 422(12) is a criminal statute that does not provide for a private right of action. Second, even if that provision did provide for a private right of action, it is apparent that Rice would not be liable as she did not actually release any data contained in the central register; in fact, Maloney was responsible for the initial disclosure of information. As such, Maloney cannot sustain the Third Cause of Action on the basis of this provision, and Rice is therefore entitled to summary judgment.

*a) Social Services Law § 422(12) Does Not Provide for a Private Cause of Action*

As a general matter, unless a criminal statute specifically authorizes a private right of action, none exists. *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) *aff'd*, 205 F.3d 1327 (2d Cir. 2000) (citing *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Cort v. Ash*, 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Nashville Milk Co. v. Carnation Co*., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958)). While it is true that, in certain circumstances, a civil cause of action may be inferred from a criminal statute, there must be specific evidence that the legislature intended for such a result. *Cort v. Ash*, 422 U.S. at 79. Moreover, the party asserting that a civil cause of action should be inferred from a criminal statute bears the burden of demonstrating that the legislature

16

intended to make one available. *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004) (citing *Suter v. Artist M.*, 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992)).

Social Services Law § 422(12) does not specifically authorize a private right of action. Indeed, the statute does not even provide for a specific civil penalty, just that a violator "shall be guilty of a class A misdemeanor." Furthermore, Maloney does not provide any discussion of legislative intent in connection with that provision, let alone evidence that the State Legislature intended to provide for a private cause of action. Maloney cannot recover under Social Services Law § 422(12), and as such it cannot serve as a basis for the Third Cause of Action.

*b) Neither Rice nor Her Appellate Counsel Violated Social Services Law § 422(12)*

Assuming, *arguendo*, that this Court interprets Social Services Law § 422(12) as providing Maloney with a private cause of action, it is clear that neither Defendant Rice nor her appellate counsel violated that provision. While it is true that Rice's answering brief contained the statement that Maloney had been the subject of an indicated report in the State Central Register, this statement did not cite to information contained only in the central register but rather to the decision of this Court in *Maloney v. County of Nassau*, 623 F.Supp.2d 277 (E.D.N.Y. 2007). As such, it cannot be said that Rice released or encouraged the release of information contained in the State Central Register, inasmuch as such information had already been released.

Moreover, it is apparent that if anyone connected with this action would be liable under section 422(12) it would be Maloney himself. Maloney, in paragraph 33 of his initial complaint in *Maloney v. County of Nassau*, CV-03-4178, stated that he had been "Indicated" in the State Central Register, and that this "idicat[ed] that Plaintiff has been investigated for possible child abuse." Similarly, in paragraphs 54-57 of his First Amended Complaint in that same action,

Maloney again noted that the investigation by the Office of Children and Family Services resulted in "a finding of 'Indicated'…indicating that Plaintiff has been investigated for possible child abuse." Notably, unredacted versions of these documents are readily accessible through PACER and, on information and belief, Westlaw, LexisNexis, and other legal databases. As such, it is Maloney himself, not any other individual, who is responsible for the "release of any data and information contained in the central register."

Even if this Court is not inclined to view Maloney as having "released" the information, it is still apparent that Defendant Rice was not responsible for said information becoming publicly accessible. In its written (and reported) decision in *Maloney v. County of Nassau*, 623 F.Supp.2d 277, 281 (E.D.N.Y. 2007), the Eastern District of New York noted that OCFS "investigated plaintiff for possible child abuse" and that "[f]ollowing this investigation, OCFS determined that child abuse was 'indicated.'" Notably, Defendant Rice's brief did not cite to any source other than this decision, which remains accessible not only through Westlaw, LexisNexis, and other legal research tools, but elsewhere on the internet as well.[1]

In light of the foregoing, Social Services Law § 422(12) should not serve as the basis for any imposition of liability against Defendant Rice. The statute does not punish the "disclosure" or "publication" of information contained in the central register, only the "release" of such information. Given that Maloney published the information at issue not once, but twice in litigation papers, and that the Eastern District included this information in a widely available reported decision, it simply cannot be said that Defendant Rice released the fact that, at one point, Maloney was the subject of an indicated investigation. As such, neither Defendant Rice

---

[1] A search for "Maloney v. County of Nassau" produces multiple websites featuring an unredacted copy of the decision, including a copy maintained on the Google Scholar website. *See* http://scholar.google.com/scholar_case?case=12421336751589984956&hl=en&as_sdt=6&as_vis=1&oi=scholarr

nor her appellate counsel can be said to have violated Social Services Law § 422(12), and the provision therefore cannot serve as the basis for liability.

## POINT IV

## DEFENDANT IS ENTITLED TO QUALIFIED AND/OR ABSOLUTE IMMUNITY FROM THE THIRD CAUSE OF ACTION

Even if Maloney's claims with respect to the Third Cause of Action even approached the necessary legal standards, summary judgment for Rice would still be appropriate because she is entitled to qualified and/or absolute immunity. Maloney cannot show that Rice has deprived him of a recognized right under Federal law. Even if Maloney did make such a showing this right was not clearly established at the time the brief was submitted and, in any event, Rice's conduct was objectively reasonable. Moreover, because the complained of statement was made by a government attorney defending a civil suit, it is subject to absolute immunity. As such, Rice is immune from suit on the Third Cause of Action, and is therefore entitled to summary judgment.

*a) Qualified Immunity*

A government official sued in his or her individual capacity is entitled to qualified immunity in any one of three possible circumstances:

> (1) if the conduct attributed to him is not prohibited by federal law; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was objective[ly] legal[ly] reasonable[]…in light of the legal rules that were clearly established at the time it was taken. *Sadallah,* 383 F.3d at 37.

Courts almost always address these questions in sequence, and "if the first inquiry is answered affirmatively, the second and third question are moot." *Id*.

Maloney's allegations are not sufficient to defeat Rice's entitlement to qualified immunity. At the outset, and as discussed *supra*, Rice's conduct did not violate Federal law

because she did not violate his procedural due process rights. *See Sadallah*, 383 F.3d at 38 (plaintiffs complaint does not allege a claim under federal law where he cannot show "stigma plus"). Even if Maloney demonstrated the existence of "stigma plus," the right he alleges was violated was not "clearly established" at the time the brief was drafted. Maloney relies on Social Services Law § 422(12) in support of this proposition, but as noted *supra*, that section only prohibits the "release" of information contained in the central register, not the republication of such information once it has already been released. As such, Maloney is totally incorrect in asserting that the disclosure deprived him of due process.

Finally, even if this Court determines that Maloney has shown the existence of "stigma plus," *and* that his right to not have personal information that he released subsequently republished was "clearly established" at the time the brief was submitted, Rice would still be entitled to qualified immunity because her actions were objectively reasonable. Rice's appellate counsel did not dredge up previously undisclosed information about Maloney, she cited to a published[2] opinion which contained factual information relating to the circumstances of his arrest. Moreover, Rice's counsel used this information to advance a perfectly salient point on appeal, namely that "[i]t is not irrational to prohibit those prone to irrational behavior from possessing weapons." Document 102-3 at 7. There was, nor is, any "clearly established" rule suggesting that attorney's should not cull additional information from published decisions to advance a salient point on appeal, and as such qualified immunity is appropriate.

*b) Absolute Immunity*

The doctrine of absolute immunity "protect officials from personal liability for the performance of certain discretionary acts." *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d

---

[2] Maloney elsewhere has, correctly noted that the decision was not published in the Federal reports at the time the brief was filed, but the decision is now reported. Regardless, the decision was available on Westlaw in an unredacted fashion and there was no indication that the decision would not be selected for publication.

Cir. 1992). The purpose of such immunity is to protect government officials "whose duties are deemed as a matter of public policy to require such protection to enable them to function independently and effectively, without fear or harassment." *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986) It is settled law in the Second Circuit that "government attorneys defending civil suits" are entitled to absolute immunity. *Id*. In *Barrett*, 798 F.2d at 573, the Circuit noted that while such "immunity may occasionally preclude redress for defamation, it recognizes the free speech needs of litigating adversaries."

In the instant proceeding, Maloney is attempting to foist liability upon Defendant Rice for statements made by her appellate counsel in a brief submitted in the course of defending a civil lawsuit. This case therefore represents a perfect application of the doctrine of absolute immunity. Even if the application of the doctrine ultimately precludes Maloney from seeking redress for the allegedly improper disclosures made in the brief, it is clear that applying the doctrine is necessary to ensure the "free speech needs of litigating adversaries." Indeed, it should be stressed that Maloney has not actually been prevented from effectively seeking redress inasmuch as he unsuccessfully moved for the striking of the brief at issue in the Second Circuit. Maloney's suit effectively seeks to render Rice liable for statements made by her appellate counsel in the course of defending a civil suit, and as Rice is entitled to absolute immunity on the Third Cause of Action.

## POINT V

## THE THIRD CAUSE OF ACTION IS BARRED BY COLLATERAL ESTOPPEL

Assuming, *arguendo*, that this Court does not agree that Maloney's third cause of action is legally baseless or that Rice is entitled to immunity on this claim, Rice is still entitled to summary judgment because the Third Cause of Action is barred by collateral estoppel. The

Second Circuit has already decided that Maloney was not entitled to have Rice's brief withdrawn because it references the fact that he had an indicated report in the State Central Register. Given that a higher court has already determined that Maloney was not entitled to have the brief withdrawn, it should follow that he is not entitled to damages for the information contained therein, and as such Rice is entitled to summary judgment on the Third Cause of Action.

It is a fundamental principle of American jurisprudence that where a "right, question or fact [is] distinctly put in issue and directly determined by a court of competent jurisdiction…[it] cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (internal quotation omitted). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id*. Collateral estoppel serves a number of purposes, such as protecting defendants from multiple lawsuit, conserving judicial resources, and minimizing the possibility of inconsistent decisions. *Id*.

On October 26, 2007, Maloney filed a motion in the Second Circuit asking that court to "strike [Rice's] brief as violative of Local Rule 28(1) and of *NY Social Services Law*." (emphasis added) Maloney's memorandum in support of the motion alleged that the brief "contains egregiously 'scandalous' matter within the meaning of the Rule in that it discloses that 'Plaintiff [is] listed on the New York State Child Abuse and Maltreatment Register.'" Maloney's memorandum cited to *Harman v. City of New York*, 140 F.3d 111 (2d Cir. 1998) and Social Services Law 422 in support of his contention that the brief contains an "improperly and ***illegally*** introduced statement that Plaintiff-Appellant is 'listed on the New York State Child Abuse and Maltreatment Register.'" (emphasis in original)

22

Rice's appellate counsel argued in response to the motion that, because the allegation that Maloney was listed on the State Central Register was contained in the decision in *Maloney v. County of Nassau*, "all of the statements in Defendant's Brief that Plaintiff complains of are a matter of public record." In his reply papers, Maloney again reiterated his opinion that "[t]he disclosure of confidential material in Appellee's Brief is **criminal** in nature" in light of the "unambiguous[]" language of Social Services Law 422. (emphasis in original) Maloney, by letter, subsequently informed the Court that his listing on the Central Register "has recently been formally adjudged to have been unsupported by a fair preponderance of the evidence." On November 19, 2008, Maloney's motion to strike the brief was denied.

It is respectfully submitted that the Second Circuit's decision on Maloney's motion represents the determination that he was not entitled to have the brief withdrawn or striken. The Second Circuit was placed on notice of the existence of Social Services Law 422 *and* the fact that the indicated report was subsequently withdrawn, yet it still determined that the brief did not contain illegal or scandalous matter sufficient to warrant retraction. As such, the Second Circuit necessarily determined that Maloney was not entitled to retraction of the brief, and as such this Court is bound by the determination that the material contained in the brief was proper.

The crux of Maloney's claim on the issue of retraction is that "[e]ven after having been placed on formal notice" of the existence of Social Services Law 422 and of the subsequent determination that the indicated report was unfounded "Rice failed to retract the disclosure, leaving it in a public document to be widely disseminated in electronic perpetuity." However, the Second Circuit was also placed on formal notice of the issues surrounding the indicated report and still determined that Maloney was not entitled to have the brief stricken. The Second Circuit "necessarily determined" that Maloney did not have the "right" to have these disclosures

23

redacted from the brief, and as such the alleged violation of that "right" cannot serve as the basis

for a § 1983 action under the doctrine of collateral estoppel.

## CONCLUSION

For the foregoing reasons, Defendant Kathleen A. Rice respectfully submits that

Plaintiff's motion for summary judgment on the First and Third Causes of Action should be

denied, and that Defendant's cross-motion for summary judgment on the First, Second, and

Third Causes of Action should be granted, together with such other and further relief as this

court may deem proper.

Dated: Mineola, New York
      January 27, 2014

CARNELL T. FOSKEY
Nassau County Attorney


By:     _____/S/_____
Liora M. Ben-Sorek
Deputy County Attorney
One West Street
Mineola, New York 11501
(516) 571-3014
Attorneys for Defendant Rice

To:     James M. Maloney
     33 Bayview Avenue
     Port Washington, New York 11050
     (516) 767-1395
     Plaintiff *Pro Se*