ADMITTED TO PRACTICE IN:
NEW YORK; NEW JERSEY;
UNITED STATES SUPREME COURT;
U.S. COURTS OF APPEALS FOR THE
SECOND AND THIRD CIRCUITS;
U.S. DISTRICT COURTS FOR THE
EASTERN DISTRICT OF TEXAS,
DISTRICT OF NEW JERSEY,
NORTHERN DISTRICT OF FLORIDA,
NORTHERN DISTRICT OF ILLINOIS,
DISTRICT OF CONNECTICUT, AND
NORTHERN, SOUTHERN & EASTERN
DISTRICTS OF NEW YORK; U.S.
COURT OF INTERNATIONAL TRADE;
U.S. COURT OF FEDERAL CLAIMS.

# JAMES M. MALONEY
ATTORNEY AT LAW
PROCTOR IN ADMIRALTY



P.O. BOX 551
33 BAYVIEW AVENUE
PORT WASHINGTON, NY 11050

TEL: (516) 767-1395
FAX: (516) 767-1326

E-MAIL ADDRESS:
**maritimelaw@nyu.edu**

April 4, 2016

The Honorable Pamela K. Chen
United States District Judge
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201                          Re: *Maloney v. Singas*, CV-03-0786

**Via ECF**

Dear Judge Chen:

    I am the *pro se* plaintiff in the above-captioned matter, and am writing in the wake of the United States Supreme Court's two opinions released together on March 21, 2016, in the case of *Caetano v. Massachusetts*, ___ U.S. ___ (2016) (copy of slip opinions attached as appendix hereto), wherein the Court unanimously reiterated (at the outset of its *per curiam* opinion and elsewhere) that "the Second Amendment extends, ***prima facie***, to all instruments that constitute bearable arms."  (This was in the context of whether stun guns constitute arms entitled to Second Amendment protection, and was the first time the Court has ever issued an opinion that addresses the applicability of the Second Amendment to arms other than firearms.)

    The term "*prima facie*," although often used in legal discourse, is arguably susceptible of more than one meaning.  Yet most often it implies a shifting of the burden of proof or persuasion.[1]

    I write today not to argue that this court should shift the burden to the defendant to show that nunchaku are *not* covered arms, but to argue that, in the wake of *Caetano*, and weighing the equities in the interest of justice, it should permit an additional summary judgment motion by the plaintiff before imposing on me the burdensome and expensive proposition of a trial on the mixed question of fact and law identified in Your Honor's decision of May 22, 2015 (ECF Document No. 146).  As a *pro se* litigant, I can never earn attorney's fees for the many thousands

---

[1] For example, a law review article written in 1973 by a professor of philosophy notes that "[i]n legal materials, the phrase frequently refers to evidence sufficiently persuasive so as to require rebuttal."  M.B.E. Smith, "Is There a *Prima Facie* Obligation to Obey the Law?" 82 Yale L. J. 950, 952 (April 1973) (hereinafter, "Smith"). A more recent law review comment explains that in some usages "'*prima facie*' is virtually indistinguishable from at least one legal meaning of 'presumption.'" Georg Nils Herlitz, Comment, "The Meaning of the Term '*Prima Facie*,'" 55 La. L. Rev. 391, 397 (November 1994).

of hours that I have put into this case and may put into it going forward. That is a condition of which I was aware, and accepted, some 13 years ago when I started the action. But I could not have foreseen then the long path and many turns this case would take, nor that I would at some point be expected to finance the compensation and transportation of "expert" witnesses (Messrs. Orcutt and Pellitteri) in order to obtain the declaration of law that I have sought for so long.

When I started this case 13 years ago, I practiced law only from an office in my home, and my twin sons were just four years old. Now they are 17, about to start college, and at the beginning of this calendar year I committed to the monthly overhead of rented office space for my law practice, the remunerative part of which I am working hard to grow. In the intervening years, I have forgone the exercise of what I believe to be my constitutional right to keep usable nunchaku in my home for peaceful martial arts training and home defense, not because I believe that it is wrong to do so,[2] but (a) because I have been professionally disciplined as an attorney for having done so and would risk not only misdemeanor prosecution but loss of my livelihood;[3] and (b) because possessing an "illegal weapon" in my home while my sons are under 18 years of age could subject me to additional criminal charges and yet another difficult-to-remove listing of my name on the New York State Central Register of Child Abuse and Maltreatment.[4]

Paradoxically, I have plenty of legally owned firearms, so I could shoot and risk killing (or shoot to kill) an intruder if justified. But keeping a pair of nunchaku tucked under my mattress, where they would be readily available in the middle of the night without either the need for hasty preparation or the converse risk of an accidental death,[5] and could be used without resorting to lethal force,[6] is itself not a risk that I have taken, for the reasons described above.

Given the Court's recent reiteration of the principle that "the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms," given that the mixed question of fact and law identified in Your Honor's decision of May 22, 2015 (ECF Document No. 146) is susceptible of resolution by documentary evidence alone, and given that that issue was not adequately framed before the first such motion and indeed reflects an evolving area of the law, I hereby request the opportunity to move this court for summary judgment on that mixed question of fact and law before undertaking the burden of a trial.

Respectfully,
/s James M. Maloney

---

[2] See Smith, *supra* note 1.

[3] See ECF Document No. 148, filed July 31, 2015, at 4-5.

[4] See ECF Document No. 148, filed October 3, 2013, at 2-8.

[5] With firearms, there is a tradeoff between having them readily available for defense when needed and risking tragic consequences by having them *too* accessible. Locking them up and/or keeping them unloaded and separate from the ammunition is prudent as regards the latter, but all too often fatally counterproductive as regards the former. With nunchaku, which contain no stored energy and require skill to be used effectively, that dilemma is ameliorated by several orders of magnitude.

[6] In connection with the *Caetano* Petitioner's choice to use a weapon capable of applying non-lethal force (rather than a firearm), the concurrence wrote: "Courts should not be in the business of demanding that citizens use more force for self-defense than they are comfortable wielding." Slip Opinion at 9-10 (Alito, J., concurring).