UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JAMES M. MALONEY,

           Plaintiff,

- against -

MADELINE SINGAS,

           Defendant.
-------------------------------------------------------------------X

03-cv-786 (PKC) (AYS)

**PLAINTIFF'S MEMORANDUM IN ADVANCE OF THE RE-OPENED BENCH TRIAL**

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Burden of Proof on Weapon Eligibility for Second Amendment Protection . . . . . . . . 4

II. Public-Policy Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Preliminary Statement

This memorandum is submitted in advance of the re-opened bench trial scheduled to begin on June 4, 2018. This memorandum follows Plaintiff's Proposed Findings of Fact and Conclusions of Law submitted as such (i.e., as numbered paragraphs drafted in a form that the Court could adopt or modify) on March 2, 2017 (ECF Doc. No. 184), following the initial (and at the time assumed to be definitive) bench trial held between January 9 and 12, 2017.

It is recognized that the Court's Individual Rules at Part 4(B) contemplate Proposed Findings of Fact and Conclusions of Law being submitted in advance of trial. However, rather than repeat the form previously provided, Plaintiff will provide persuasive argument here.

Introduction

Since 1974, New York has banned the possession, even in one's home, of nunchaku or nunchucks,[1] a martial arts weapon consisting of two sticks connected by a cord or chain. Under New York law, possession of nunchucks constitutes a Class A misdemeanor. See N.Y. Penal Law § 265.01 ("A person is guilty of criminal possession of a weapon in the fourth degree when: (1) He or she possesses any . . . chuka stick . . . ."); *id*. at § 265.00(14) (defining "chuka stick," a term that includes nunchaku). Plaintiff filed this action in 2003, seeking a declaration that New York's ban on the simple possession of nunchucks in one's home is unconstitutional. Although the Honorable Arthur D. Spatt dismissed Plaintiff's constitutional claims in 2007, which dismissal was affirmed by the Second Circuit on appeal in 2009 (*Maloney v. Cuomo*, 554 F.3d 56 (2d Cir. 2009)), the United States Supreme Court in 2010 vacated the judgment and remanded the case for further consideration in light of its decision in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which had held that the Second Amendment is applicable as against the states. *See Maloney v. Rice*, 561 U.S. 1040 (2010). On remand, this Court denied cross-motions for summary judgment, *see Maloney v. Singas*, 106 F. Supp. 3d 300 (2015), finding that there were disputed issues of material fact that must first be resolved by means of a trial.

At the time this Court handed down the foregoing Opinion, the Second Circuit had not yet decided *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo* ("*NYSRPA*"), 804 F.3d 242, 254 (2d Cir. 2015), and this Court, in its pre-*NYSRPA* Opinion, framed the factual issue related to the

---

[1] In its Memorandum & Opinion in this matter dated May 22, 2015, *Maloney v. Singas*, 106 F. Supp. 3d 300 (2015), the Court referred to "chuka sticks" and "nunchakus" interchangeably. *See id*. at footnote 1. "Chuka stick," however, is statutorily defined as "any device designed primarily as a weapon, consisting of two *or more* lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks." N.Y. Penal Law § 265.00(14) (emphasis added). All the testimony and exhibits at trial relating to the weapon in question described a weapon consisting of two (but not more) sticks so connected. Since New York's statutory definition of "chuka stick" is broader, encompassing weapons that may consist of more than two sticks, the term "nunchaku" (or its common English-language variant "nunchucks") is a better term than "chuka sticks" for describing the specific weapon for which Plaintiff seeks Second Amendment protection.

question of whether the nunchaku is a protected arm as follows: "the weapon at issue must be 'in common use' *and* its common use must be a lawful one." 106 F. Supp. 3d at 310 (emphasis in original).  However, in *NYSRPA*, the Second Circuit framed the comparable inquiry as whether the weapon at issue is "(1) 'in common use' and (2) 'typically possessed by law-abiding citizens for lawful purposes.'"  Memorandum and Order of July 23, 2017 (ECF Doc. No. 184), at 3 (quoting *NYSRPA*, 804 F.3d at 254-255).  This Court, in that subsequent Memorandum and Order, found that, "[while the specific language used by this Court to articulate the threshold question is somewhat different from the test articulated by the Second Circuit in *NYSRPA*, the Court finds the difference is not substantive. Nonetheless, going forward, the parties should use the precise legal framework and terminology used by the Second Circuit in *NYSRPA*." *Id*. at 3 n.2.

Importantly, this Court in that subsequent Memorandum and Order also found that (as stated by the Supreme Court in *Heller*[2] and restated both by the Supreme Court in *Caetano*[3] and the Second Circuit in *NYSRPA*) a presumption in favor of Second Amendment protection applies, with the defendant having the initial burden of rebutting that presumption rather than the plaintiff having the initial burden of establishing Second Amendment protection.  This Court wrote: "Thus, in keeping with the Second Circuit's reading of *Heller*, a presumption in favor of Second Amendment protection applies, and the government, i.e., Nassau County, has the burden of producing evidence that nunchakus are not 'in common use' or not 'typically possessed by law-abiding citizens for lawful purposes.'" *Id*. at 4 (citing *NYSRPA*, 804 F.3d at 257 n.73; Fed. R. Evid. 301).  As a consequence of this finding, the trial was continued in order to afford Nassau County the opportunity to offer additional evidence to rebut the presumption in favor of Second Amendment protection.

This memorandum will very briefly address the legal framework and public-policy implications of the evolving and still-nascent jurisprudence of the Second Amendment, including the initial presumption burden-shifting considerations that, absent further refinement, appear to be somewhat illogical and impracticable, and will reserve arguments relating to Nassau County's new evidence and to the appropriate level of scrutiny to be applied to the nunchaku ban in the home (if indeed the nunchaku is a protected arm) for post-trial briefing.

---

[2] 554 U.S. 570 (2008).

[3] *Caetano v. Massachusetts*, 577 U.S. ___ (2016), No. 14-10078.  Plaintiff wrote to the Court in the wake of *Caetano* "not to argue that this court should shift the burden to the defendant to show that nunchaku are *not* covered arms, but to argue that, in the wake of *Caetano*, and weighing the equities in the interest of justice, it should permit an additional summary judgment motion . . ." Letter of April 8, 2016 (ECF Doc. No. 163).

I. The Burden of Proof on Weapon Eligibility for Second Amendment Protection

The practical problem of requiring a government defendant in a Second Amendment challenge to show as an initial matter that a given weapon is *not* in common use and typically possessed by law-abiding citizens for lawful purposes is, simply put, the problem of proving a negative. To use an appropriate metaphor, it is difficult to prove that there is no such thing as a white crow.

However, in the evolving jurisprudence of the Second Amendment, there appears to be a correlation (albeit one yet to be fully developed and articulated) between the above "negative" proof and the comparable standard of whether the attributes of the weapon in question would make it "dangerous and unusual," another basis for denying the weapon any Second Amendment protection. *See Heller*, 554 U.S. at 627 ("We also recognize another important limitation on the right to keep and carry arms. [*United States v. Miller*, 307 U.S. 174 (1939)] said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' . . . We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'") (citations omitted).

It follows that, under *Heller*, there should be little if any overlap as between weapons falling into one or the other of the two categories ("dangerous and unusual," *Heller*, 554 U.S. at 627, on the one hand, as over against "typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625 (quoting *Miller*), on the other). Put another way, "dangerous and unusual" weapons would be precisely those sorts of weapons that are *not* "typically possessed by law-abiding citizens for lawful purposes."

Although Plaintiff has previously argued, *see* Plaintiff's Memorandum of Law (ECF Document 132, filed March 20, 2014), at 8 (pdf page 10 of 23). that since he has not challenged New York's prohibition on carrying nunchaku, and since *Heller* references the "historical tradition of prohibiting the *carrying* of 'dangerous and unusual weapons,'" 554 U.S. at 627 (emphasis added) the question of whether the nunchaku may be a "dangerous and unusual weapon" should not be before this Court at all. But Plaintiff now formally abandons[4] that earlier argument for two reasons: (1) because, under *Heller*, the two categories of weapons ("dangerous and unusual" versus "typically possessed by law-abiding citizens for lawful purposes") appear to be essentially mutually exclusive, such that a finding that a weapon falls into one category is tantamount to a finding that it does not fall into the other, the short-barreled shotgun being the paradigmatic example, derived from both *Miller* and *Heller,* of a dangerous and unusual weapon that is not typically possessed by law-abiding citizens for lawful purposes; and (2) because *Heller*, on closer reading, can be seen to have specifically noted that the "dangerous and unusual" rubric was "an important limitation on the right to *keep* and carry arms," 554 U.S. at 627 (emphasis added).

It seems logical, therefore, to interpret the burden of rebutting the presumption in favor of

---

[4] This change is not entirely new here. See Plaintiff's Proposed Findings of Fact and Conclusions of Law (ECF Doc. No. 184) at ¶ 46.

Second Amendment protection for a given weapon as the practical equivalent of a burden of showing that the weapon is "dangerous and unusual." Admittedly, no Supreme Court case yet decided holds as much, but the Second Circuit has clearly indicated that such an approach has merit. In *NYSRPA*, in an important footnote relating to the State's failure to make any argument that the Remington Tactical 7615, a pump-action rifle (i.e., not a semiautomatic) was "dangerous and unusual," the Court wrote:

> Because the State, [which was] focused on semiautomatic weapons . . . has failed to make any argument that this pump-action rifle is dangerous, unusual, or otherwise not within the ambit of Second Amendment protection, the presumption that the Amendment applies remains unrebutted.

*NYSRPA*, footnote 73. Indeed, that footnote was like a small kernel containing the most important of the *NYSRPA* Court's holdings relating to this issue, whereas much else in the *NYSRPA* Opinion about presumptions was arguably *dicta*. The footnote began: "Though we *assume without deciding* that the bulk of the challenged legislation is entitled to Second Amendment protection, we *decide* as much with respect to Connecticut's prohibition of the Remington Tactical 7615, a non-semiautomatic pump-action rifle." *Id.* (emphasis in original).

Although conceivably a given weapon may not be "dangerous and unusual" yet may nonetheless not be "commonly used for lawful purposes" to the degree needed to merit Second Amendment protection, no such case has yet arisen. Perhaps the more likely event would be the converse, that weapons now in common use, like semiautomatic firearms, may conceivably be found to be "dangerous and unusual."

This possibility is inextricably intertwined with public-policy considerations.

II. Public-Policy Considerations

We live in an era in American history in which mass shootings with semiautomatic weapons, wherein multiple innocent victims are killed in each such incident, have become commonplace. It is impossible to consider the implications of Second Amendment jurisprudence without considering that horrific problem.

Banning all possession of semiautomatic weapons has been proposed. In order to do so constitutionally, that class of weapons must be determined to be "dangerous and unusual" even though they are now "commonly used for lawful purposes." As the precise attributes of the "dangerous and unusual" rubric remains to be fleshed out by the courts, it is indeed possible that a jurisprudence could emerge that would recognize the "dangerous and unusual" characteristic to be one related to the capability for achieving mass homicides, and that semiautomatic weapons could be found to be "dangerous and unusual" by a majority of the Supreme Court.

But it is beyond dispute that nunchucks do not fall into that category, at least if the category is based on the capability for achieving mass homicides.

  Yet the interplay among the branches of government is such that in order to gain the popular support needed to enact a ban on all possession of semiautomatic weapons, Congress would need assurances that the "dangerous and unusual" rubric applied to semiautomatic weapons would not eventually be extended to all (or virtually all) firearms.  Without such assurances the legislation would likely fail.  And such limits could proceed only from a robust and well-developed Second Amendment jurisprudence that, once so evolved, would not only act as a bulwark against overbroad complete weapons bans but, more importantly for present purposes, as a *catalyst* that would actually (by providing limits) *facilitate* reasonable weapons bans.

  Holding that the nunchaku is a "dangerous and unusual" weapon would be antithetical to such a progressive and sensible jurisprudence, and therefore counterproductive to any hope of bringing to a close this current era in which mass shootings with semiautomatic weapons have become commonplace.

               Respectfully submitted,

               /s  James M. Maloney