UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES M. MALONEY,                                                                CV-03-0786 (PKC)

                              Plaintiff,

       -   against   -

MADELINE SINGAS, Nassau County
District Attorney,

                              Defendant.
------------------------------------------------------------X


# DEFENDANT'S TRIAL BRIEF


                                                         JARED A. KASSCHAU
                                                         Nassau County Attorney
                                                         One West Street
                                                          Mineola, New York 11501
                                                         Attorney for Defendant


*Of Counsel*:   Liora M. Ben-Sorek
                     Deputy County Attorney
                     (516) 571-3014

# Table of Contents

Table of Contents …………………………………………………………………… ii

Table of Authorities …………………………………………………………………. iii

List of Defendant's Exhibits ………………………………………………….......  iv

Preliminary Statement ………………………………………………………………. 1

Relief Sought by Plaintiff ………………………………………………………… 2

Standard of Review ………………………………………………………………. 2

Point I
      Nunchaku Are Not Weapons in Common Use ………………………….. 4

Point II
      Analysis of "Typical Use by Law-Abiding Citizens" ………………………. 6

Point III
      Nunchaku are Dangerous and Unusual Weapons …………………………. 8

Point IV
      Public Policy Arguments ……………………………………………………. 10

Point V
      Analysis of Level of Constitutional Scrutiny to be Applied …………………. 11

Conclusion ……………………………………………………………………… 13

**Table of Authorities**

Cases:

*Avitabile v. Beach*, 277 F.Supp. 3d 326 (2017) ……………………………………….  11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ……………………………….3, 4, 5, 8, 11

*In re S.P., Jr.*, 465 A.2d 823 (D.C. Ct. Apps. 1983) ……………………………………..  8

*Kachalsky v County of Westchester*, 701 F3d 81 (2d Cir 2012),
    *cert denied* 569 US — ……………………………………………………………….  12

*LaValle v Hayden*, 98 NY2d 155 (2002) …………………………………………….  3

*Maloney v. Singas*, 106 F.Supp.3d 300 (E.D.N.Y. 2015) …………………………………  11

*Matter of Concerned Home Care Providers, Inc. v State of New York*,
    108 AD3d 151 (2013), *lv dismissed* 22 NY3d 946 (2013) ……………………..  3

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ………………………………………  4, 5, 11

*Mishtaku v. Espada*, 669 Fed.Appx. 35 (2d Cir. 2016) …………………………………..  12

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ………………………………………………. 2, 4-5, 11-12, 13

*People v Hughes*, 22 NY3d 44 (2013) …………………………………………………….  12

*R.V. v. State*, 497 So.2d 912 (1986) ……………………………………………………  8

*Schulz v. State of New York Exec.*, 134 A.D.3d 52 (N.Y. App. Div. 2015) …………….  3, 12

*State v. Courtier*, 166 Or.App. 514 (2000) ……………………………………………..  8

*State v. Mitchell*, 371 N.W.2d 432 (1985) ……………………………………………..  8

*United States v. Jiminez*, 2018 WL 3352599 (2d Cir. July 10, 2018) …………… 3, 4, 5, 10, 11

*U.S. v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ……………………………………….. 4

Statutes:

Federal Rules of Civil Procedure 52
New York State Penal Law § 265.00
New York State Penal Law § 265.01

## List of Defendant's Exhibits

Exhibit A:    New York State Legislative History for 1974 Amendment to Penal Law § 265.01

Exhibit C:    Plea and Sentence Minutes, *People v. Maloney*

Exhibit D:    Nassau County District Attorney's Office Statistics re: Criminal Charges

Exhibit E:    Bureau of Justice Statistics on Weapon Uses and Violent Crime

Exhibit F:    New York State Penal Law § 265.00

Exhibit G:    New York State Penal Law § 265.01

Exhibit H:    New York State Penal Law § 265.15

Exhibit J:    New York State Penal Law § 265.20

Exhibit K:    Responses to Defense Subpoenas – manufacturing and sales data

Exhibit L:    Comment and Explanation on Subaru Commercial – Don't take nunchaku and other dangerous items

**PRELIMINARY STATEMENT**

The within Brief constitutes Defendant Madeline Singas, the Nassau County District Attorney's (the "Defendant") submission for the continued trial in this matter. A Bench Trial was held between January 9-12, 2017. Thereafter, on March 2, 2017 the parties submitted their proposed Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. Pro. 52 (see DE 184 and 185). By Memorandum and Order dated July 23, 2017 (DE 188) the Court advised the parties that there were errors in their submissions; more particularly (1) the existence of a Second Circuit decision on Second Amendment challenges which post-dated this Court's rulings on the parties' respective summary judgment motions, (2) an incorrect burden of proof, and (3) the parties' submissions did not address the level of constitutional scrutiny to be applied to Plaintiff's Second Amendment claim. This Court graciously provided the parties with an opportunity to conduct additional discovery to address the errors. The additional discovery has been completed.

The issue to be addressed in this litigation is whether possession of nunchaku is protected by the Second Amendment and, if so, what level of constitutional scrutiny is to be applied to review the subject statute.

Defendant respectfully submits that nunchaku do not fall under the Second Amendment's protection of "bearable arms" for the reasons detailed below. In the event, however, that this Court deems this weapon as constitutionally protected, Defendant respectfully suggests that the applicable New York State Penal Law section, § 265.01, should be analyzed under an intermediate scrutiny analysis.

Plaintiff James M. Maloney's claim alleging that the ban on nunchaku violates the Second Amendment fails because nunchaku are dangerous and unusual weapons and are not

1

typically used by law abiding citizens for lawful purposes. Nunchaku have the potential to cause serious injury or death and have been repeatedly recognized by various courts as dangerous and deadly weapons.

Defendant refers the Court to its proposed Findings of Fact (DE 185 at pages 1-20) for a recitation of facts adduced during the Bench Trial.

Defendant also incorporates by reference the entirety of its proposed Findings and Fact and Conclusions of Law.

## RELIEF SOUGHT BY PLAINTIFF

Plaintiff seeks a declaratory judgment that New York Penal Law § 265.01 is unconstitutional pursuant to the Second Amendment of the United States Constitution to the extent that it prohibits the in-home possession of "nunchucks" or "nunchaku," defined as "any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking." N.Y. Penal Law § 265.00 (McKinney).

## STANDARD OF REVIEW

This Court has interpreted *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) to set forth a presumption of Second Amendment protection in this case.  (DE 188, at p.3, quoting *NYSRPA* at 257 n.73). Thus, this Court has found that there is a rebuttable presumption that nunchaku is a weapon protected under the Second Amendment.Defendant, bears the burden of demonstrating that nunchaku is "dangerous, unusual, or otherwise not within the ambit of Second Amendment protection."  (DE 188, at pp. 3-4.).

In addition, the standard of review has been further tailored in a recent decision from the Second Circuit. The applicable standard of review is not simply whether nunchaku is commonly used for lawful purposes. Rather, the analysis is more circumscribed; to wit, whether the weapon utilized is in common use. *United States v. Jiminez*, 2018 WL 3352599, at *4 (2d Cir. July 10, 2018).

Moreover, Second Amendment precedent from the Supreme Court applies to "*law-abiding, responsible citizens*" in the "defense of hearth and home." *Id*. (emphasis in original) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Notably, contrary to the Court's finding [DE 188 at p. 4] Defendant disputes that nunchaku is a bearable arm within the meaning of the Second Amendment because it is not used by law abiding responsible citizens for the defense of hearth and home. Therefore, the initial burden of proof is inappropriately assigned to the County. The initial and the ultimate burden of proof resides with plaintiff.

As quoted in *Schulz v. State of New York Exec.*, 134 A.D.3d 52, 55 (N.Y. App. Div. 2015), "[l]egislative enactments enjoy a strong presumption of constitutionality . . . [and] parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (*LaValle v Hayden*, 98 NY2d 155, 161 [2002] [internal quotation marks and citations omitted]; *see Matter of Concerned Home Care Providers, Inc. v State of New York*, 108 AD3d 151, 154 [2013], *lv dismissed* 22 NY3d 946 [2013]).

As applied in this action, the New York State Legislature properly amended Penal Law § 265.01 in 1974 to include a prohibition against the possession or use of chuka sticks. The Defendant respectfully submits that the statute is entitled to a presumption of constitutionality and that Plaintiff Maloney has the initial burden of demonstrating its invalidity beyond a reasonable doubt. However, mindful of the Court's previous rulings, Defendant's analysis of the

3

evidence and the law is set forth below consistent with the determination that Defendant has the initial burden of proof.

## POINT I

### NUNCHAKU ARE NOT WEAPONS IN COMMON USE

The starting point in this inquiry are the Supreme Court's decisions in *Heller and McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Heller* acknowledged an individual right to bear a firearm for the defense of one's home. A handgun is the "quintessential self-defense weapon." *Heller, 554 U.S. at 628.*

*Heller* also clearly delineated that "the right secured by the Second Amendment is not unlimited," and does not constitute the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Indeed, the Court acknowledged that the types of weapons protected by the Second Amendment are those "in common use," particularly in light of the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons." *Id.* at 627. As such, the Court expressly held "the Second Amendment does not protect those weapons not typically possessed by law abiding citizens for lawful purposes." *Id*. at 624-625; *See also McDonald 561 U.S. 742* (affirming that *Heller* "does not imperil every law regulating firearms"); *U.S. v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), 90-91 (right to bear arms only extends "to those [weapons] typically possessed by law-abiding citizens for lawful purposes" and "affords no protection to 'weapons not typically possessed by law-abiding citizens for lawful purposes.'").

Examining *Heller*, the Second Circuit pointed out that "[t]he Supreme Court [ ] identified the core of Second Amendment protections by reference . . . to  . . . *particular weapons*." (Emphasis added). *Jiminez,* 2018 WL 3352599, at *4. Notably the weapon at issue in *Heller* was a firearm while ammunition for a firearm was at issue in the *Jiminez* case. In *NYSRPA* the

4

Second Circuit observed that "[n]either Heller nor McDonald [ ] delineated the precise scope of the Second Amendment or the standards by which lower courts should assess the constitutionality of *firearms* restrictions." NYSRPA, 804 F.3d at 254 (emphasis added).

Defendant reads this interpretation to mean that the Supreme Court's intent relates to firearms. If this Court rejects this interpretation and holds that nunchaku may be a type of weapon considered under *Heller*, Defendant suggests that it is unusual, uncommon, not widely known or utilized for self-defense, and is dangerous. Accordingly, nunchaku should not be afforded Constitutional protection.

Undoubtedly, the Defendant has the burden of proving a negative; that is, proving that nunchaku are not commonly used. In *New York State Rifle & Pistol Assn. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), the Second Circuit adopted a two-step analysis. The first step in the analysis – whether or not a weapon is entitled to constitutional protection -- in and of itself, requires a two-part inquiry because the Second Amendment protects weapons that are (1) in common use and are (2) typically possessed by law-abiding citizens for lawful purposes. *Id*. at 254-55.

In its recent *Jiminez* decision the Second Circuit noted that "[i]t is clear from *Heller* and our decisions applying it that *protecting oneself in one's home with a weapon in common use* is at the core of the Second Amendment. *Jiminez*, 2018 WL 3352599, at *4 (internal citations omitted). How does a Court determine "Common Use?" "Common Use," the Second Circuit stated, "is an objective and largely statistical inquiry." *NYSRPA* at 256.

This Court previously noted that the evidence of "commonality" which was offered at the January 2017 trial that consisted of a single source of manufacturing and sales data was insufficient. *See* 7/23/17 Order, DE 188, at 5-6.

5

In preparing for this continued portion of the trial, Defendant conducted a search for manufacturers and distributors of nunchaku in order to provide this Court with additional data points. Subpoenas were served on seventeen (17) entities who hold themselves out as manufacturers and/or sellers of nunchaku. Seven (7) responses were received, representing nine (9) entities (on two occasions the entity conducted business under two separate corporate names; e.g., Zengu.com and KarateDepot; TigerClaw and Martial Arts Mart). Responses from each of these entities is annexed hereto as Exhibit K. As the Court can see, the sales figures on nunchaku (plastic, foam and rigid) is very low demonstrating that they are not in common use for any purpose let alone protection in the home.

## POINT II

## ANALYSIS OF "TYPICAL USE BY LAW-ABIDING CITIZENS"

Next, we look to the more subjective analysis – the typical use by law abiding citizens. Nunchaku is "unusual" in that it is not "in common use;" only a small subset of the population even attempts to use nunchaku for martial arts related purposes. Tr. 297:13-17 ("[n]unchucks is a subset of martial arts which is a subset of sports.").

From the evidence adduced, nunchaku is a tool from the sphere of martial arts. Evidence of lawful uses of nunchaku other than in the martial arts realm and limited law enforcement use is non-existent. Likewise, evidence of nunchaku for home defense or self-defense purposes is extremely limited. Other than Plaintiff, who claims to have incorporated nunchaku into a unique martial arts method, *Shafan HaLavan*, to which he is the sole adherent, there is no evidence of nunchaku use as a weapon for self-defense.

Referring the Court to the testimony from the 2017 Bench Trial, evidence was presented identifying three (3) types of nunchaku use: gyration, striking, and trapping. Tr. 83:20-84:7. Of

these described uses, only striking applies to a possible defensive purpose. (Gyration involves spinning or twirling the nunchaku and is not effective for self-defense purposes. Tr. 84:11-13. According to Plaintiff's "expert witness" Christopher Pellitteri, "[t]he twirling stuff, all the fancy stuff you do is a lot of fun. In a real combat situation, you'd be a fool to spin [nunchaku] around all the time like that." Tr. 44:16-19. "Unless you learn how to strike, you're going to hit yourself." Tr. 84:18-19. Spinning or twirling nunchaku is more of a recreational use and not intended for self-defense. Tr. 170:7-15.)

Self-defense involves the second category, striking techniques, which require a more refined set of skills than gyration. Tr. 84:20-21.

Witness Pellitteri testified that most students don't train with nunchaku for self-defense because they are illegal to possess in California outside of a dojo (Tr. 255:24-25; 256:1-4). But he also stated that nunchaku is not a realistic weapon for self-defense. Tr. 256:18-25. Pellitteri testified that it is not as practical to use a pair of nunchaku for self-defense now as it might have been in Okinawa in the 1600's. Tr. 257:4-6. Pelliteri's students see nunchaku as "neat, . . . flashy . . . fun" (Tr. 256, 9-10) and not having anything to do with self-defense. (Tr. 256:12-13).

Plaintiff's other "expert witness," Retired Sergeant Kevin Orcutt, testified that he would ***not*** use nunchaku for self-defense and specifically contradicted Plaintiff's core theory that nunchaku are effective weapons to defend against a knife-wielding person. Tr. 159-160.

Defendant has not located any examples where nunchaku have been used for home or self-defense. The only evidence presented to the Court that nunchaku can be utilized for home defense or self-defense, is Maloney's own testimony which is not supported by the two "expert" witnesses he introduced. Based upon Plaintiff's example alone, the Court cannot determine that the "typical" use is one contemplated by the Supreme Court.

If the inquiry is more expansive than use of nunchaku for defensive purposes, there is no question that this weapon originates and remains within the realm of martial arts, but that use does not extend beyond the room of the dojos or law enforcement use. Again, it is difficult for Defendant to cite to authority for this proposition because of the dearth of data.

## POINT III

### NUNCHAKU ARE DANGEROUS AND UNUSUAL WEAPONS

Dangerous and unusual weapons are not entitled to Second Amendment protection. *See Heller*, 560 at 627. Numerous courts have recognized the dangerous and unusual character of nunchaku. In *In re S.P., Jr.*, 465 A.2d 823 (D.C. Ct. Apps. 1983), the District of Columbia Court of Appeals acknowledged the "socially acceptable uses" of nunchaku, but nevertheless held that "because of the inherent character of the nunchucks as an offensive weapon" the device constitutes a "deadly or dangerous weapon." Similarly, in *R.V. v. State*, 497 So.2d 912 (1986), the District Court of Appeal of Florida for the Third District affirmed a trial court decision that nunchaku, "a potentially lethal device which originated from the martial arts, is a deadly weapon." In *State v. Courtier*, 166 Or.App. 514 (2000), the Court of Appeals of Oregon held that even if nunchaku was not enumerated as a "dangerous or deadly weapon" by the relevant statute, the device would still qualify as such due to "essential characteristics that make them dangerous or deadly." In *State v. Mitchell*, 371 N.W.2d 432 (1985), the Court of Appeals of Iowa held that there was sufficient evidence to conclude that nunchaku constituted a dangerous weapon regardless of its use or intended use because it "is designed to inflict death or injury" and "is actually capable of inflicting death on a human being."

In this case, Plaintiff conceded that nunchaku can be dangerous, meaning that they can inflict harm or injury. Tr. 89:14-20. Additionally, one of his witnesses, Retired Sergeant Orcutt

testified during the January 2017 trial that nunchaku have the potential to be destructive and cause lethal damage. Tr.167:10-17. In describing his reasons for refusing to sell his patented nunchaku to civilians, Sergeant Orcutt recognized "the injurious potential of the nunchaku in the wrong hands: and of the potential of nunchaku to cause physical harm or be used as a weapon in the commission of a crime." Tr. 176:12-15; 176:20-21. Orcutt, a 30-year veteran law enforcement officer and inventor of the Orcutt Police Nunchucks, expressed concern that nunchaku may not be used safely or appropriately as one of the reasons that he refuses to sell nunchaku to civilians and why he does not train civilians in the use of nunchaku. Tr. 211:14-25.

Plaintiff intends to offer as "additional evidence" in this continued trial a video clip from a car commercial[1]. The spot is titled "Take the Subaru." By way of a brief explanation, the commercial shows children of varying ages about to engage in dangerous behavior or handling dangerous items. The parents admonish the children in each case with "you're not taking that" or similar such language. Until a teenager reaches for a set of car keys and is met with parental approval.

The offensive or inappropriate items included a chainsaw, sledgehammer, and nunchaku. In conversations with Plaintiff, Defense counsel's interpretation of Plaintiff's theory[2] related to this exhibit is the fact that a youth is holding a set of nunchaku which may be is indicative that nunchaku is a common item and/or a non-lethal one. Exhibit L is an explanation of the commercial found at an online website. Whether the Court credits that explanation or not, the simple take away isn't that kids own nunchaku. The message conveyed by Subaru is that there are many items that obviously should not be in the hands of children – such as scissors in the

---

[1] https://www.youtube.com/watch?v=CHYZtPA2Tss
[2] This is presented in sum and substance based on informal discussions in an effort to explain the significance of Plaintiff's exhibit and Defendant's Exhibit L. Defendant respectfully reserves the right to respond to Plaintiff's argument that he puts forth in his Brief.

9

hands of a pre-schooler, or a chainsaw, or nunchaku. Why? Because they are dangerous items. Clearly when the mother in the commercial tells her son "you're not taking those [nunchaku]" she is stating the obvious fact that nunchaku is recognized as dangerous by society and it is unacceptable for her son to use them.

## POINT IV

## **PUBLIC POLICY ARGUMENTS**

The relief that Plaintiff seeks in this lawsuit is a declaration that Penal Law § 265.01 violates his right to possess nunchaku within his home for self-defense and martial arts training. He is not seeking permission for others to possess or have access to nunchaku for these purposes.

Assessment of typical use must be that typical use of a "law-abiding, responsible citizen." In *Jiminez* the Second Circuit noted that Jiminez' unfavorable military record justified the ban against his possession of ammunition. *Jiminez*, 2018 WL 3352599, at *4. In the case presented, Defendant asks the Court to consider the circumstances under which Plaintiff Maloney's nunchaku was discovered.

As the evidence has established, Maloney pointed what he claims was a cane bearing an attached telescope in the direction of a telephone company worker who believed Maloney was pointing a long arm at him. Tr. 97. Maloney refused to speak with police who responded to his home to investigate the phone company employee's claim, choosing instead to maintain his *Peyton* rights, and keeping police at what Maloney himself called a "Mexican Standoff." Tr. 90. A search of Maloney's home which was conducted after his eventual surrender approximately 12 hours later, disclosed the existence of numerous weapons, including a cross-bow, long arms, knives, three unlicensed handguns, and one pair of nunchaku.[3] Tr. 90. Maloney pled guilty to

---

[3] According to Maloney's testimony, there were five other sets of nunchakus which were not located by law enforcement.

10

disorderly conduct and admitted to illegal possession of a handgun in full satisfaction of all the charges. He was then sentenced to a conditional discharge with the condition that all illegal weapons would be destroyed. See Plea and Sentence Minutes, Exhibit C.

Especially troubling is Maloney's trial testimony in this action wherein he stated, in sum and substance, that he has a Second Amendment right to possess handguns which supersedes any State licensing or registration law.

In cases such as *Heller*, *McDonald*, *NYSRPA*, and *Jiminez* where firearms and ammunition were involved, regulatory safeguards exist by way of weapons licensing or registration. No regulatory scheme is in place with respect to nunchaku, however. In the event this Court were to strike down Penal Law § 265.01 as it pertains to possession of nunchaku as being violative of the Second Amendment, there is no safeguard for the State to ensure that this weapon would be possessed by *law abiding citizens*.

## POINT V

### ANALYSIS OF LEVEL OF SCRUTINY TO BE APPLIED

In the Memorandum and Order denying the parties' cross-motions for summary judgment, this court pointed to a Southern District case which applied "intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home." *Maloney v. Singas*, 106 F.Supp.3d 300, 311 (E.D.N.Y. 2015). In a 2017 case, the Northern District of New York stated that the level of scrutiny is "not entirely clear" but quoted the above standard as that which "district courts in this Circuit have continually chosen to apply." *Avitabile v. Beach*, 277 F.Supp. 3d 326, 334 (2017).

The Northern District Bench noted that intermediate scrutiny was deemed appropriate by the Second Circuit in *NYSRPA* where "the gun-control legislation at issue left open numerous

11

alternative ways for a citizen to lawfully acquire and possess a weapon for self-defense." *Id.* (citing *NYSRPA* 804 F.3d at 260). And in 2016 the Second Circuit "flatly stated that intermediate scrutiny applies to 'laws implicating the Second Amendment.'" *Id.* (quoting *Mishtaku v. Espada*, 669 Fed.Appx. 35 (2d Cir. 2016)).

In order for a statute to survive intermediate scrutiny, the government must show that the statute bears a "substantial relationship to the achievement of an important governmental objective." *Schulz*, 134 A.D.3d at 56-57 (quoting *People v Hughes*, 22 NY3d 44, 51 [2013]).

"New York has substantial, indeed compelling, governmental interests in public safety and crime prevention." *Kachalsky v County of Westchester*, 701 F3d 81, 97 [2d Cir 2012], *cert denied* 569 US —. The legislative history of the 1974 amendment to Penal Law § 265.01 (See Exhibit A) cited to concern that nunchaku would be used by gangs and by individuals who would emulate the famed martial artist actor, Bruce Lee.

The overriding and compelling interest in continued public safety and crime prevention continues to justify the prohibition against nunchaku. Nunchaku are composed of two sticks or items of rigid material attached by a chain or cord. Testimony at trial indicated that the size of the sticks could vary but is within a range of approximately 10" to 14" long for each stick. This weapon is, therefore, easily carried and concealed. Sergeant Orcutt's testimony reflected that he trains in the use of nunchaku as a "pain and compliance" tool, wherein a body part is trapped between the two sticks and pressure is applied by twisting the center cord of the weapon. The nunchaku then, not only pose a threat of striking an individual, but could easily be used as a garrote, or to otherwise trap and inflict pain or damage to another.

Clearly, the restrictions on nunchaku possession are rationally related to a legitimate governmental objective. Moreover, the prohibition against possession of nunchaku does not

foreclose all avenues of self-defense as it does not prohibit "an entire class of arms." *NYSRPA*, 804 F.3d at 260.

## CONCLUSION

For the reasons set forth herein, together with the Proposed Findings of Fact and Conclusions of Law previously submitted by the Defendant (DE 185), Defendant respectfully submits that New York Penal Law § 265.01 as it prohibits possession of nunchaku does not violate the Second Amendment. In the event this Court determines that the nunchaku is a weapon protected under the Second Amendment, Defendant submits that an intermediate level of constitutional scrutiny is the appropriate analysis to be applied. And when doing so, this Court should find that the statute is reasonably related to the government's lawful objective.

Dated: Mineola, New York
July 23, 2018

> JARED A. KASSCHAU
> Nassau County Attorney
> One West Street
> Mineola, New York 11501
> Attorney for Defendant

By: *Liora M. Ben-Sorek*
Liora M. Ben-Sorek
Deputy County Attorney
(516) 571-3014