(7)

# Chapter 179



## IN ASSEMBLY

**AN ACT**

Notes

**APPROVED**

APR 16 1974

Compared by _____

Approved _____

NEW YORK STATE LIBRARY

**MICROFILMED**

Date 11/20/75

No. of printed bills 1

No. of exposures
exclusive of bills 23

DEFENDANT'S
EXHIBIT
A

B-203 (6/68)

**THE DAY BILL**

**BUDGET REPORT ON BILLS**

**NO RECOMMENDATION**

Session Year 1974

SENATE

No.

Law:

Title: __An Act to amend the penal law in relation to choke sticks__

ASSEMBLY

No. 8667-A

The above bill has been referred to the Division of the Budget for comment. After careful review, we find that (a) the bill does not affect State finances in any way; (b) the bill has no appreciable effect on State programs or administration; and (c) this office does not have the technical responsibility to make a recommendation on the bill.

We therefore make no recommendation.

Charles D. Palmer
Deputy Director



Multiple memorandum received from the
State Comptroller dated **APR 1  RECD**
stating the following bill is of
"No Interest" to the Department of
Audit and Control.

Intro. No.                    Print No.

A-8667-A

The original memorandum filed with:

S-3599-F

02



APR 8 REC'D

$\mathcal{A}$ 8667-$\mathcal{A}$

STATE OF NEW YORK
DEPARTMENT OF LAW
ALBANY 12224

LOUIS J. LEFKOWITZ
ATTORNEY GENERAL

MEMORANDUM FOR THE GOVERNOR

Re: Assembly 8667-A

Penal Law, section 265.05, subdivision 9, lists weapons, dangerous instruments and appliances, the possession of which with intent to use unlawfully, constitutes (1) a Class A misdemeanor or (2) a Class D felony if the possessor has previously been convicted of any crime.

The purpose of this bill would be to amend Penal Law, section 265.05, subdivision 9, by adding the "Chuka stick" to the class of weapons listed under that section. Additionally, Penal Law, section 265.10, subdivisions 1 and 2 which pertain to the manufacture and transportation of prohibited instruments, respectively, would also be amended by adding the "Chuka stick". Penal Law, section 265.16, subdivision 3, which relates to the presence of prohibited items (e.g., weapons, dangerous instruments and appliances) in an automobile, would also be amended adding the "Chuka stick" to its provisions.

This act would take effect on the first day of September next succeeding the date on which it shall have become law. A definition of "Chuka stick" would be added by this bill to Penal Law, section 265.00, subdivision 14. A portion of the definition of a "Chuka stick" states that it is a device "* * * consisting of two or more lengths of rigid material joined together with a thong, rope or chain * * *". This phrase could possibly be construed to include some harmless items such as a child's jump rope or skip rope. However, an additional phrase in the definition would require that it be a "* * * device designed primarily as a weapon * * *". This phrase would appear to avoid any confusion in the definition with items not intended to fall within the act's purview.

This bill would place controls on the use of an instrument, "i.e., the Chuka stick" which has apparently been widely used by muggers and street gangs and has been the cause of many serious injuries.

63

Re:   Assembly 8667-A
Page 2

A similar bill was introduced during the 1973 Legislative Session but it did not come out of the Codes Committee during the 1973 Session.

I find no legal objection to this bill.

Dated:   April 8, 1974

Respectfully submitted,

LOUIS J. LEFKOWITZ
Attorney General

64

Case 2:03-cv-00786-PKC-AYS   Document 199-1   Filed 07/24/18   Page 6 of 48 PageID #: 2031



A 8667A

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

March 28, 1974

A#8667-A - by Mr. Ross, et al

AN ACT To amend the penal law, in relation
to chuka sticks

APPROVAL RECOMMENDED

MAR 28 REC'D

Honorable Malcolm Wilson
Governor of the State of New York
Albany, New York

Dear Governor Wilson:

The above bill is before you for executive action.

This bill would amend the Penal Law to include chuka sticks
among those specific weapons which are prohibited for any person to pos-
sess, manufacture or transport.

Currently, the law prohibits the possession of a billy, black-
jack, bludgeon, metal knuckles, sandbag, sandclub or slingshot. Posses-
sion of one of these devices is a class A misdemeanor or a class D felony
if the defendant had previously been convicted of any crime. However,
the law does not specifically prohibit the possession of a device known
as a "chuka stick" which in the past few years has been appearing through-
out communities within the State. This instrument may be purchased or
easily assembled from two pieces of wood and a piece of thong, cord or
chain. With a minimum amount of practice it may be effectively used as a
garrote, bludgeon, thrusting or striking device. The chuka stick is
designed primarily as a weapon and has no purpose other than to maim or,
in some instances, kill.

Unfortunately, there has been disagreement among prosecutors
as to the criminal liability attendant to the possession of the chuka
stick. This bill to control the possession and use, as well as the

Honorable Malcolm Wilson
March 28, 1974
Page 2

manufacture and transport of chuka sticks would insure uniformity of
prosecution which currently varies from county to county within the State
of New York.

     This bill is part of the 1974 legislative program of the City
of New York and I urge that you approve it.

          Very truly yours,

          ABRAHAM D. BEAME, Mayor

     By _Stanley M. Friedman_
        Legislative Representative

06



A8667A
U. F. 49
P.O. 184-181

POLICE DEPARTMENT
NEW YORK, N. Y. 10013

April 4, 1974

APR 8 REC'D

Hon. Michael Whiteman
Counsel to the Governor
State Capitol
Albany, New York  12224

Re:   Assembly Intro. 8667A

Dear Sir:

In response to your request to the Police Com-
missioner, City of New York for comment on Assembly Intro.
8667A, I have been instructed to inform your office that
the Police Department concurs in the Memorandum of Support
that was previously submitted by the City of New York.

Very truly yours,

MATTHEW L. BYRNE
Director
Legal Division

MC/rs

cc:   Police Commissioner
      Office of the Mayor

07

$9 8667-A$

*Memorandum* APR 9 RECD



April 4, 1974

**STATE OF NEW YORK**
**EXECUTIVE DEPARTMENT**
DIVISION OF CRIMINAL JUSTICE SERVICES

TO: Michael Whiteman

FROM: Archibald R. Murray

RE: A. 8667-A

---------------------------------------------------------------

## Purpose

To amend a number of sections in Article 265 of the Penal Law
to penalize the possession of, manufacture or dealing in "chuka sticks."

## Discussion

This bill proposes to outlaw the possession, manufacture or shipment
of "chuka sticks," as that device is defined in bill section 1.
By placing the basic prohibition in Penal Law section 265.05(3),
the possession of chuka sticks is made per se criminal, i.e., no
*mens rea* is required and the crime, therefore, is one of absolute
liability. Even if the chuka stick is being employed with signifi-
cant frequency as a weapon in the commission of violent crimes,
its inclusion in the per se category is of doubtful wisdom and
questionable legality.

It is our understanding that chuka sticks are also used in karate
and other "martial arts" training. In view of the current interest
and participation in these activities by many members of the public,
it appears unreasonable -- and perhaps even unconstitutional -- to
prohibit those who have a legitimate reason for possessing chuka
sticks from doing so. There are alternative ways in which the
problem can be handled. If it is desired to keep chuka sticks in
the per se prohibited class, an exception could be drafted for those
who possess them for lawful martial arts training. Such a course
is employed for switchblade and gravity knives, which are also
prohibited in this same subdivision (P.L. sec. 265.05[3]). In
their case, section 265.20(5) permits their possession for hunting
or fishing by a person who has a hunting or fishing license.

A second, and more appropriate alternative, would be to treat
chuka sticks under Penal Law section 265.05(9) where, to constitute
the crime, possession must be coupled with "an intent to use the
same unlawfully against another." This would put chuka sticks
in the same category as other objects which are potential weapons
but which also have legitimate uses, such as knives and razors.

18

page 2

It should be noted that the first version of this bill (A. 8667) in fact pursued precisely this latter course.

A technical -- probably typographical -- error appears on page 1, line 4. The word "designated" probably should read "designed."

Recommendation

In view of the foregoing, we cannot recommend approval of this bill in its present form.

09

Case 2:03-cv-00786-PKC-AYS   Document 199-1   Filed 07/24/18   Page 11 of 48 PageID #: 3636

A - 8667-A

THE ASSEMBLY
STATE OF NEW YORK
ALBANY

April 2, 1974



RICHARD C. ROSS
ASSEMBLYMAN 88TH DISTRICT
15 FISKE PLACE
MOUNT VERNON, NEW YORK 10550
(914) 668-5800

Hon. Michael Whiteman
Executive Chambers
Albany, New York 12224

Re: A-8667-A

Dear Mr. Whiteman:

This will acknowledge receipt of your request for my comments and recommendations
concerning my abovenumbered bill now before the Governor for executive
action.

Currently, the law prohibits the possession of a billy, blackjack, bludgeon,
metal knuckles, sandbag, sandclub or slungshot. Any person who has in
his possession one of these devices is guilty of a class A misdemeanor
and is guilty of a class D felony if he has previously been convicted
of any crime. The law does not specifically prohibit the possession of a
device known as a "chuka stick" which in the past few years has been
appearing throughout communities within the State. The chuka stick
is an instrument that may be purchased or easily assembled from two
pieces of wood and a piece of thong, cord or chain. With a minimum
amount of practice, this instrument may be effectively used as a garrote,
bludgeon, thrusting or striking device. The chuka stick is designed
primarily as a weapon and has no purpose other than to maim or, in some
instances, kill. Unfortunately, there has been disagreement among
prosecutors as to the criminal liability attendant to the possession
of the chuka stick. The proposed legislation to control the possession
and use, as well as the manufacture and transport of chuka sticks would
insure uniformity of prosecution which currently varies from county to
county within the state of New York.

The said bill was amended to conform to the needs and demands of various
municipalities and organizations seeking to include chuka sticks within
the definition of dangerous weapons. It has the support of the city
of New York and all police associations throughout the state.

Favorable action by the Governor is respectfully requested.

Very truly yours,

10

Richard C. Ross

PLG    Chp. 179

Ĥ-8667

THE ASSOCIATION OF THE BAR
OF THE CITY OF NEW YORK
42 WEST 44TH STREET
NEW YORK 10036

APR 15 REC'D

COMMITTEE ON CRIMINAL COURTS, LAW AND PROCEDURE

MICHAEL R. JUVILER
CHAIRMAN
155 LEONARD STREET
NEW YORK 10013
(212) 732-7900

April 11, 1974

Hon. Michael Whiteman
Executive Chamber
The Capitol
Albany, New York   12224

Re:   A8667-A

Dear Mr. Whiteman:

This bill is approved.  It adds the "chuka
stick" (a defined term) to the list of "per se"
weapons, such as switchblade knives and blackjacks.
There is growing evidence that chuka sticks are used
in robberies and assaults.  This outweighs whatever
use the weapon might have in demonstrations of the
marshal arts.

Sincerely,

Michael R. Juviler

MRJ:ds

21

APR 1 1 1974
MILGRIM THOMAJAN & JACOBS



PRESIDENT
HENRY N. ESS, III

VICE PRESIDENTS
WILSON N. FRIEDMAN
LAWRENCE X. CUSACK
ANDREW Y. ROGERS

SECRETARY
THOMAS KNOSH

TREASURER
SOLOMON K. STAR

EXECUTIVE DIRECTOR
JULIUS ROLNITZKY

ASSISTANT TREASURER
MICHAEL D. JAKIENE

LIBRARIAN
FREDERIC 5. BAUM



14 VESEY STREET — FACING ST. PAUL'S
NEW YORK, N. Y. 10007

CORTLANDT 7-8846

For further information .
please communicate with:
Gregory J. Perrin, Esq.
225 Broadway, R-2515
New York, N. Y.   10007
349-1390

May 3, 1974

Hon. Malcolm Wilson
Executive Chamber
Albany, N. Y.   12224

My dear Sir:

The Committee on the Criminal Court of the New York
County Lawyers' Association has disapproved the
following bill and believes that it should not become
law:

A. 8359-A
A. 8667-A

A copy of a report recommending disapproval is enclosed.

Very truly yours,

BENJAMIN LEVINE

Chairman, Committee on State Legislation

12

INTRODUCED BY ASSEMBLYMAN MANNIX
INTRODUCED BY SENATORS PISANI, ACKERSON, GORDON,
    FLYNN, KNORR
INTRODUCED BY ASSEMBLYMAN ROSS; Multi-sponsored by:
    ASSEMBLYMEN BROWN, HURLEY, LEVY, LOPRESTO, MANNIX,
    SUCHIN, VOLKER, ABRAMSON
INTRODUCED BY SENATORS BARCLAY, PADAVAN

April 29, 1974            Report No. 184            A. 8359-A
                                                    Same as S. 7685
                                                    A. 8667-A
                                                    Same as S. 9034

NEW YORK COUNTY LAWYERS' ASSOCIATION
14 Vesey Street - New York 10007

Report of Committee on the Criminal Court on Assembly Bill 8359-A
same as Senate Bill 7685, Assembly Bill 8667-A same as Senate Bill
9034, which seek to amend Sections 265.00, 265.05, 265.10, 265.15
of the Penal Law with regard to the possession of certain weapons.

RECOMMENDATION: DISAPPROVAL

Both of these bills seek to add "nunchakus" to the list of
weapons the possession of which is proscribed by Article 265 of the
Penal Law.

Both bills have been amended and recommitted by substitute
bill in Assembly. The amendments, in both cases, removed from the
proposed legislation the presumption, from mere possession, of an
intent to use the proscribed device unlawfully against another.  In
place of this presumption, both bills now make unlawful the mere
possession of nunchakus, without regard to the issue of unlawful
intent.

While it is true that nonchakus, chuka sticks and like objects
are capable of use in criminal conduct, it is the sense of this
Committee that they are not properly included in the provisions of
Article 265 of the Penal Law as proposed.

While the possession of these items with demonstrable criminal
intent is a proper subject for legislation, the proposed legislation
goes further, making mere possession (even absent criminal intent)
a criminal offense.  If it is the desire of the legislature to
prohibit the use of nunchakus in criminal conduct, a more narrowly
drawn statute can be fashioned to achieve this end.

Respectfully submitted,

COMMITTEE ON THE CRIMINAL COURT

Gregory J. Perrin, Chairman

Report prepared for
the Committee by
MR. ALAIN M. BOURGEOIS

13

$A$ $8667$-$A$

APR 2 REC'D



## POLICE CONFERENCE *of New York, Inc.*

*Executive Offices: 29 Elk Street, Albany, New York 12207 — Tel. 518 - 463-3283*

AL SGAGLIONE, President
JOSEPH L. BALZANO, 1st Vice President
JOSEPH S. DOMINELLI, 2nd Vice President
THOMAS TRUSSO, 3rd Vice President
JOSEPH TOUHEY, Recording Secretary
BARNEY L. AVERSANO, Treasurer
ARTHUR J. HARVEY, Counsel

### MEMORANDUM IN SUPPORT

Assembly No. 8667-A by Mr. Ross

A nunchaku can be a deadly weapon in the hands of expert
and novice alike. The nunchaku is a versatile device.
When the connecting cord is wrapped around a victim's
neck, the two sticks give even a weak assailant enough
leverage to throttle his foe. They look innocent enough
but can generate 1600 pounds of pressure at the point of
impact. The human bone breaks at about 8-1/2 pounds. With
a deceptively easy motion, a nunchaku wielder can bash or
strangle his victim. There is no question in the mind of
the police officer that the nunchaku is a deadly weapon.

It is for these reasons the Police Conference of New York, Inc.
representing two hundred twenty Police Associations with a
membership of 45,000 Professional Police Officers strongly sup-
port Assembly No. 8667-A and urge Governor Wilson approve same.

14

4/1/74



*Chap. 179*

*A 8667*

**MAY 1 0 REC'D**

**DISTRICT ATTORNEY**
**OF THE**
**COUNTY OF NEW YORK**
**155 LEONARD STREET**
**NEW YORK, N. Y. 10013**
**REcter 2-7300**

RICHARD H. KUH
District Attorney

ADDRESS ANSWER TO THE DISTRICT ATTORNEY,
ATTENTION OF THE SIGNER OF THIS LETTER AND
REFER TO NUMBER.

May 7, 1974

Honorable Michael Whiteman
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

Re: Assembly No. 8667
AN ACT to amend the penal law, in relation
to chuka sticks

Dear Mr. Whiteman:

This is in reply to your request for comment and recommendation concerning the above legislation.

APPROVAL IS RECOMMENDED. This office has taken the position that chuka sticks are not presently per se weapons under §265.05 of the Penal Law. Assembly Bill No. 8667 would place chuka sticks in the category of per se weapons.

Chuka sticks are appropriately placed in that category because there is no known use for chuka sticks other than as a weapon. Secondly, the weapon can easily be lethal.

Sincerely,

David S. Worgan
David S. Worgan
First Assistant District Attorney

15



*A · 8667 A*

## *DISTRICT ATTORNEYS ASSOCIATION*

### STATE OF NEW YORK

PRESIDENT
CARL A. VERGARI
Westchester County
Court House
White Plains, N.Y. 10601
(914) 761-1144

EXECUTIVE DIRECTOR
RICHARD L. FRIEDMAN
270 Broadway—2nd Floor
New York, N. Y. 10007
(212) 488-2620

'APR 4 REC'D

VICE PRESIDENTS
ALBERT M. ROSENBLATT
Dutchess
CON. G. CHOLAKIS
Rensselaer
LEO F. HAYES
Onondaga
EUGENE GOLD
Kings

SECRETARY
ELLIOTT GOLDEN
Municipal Building
Brooklyn, N.Y. 11201

TREASURER
HENRY P. DeVINE
260 Old Country Road
Mineola, N.Y. 11501

LEGISLATIVE SECRETARY
B. ANTHONY MOROSCO
Court House
White Plains, N.Y. 10601

EXECUTIVE COMMITTEE
ROBERT H. MEEHAN
Chairman
MICHAEL F. ARMSTRONG
GEORGE J. ASPLAND
JOHN M. BRAISTED, JR.
LOREN N. BROWN
WILLIAM CAHN
RONALD A. CICORIA
RICHARD H. DAWSON
HAMILTON DOHERTY
MICHAEL R. DILLON
WILLIAM N. ELLISON
JOHN M. FINNERTY
FRANK B. HOGAN
IRAD B. INGRAHAM
GEORGE B. KEPNER
JACK B. LAZARUS
MARIO MEROLA
ARNOLD W. PROSKIN
LOUIS B. SCHEINMAN
STEPHEN R. BIRON
ROBERT J. SULLIVAN
WILLIAM P. SULLIVAN, JR.
ELBERT H. WATROUS, JR.

LEGISLATIVE COMMITTEE
ARA ASADOURIAN
PETER E. CORNING
ALDO L. DiFLORIO
RALPH DiORIO
ROBERT H. ECKER
THOMAS A. FACELLE, JR.
RONALD F. NOHER
SAVERIO PIERRO
ROBERT E. JONES
MICHAEL JUVILER
JOHN F. KEENAN
NEO KOPALD
PATRICK D. MONSERRATE
PETER NOTARO
WILLIAM H. POWER, JR.
ROBERT ROBERTO, JR.
FRANK J. ROGERS
SEYMOUR ROTKER
RALPH SMITH
DANIEL J. SULLIVAN

April 1, 1974

Honorable Michael Whiteman
Executive Chamber
State Capitol
Albany, New York    12224

Re:    8667-A

Dear Mr. Whiteman:

The District Attorneys Association of the State of New York approves of the above bill, which defines a "chuka stick" and makes possession of one a class A misdemeanor or, in certain circumstances, a class D felony.

As a result of the recent popularity of "Kung Fu" movies and shows, various circles of the state's youth are using such weapons. The chuka stick can kill, and is rightly added to the list of weapons prohibited by section 265.00 of the Penal Law.

Yours truly,

*B. Anthony Morosco*
seo

B. Anthony Morosco
Legislative Secretary

BAM:pag

16

$A-8667-A$



APR 4 REC'D

# THE DISTRICT ATTORNEY OF DUTCHESS COUNTY
COURTHOUSE
POUGHKEEPSIE, N. Y. 12601
(914) 485-9880

ALBERT M. ROSENBLATT
DISTRICT ATTORNEY

April 1, 1974

Hon. Michael Whiteman
Executive Chamber
State Capitol
Albany, New York 12224

Gentlemen:

I have been asked by the Bar Association to
comment on Assembly 8667-A, a bill which amends Penal
Law Section 265.00 to define a "chuka stick". It
appears that weapons of this kind are used in the
same criminal manner and with a frequency that now
approximates other per se contraband weapons set forth
in Subdivision 3 of Penal Law Section 265.05. There
is no conceivable innocent used for this device and,
accordingly, there can be no possible invasion of
anyone's right to use it innocently. For that reason
I feel that the legislation is salutary and recommend
its approval.

Very truly yours,

ALBERT M. ROSENBLATT
District Attorney

AMR/tp

17

A8667-A

President
JOSEPH S. POMENTELLI
Rochester
1st Vice-President
WALTER P. HINDILABER
Lake Success
2nd Vice-President
CHARLES Q. McLAUGHLIN
Rye
3rd Vice-President
THOMAS J. SARDINO
Syracuse
Sergeant-At-Arms
JOHN R. BAILEY
Sands Point
Scientific Consultant
WILLIAM K. KIRWAN
Albany
Historian
FRANK N. FELICETTA
Buffalo
HERBERT L. VAN OSTRAND
Past President
JOHN L. BARRY
Past President

1973 - 1974

APR 3 REC'D

Board of Governors

1
EDWARD F. CURRAN
Nassau County
ROBERT N. PALMER
Riverhead

1
EUGENE SHAW
Brighton
GERALD N. MEAD
Owego
G. WILBUR MORRELL
Suffolk County

2
MARTIN O. PECORARO
River Creek
WILLIAM H. BONOYD
Haverstraw
MILTON BOOTH
Peekskill

# New York State Association of Chiefs of Police
### INCORPORATED

113 FARRIER AVENUE

ONEIDA, NEW YORK 13421

Telephone: 363-6740
(Area Code 315)



GEORGE A. MURPHY
Executive Secretary

April 2, 1974

Honorable Michael Whiteman
Counsel to the Governor
New York State Capital  Executive Chamber
Albany, NY  12200

Dear Mr. Whiteman:

This is a memo in relation to amending the penal law in relation to chuca sticks. The New York State Association of Chiefs of Police feel that this is an excellent piece of legislation and urgently request that you act favorably upon this bill.

Very truly yours,

George A. Murphy
Executive Secretary

GAM:pan

18

A-8667 A

APR 3  REC'D

# NEW YORK STATE
## OFFICE OF PLANNING SERVICES

## M E M O R A N D U M

TO:       Michael Whiteman, Counsel to the Governor

FROM:     Richard A. Wiebe

SUBJECT:  Assembly Bill No. 8667-A (Ross, et al)

DATE:     April 1, 1974

---

You requested our comments and recommendations concerning the above-numbered bill.

This measure does not affect the functions of this Office and we have no comment to make with respect to it.

19

A 8667



a nonprofit, nonsectarian social agency devoted to the improvement of family and community life in the city of New York since 1848

## COMMUNITY SERVICE SOCIETY

105 East 22 Street, New York, N.Y. 10010 ☎ (212) 254-8900

DEPARTMENT OF PUBLIC AFFAIRS
ARTHUR SCHIFF
*Director*

April 2, 1974

Honorable Michael Whiteman
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York ·12224

Dear Mr. Whiteman:

The Committees of the Community Service Society
have not taken any position of these bills and
therefore will not be able to make any sugges-
tions or recommendations.

If there are other matters in which you believe
we may be of assistance, please feel free to call
on us.

Re:
| | |
|---|---|
| A.8667 | |
| A.8978 | S.7606 |
| A.9782 | S.8305 |
| A.9778 | S.8301 |
| A.9800 | S.8323 |
| A.9803 | S.8326 |
| A.9804 | S.8327 |
| A.9809 | S.8332 |
| A.10269-A | S.8519-A |

Very truly yours,

/s/ William B. Haley
William B. Haley
Public Affairs Counsel

WBH:jp

20

MRS. ANDREW HEISKELL, *Chairman of the Board*       ROBERT W. SWEET, *President*                          MRS. WILLIAM A. M. BURDEN, CROCKER NEVIN, *Vice Chairmen of the Board*
HERBERT F. PATTERSON, *Treasurer*                        DAVID L. HOPKINS, JR., *Secretary and Asst. Treasurer*                                      ALVIN L. SCHORR, *General Director*

APPROVAL # 128

CHAPTER 1041

Cal. No. 1966          10431—A

# IN SENATE

April 10, 1974

Introduced by COMMITTEE ON RULES—read twice and ordered printed, and when printed to be committed to the Committee on Codes—reported favorably from said committee and committed to the Committee on Rules—reported favorably from said committee with amendments, ordered to third reading and to be reprinted as amended, retaining its place in the order of third reading

## AN ACT

To amend the penal law, in relation to the possession of firearms and other dangerous weapons and the licensing and other provisions relating to firearms and repealing certain provisions thereof relating thereto

APPROVED

JUN 15 1974

Compared by

Approved

NEW YORK STATE LIBRARY

MICROFILMED

Date 4/6/76
No. of printed bills
No. of expo-para          28

MAY 1 4 REC'D

Multiple memorandum received from the

State Comptroller dated _____

stating the following bill is of

"No Interest" to the Department of

Audit and Control.

Intro. No.          Print No.

The original memorandum filed with:

01

GOVERNOR'S PROGRAM BILL

1974

M E M O R A N D U M

S. Int. 10431-A

A. Int. _____

Re:  AN ACT to amend the penal law, in
relation to the possession
of firearms and other dangerous
weapons and the licensing and
other provisions relating to
firearms and repealing certain
provisions thereof relating
thereto

Purpose of the Bill:

To increase  enalty for the illegal possession
of firearms and to prc  for a mandatory sentence of imprison-
ment in certain cases.

Summary of Provisions of the Bill

The bill would recodify section 265.05 of the Penal
Law to create five separate sections, sections 265.01 through
265.05. Each section would cover all weapons offenses
carrying the same penalty, such as misdemeanors, class D
felonies, class C felonies, class B felonies and adjudications
of juvenile delinquency. Presently, all offenses relating to
the illegal possession of weapons are contained in one section,
section 265.05, regardless of the penalty involved.

The bill would retain all of the substantive provi-
sions of section 265.05, with one addition. It would establish
a new class C felony under section 265.03 for the possession
of a machine gun or loaded firearm (i.e. any pistol, revolver,
sawed-off shotgun or other concealable firearm) when such
weapon is possessed with intent to use unlawfully against
another. Under the present law such possession is a class D
felony.

- 2 -

Section 60.05 of the Penal Law would also be amended to require that a sentence of imprisonment be imposed in all cases where a defendant is convicted of the new class C felony.

In addition, three new definitions would be added to section 265.00, defining the terms loaded firearm, certified not suitable to possess a rifle or shotgun and serious offense. These definitions do not change the present law in any way, and are added only to make the Penal Law provisions dealing with the illegal possession of weapons more comprehensible.

Statement in Support of the Bill:

In 1971, FBI statistics indicated that 51% of all homicides in the United States were committed with handguns. In 1972, the FBI statistics showed an increase in that percentage to 54%. Further documentation of the terrible loss of life and serious injury resulting from the illegal use of handguns is provided daily in our newspapers. These statistics make it clear that action must be taken to further discourage the unlawful use of handguns.

The provisions of this bill would raise the penalty for possession of handguns and machine guns from a maximum of seven years in prison under the present law to a maximum of fifteen years in prison. In addition, the bill would require the courts to sentence anyone convicted of the new class C felony to a term of imprisonment. These stiffer penalties should serve to deter those who would use handguns unlawfully, and thereby provide a greater degree of protection for the people of the State from the threat of death and injury from such weapons.

The bill implements the recommendation of the Governor contained in his 1974 Message to the Legislature.

08

Case 2:03-cv-00786-PKC-AYS Document 199-1 Filed 07/24/18 Page 26 of 48 PageID #: 2051

S- 10431/7

P 6.



BUN 3

NEW YORK STATE POLICE
STATE CAMPUS
ALBANY, N.Y. 12226

WILLIAM E. KIRWAN
SUPERINTENDENT

May 31, 1974

SENATE                 ASSEMBLY               INTRODUCED BY

10431-A                                       Committee on Rules

RECOMMENDATION:    Approval with reservation

STATUTE INVOLVED:   Penal Law
                    Sections 265.00, 265.01, 265.02,
                    265.03, 265.04, 265.05, 265.10,
                    265.15, 265.20, 265.35, 60.05,
                    and 400.00

EFFECTIVE DATE:    September 1, 1974

DISCUSSION:

1.  Purpose of bill:

    To amend the Penal Law, in relation to the possession
    of firearms and other dangerous weapons and the
    licensing and other provisions relating to firearms
    and repealing certain provisions thereof relating
    thereto.

2.  Summary of provisions of bill:

    This bill repeals Section 265.05 of the Penal Law and
    adds to Section 265.00 of such law five new sections
    to wit: 265.01 through 265.05.  These sections relate
    to the criminal possession of weapons and establishes
    varying degrees of classes therefor.  The bill also
    adds three new definitions relating to "loaded firearm,"
    "certified not suitable to possess a rifle or shotgun,"
    and "serious offense."  This bill further removes the
    litany of instances heretofore defined as misdemeanors
    or offenses from the licensing revocation section and
    the eligibility subdivision of Section 400.00 of the
    Penal Law, which are now classified as serious offenses
    by definition.

3.  Prior legislative history of bill:

    None known.            04

NEW YORK STATE POLICE

4. <u>Known position of others respecting bill</u>:

None known.

5. <u>Budget implications</u>:

None known.

6. <u>Arguments in support of bill</u>:

This bill is a first attempt in updating Section 265.00 of the Penal Law by removing therefrom repetitious language and adding a higher grade for criminal posses- sion of a machine gun or loaded firearm with intent to use the same unlawfully against another, which offense is classified as a Class C felony thus carrying a man- datory sentence of imprisonment, on conviction, in accordance with Section 70.00 of the Penal Law.

7. <u>Arguments in opposition to bill</u>:

It should be pointed out that under the Penal Law, illegal possession of a firearm or a loaded firearm is, in itself, a crime. However, a reading of subdivision 4 of new Section 265.15 provides that possession by any person of any dagger, dirk, stiletto, dangerous knife, or any other weapon, instrument, appliance or substance designed, made or adapted for use primarily as a weapon is <u>presumptive evidence</u> of intent to use the same unlawfully against another. Conspicuously so, this subdivision does not include a "firearm," specif- ically. Accordingly, by not providing for such pre- sumption in new Section 265.03, a conviction for a Class C felony may only be obtained on proof of posses- ing a machine gun or loaded firearm with intent to use the same against another. The failure to provide for a presumption makes enforcement of Section 265.03 an impossibility considering the fact that the burden of proving intent is on the law enforcement officer rather than placing the burden on the defendant to explain as is the case with all other types of weapon violations.

8. <u>Reasons for recommendation</u>:

See six and seven above.

05

Superintendent

*S - 10431*



*Criminal Court of the C . . of New York*

*100 Centre Street*

*New York, N. Y. 10013*

March 27, 1974

CHAMBERS OF
JOEL J. TYLER
JUDGE

Hon. Malcolm Wilson, Governor
The Executive Chamber
Albany, New York 12224

My dear Governor Wilson:

You are to be commended for the proposal to
impose mandatory jail sentences for the illegal possession
of handguns.

You are correct when you point out that there
are too many handguns in circulation and much crime is com-
mitted with them. I see that directly in my court. The time
is past due for the Legislature to move affirmatively in this
area, especially since the great majority of our people (71%,
Gallup Poll 1972) insist upon gun control and common sense mil-
itates for it.

Although I have not yet examined your definitive
proposals in the matter, I should like to note that there
should be no disagreement with a mandatory jail sentence for
those previously convicted of specified crime or crimes within
the past ten years (or other lesser specified period), or when
a handgun is used in the commission or attempted commission of
any crime. But I respectfully suggest consideration of the ap-
plication of such requirement to this or similar situations,
which is quite common in our criminal courts:

The defendant, Mr. A, a man of modest means and
a long-time resident of our State, finally is able to save suf-
ficiently to open a small retail shop. He has long been self-
dependent and has either never required public assistance or only
to a meager extent. He has never been convicted of a crime, and
in many such cases, never been arrested. He resides with his
wife and minor children, who he supports from the earnings of
his business. He has been a victim of one or more robberies or
other crimes in his shop. He is now frustrated and fearful,
because his business is located in a high crime area (and many
areas of New York City are so classified). He is unable to se-
cure a license to possess a handgun for self-protection, and to
avoid the crimes in his shop. In New York City, as well as
other areas of our State, a license is not issued to such a per-
son for such a purpose. His fears and frustrations impel him
to chance the consequences of illegal possession of a handgun

66

Hon. Malcolm Wilson, Governor    page 2        March 27, 1974

and he secures such a gun for the aforesaid reasons. The possession is subsequently revealed (not in the commission of a crime). Mr. A is arrested, charged and convicted.

Shall it be required that he be sentenced to a jail term, or should the judge have some sentencing discretion in such cases?

Respectfully yours,

Joel J. Tyler,
JJT:mwg                                 Judge

02

S-10431/A

June 10, 1974

Hon. Malcolm Wilson, Governor,
State of New York,
State Capitol,
Albany, N. Y.

Dear Governor Wilson:

This letter is written in reference to Senate Bill 10431-A;
An act to amend the penal law, in relation to the possession of
firearms and other dangerous weapons and the licensing and other
provisions relating to firearms and repealing certain provisions
thereof relating thereto.

This bill adds certain definitions and certain degrees of
criminal possession of a weapon.

From the Council's standpoint, the most important addition
is a mandatory sentence for criminal possession of a weapon in the
second degree.

As you are aware, the Council has long supported a mandatory
sentence for the criminal misuse of a firearm.

Under the circumstance, the Council supports this bill and
requests your serious consideration in regard to signing this bill
thus causing it to become law.

With best regards, I am

Sincerely yours,

W. Wallachey
President

ecs   Michael Whitemon, Counsel

68

9-20¹  $P L H$

**BUDGET REPORT ON BILLS**

Session Year: 19 74

JUN 1  REC'D

**SENATE**                              Introduced by:                    **ASSEMBLY**

**No.**   10431-A                        Committee on Rules              **No.**
                                                                         Sec. 265.05 (repeal)
**Law:**  Penal                           Sections:                      Sec. 265.01, 265.02, 265.03,
                                                                         265.04, 265.05, 265.20 (new)
                                                                         Sec. 60.05, 265.01 (4) & (7),
Division of the Budget recommendation on the above bill:                  265.15 (2) & (4), 265.20, 265.00
                                                                         400.00 (amended)
Approve: _____ Veto: _____ No Objection: X  Sec. 265.35 (1) - (4) (renumbered
                                                        Recommendation:

1. Subject and Purpose: This bill would establish more stringent criminal penalties
   for the illegal possession of loaded firearms with the intent to use them
   unlawfully.

2. Summary of Provisions:  This bill would:

   a.  recodify the provisions of the Penal Law relating to illegal possession
       of weapons into subsections relating to crimes defined as class A
       misdemeanors, class B, C and D felonies and juvenile delinquency;

   b.  distinguish between illegal possession of loaded firearms and illegal
       possession of loaded firearms with intent to use the firearm unlawfully;

   c.  change the crime of illegal possession of loaded firearms with intent
       to use unlawfully from a class D felony to a class C felony, requiring
       mandatory imprisonment upon conviction; and

   d.  prohibit all persons who are legally incompetent from being licensed
       to possess a rifle or shotgun.

   This bill would take effect on September 1, 1974.

3. Prior Legislative History:  A similar legislative proposal in 1973
   (Assembly 3623) would also have recodified all illegal possession of
   weapons crimes.  However, the bill did not provide for more stringent
   criminal penalties or mandatory imprisonment for illegal possession of
   loaded firearms with intent to use unlawfully.

4. Arguments in Support:

   a.  There is a legitimate need in New York State to strengthen the
       deterrents against the illegal possession and use of concealable
       firearms because of the loss of life and personal injury which
       results from the use of such weapons.  The more stringent penalties
       proposed for cases where there is intent to use a weapon unlawfully may
       provide the needed deterrent because of the higher degree of
       culpability which the offender would face.  The mandatory imprisonment
       provision is justified because the crime is comparable to assault in
       the first degree and burglary in the second degree both of which are
       class C felonies resulting in mandatory imprisonment upon conviction.

   b.  It is reasonable to assume that there is a higher danger of injury
       or accident resulting from the improper or unsafe use of firearms where
                                    Examiner:

Disposition                Chapter No                Veto No

- 2 -

the user is legally incompetent. Therefore, it could be argued that it is necessary for the public safety to prohibit such legally incompetent persons from obtaining shotgun or rifle licenses.

5. Possible Objections: Although it is necessary to add deterrents against the illegal possession and use of firearms, this legislation -- if enacted-- may not have the desired deterrent value. The bill requires mandatory imprisonment upon conviction, yet it does not preclude the use of plea bargaining by offenders. In 1972-73 there were over 200,000 cases of illegal possession of firearms in New York State, including 10,000 cases involving felonious possession of loaded firearms. Over 90 per cent of the 10,000 cases which were felonies were either dismissed or plea bargained to misdemeanors. Only 37 of the 10,000 offenders actually went to jail. With the addition of mandatory imprisonment provisions, the courts and juries may become even more reluctant to convict violators.

6. Other State Agencies Interested: The Division of State Police has an interest in this bill, but has not yet taken a position on the legislation.

7. Known Position of Others: None known.

8. Budgetary Implications: Although this bill should not result in additional costs for New York State's courts because of the continuing use of plea bargaining, the bill may result in some additional costs for correctional facilities because of the mandatory imprisonment provisions. It is impossible at this time to approximate the possible added costs for such facilities because of the unknown effect of the new penalties on the conviction rate.

9. Recommendation: This bill would establish more stringent criminal penalties for the illegal possession of loaded firearms with the intent to use them unlawfully. There is a legitimate need for greater deterrance to illegal possession and use of firearms in the State, but this bill may not have the intended effect because of the continued use of plea bargaining in the courts.

We have no objection to this bill, which is a part of the Governor's Program.

DATE: May 21, 1974         EXAMINER: Calvin M. Pierson

Vincent E. LaFleche, Assistant Chief Budget Examiner (Management)

$S-10431/$

MAY 1 7 REC'D

**THE SENATE
STATE OF NEW YORK
ALBANY
12224**

RALPH J. MARINO
5ᵗʰ DISTRICT
COMMITTEE ON CRIME AND CORRECTION

May 16, 1974

The Honorable Michael Whiteman
Counsel to the Governor
Executive Chamber
Albany, New York

Dear Mr. Whiteman:

Re: S. 10431-A

This bill is part of the Governor's legislative program and would
amend the Penal Law in relation to the possession of firearms and other
dangerous weapons. It would increase the penalty for illegal possession
of firearms and provide for mandatory sentences of imprisonment.

As pointed out in the attached memorandum, Federal Bureau of
Investigation's statistics indicate that over half of all homicides in
the United States are committed with handguns. These statistics make
it clear that action must be taken to discourage the unlawful use of
handguns. The enactment of this measure would clarify the law, and the
stiffer penalties provided for would act as a deterrent to those who
would use firearms unlawfully.

For all of the above reasons, it is respectfully requested that
this bill be enacted into law.

Sincerely,

*Ralf Marino*

Ralph J. Marino

RJM:abj
Enclosure

GOVERNOR'S PROGRAM BILL

1974

MEMORANDUM

S. Int. 10431-A

A. Int. _____

> Re:  AN ACT to amend the penal law, in
> relation to the possession
> of firearms and other dangerous
> weapons and the licensing and
> other provisions relating to
> firearms and repealing certain
> provisions thereof relating
> thereto

## Purpose of the Bill:

To increase the penalty for the illegal possession
of firearms and to provide for a mandatory sentence of imprison-
ment in certain cases.

## Summary of Provisions of the Bill:

The bill would recodify section 265.05 of the Penal
Law to create five separate sections, sections 265.01 through
265.05. Each section would cover all weapons offenses
carrying the same penalty, such as misdemeanors, class D
felonies, class C felonies, class B felonies and adjudications
of juvenile delinquency. Presently, all offenses relating to
the illegal possession of weapons are contained in one section
section 265.05, regardless of the penalty involved.

The bill would retain all of the substantive provi-
sions of section 265.05, with one addition. It would establish
a new class C felony under section 265.03 for the possession
of a machine gun or loaded firearm (i.e. any pistol, revolver,
sawed-off shotgun or other concealable firearm) when such
weapon is possessed with intent to use unlawfully against
another. Under the present law such possession is a class D
felony.

12

- 2 -

Section 60.05 of the Penal Law would also be amended to require that a sentence of imprisonment be imposed in all cases where a defendant is convicted of the new class C felony.

In addition, three new definitions would be added to section 265.00, defining the terms loaded firearm, certified not suitable to possess a rifle or shotgun and serious offense. These definitions do not change the present law in any way, and are added only to make the Penal Law provisions dealing with the illegal possession of weapons more comprehensible.

## Statement in Support of the Bill:

In 1971, FBI statistics indicated that 51% of all homicides in the United States were committed with handguns. In 1972, the FBI statistics showed an increase in that percentage to 54%. Further documentation of the terrible loss of life and serious injury resulting from the illegal use of handguns is provided daily in our newspapers. These statistics make it clear that action must be taken to further discourage the unlawful use of handguns.

The provisions of this bill would raise the penalty for possession of handguns and machine guns from a maximum of seven years in prison under the present law to a maximum of fifteen years in prison. In addition, the bill would require the courts to sentence anyone convicted of the new class C felony to a term of imprisonment. These stiffer penalties should serve to deter those who would use handguns unlawfully, and thereby provide a greater degree of protection for the people of the State from the threat of death and injury from such weapons.

The bill implements the recommendation of the Governor contained in his 1974 Message to the Legislature.

S - 1043/A

PG

MEMO FROM

C. 1041

_____ 197 ___

Office of Temporary President

John F. Haggerty, Counsel

To ___ Michael Whiteman

Subject ___ Supplement to Memo of June 6, 1974

The following recommendations for approval are
forwarded:

A. Penal Law

S - 7967-A  (Print A - 31033-A)
S - 10431-A
A - 12332

B. Civil Rights

S - 9448-B
S - 10219-A

C. General Business

A - 9984  (Print S - 21033)

D. Criminal Procedure

S - 9428

E. Total Government, Cities and Municipalities

S - 5243-A
A - 10177-A
A - 11868
A - 12268

F. Public Authorities

S - 7782
S - 10409
S - 10607
A - 8583

G. Transportation

S - 7003-A
S - 7137-A
S - 8148-A
S - 8580-A
S - 10773
A - 2254-A
A - 12281

Supplement to Memo of June 6, 1974 Continued . . . Page 2.

H. Vehicle and Traffic Law

    S - 414-C
    S - 4010-A
    S - 7504
    S - 10183
    A - 2791
    A - 3332-A
    A - 10751
    A - 11844

I. Highways

    S - 8020
    S - 8076
    S - 9835
    S - 9863
    A - 1259-A
    A - 9291-A

J. Civil Practice Law and Rules

    A - 10267

K. Judiciary

    A - 8591-A
    A - 11952
    A - 12421

L. Claims

    A - 10600
    A - 10792-A
    A - 11247
    A - 11813
    A - 12207
    A - 12255
    A - 12369

We'll supplement this shortly with several additional recommendations.

J.F.H.

JFH:kvw

MAY 1 6 REC'D

NEW YORK STATE

OFFICE OF PLANNING SERVICES

M E M O R A N D U M

TO:        Michael Whiteman, Counsel to the Governor

FROM:     Richard A. Wiebe

SUBJECT:  Senate Bill No. 10431-A (Rules)

DATE:     May 14, 1974

You requested our comments and recommendations concerning the above-numbered bill.

This measure does not affect the functions of this Office and we have no comment to make with respect to it.

16

PG

S - 10431/A

MAY 16 REC'D

TO COUNSEL TO THE GOVERNOR

RE: SENATE *10431-A*

ASSEMBLY

Inasmuch as this bill does not appear to involve
a legal problem nor to relate to the functions of the
Department of Law, I am not commenting thereon. However,
if there is a particular aspect of the bill upon which
you wish comment, please advise me.

Dated: *MAY 13, 1974*

LOUIS J. LEFKOWITZ
Attorney General

eg

*S 10431*

# LORD, DAY & LORD

*Chaf 1041*

25 BROADWAY

NEW YORK, N.Y. 10004

(212) 344-8480

CABLE ADDRESS
LORDATTY, NEW YORK



March 13, 1974

The Honorable Malcolm Wilson
Governor of New York
The Capitol
Albany, New York

Dear Governor Wilson:

I have received information from stories in
the press that you are backing a new anti-gun law for
the State of New York, which I sincerely regret, both
for your sake and for the sake of the thousands of
good citizens of this State who own and use firearms
for lawful purposes. We do not need any new gun law
in New York State. We do need repeal of those already
on the books which are traps for the unwary.

Enclosed is a communication I received yes-
terday from my friend Bill Loeb of the Manchester
Union Leader. The clipping by James A. Brussel, M.D.
also enclosed is very interesting and more nearly
realistic than any of the propaganda about anti-gun
laws. Also enclosed is a copy of my letter to
Attorney General Saxbe dated February 25 and a copy
of my letter to Harlon Carter, fellow member of the
Executive Council of the National Rifle Association,
dated February 15, 1974, which deal with this subject
and give my views about gun laws in general. I hope
these will be of interest to you.

I urge you in your own interest and in the
interest of the people of this State to disassociate
yourself from any new proposed legislation on this

The Honorable Malcolm Wilson
March 13, 1974
Page Two

subject. Governor Rockefeller was continually involved
in it, to his detriment. His unpopularity in California
is largely attributable to his position on anti-gun laws.
There is no sense in a public officer becoming hung up
on an emotional subject of this kind which will never do
him any good and the effect of which will only be harm-
ful.

        I have known you for many years as a fine
gentleman and am writing this personal letter largely
because of my sincere desire to see your administration
successful. I am giving this letter no publicity what-
ever. It is a personal letter to you for your informa-
tion and whatever consideration you may wish to give it.

        My best wishes and kindest personal regards.

        Yours sincerely,

        *Woodson D. Scott*

        Woodson D. Scott

WDS:skl
Enclosures

February 25, 1974

Honorable William B. Saxbe
Attorney General of the
  United States
Department of Justice
Washington, D. C. 20530

Dear Mr. Saxbe:

     I received a copy of your statement before the
Judiciary Committee, United States Senate, December 12
and 13, 1973. Your statement contains the following:

     "I personally believe that the Saturday
  Night Special is an abomination. It is of no
  value for anything but shooting somebody and
  preferably a friend because you cannot get close
  enough to anybody else."

I am writing to remind you that nobody knows at this time
what is or what is not a Saturday Night Special. It
apparently is a term coined by the anti-gun folks in the
Detroit-Toledo area to present a distorted emotional
impression.

     Those of us who are knowledgeable in the fire-
arms field know that many of the low priced guns are of
good quality, sometimes better than the high priced guns.
I do not perceive any reason why anybody should propose
that citizens should be prohibited from acquiring and
using for lawful purposes whatever firearms they desire.
In my opinion, all restrictions on the acquisition and
use of firearms which have been proposed in the last
several years are inimical to the historic and vital
liberties of a free people. Moreover, I believe that
any attempt of the Federal Government to dictate what
citizens can or cannot acquire and use is unconstitutional.
In our Constitution the police power is among those powers

Case 2:03-cv-00786-PKC-AYS Document 199-1 Filed 07/24/18 Page 43 of 48 PageID #: 2068

Honorable William B. Saxbe
Page Two
February 25, 1974

reserved to the state.

Despite Watergate and similar abuses of government officials, we are not yet ready in this country for a Police State and I predict that we never will accept a Police State. In my opinion, the craze for anti-gun laws tends in that direction and has for its objective prohibition and confiscation, step by step. If the government can restrict acquisition and use of Saturday Night Specials, the anti-gun faction undoubtedly would attempt to proceed with the Sunday, Monday, Tuesday, Wednesday, Thursday and Friday Night Specials, meaning all. It is a dangerous proposal. There is no cause or justification for disarming the American citizens or preventing or restricting them in the acquisition and use of firearms of their choice for lawful purposes.

In your home state of Ohio, we have conducted the National Rifle and Pistol Matches at Camp Perry over many years attended by participants from all parts of the country, England, Canada and other places. You would do your own State and the Nation a great disservice in promoting or in failing to oppose any restriction on the acquisition or use of firearms for lawful purposes. If they should be used for unlawful purposes, the existing criminal laws, applicable generally to crimes, if reasonably enforced, should be fully adequate and consequently no additional laws are needed.

I trust that you will give these suggestions your careful consideration.

Yours sincerely,

Woodson D. Scott

WDS:BEL

February 15, 1974

Mr. Harlon Carter
P. O. Box 606
Green Valley, Arizona 85614

Dear Harlon:

Thank you for your letter dated February 11 and enclosure. Unfortunately for me I have not seen your article in the February issue of G & A Magazine and have been unable to obtain one from the nearby newsstand today but I would enjoy reading it if I could find a copy which presumably I can somewhere in the vicinity.

In these times I hesitate to comment in writing on any issue involving race. I question the validity of the 85% and doubt the availability of reliable statistics. It is my opinion that it would be inconclusive in any event. The simple evaluation of the whole subject is that in a free country the citizens have the right to acquire and use firearms for lawful purposes and there should be no restrictions on this right. Those who use firearms for unlawful purposes are subject to the criminal laws and should be arrested, tried promptly and fined or sent to jail.

Moreover, I do not support the proposition that crimes committed with firearms should have larger penalties than the same crimes committed in any other manner. I know that is a popular idea, but as an intelligent person I cannot justify it or go along with it. That theory appears to be a gimmick some have thought would be effective in fighting gun laws but I perceive no benefit from it. I am committed to the notion that the way to fight gun laws is to oppose them all and not become involved in so called reasonable proposals or alternatives. The only alternative in my view is eventual prohibition and confiscation and I am unalterably opposed to both.

Mr. Harlon Carter
February 15, 1974
Page Two


        I would enjoy talking with you more about it
when I see you in Atlanta in March.

                              Yours sincerely,


                              Woodson D. Scott

WDS:BEL
2060

**An Editorial**

# Reasons Why You Need a Gun

In an article at the top of our back page today, a doctor tells why he carries a gun — not to shoot anybody, but to keep himself from being shot or assaulted by someone else. In his short and to-the-point article, he tells how, on three occasions, his having a gun protected him from serious bodily harm and possible death.

That's a point that the anti-gun people always miss. They say that if all handguns were confiscated, there would be fewer accidents in the home. That may be true. However, accidents in the home can be prevented through more training in the safe handling of guns.

They say, also, that fewer quarrels would end in murder, but that's speculation. People can kill people with anything that's handy, from knives to clubs.

But entirely aside from the constitutional right of citizens to have guns, the point that the anti-gun people always miss is that the presence of guns in the hands of good people deters criminals from attacks, just as the doctor describes at the top of our back page today.

Most gun-owners have never had to use a gun against anyone, but occasionally they have had to show they had a gun in order to make some wrongdoer back off and think better of his attack.

However, if wrongdoers know that, by law, their victims automatically have no possibility of having a weapon on them, then, of course, either by superior physical strength, greater numbers or by having guns of their own, they can easily work their will on their victims without risking retaliation.

Along this line, probably the most moving and effective testimony given against the confiscatory gun laws proposed for Massachusetts at a recent hearing at the Massachusetts State House was that given by a housewife who still exhibited bruises and injuries from a very severe beating she received from robbers who had entered her and her husband's house. The robbers tied up her husband and beat her unmercifully until she lapsed into unconsciousness. When she came to, she realized that she had one of the family guns within reach. She grabbed it and shot and killed one of the robbers. The other fled.

As she said most movingly at the hearing, "If it wasn't for that gun, probably I would be lying now alongside my husband in a grave in a New England cemetery."

WE MOST SINCERELY COMMEND TO YOUR ATTENTION THIS ARTICLE AT THE TOP OF OUR BACK PAGE TODAY BECAUSE THIS NEW YORK PSYCHIATRIST TELLS SO SIMPLY AND SO COMPLETELY WHY THE SENSIBLE PEOPLE OF THE UNITED STATES SHOULD BE ARMED.

William Loeb, Publisher

97 — 26 PAGES

MANCHESTER NEW HAMPSHIRE

"There is nothing so powerful as truth" —DANIEL WEBSTER

NEW HAMPSHIRE'S LARGEST DAILY NEWSPAPER

MANCHESTER (N.H.) UNION LEADER — Monday, March 11, 1974

UNION LEADER

Case 2:23-cr-00708-PKC-ATS Document 137-1 Filed 07/23/18 Page 47 of 48 PageID #: 2072

# A Psychiatrist Tells Why He's a Gun-Carrying Doctor

...elieve Me, If I Ever Need To Shoot—I Will'



By JAMES A. BRUSSEL, M.D.
(Psychiatrist, New York City)

As I waited to renew my handgun permit, the New York City license bureau recently, I recalled that the police officer who paged applicants to step forward seemed to address about one in six as "Doctor."

Though I've carried a revolver for some time, I hadn't realized till then that many of my metropolitan colleagues do, too. Before my name was called, I corralled several and asked why.

Through tales of office holdups and break-daylight street muggings run one theme: the need for protection against drug addicts.

I've never fired my .32-caliber Iver Johnson at anyone. But it's never far from reach while I attend patients in my mid-Manhattan office or on outside calls.

And, believe me, if I ever need to shoot—I will. I remember all too well that three of my psychiatrist-colleagues have been savagely beaten (one fatally) by frenzied addicts for whom they'd refused to write narcotic prescriptions.

I could easily have met the same fate not long ago, when the doorman for my building answered over the intercom that a Mr. Miller wanted to see me. I asked the stranger to explain why he'd come, and he said a young man

whom I'd once had in therapy had recommended me, I told Mr. Miller to come up to my office.

He was about 21, tall, well-built, and clean-cut to be an outpatient at a local methadone clinic that was closed for the day.

"All I need is one lousy pill, Doc," he insisted. But when I proposed calling the clinic to verify his story, he angrily offered me the choice of writing the prescription or taking a beating.

DR. BRUSSEL,
Page 19

## DR. BRUSSEL.
(Continued from Back Page)

"I've got a choice for you, too," I said as I drew my revolver and pointed it at his head. "Either walk out of here quietly, or . . ." He stared at the weapon for a moment, then turned and left.

The gun has helped me out of tight spots on occasional emergency night calls. Usually, I'm summoned to an apartment by a former patient whose friend is unconscious from a drug overdose.

Getting a cab to some high-crime neighborhoods isn't hard, but getting back can be. Often, I have to walk several blocks to a subway. When I do, I carry the gun in my hand—not in my pocket.

Once, about midnight, an almost-stoned bruiser snarled. "I wanna talk to you, Mister." I leveled the gun, and he backed off hurriedly, hands raised.

Nor is the need for self-protection always connected with my practice. Last week, my wife and I returned home from the opera by subway because cabs were unavailable. As we climbed the steps of the exit adjacent to our apartment building, I saw three youths slouched against the wall. "Get behind me," I told my wife.

One youngster moved in front of us. "Hold it, Whitey," he sneered. "we got something to say to you."

"So do I," I answered, and aimed the revolver at his middle. All three fled down the street.

Before that night, my wife had constantly begged me not to carry the gun. She hasn't since.

STATEWIDE COVERAGE

MANCHESTER NEW HAMPSHIRE UNION LEADER

MANCHESTER (N.H.) UNION LEADER — Monday, March 11, 1974

FROM COOS TO THE SEA



**STATE OF NEW YORK**
**EXECUTIVE CHAMBER**
**ALBANY 12224**

MEMORANDUM filed with the following bills:                    JUN 15 1974

Senate Bill Number 10431-A, entitled:

CHAPTER    "AN ACT to amend the penal law, in relation to the
possession of firearms and other dangerous
weapons and the licensing and other provisions
APPROVAL #    thereof relating thereto"

Assembly Bill Number 12332, entitled:

CHAPTER    "AN ACT to amend the penal law, in relation to the
issuance of regulations by the superintendent
of state police in regard to the manufacture
APPROVAL #    and assembly of firearms"

A P P R O V E D

These bills, which were part of my 1974 legislative
program, are further steps in a continuing effort to discourage
the criminal possession and use of handguns.

Senate Bill 10431-A will establish a new class C felony
for the illegal possession of a loaded handgun with intent to use
it unlawfully against another, thereby increasing the penalty for
such a criminal violation from a maximum of 7 years in prison to
a maximum of 15 years in prison. In addition, the bill would
require the courts to impose a sentence of imprisonment in every
case where a defendant is found guilty of illegal possession of
a handgun under the new class C felony established by the bill.

Assembly Bill Number 12332 will authorize the
Superintendent of State Police to issue rules and regulations to
curtail the manufacture and assembly in this State of cheap, unsafe
handguns, commonly known as "Saturday Night Specials".

In 1971, F.B.I. statistics indicated that 51% of all
homicides in the United States were committed through the use of
handguns. In 1972, F.B.I. statistics showed an increase in that
percentage to 54%. Further documentation of the use of handguns
in the commission of homicides, as well as other serious crimes,
such as assaults and robberies, is provided daily in our newspapers.

Moreover, it may be fairly assumed that many of these
crimes are committed by criminals brandishing "Saturday Night
Specials", which are poorly made and intrinsically unsafe weapons
of no interest to anyone with a legitimate right to possess a
handgun. These weapons inevitably find their way into the illicit
gun market and become the instruments of violent crime. Under the
provisions of Assembly Bill Number 12332, the Superintendent of
State Police will have the authority to effectively curtail the
manufacture and assembly of "Saturday Night Specials" in this State.

In providing stiffer penalties for those convicted of
illegally possessing handguns, and in providing the Superintendent
of State Police with authority to issue regulations curtailing the
production of "Saturday Night Specials", these bills will help to
reduce the availability and illegal use of handguns in this State.

The bills are approved.