UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES M. MALONEY,

                Plaintiff,

    -against-                              **MEMORANDUM & ORDER**
                                                             03-CV-786 (PKC)(AYS)

MADELINE SINGAS, in her official capacity
as Acting District Attorney of Nassau County,

                Defendant.
-----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       On July 23, 2017, the Court issued an order stating, *inter alia*, that "in keeping with the Second Circuit's reading of [*District of Columbia v. Heller,* 554 U.S. 570 (2008)] a presumption in favor of Second Amendment protection applies, and the government, *i.e.*, Nassau County, has the burden of producing evidence that nunchakus are not 'in common use' *or* not 'typically possessed by law-abiding citizens for lawful purposes.'" (Dkt. 188, at 4 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo ("NYSRPA")*, 804 F.3d 242, 257 n.73 (2d Cir. 2015) (emphasis added).)[1] The Court now *sua sponte* amends its prior order to make clear that Defendant Nassau County's burden is not an either-or test, but rather, Defendant *must* prove, at a minimum, that nunchakus are "not typically possessed by law-abiding citizens for lawful purposes", and not simply that they are not in common use. Indeed, whether nunchakus are in common use is ultimately irrelevant.

---

[1] *See also Kolbe v. Hogan*, 849 F.3d 114, 131 n.9 (4th Cir.), *cert. denied*, 138 S. Ct. 469 (2017) ("Although the *Heller* Court invoked Blackstone for the proposition that 'dangerous and unusual' weapons have historically been prohibited, Blackstone referred to the crime of carrying 'dangerous *or* unusual weapons.'") (emphasis in original).

In its prior order, the Court focused on *NYSRPA*'s statement that the burden of proof regarding the constitutionality of the nunchakus ban was on Defendant and not Plaintiff. (Dkt. 188.) However, after delving into all of the available Second Amendment jurisprudence case law, much of which is outside of this Circuit and much of which is opaque and contradictory, the Court believes that many courts, including the Second Circuit in *NYSRPA*, have ultimately concluded that the issue of "common use" is irrelevant to the Court's analysis as to whether a weapon is outside of the Second Amendment's protection, and that the only relevant inquiry is whether the weapon at issue is typically possessed for a lawful purpose.

The overwhelming majority of courts that have addressed Second Amendment challenges have found that the weapon's "typical possession" for an unlawful purpose, in itself, is sufficient to deny Second Amendment protection. *See, e.g.*, *Kolbe*, 849 F.3d at 131 (noting that even if the majority accepted the dissent's argument that assault weapons are popular, the Court can still "stop those weapons from being used again and again to perpetrate mass slaughters"); *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 408-09 (7th Cir. 2015) (noting that "during Prohibition the Thompson submachine gun (the 'Tommy gun') was all too common in Chicago, but that popularity didn't give it a constitutional immunity from the federal prohibition enacted in 1934"); *United States v. Hatfield*, 376 F. App'x 706, 707 (9th Cir. 2010) (holding that "modern sawed-off shotguns are not typically possessed for lawful purposes" and, therefore, are not entitled to Second Amendment protection); *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010) ("It is arguably possible to extend the exception for dangerous and unusual weapons to cover unmarked firearms. . . . Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm. These weapons would then have value primarily for persons seeking to use

them for illicit purposes."); *United States v. Tagg*, 572 F.3d 1320, 1326 & n.5 (11th Cir. 2009) ("[W]e conclude that the pipe bombs at issue were not protected by the Second Amendment. Unlike the handguns in *Heller*, pipe bombs are not typically possessed by law-abiding citizens for lawful purposes.") (collecting cases); *Worman v. Healey*, 293 F. Supp. 3d 251, 265-66 (D. Mass. 2018) (holding that "AR-15-type rifles . . . fall outside the scope of the Second Amendment" even though they are "an extraordinarily popular firearm" because "[t]he features of a military style rifle are designed and intended to be particularly suitable for combat rather than sporting applications") (citation and internal quotation marks omitted); *United States v. Barbeau*, No. 15-CR-391 (RAJ), 2016 WL 1046093, at *3 (W.D. Wash. Mar. 16, 2016) ("[R]estrictions on short-barreled weapons are permissible, particularly given that Congress specifically found that short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection.") (citation and internal quotation marks omitted).

This conclusion is supported by *NYSRPA*, in which the Second Circuit found that the assault weapons and large-capacity magazines at issue were "in common use", but stated that it "*must* next determine whether assault weapons and large-capacity magazines are 'typically possessed by law-abiding citizens for lawful purposes.'" 804 F.3d at 255-56 (emphasis added). This reasoning makes clear that a weapon being "in common use" is not enough to deny Second Amendment protection; otherwise, the *NYSRPA* court could have concluded after its "common use" analysis that the weapons at issue were protected by the Second Amendment. This reasoning also implies, by contrast, that a weapon's "typical possession" for an unlawful purpose, standing alone, *can* be enough to undermine Second Amendment protection.[2] Moreover, such reasoning is

---

[2] In his concurrence in *Caetano v. Massachusetts*, Justice Alito stated that the test for whether a weapon falls within the scope of the Second Amendment is "a conjunctive test: A weapon may not be banned unless it is both dangerous *and* unusual." 136 S. Ct. 1027, 1031 (2016)

consistent with the Second Amendment's emphasis on, and "the historical understanding" that, "the right to keep and bear arms . . . is for *lawful purposes*." *United States v. Greeno,* 679 F.3d 510, 520 (6th Cir. 2012) (emphasis in original).[3]

In addition, the Court has not identified a single case in which a court has found that a bearable arm is outside of the scope of the Second Amendment simply because it is not in "common use". *See, e.g.*, *Friedman*, 784 F.3d at 409 ("[R]elying on how common a weapon is at the time of litigation would be circular to boot. [For example,] [m]achine guns aren't commonly owned for lawful purposes today because they are illegal. . . . Yet it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned. A law's existence can't be the source of its own constitutional validity.");

---

(Alito, J., concurring) (emphasis in original). In *NYSRPA*, however, which preceded *Caetano*, the Second Circuit only considered the conjunctive test of whether the weapons were "dangerous and unusual" in the context of its "typical possession" analysis. 804 F.3d at 256 (finding that the Court "must also consider more broadly whether the weapon is 'dangerous and unusual' in the hands of law-abiding civilians"). By contrast, some courts have used "unusual" as equivalent to "in common use", and "dangerous" as shorthand for "typical possession." *See, e.g., Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015).

[3] Some courts, however, have implied that the party bearing the burden must demonstrate both that the weapon is not in "common use" *and* its "typical possession" is for an unlawful purpose. *See, e.g., Hollis v. Lynch*, 827 F.3d 436, 447-51 (5th Cir. 2016) (finding that machineguns are "dangerous", and then proceeding to analyze whether they are "usual"); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015) (finding regulations restricting possession of certain types of large-capacity magazines burdened conduct falling within the scope of the Second Amendment where the government demonstrated that the magazines were "dangerous" but not "unusual"); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (holding that machine gun possession is not entitled to Second Amendment protection because it is "likely to cause serious bodily harm" and "unusual because . . . [o]utside of a few government-related uses, machine guns largely exist on the black market"); *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) ("The weapons involved in this case are dangerous and unusual [and therefore, not protected by the Second Amendment]. [Defendant's] own expert testified that the machine gun is a dangerous weapon in light of the fact that it devastated entire populations in World War I. And the possession of a machine gun by a private citizen is quite unusual in the United States.") (internal quotation marks omitted).

4

*Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1276 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ("The fact that few people will require a particular firearm to effectively defend themselves . . . should be celebrated, and not seen as a reason to except [them] from Second Amendment protection."). This principle comports with the Second Circuit's finding in *NYSRPA* that "the Second Amendment extends, prima facie, to *all* instruments that constitute bearable arms, not just to a small subset." 804 F.3d at 255-56 (citation and internal quotation marks omitted) (emphasis in original).

Thus, the Court clarifies the applicable burden of proof and relevant test in this matter: it will not be enough for Defendant Nassau County to simply prove that nunchakus are "unusual" in order to rebut the *prima facie* presumption of Second Amendment protection; Defendant must show that the "typical possession" of nunchakus is for an unlawful purpose.

## CONCLUSION

In light of its Amended Order, the parties may submit supplemental letters, no longer than five pages, by October 22, 2018, addressing whether Defendant has met its burden that nunchakus are "not typically possessed by law-abiding citizens for lawful purposes". The Court shall hold oral argument on December 5, 2018 at 11:00 a.m. in Courtroom 4F North.

SO ORDERED.

/s/*Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: Brooklyn, New York
      October 1, 2018